1   JONATHAN V. HOLTZMAN (SBN 99795)
    jholtzman@publiclawgroup.com
2   JAMES R. ROSS (SBN 149199)
    jross@publiclawgroup.com
3   RYAN P. McGINLEY-STEMPEL (SBN 296182)
    rmcginleystempel@publiclawgroup.com
4   JAKE D. FREITAS (SBN 341837)
    jfreitas@publiclawgroup.com
5   MARIBEL LOPEZ (SBN 340907)
    mlopez@publiclawgroup.com
6   TAYLOR EVANS (SBN 355492)
    tevans@publiclawgroup.com
7   RENNE PUBLIC LAW GROUP
    350 Sansome Street, Suite 300
8   San Francisco, California 94104
    Telephone: (415) 848-7200
9   Facsimile: (415) 848-7230

10  *Attorneys for Plaintiffs*
    HOUSING AUTHORITY OF THE COUNTY OF
11  SAN DIEGO; HOME FORWARD; HOUSING
    AUTHORITY OF THE CITY OF LOS
12  ANGELES; LOS ANGELES COUNTY
    DEVELOPMENT AUTHORITY; HOUSING
13  AUTHORITY OF THE CITY OF SALEM;
    HOUSING AUTHORITY OF BALTIMORE
14  CITY; SAN DIEGO HOUSING COMMISSION

15  JUHI S. AGGARWAL (OSB No. 130764)*
    juhi.aggarwal@homeforward.org
16  HOME FORWARD
    135 SW Ash Street
17  Portland, OR 97204
    Telephone: 503-545-5090

18
    *Attorney for Plaintiff*
19  HOME FORWARD
    *Application for admission pro hac vice
20  forthcoming*

21

22

23

24

25

26

27

28

DAVID CHIU (SBN 189542)
City Attorney
YVONNE R. MERÉ (SBN 175394)
Chief Deputy City Attorney
MOLLIE M. LEE (SBN 251404)
Chief of Strategic Advocacy
SARA J. EISENBERG (SBN 269303)
Chief of Complex and Affirmative Litigation
RONALD H. LEE (SBN 238720)
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
Telephone: (415) 554-3935
Facsimile: (415) 437-4644
ronald.lee@sfcityatty.org

*Attorneys for Plaintiff*
HOUSING AUTHORITY OF THE CITY AND
COUNTY OF SAN FRANCISCO

DANIEL B. ATCHISON (OSB No. 040424)*
datchison@cityofsalem.net
THOMAS V. CUPANI (OSB No. 924654)*
tcupani@cityofsalem.net
City of Salem, Legal Department
PO Box 14300
Salem, Oregon 97309-3986
Telephone: (503) 588-6003
Facsimile: (503) 361-2202

*Attorneys for Plaintiff*
HOUSING AUTHORITY OF THE CITY OF
SALEM
*Application for admission pro hac vice
forthcoming*

MICHAEL BUENNAGEL (SBN 259000)
MBuennagel@counsel.lacounty.gov
THOMAS FAUGHNAN (SBN 155238)
tfaughnan@counsel.lacounty.gov
BEHNAZ TASHAKORIAN (SBN 213311)*
Btashakorian@counsel.lacounty.gov
Office of the County Counsel
County of Los Angeles
Kenneth Hahn Hall of Administration
500 West Temple Street #648
Los Angeles, CA 90012
Telephone: (213) 974-1811
*Application for Northern District Admission
forthcoming*

*Attorneys for Plaintiff*
LOS ANGELES COUNTY DEVELOPMENT
AUTHORITY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUSING AUTHORITY OF THE COUNTY OF SAN DIEGO; HOME FORWARD; HOUSING AUTHORITY OF THE CITY OF LOS ANGELES; LOS ANGELES COUNTY DEVELOPMENT AUTHORITY; HOUSING AUTHORITY OF THE CITY OF SALEM; HOUSING AUTHORITY OF THE CITY AND COUNTY OF SAN FRANCISCO; HOUSING AUTHORITY OF BALTIMORE CITY; SAN DIEGO HOUSING COMMISSION, | Case No. 4:25-cv-08859-KAW<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION**<br><br>Complaint Filed: October 15, 2025 |
|      Plaintiffs, | |
| v. | |
| SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | |
|      Defendants. | |

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS ......................................................................................1

    A.     HUD Unilaterally Imposes New Conditions on Federal Grant Funds ................1

        1.     Operating Subsidy Grant Conditions.................................................3

        2.     Capital Fund Grant Conditions .........................................................4

        3.     Multifamily Housing Service Coordinators Program Grant Conditions ................4

        4.     Family Self-Sufficiency Program ("FSSP") Conditions.........................................5

    B.     Attorney General Pam Bondi Endorses an Overbroad Interpretation of DEI ....................5

    C.     The Unlawful HUD Grant Conditions Inflict Harm and Uncertainty on Plaintiffs............6

III.   LEGAL STANDARD...............................................................................................8

IV.    ARGUMENT ...........................................................................................................9

    A.     Plaintiffs Have Standing to Challenge the HUD Grant Conditions.................................9

    B.     This Court Has Jurisdiction to Review the Lawfulness of the HUD Grant
        Conditions ...................................................................................................9

    C.     Plaintiffs Are Likely to Succeed on the Merits.................................................11

        1.     The HUD Grant Conditions Violate the U.S. Constitution .................................11

            a.     The HUD Grant Conditions Violate the Separation of Powers
               Doctrine........................................................................................12

            b.     The HUD Grant Conditions Violate the Due Process Clause
               Vagueness Doctrine .......................................................................14

            c.     The HUD Grant Conditions Violate the Spending Clause ......................16

        2.     The HUD Grant Conditions Violate the APA .......................................................17

            a.     Imposing the HUD Grant Conditions Is a Final Agency Action ..............17

            b.     Imposing the HUD Grant Conditions Is Not Committed to Agency
                Discretion......................................................................................18

            c.     The HUD Grant Conditions Are Contrary to the Constitution and in
               Excess of Statutory Jurisdiction.....................................................19

            d.     The HUD Grant Conditions Are Arbitrary and Capricious ......................21

    D.     Plaintiffs Will Suffer Irreparable Harm If the Conditions Are Not Enjoined..................23

**TABLE OF CONTENTS**
(continued)

Page

E.    The Balance of Equities Weighs in Plaintiffs' Favor, and a Preliminary Injunction Is in the Public Interest ................................................................................................24

F.    Plaintiffs Request No Bond or a Nominal Bond ................................................................25

V.    CONCLUSION ................................................................................................25

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*,
  75 F.4th 760 (7th Cir. 2023) ....................................................................................13

*Ariz. Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ..................................................................................24

*Arizona v. Yellen*,
  34 F.4th 841 (9th Cir. 2022) ......................................................................................9

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
  548 U.S. 291 (2006)..................................................................................................16

*Armstrong v. Exceptional Child Center, Inc.*,
  575 U.S. 320 (2015)..................................................................................................11

*Arrington v. Daniels*,
  516 F.3d 1106 (9th Cir. 2008) ..................................................................................21

*Bennett v. Spear*,
  520 U.S. 154 (1997)..................................................................................................17

*Bostock v. Clayton Cnty., Georgia*,
  590 U.S. 644 (2020)..................................................................................................12

*California v. Bernhardt*,
  472 F. Supp. 3d 573 (N.D. Cal. 2020) .....................................................................22

*California v. Env't Prot. Agency*,
  72 F.4th 308 (D.C. Cir. 2023) ..................................................................................22

*California v. United States Dep't of Transportation*,
  --- F.Supp.3d ----, 2025 WL 1711531 (D.R.I. June 19, 2025).................................25

*Chi. Women in Trades v. Trump*,
  25-cv-02005, 2025 WL 933871 (N.D. Ill. Mar. 27, 2025) .......................................15

*City & Cnty. of San Francisco v. Barr*,
  965 F.3d 753 (9th Cir. 2020) ......................................................................................1

*City & Cnty. of San Francisco v. Trump*,
  783 F. Supp. 3d 1148 (N.D. Cal. 2025) ....................................................................11

*City & Cnty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) .................................................................9, 11, 12, 22

RENNE PUBLIC LAW GROUP
Attorneys at Law

-iii-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*City of Fresno v. Turner*,
  No. 25-cv-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025)...........................*passim*

*City of Los Angeles v. Barr*,
  941 F.3d 931 (9th Cir. 2019) ...................................................................................1, 11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)...........................................................................................................9

*Clinton v. City of New York*,
  524 U.S. 417 (1998).........................................................................................................13

*Cnty. of Santa Clara v. Trump*,
  250 F. Supp. 3d 497 (N.D. Cal. 2017) ............................................................................23

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*,
  68 F.4th 864 (4th Cir. 2023) ...........................................................................................14

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  321 F.3d 878 (9th Cir. 2003) ...........................................................................................25

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  603 U.S. 799 (2024)..........................................................................................................18

*Cunningham v. Neagle*,
  135 U.S. 1 (1890)................................................................................................................1

*Dalton v. Specter*,
  511 U.S. 462 (1994)..........................................................................................................13

*Dep't of Commerce v. New York*,
  588 U.S. 752 (2019)...............................................................................................9, 18, 22

*Dep't of Education v. California*,
  604 U.S. 650 (2025) (per curiam)....................................................................................10

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  140 S. Ct. 1891 (2020)................................................................................................21, 22

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
  82 F.4th 664 (9th Cir. 2023) ..............................................................................................8

*Geo Group, Inc. v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) (en banc) .............................................................................8

RENNE PUBLIC LAW GROUP
Attorneys at Law

-iv-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Gilmore v. Wells Fargo Bank, N.A.*,
   No. C 14-2389 CW, 2014 WL 3749984 (N.D. Cal. July 29, 2014) ....................................25

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972)........................................................................................................13

*Grimm v. Gloucester Cnty. Sch. Bd.*,
   972 F.3d 586 (4th Cir. 2020) .........................................................................................12

*Illinois v. Federal Emergency Mgmt. Agency*,
   --- F. Supp. 3d ----, 2025 WL 2716277 (D.R.I. Sept. 24, 2025)....................................11

*Jajati v. U.S. Customs & Border Prot.*,
   102 F.4th 1011 (9th Cir. 2024) ......................................................................................18

*Kidwell v. Dep't of Army, Bd. for Correction of Military Records*,
   56 F.3d 279 (D.C. Cir. 1995) .........................................................................................10

*Louisiana Pub. Serv. Comm'n v. FCC*,
   476 U.S. 355 (1986)........................................................................................................12

*Martin Luther King, Jr. Cnty. v. Turner*,
   --- F.Supp.3d ----, 2025 WL 2322763 (W.D. Wash. Aug. 12, 2025) ...........................13, 23

*Martin Luther King, Jr. Cnty. v. Turner ("King Cnty.")*,
   785 F. Supp. 3d 863 (W.D. Wash. 2025).................................................................*passim*

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .........................................................................................24

*Motor Vehicle Mfrs. Ass'n v. State Farm*,
   463 U.S. 29 (1983)....................................................................................................21, 22

*Murphy Co. v. Biden*,
   65 F.4th 1122 (9th Cir. 2023) ........................................................................................13

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n*,
   145 S. Ct. 2658 (2025)....................................................................................................10

*Navajo Nation v. Dep't of the Interior*,
   876 F.3d 1144 (9th Cir. 2017) .......................................................................................11

*Ohio v. Environmental Protection Agency*,
   603 U.S. 279 (2024)........................................................................................................21

RENNE PUBLIC LAW GROUP
Attorneys at Law

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Pennhurst State Sch. & Hosp. v. Halderman*,
   451 U.S. 1 (1981) ............................................................................................................... 16

*President and Fellows of Harvard College v. U.S. Dep't of Health & Human Servs.*,
   --- F. Supp. 3d ----, 2025 WL 2528380 (D. Mass. Sept. 3, 2025) ...................................... 11

*Rhode Island Coal. Against Domestic Violence v. Bondi*,
   --- F. Supp. 3d ----, 2025 WL 2271867 (D.R.I. Aug. 8, 2025) ............................................ 17

*Roe v. Critchfield*,
   137 F.4th 912 (9th Cir. 2025) ............................................................................................. 12

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
   515 U.S. 819 (1995) .............................................................................................................. 6

*S. Dakota v. Dole*,
   483 U.S. 203 (1987) ............................................................................................................ 16

*San Francisco A.I.D.S. Found. v. Trump*,
   786 F. Supp. 3d 1184 (N.D. Cal. 2025) ............................................................................... 13

*San Francisco Unified Sch. Dist. v. AmeriCorps*,
   --- F.Supp.3d ----, 2025 WL 1713360 (N.D. Cal. June 18, 2025) .................................. 17, 25

*San Francisco Unified Sch. Dist. v. AmeriCorps*,
   784 F. Supp. 3d 1280 (N.D. Cal. 2025) ............................................................................... 10

*United Aeronautical Corp. v. U.S. Air Force*,
   80 F.4th 1017 (9th Cir. 2023) ............................................................................................. 10

*United States v. Mitchell*,
   463 U.S. 206 (1983) ............................................................................................................ 11

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   579 U.S. 176 (2016) ............................................................................................................ 15

*Washington v. Trump*,
   847 F.3d 1151 (9th Cir. 2017) (per curiam) ......................................................................... 8

*Webster v. Doe*,
   486 U.S. 592 (1988) ............................................................................................................ 18

*Wolford v. Lopez*,
   116 F.4th 959 (9th Cir. 2024) ............................................................................................. 24

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

5 U.S.C. § 701(a)(2).................................................................................................................18, 19

5 U.S.C. § 702.........................................................................................................................9, 11

5 U.S.C. § 704...............................................................................................................................17

5 U.S.C. § 706(2).....................................................................................................................10, 17

5 U.S.C. § 706(2)(A).....................................................................................................................21

5 U.S.C. § 706(2)(B), (C)..............................................................................................................19

8 U.S.C. § 1642(b).........................................................................................................................20

18 U.S.C. § 287...............................................................................................................................4

18 U.S.C. § 1001.............................................................................................................................4

18 U.S.C. § 1010.............................................................................................................................4

18 U.S.C. § 1012.............................................................................................................................4

18 U.S.C. § 1014.............................................................................................................................4

28 U.S.C. § 1331.............................................................................................................................9

28 U.S.C. § 1491(a)(1)....................................................................................................................9

31 U.S.C. § 3729.............................................................................................................................4

31 U.S.C. § 3729(a)(1)(A).............................................................................................................15

31 U.S.C. § 3729(b)(4)....................................................................................................................5

42 U.S.C. § 300a–6........................................................................................................................13

42 U.S.C. § 1320b-7......................................................................................................................21

42 U.S.C. § 1436a(b)(2)............................................................................................................12, 20

42 U.S.C. § 1437c-1(d)(16)...........................................................................................................20

42 U.S.C. § 1437g..........................................................................................................................19

42 U.S.C. § 1437g(e)......................................................................................................................20

RENNE PUBLIC LAW GROUP
Attorneys at Law

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

42 U.S.C. § 1437u(c) ............................................................................................................18

42 U.S.C. § 1437u(d) ...........................................................................................................19

42 U.S.C. § 8011(a) .............................................................................................................20

42 U.S.C. § 8011(b) .............................................................................................................19

American Homeownership and Economic Opportunity Act of 2000 section 851,
    Pub. L. 106-569, 114 Stat. 2944 ....................................................................................19

Civil Rights Act of 1964, Title VI .............................................................................3, 11, 12

Consolidated Appropriations Act of 2023, Pub. L. 117-328, 136 Stat. 5148 ......................19

Cranston Gonzalez National Affordable Housing Act of 1990,
    Pub. L. 101-625, 104 Stat. 4079 ....................................................................................19

Economic Growth, Regulatory Relief, and Consumer Protection Act of 2018,
    Pub. L. 115-174, 132 Stat. 1296 ....................................................................................19

False Claims Act ...............................................................................................................3, 4

Housing Act of 1937, Pub. L. 75 896, 50 Stat. 888 .............................................................19

Housing and Community Development Act of 1980 section 214 (42 U.S.C. §1436a).......12, 20

Housing and Community Development Act of 1992, Pub. L. 102-550, 106 Stat. 367 .......17, 19

Personal Responsibility and Work Opportunity Reconciliation Act of 1996 title IV ...........3, 21

**Other Authorities**

28 C.F.R. § 85.5(a)...............................................................................................................15

62 Fed. Reg. 61344 (Nov. 17, 1997).....................................................................................21

62 Fed. Reg. 61348–49 (Nov. 17, 1997)...............................................................................21

63 Fed. Reg. 41662 (Aug. 4, 1998).......................................................................................21

Executive Order No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025)........................................1, 5

Executive Order No. 14168, 90 Fed. Reg. 8615 (Jan. 30, 2025)..............................2, 5, 12, 15

Executive Order No. 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025)....................................1, 5, 22

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Executive Order No. 14182, 90 Fed. Reg. 8751 (Jan. 31, 2025)........................................................2, 5, 16

Executive Order No. 14218, 90 Fed. Reg. 10581 (Feb. 19, 2025) ....................................2, 3, 4, 15, 20, 22

Executive Order No. 14287, 90 Fed. Reg. 18761 (Apr. 28, 2025) ...............................................................2

Executive Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025) ...............................................................2

HUD, Ltr. to Grantees and Stakeholders (Apr. 4, 2025),
    https://www.hud.gov/sites/dfiles/PA/documents/2025-04-04-HUD-Grantee-and-
    Stakeholder-Letter.pdf .........................................................................................................................22

U.S. Constitution
    Art. I, § 8.................................................................................................................................1, 11, 24
    First Amendment .............................................................................................................................6, 11
    Fifth Amendment ................................................................................................................................10

RENNE PUBLIC LAW GROUP
Attorneys at Law

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs[1] are a group of public housing agencies ("PHAs") that urgently seek a temporary restraining order to prevent the U.S. Department of Housing and Urban Development and Scott Turner in his official capacity ("HUD" or "Defendants") from enforcing unlawful and unauthorized conditions imposed on critical federal funding programs.  These vague and sweeping conditions implementing the President's executive orders ("EOs") and policies (the "HUD Grant Conditions") threaten millions of dollars in essential funding that Plaintiffs depend on to provide housing to the most vulnerable communities in the country.  By imposing these unlawful conditions without statutory authority or compliance with required procedures, Defendants have exceeded their constitutional and statutory authority, disregarded the separation of powers, and flouted the requirements of the Administrative Procedure Act.  *See* U.S. Const. art. I, § 8; *Cunningham v. Neagle*, 135 U.S. 1, 83–84 (1890); *City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019); *City & Cnty. of San Francisco v. Barr*, 965 F.3d 753, 766 (9th Cir. 2020).  Because Plaintiffs face imminent deadlines (the earliest is **October 21, 2025 by 5 p.m. Eastern Time**) that will result in the loss of critical federal funding with severe and immediate consequences for their vulnerable communities, a TRO is necessary to ensure that Defendants are enjoined from imposing or enforcing the unlawful conditions, or any materially similar conditions, while this case proceeds.  Moreover, Plaintiffs are likely to succeed on the merits of their claims, face irreparable injury absent immediate relief, and seek to preserve the status quo against unlawful executive overreach.

## II.    STATEMENT OF FACTS

### A.    HUD Unilaterally Imposes New Conditions on Federal Grant Funds

Following his inauguration, President Trump issued a series of EOs directing executive agencies to impose new conditions on federal grants.  These include EO No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025) (Ending Radical and Wasteful Government DEI Programs and Preferencing); EO No. 14173, 90

---

[1] Housing Authority of the County of San Diego ("HACSD"), Home Forward, Housing Authority of the City of Los Angeles ("HACLA"), Los Angeles County Development Authority ("LACDA"), Housing Authority of the City of Salem, Housing Authority of the City and County of San Francisco ("SFHA"), Housing Authority of Baltimore City ("HABC"), and San Diego Housing Commission ("SDHC").

RENNE PUBLIC LAW GROUP
Attorneys at Law

Fed. Reg. 8633 (Jan. 21, 2025) (Ending Illegal Discrimination and Restoring Merit-Based Opportunity);

EO No. 14168, 90 Fed. Reg. 8615 (Jan. 30, 2025) (Defending Women from Gender Ideology

Extremism); EO No. 14182, 90 Fed. Reg. 8751 (Jan. 31, 2025) (Enforcing the Hyde Amendment); EO

No. 14218, 90 Fed. Reg. 10581 (Feb. 19, 2025) (Ending Taxpayer Subsidization of Open Borders); EO

No. 14287, 90 Fed. Reg. 18761 (Apr. 28, 2025) (Protecting American Communities From Criminal

Aliens); and EO No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025) (Improving Oversight of Federal

Grantmaking).  Pursuant to these EOs and other policy directives, HUD incorporated new conditions into

grant programs' terms and conditions collectively referred to herein as the "HUD Grant Conditions."

In or around April 2025, HUD revised its General Administrative, National, and Departmental

Policy Requirements and Terms for HUD's Financial Assistance Programs ("HUD Policy Terms") to

require recipients of HUD grant funding to comply with all existing and future EOs, including those

enumerated above.  *See* Request for Judicial Notice ("RJN"), Ex. A.  The HUD Policy Terms require that

"[r]ecipients of Federal Awards must comply with applicable existing and future Executive Orders, as

advised by the Department, including but not limited to" a "non-exhaustive list" of EOs, including the

EOs related to DEI, gender ideology, immigration, and elective abortions.  *Id*. at 10 (the "HUD EO

Condition").  The HUD Policy Terms also provide, "[n]o state or unit of general local government that

receives HUD funding under [sic] may use that funding in a manner that by design or effect facilitates

the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens

from deportation."  *Id*. at 2 (the "HUD Immigration Enforcement Condition").

HUD's revised General Policy Terms were followed by public statements affirming the agency's

commitment to the President's agenda.  On or about May 15, 2025, Defendant Turner stated that "HUD

is carrying out President Trump's EOs, mission, and agenda," by "[a]lign[ing] all programs, trainings,

and grant agreements with the President's EOs, removing diversity, equity, inclusion (DEI)."  RJN, Ex.

B, Press Release No. 25-059, at 4.  Since issuing the revised General Terms, Defendants have included

all or some of the unlawful conditions across different grant programs.

RENNE PUBLIC LAW GROUP
Attorneys at Law

### 1.    Operating Subsidy Grant Conditions

On July 17, 2025, HUD issued Notice PIH[2] 2025-22 titled, "Public Housing Operating Subsidy Grant Eligibility Calculations and Processing for Calendar Year 2026."  RJN, Ex. C.  The notice requires public housing agencies to sign the SF-424 certification, which includes certifications to new conditions not included in CY 2025 and CY 2024 Operating Fund Processing Notices, nor authorized by the statutory provisions governing the grant programs.  *See* Lares Decl., Ex. D, SF-424 certification at 3.  To receive Operating Subsidy funds, recipients must submit the SF-424 certification by October 21 at 5 p.m., Eastern Time.  *See* RJN, Ex. C at 7.  The PIH's Guidance regarding the Operating Subsidy Grant includes the following conditions (collectively, the "Operating Subsidy Grant Conditions").

First, each recipient must "certif[y] that it does not operate any programs that violate any applicable Federal antidiscrimination laws, including Title VI of the Civil Rights Act of 1964" and that it "[i]s in compliance, in all respects, with all applicable Federal anti-discrimination laws is [*sic*] material to the U.S. Government's payment decisions for purposes of [the False Claims Act]"  (the "Operating Subsidy Discrimination Conditions").  Although these terms and conditions do not explicitly address diversity, equity, and inclusion ("DEI") programs, the President's DEI-related EOs and further guidance from the Attorney General and HUD clearly imply that these new "discrimination" conditions are intended to discourage recipients from adopting any policies or programs this Administration might label as "DEI."  In fact, the CY2025 Annual Renewal Guidance for Multifamily Housing Service Coordinators grants, discussed below, includes explicit prohibitions on DEI.  *See* RJN, Ex. E.

Second, Plaintiffs must certify that they will not use grant funding "in a manner that . . . facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation" (the "Operating Subsidy Immigration Enforcement Condition").

Third, Plaintiffs are required to certify they will "administer [their] grant[s] in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 . . . (U.S.C. 1601-1646) (PRWORA)."  Further, the Plaintiffs must certify

---

[2] Congress has established various grant programs administered by HUD through the Office of Public and Indian Housing ("PIH").

that they will comply with any future restrictions or requirements "HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, E.O. 14218, or other Executive Orders or immigration laws." Additionally, Plaintiffs must certify that they will "use Systematic Alien Verification for Entitlements Program (SAVE)" or any similar verification system approved by the Federal Government to prevent "an ineligible alien who entered the United States illegally or is otherwise unlawfully present" from receiving any Federal public benefit (the "Operating Subsidy Immigration Status Conditions").

Fourth, recipients are required to agree not to "use grant funds to promote 'gender ideology,' as defined in Executive Order (E.O.) 14168" (the "Operating Subsidy Gender Ideology Condition").

Fifth, recipients must agree that they will "not use any grant funds to fund or promote elective abortions, as required by [the Abortion Order]" (the "Operating Subsidy Abortion Condition"). The Notice PIH 2025-22 warns any Plaintiff "who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement for up to 5 years, fines, and civil administrative penalties" pursuant to 18 U.S.C. §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. §§ 3729 (False Claims Act or "FCA"), and 3802.

### 2. Capital Fund Grant Conditions

On May 23, 2025, HUD published "FY2025 Capital Fund Processing Guidance for PHAs" (FY25 Processing Guidance), which requires public housing agencies to sign an Annual Contributions Contract ("ACC") Amendment to access their Capital Fund award and ultimately receive the funding. The amendment adds a condition to FY 2025 Capital Fund Grant Awards that "[t]his grant is subject to Executive Order 14218, Ending Taxpayer Subsidization of Open Borders and applicable law" and HUD "will take steps to ensure that Federal resources are not used to support 'sanctuary' policies of State and local jurisdictions that actively prevent federal authorities from deporting illegal aliens" (the "CFP Immigration Enforcement Condition"). *See* RJN, Ex. D.

### 3. Multifamily Housing Service Coordinators Program Grant Conditions

In or around early 2025,[3] HUD published the CY 2025 Annual Renewal Guidance (*see* RJN,

---

[3] Publication dates were not provided for Multifamily Housing Service Coordinators Grant Calendar Year 2025 Annual Renewal Guidance and the applicable Calendar Year 2025 Terms and Conditions.

-4-

RENNE PUBLIC LAW GROUP
Attorneys at Law

Ex. E) and the applicable CY 2025 Terms and Conditions for Service Coordinators in Multifamily

Housing Program grants.  RJN, Ex. F.  The Annual Renewal Guidance requires grantees to "carry out

grant activities in compliance with the terms and conditions."  RJN, Ex. E at 4.  It explicitly requires

grantees to comply with "any applicable" EOs, including EO 14218 Ending Taxpayer Subsidization of

Open Borders, EO 14182 Enforcing the Hyde Amendment, EO 14173 Ending Illegal Discrimination and

Restoring Merit-Based Opportunity; EO 14168 Gender Ideology; and EO 14151 Ending DEI Programs

and Preferencing (the "MFSC EO Condition").  The first page after the CY2025 Terms and Conditions

table of contents includes the EOs and conditions listed in the Renewal Guidance.  RJN, Ex. F at 2.  The

EOs and conditions are listed again under "Article X- Certifications."  *Id.* at 12.  Plaintiffs are also made

responsible to ensure "compliance [with the EOs] by any other entity(ies) to which it makes grant funds

available."  *Id.* at 2.  The Guidance also warns that "[f]ailure to comply will be a basis for denial of any

additional grant funds."  *Id.*  Further, the Annual Renewal Guidance requires recipients to "certif[y] that

it does not operate any programs promoting Diversity, Equity, and Inclusion (DEI) that violate any

applicable Federal anti-discrimination laws" and that "the grantee agrees that its compliance in all

respects with all applicable Federal anti-discrimination laws is material to the government's payment

decisions for the purposes of section 3729(b)(4) of title 31, United States Code," *id.* (the "MFSC

Discrimination Conditions").  In addition, the Annual Renewal Guidance states "grantees have an

obligation to ensure that grant monies and benefits do not go to unqualified aliens" (the "MFSC

Immigration Status Condition").

### 4.    Family Self-Sufficiency Program ("FSSP") Conditions

On September 26, 2025, HUD issued Notice PIH 2025-24 with subject title "FY 2025 Family

Self-Sufficiency Grant Program Annual Funding Notification and Application Process."  *See* RJN, Ex. G.

The Notice includes section "XI. PRESIDENTIAL EXECUTIVE ACTIONS AFFECTING FEDERAL

FINANCIAL ASSISTANCE PROGRAMS," which states that grantees must ensure grant-funded

activities "comply with applicable existing and future executive orders and other Presidential Actions,"

and lists the same EOs as the MFSC EO Condition discussed above. (the "FSSP EO Condition").

### B.    Attorney General Pam Bondi Endorses an Overbroad Interpretation of DEI

The DOJ has issued statements confirming this administration's overbroad interpretation of

"DEI" that conflicts with current law.  In a departmental memo dated February 5, 2025, Attorney General Pam Bondi ("Bondi Memo I") stated that DOJ's Civil Rights Division will "penalize" and "eliminate" "illegal DEI and DEIA" activities, characterizing such programs as discriminatory if they "divide individuals based on race or sex."  RJN, Ex. H.  The memo suggests this may include race- or gender-based affinity groups or even teaching about racial history.  *See id.*  A second memo from Attorney General Bondi to grant recipients, issued on July 29, 2025 ("Bondi Memo II"), purports to clarify the application of federal antidiscrimination laws for entities receiving federal funds.  Contrary to established legal precedent, the letter states that entities that promote DEI training programs that include discussions of inherent bias, white privilege, or toxic masculinity violate federal law.  The letter instructs recipients to "[m]onitor third parties that receive federal funds to ensure ongoing compliance, including reviewing program materials."  RJN, Ex. I.  If this requirement to condition federal funding on the content of program materials were enforced, it would be a violation of the First Amendment.  *See Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 831 (1995).

Additionally, on May 19, 2025, the Deputy Attorney General Todd Blanche issued a memo indicating that the DOJ will invoke the FCA to pursue funding recipients engaged in what it characterizes as "civil rights fraud"—including DEI initiatives.  Along with starting an initiative to "utilize the [FCA] to investigate and, as appropriate, pursue claims against any recipient of federal funds," the memo states that DOJ "strongly encourages" private FCA lawsuits against funding recipients.  RJN, Ex. J.

### C.    The Unlawful HUD Grant Conditions Inflict Harm and Uncertainty on Plaintiffs

Defendants' grant conditions place Plaintiffs in an untenable position: either risk legal liability for accepting the vague and unlawful requirements or forfeit crucial funds which sustain affordable and dignified housing for low-income families, individuals with disabilities, and the elderly.  Plaintiffs risk forfeiting millions of dollars in funding.  The loss of these funds would cause immediate, irreparable, and far-reaching harm to Plaintiffs' ability to provide safe, quality, affordable, and dignified housing with critical social resources to their vulnerable constituents.  Moreover, even if Plaintiffs agreed to the conditions, the lack of clarity in the application of the conditions would leave them exposed to arbitrary enforcement, unpredictable penalties, and legal liability.  The Complaint and the supporting declarations concurrently filed with this motion describe, in greater detail than is possible in this memorandum, the

RENNE PUBLIC LAW GROUP
Attorneys at Law

anticipated grant funds on which Plaintiffs rely.  The discussion below highlights only a few examples and identifies the grant funds Plaintiffs receive from Defendants.

Plaintiffs use Operating Subsidy funds for essential repairs and maintenance of housing units to ensure habitability.  They also use the funds to pay case management, maintenance, and administrative staff.  HACSD receives approximately $370,448 in Operating funds annually.  Martinez Decl. ¶ 6. HABC received over $97 million in Operating Subsidy funding in Calendar Year 2025.  Abrahams Decl. ¶ 7.  SFHA received $4 million in Operating Subsidy funding in 2025 and anticipates receiving $2.9 million in 2026.  Adams Decl. ¶ 7.  Home Forward is tentatively approved to receive $7,264,114 in Operating Subsidy funds for Calendar Year 2026.  Davie Decl. ¶ 9.  LACDA is tentatively approved to receive over $12,000,000 for Calendar Year 2026.  Salas Decl. ¶ 6.  October 21, 2025, is the deadline for Plaintiffs to submit certification of the unlawful conditions to receive the Operating Subsidy funding.

Plaintiffs receive Capital Funds from HUD ranging from hundreds of thousands of dollars to millions.  HACSD receives approximately $359,838 annually, while SFHA and Home Forward respectively received allocations of $5.5 million and $1,586,899 for FY2025.  Martinez Decl. ¶ 6; Adams Decl. ¶ 8; Davie Decl. ¶ 11.  HABC received over $21 million in Capital Fund grants in FY2025. Abrahams Decl. ¶ 10.  HACLA received an allocation of $24,883,714 for FY2025 in Capital Fund and an allocation of $250,000 for FY2025 in Capital Fund Emergency Safety and Security.  Lares Decl. ¶ 6. LACDA expects to receive approximately $9,500,000 in FY2025 Capital Fund, and $250,000 for FY2025 Capital Fund Emergency Safety and Security.  Salas Decl. ¶ 7.  Plaintiffs use Capital Funds to rehabilitate and modernize their public housing units such as elevator modernization, rehabilitation of kitchens and bathrooms, flooring replacement, major plumbing, accessibility upgrades and roof replacement.  Salas Decl. ¶ 7.  Plaintiffs use Capital Fund Emergency Safety and Security funds for safety and security projects such as upgrading and replacing fire alarms at public housing units.  Salas Decl. ¶ 8.  HUD has not provided an exact deadline for Plaintiffs to submit the executed ACC Amendment certifying to the unlawful conditions.  However, Plaintiffs may not access Capital Funds without submitting the executed ACC Amendment.

Plaintiffs Home Forward, Housing Authority of the City of Salem, and HACLA are all recipients of the Multifamily Housing Services Coordinators grant.  Davie Decl. ¶ 13; Utz Decl. ¶ 8; Lares Decl.

RENNE PUBLIC LAW GROUP
Attorneys at Law

-7-

¶ 7.  The grant provides funding for the employment of service coordinators for housing designed for the elderly and persons with disabilities.  Service coordinators support assisted housing with physical security, social connections, financial security, and they deliver long-term community based supportive services.  On September 19, 2025, Home Forward received a Notice of Award for FY2025, authorizing the remaining $448,831 (out of an original award of $2,814,587) for services rendered in 2025, but only if it certified the new unlawful terms and conditions within 14 days.  Davie Decl. ¶ 13.  As of October 2025, Home Forward has expended most of this amount but has yet to be reimbursed.  *Id.*

Plaintiffs use FSSP funds to assist families to achieve financial self-sufficiency through services like case management, training, and referrals to supportive social services.  For example, in 2025, Home Forward received approximately $933,544, LACDA received approximately $976,000, HABC received roughly $723,367, HACLA received approximately $1.4 million, and SFHA received $283,485.96.  Davie Decl. ¶ 14; Salas Decl. ¶ 9; Abrahams Decl. ¶ 11; Lares Decl. ¶ 8; Adams Decl. ¶ 10.  The application deadline for FY2025 funding is October 29.  Davie Decl. ¶ 14; Adams Decl. ¶ 10.

Without injunctive relief, Plaintiffs will be forced to either forgo millions of dollars, collectively, in federal funds critical to their vulnerable communities or attempt to comply with unlawful conditions that are impermissibly vague and directly conflict with the grant programs' authorizing statutes.

## III.    LEGAL STANDARD

"To obtain a preliminary injunction, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public interest." *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022) (en banc) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  "[T]he legal standards applicable to TROs and preliminary injunctions are 'substantially identical.'" *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (per curiam) (quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  Where "the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—'merge.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023).

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.    **ARGUMENT**

    A.    **Plaintiffs Have Standing to Challenge the HUD Grant Conditions**

        Plaintiffs have standing because they face concrete, particularized, and imminent injuries as a direct result of the unlawful HUD Grant Conditions.  To establish standing, a plaintiff must show it has suffered or will suffer an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).  Courts have repeatedly recognized that "[a] loss of funds promised under federal law satisfies Article III's standing requirement."  *City & Cnty. of San Francisco v. Trump* ("*San Francisco*"), 897 F.3d 1225, 1235 (9th Cir. 2018) (cleaned up); *see also Dep't of Commerce v. New York*, 588 U.S. 752, 767 (2019) ("[L]os[ing] out on federal funds . . . is a sufficiently concrete and imminent injury to satisfy Article III . . . ."); *Arizona v. Yellen*, 34 F.4th 841, 853 (9th Cir. 2022) ("States have standing when an allegedly unconstitutional funding offer is made to them, and they do not need to first violate a condition of an allegedly unconstitutional contract . . . .").

        Here, Plaintiffs have been awarded millions of dollars, collectively, in federal grant funding to provide quality, safe, and dignified affordable public housing for Plaintiffs' constituents who are poverty-stricken families with children (some with disabilities), individuals with disabilities, and elderly.  This funding, which in many cases has already been allocated, budgeted, and spent, is now conditioned on compliance with vague and contradictory HUD Grant Conditions.  These conditions were not authorized by the governing statutes and, with the exception of recent renewal or new grant applications, were not disclosed in the relevant NOFOs.  Plaintiffs must either accept the unlawful and ambiguous conditions and the legal liability attached to them or suffer the loss of critical federal funding that, in many cases, has been budgeted for or already expended on essential services for vulnerable communities living in public housing units.  This imminent harm is only redressable by declaratory and injunctive relief prohibiting Defendants from enforcing the HUD Grant Conditions against Plaintiffs.

    B.    **This Court Has Jurisdiction to Review the Lawfulness of the HUD Grant Conditions**

        Plaintiffs' claims "aris[e] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, are subject to the APA's waiver of sovereign immunity, 5 U.S.C. § 702, and thus are squarely within this Court's jurisdiction.  In other federal funding cases, the Administration has argued that the

RENNE PUBLIC LAW GROUP
Attorneys at Law

Tucker Act—which confers jurisdiction on the Court of Federal Claims ("CFC") for damages claims founded upon a contract with the United States, *see* 28 U.S.C. § 1491(a)(1)—"'impliedly forbids' an APA action" challenging federal grant conditions. *See City of Fresno v. Turner*, No. 25-cv-07070-RS, 2025 WL 2721390, at *5–6 (N.D. Cal. Sept. 23, 2025) (quoting *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023)). But nothing in the Tucker Act deprives this Court of jurisdiction to grant the equitable relief Plaintiffs seek here.

"Plaintiffs frequently seek vacatur of internal agency guidance on arbitrary-and-capricious grounds in district court or directly in the D.C. Circuit. . . . That the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded ... upon' contract that only the CFC can hear." *Nat'l Institutes of Health v. Am. Pub. Health Ass'n* ("*NIH*"), 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring in partial grant of application for stay) (quoting 28 U.S.C. § 1491(a)(1)). Moreover, claims involving "rights and remedies" that "are *statutorily* or *constitutionally* based" are not subject to the Tucker Act. *United Aeronautical Corp.*, 80 F.4th at 1026 (cleaned up).

Here, Plaintiffs' claims do not seek to enforce contractual rights and do not seek damages. Instead, they seek to vindicate their rights to participate in congressionally authorized grant programs pursuant to the eligibility criteria Congress authorized, free from unlawful conditions that violate the separation of powers, the Fifth Amendment, the Spending Clause, and the APA. *See City of Fresno*, 2025 WL 2721390, at *6 ("Plaintiffs challenge the Defendant agencies' *policies* and *guidance* to condition funding on the Grant Conditions on *statutory*, namely APA, and *constitutional* grounds, and they seek injunctive relief barring Defendants' imposition of the conditions and setting aside related internal agency directives."); *see also* 5 U.S.C. § 706(2); *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring) ("The Government is not entitled to a stay of the judgments insofar as they vacate the guidance documents."). A request for equitable relief does not become subject to the Tucker Act merely because "success on the merits may obligate the United States to pay the complainant." *Kidwell v. Dep't of Army, Bd. for Correction of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 1995); *see also Dep't of Education v. California*, 604 U.S. 650 (2025) (per curiam) ("True, a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)).

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

1   As courts have held in similar cases, constitutional and APA claims seeking declaratory and

2   injunctive relief from unlawful grant conditions are properly subject to the jurisdiction of the district

3   courts. *See, e.g., San Francisco Unified Sch. Dist. v. AmeriCorps* ("*SFUSD I*"), 784 F. Supp. 3d 1280,

4   1291–97 (N.D. Cal. 2025) (Tucker Act did not deprive court of jurisdiction to enter a TRO enjoining

5   defendants from imposing and enforcing new conditions on plaintiff's AmeriCorps grants); *Martin*

6   *Luther King, Jr. Cnty. v. Turner ("King Cnty.")*, 785 F. Supp. 3d 863, 877–82 (W.D. Wash. 2025)

7   (similar conclusion regarding HUD and DOT grant conditions); *City of Fresno*, 2025 WL 2721390, at

8   *5–6 (similar); *City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148, 1201 n.12 (N.D. Cal.

9   2025) ("This Order . . . does not require the Government to pay out past-due obligations to the Cities and

10  Counties now; it enjoins the Bondi Directive to the extent that the directive commands DOJ to freeze all

11  funds to the Cities and Counties."); *Illinois v. Federal Emergency Mgmt. Agency*, --- F. Supp. 3d ----,

12  2025 WL 2716277, at *9 (D.R.I. Sept. 24, 2025) ("The recent decisions from the Supreme Court

13  regarding grants have arisen in the specific context of grant terminations and damages claims that fall

14  within the Tucker Act framework, not the promulgation of grant conditions that govern eligibility for

15  future funding."); *President and Fellows of Harvard College v. U.S. Dep't of Health & Human Servs.*, ---

16  F. Supp. 3d ----, 2025 WL 2528380, at *14 (D. Mass. Sept. 3, 2025) (exercising jurisdiction as to First

17  Amendment and Title VI challenges to freeze orders and termination letters, as well as APA challenges

18  to the freeze orders, but not termination letters).

19  **C.      Plaintiffs Are Likely to Succeed on the Merits**

20          **1.      The HUD Grant Conditions Violate the U.S. Constitution[4]**

21  Plaintiffs are likely to succeed in demonstrating that the haphazardly imposed HUD Grant

22  Conditions violate the Constitution.

23

24

---

25  [4] Plaintiffs' non-APA claims for equitable relief are independently actionable. "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects

26  a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015). The 1976 amendment to 5 U.S.C. "§ 702

27  enacted a broad unqualified waiver for all non-monetary claims for relief against federal agencies," including non-APA claims. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017);

28  *accord United States v. Mitchell*, 463 U.S. 206, 227 & n.32 (1983) (noting that Congress "enacted a general consent" to suits for "declaratory, injunctive or mandamus relief against the Secretary").

a.    **The HUD Grant Conditions Violate the Separation of Powers Doctrine**

The Constitution "exclusively grants the power of the purse to Congress, not the President." *San Francisco*, 897 F.3d at 1231. Accordingly, there is no inherent executive authority to place conditions on the receipt of federal funds—any such authority must be given to the executive by the legislature. *See City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019) (agency grant conditions imposed without statutory authority were "ultra vires"). Absent an express delegation of congressional authority, the President's power to impose conditions on grants "is at its lowest ebb." *San Francisco*, 897 F.3d at 1233 (cleaned up). Similarly, "unless and until Congress confers power on" them, agencies have "literally . . . no power to act . . . ." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

No statute gives Defendants the power to impose conditions on the federal grants at issue here. Rather than implement Congress's will, Defendants are attempting to condition duly appropriated funds on compliance with the President's policy agenda. But the President lacks "his own constitutional powers" to add new conditions to federal funds. *San Francisco*, 897 F.3d at 1234 (cleaned up). Defendants' actions therefore usurp Congress's "power of the purse" and violate bedrock separation of powers principles. *Id*. at 1231.

The Operating Subsidy and the MFSC Discrimination Conditions attempt to prohibit the use of funds for undefined categories of "DEI mandates" or "equity ideology" even though Congress has never enacted legislation barring grantees from supporting such initiatives. Similarly, the HUD, Operating Subsidy, and CFP Immigration Enforcement Conditions purport to require cooperation with federal immigration enforcement and prohibit policies that "facilitate" or "promote" "illegal immigration," even though Congress has repeatedly declined to enact legislation cutting off federal funds for so-called "sanctuary jurisdictions." *See San Francisco*, 897 F.3d at 1231 (holding that Executive Branch may not withhold federal grants from sanctuary cities without congressional authorization). The Operating Subsidy and MFSC Immigration Status Conditions attempt to sweep these grant programs within PRWORA, even though Congress has legislated a different immigration status verification regime through section 214 of the Housing and Community Development Act of 1980 (42 U.S.C. §1436a). For example, this verification regime specifically provides public housing eligibility for mixed-status households. 42 U.S.C. § 1436a(b)(2).

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    The Gender Ideology Condition attempts to bind recipients to the policy dictates of Executive

2    Order 14168, yet Congress has never authorized the Executive to use Title IX or Title VI as vehicles for

3    prohibiting "gender ideology."  In fact, courts have recognized that transgender individuals are a

4    protected category under provisions of the Civil Rights Act.  *See, e.g.*, *Bostock v. Clayton Cnty., Georgia*,

5    590 U.S. 644, 683 (2020); *Roe v. Critchfield*, 137 F.4th 912, 928 (9th Cir. 2025); *Grimm v. Gloucester*

6    *Cnty. Sch. Bd.*, 972 F.3d 586, 616–17 (4th Cir. 2020); *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*,

7    75 F.4th 760, 769 (7th Cir. 2023).  The Gender Ideology Conditions facially discriminate based on

8    transgender status, violating the Separation of Powers by contravening antidiscrimination laws.  *See San*

9    *Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1232 (N.D. Cal. 2025).

10    The same is true of the Abortion Condition, which purports to "enforce" the Hyde Amendment.

11    The Abortion Condition prohibits grantees from using federal grants to "fund or promote elective

12    abortions" in all contexts, extending the restriction far beyond the prohibitions of the Hyde Amendment,

13    which says nothing about the "promotion" of abortion and includes exceptions in cases of rape, incest, or

14    where the life of the mother is at risk.  *See* 42 U.S.C. § 300a–6 (and related appropriations provisions).

15    These conditions impose broader restrictions on recipients than required by existing law.  *See Martin*

16    *Luther King, Jr. Cnty. v. Turner*, --- F.Supp.3d ----, 2025 WL 2322763 at *13 n.9 (W.D. Wash. Aug. 12,

17    2025).  The Executive cannot "repeal[ ] or amend[ ] parts of duly enacted statutes" after they become

18    law. *Clinton v. City of New York*, 524 U.S. 417, 439 (1998)

19    Defendants are not enforcing federal statutes.  They are essentially amending existing laws

20    through executive order and changes to internal agency guidance, creating prohibitions that go beyond

21    the statutes' text and leveraging congressionally appropriated grant funds—which carry significant FCA

22    liability—to pressure recipients into complying with the administration's policy priorities.  This conduct

23    violates the Separation of Powers by usurping Congress's exclusive lawmaking power as well as its

24    spending authority under Article I of the Constitution.[5]

25

26    _____

27    [5] "While 'an action taken by the President in excess of his statutory authority [does not] necessarily
violate[] the Constitution,' specific allegations regarding separation of powers may suffice."  *Murphy Co.*
*v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023) (quoting and altering *Dalton v. Specter*, 511 U.S. 462, 473

28    (1994)), *cert. denied*, 144 S. Ct. 1111 (2024).  Indeed, the Ninth Circuit takes an "expansive view of the
constitutional category of claims highlighted in *Dalton*."  *Id.*

**b.    The HUD Grant Conditions Violate the Due Process Clause Vagueness Doctrine**

A requirement imposed by the government is unconstitutionally vague if it fails to either (1) provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited" or (2) "provide explicit standards for those who apply" the requirement, thereby encouraging "arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Several HUD Grant Conditions violate the Fifth Amendment's vagueness doctrine by imposing conditions that are so vague, ambiguous, and open-ended that it is impossible for Plaintiffs to know the full range of activities the federal government might consider prohibited.

Turning first to the HUD, MFSC, and FSSP EO Conditions, which ambiguously incorporate a non-exhaustive list of "applicable existing and future Executive Orders" and require recipients to "comply" with them.  A condition that directs compliance with "applicable existing and *future* Executive Orders" provides no meaningful guidance as to what conduct is expected, tolerated, or prohibited. Executive orders vary in scope and subject matter, are subject to change at any time, and are addressed exclusively to executive branch actors.  A recipient is left to guess whether, and how, a particular EO applies to its conduct and risks loss of critical federal funding and FCA liability if it guesses incorrectly. Further, none of the EOs at issue directly impose requirements on grant recipients; rather, they direct the heads of executive agencies to impose conditions on federal funding.  Accordingly, it is nonsensical to require Plaintiffs to "comply" with the EOs, and unclear what requirements they impose on Plaintiffs.

The Operating Subsidy and MFSC Discrimination Conditions are also unconstitutionally vague. While Plaintiffs have regularly agreed to comply with federal antidiscrimination laws as a condition of federal funding in the past, the federal government has now called the meaning of those laws into question by purporting to interpret them far differently than previously understood by Congress, the executive, or the courts—leaving it unclear what is expected under the terms.  Take, for example, the Bondi Memo II purporting to "clarif[y] the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ('DEI') programs."  RJN, Ex. I at 1.  Among other "clarifications," Attorney General Bondi states that the use of "[f]acially neutral criteria (e.g., 'cultural competence,' 'lived experience,'

-14-

geographic targeting) that function as proxies for protected characteristics violate federal law if designed or applied with the intention of advantaging or disadvantaging individuals based on protected characteristics." *Id*. at 2.  This "clarification," however, is inconsistent with Supreme Court precedent that has "consistently declined to find constitutionally suspect" the adoption of race-neutral criteria— even where the decision-maker was "well aware" the race-neutral criteria "correlated with race." *Coal. for TJ v. Fairfax Cnty. Sch. Bd.* 68 F.4th 864, 885–86 (4th Cir. 2023) (cleaned up) (citing, inter alia, *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015)).

Defendants' new misinterpretation of federal law raises serious questions about what meaning and scope they intend the Discrimination Conditions to carry.  This lack of clarity compounds Plaintiffs' fear of significant consequences under the FCA, which imposes liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1)(A).  Each violation of the FCA is punishable by mandatory treble damages plus civil penalties. *Id.* § 3729(a); 28 C.F.R. § 85.5(a).  The Discrimination Conditions expressly reference the FCA and purport to achieve an end run around the federal government's "demanding" burden to prove that a representation is "material to the U.S. Government's payment decisions" before these significant penalties will attach. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192, 194 (2016).  Moreover, DOJ has formed a nationwide task force to target grantees that sign these certifications and employ potential FCA liability as a "weapon," and has "strongly encourag[ed]" private parties to bring civil suits against grant recipients. *See* RJN, Ex. J at 1, 2.  Because the Discrimination Conditions' meaning "is left entirely to the imagination," it forces Plaintiffs into the "perhaps impossible position" of having to alter their behavior "or risk making a certification that will be deemed false." *Chi Women in Trades v. Trump*, 25-cv-02005, 2025 WL 933871, at *8 (N.D. Ill. Mar. 27, 2025).

The HUD and Operating Subsidy Immigration Enforcement Conditions, which mirror the language of section 2(a)(ii) of EO 14218, also fail for vagueness.  The conditions fail to define the terms "facilitates," "subsidization," or "promotion" with respect to "illegal immigration," leaving recipients without fair notice of what activities HUD will deem to have the effect of "facilitat[ing] the subsidization or promotion of illegal immigration" or "abet[ting] policies that seek to shield illegal aliens from deportation."

RENNE PUBLIC LAW GROUP
Attorneys at Law

The Gender Ideology Condition similarly fails to clarify what it means to "promote gender ideology." Setting aside the idiosyncratic and unscientific definition of "gender ideology" in EO 14168, it is unclear if referring to a housing applicant or tenant by their pronouns, asking them for their gender identities, or even generally providing housing services to persons who identify as transgender would be deemed to "promote" gender ideology and run afoul of this condition.

Finally, as to the Abortion Condition, it is not clear what constitutes elective abortion even with reference to the Hyde Amendment because EO 14182 suggests the Hyde Amendment prohibits elective abortion in all cases when in fact its prohibition expressly excludes cases of rape, incest, and where the life of the mother is at risk. *See* EO 14182, 90 Fed. Reg. 8751 (Jan. 31, 2025). How much risk of harm must a person face from carrying a pregnancy to term in order for that abortion not to be classified as "elective"? Is an abortion "elective" in a person with cardiac disease and a 10% risk of mortality in pregnancy? How about in a person who develops severe antenatal depression or anxiety that threatens their mental health? Or hyperemesis gravidarum (severe morning sickness) that can cause kidney stress, malnutrition, and electrolyte disturbances? Nor is it clear what "promotion" means. For example, the language does not give Plaintiffs notice as to whether housing an individual before or after an elective abortion would violate the condition.

Each of these conditions suffers this same vagueness defect, and gives Defendants free rein to determine what policies and activities related to these topics conflict with President Trump's policy agenda. For these reasons, courts have already concluded these conditions violate the Fifth Amendment's vagueness doctrine. *See, e.g.*, *City of Fresno*, 2025 WL 2469330, at *23–24, 27–34. Plaintiffs are therefore likely to succeed on the merits of this claim.

### c.    The HUD Grant Conditions Violate the Spending Clause

To pass constitutional muster under the spending power, grant conditions must be (1) set forth unambiguously, (2) before a recipient enters into the grant agreement with the federal government, and (3) must be related to the subject matter of the grant program. *See S. Dakota v. Dole*, 483 U.S. 203, 207 (1987). The HUD Grant Conditions fail the first requirement that grant conditions must be clear and unambiguous. "The legitimacy of Congress' power to legislate under the spending power [] rests on whether the State voluntarily and knowingly accepts [Congress' conditions] . . . . There can, of course,

RENNE PUBLIC LAW GROUP
Attorneys at Law

1  be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is

2  expected of it . . . .  Accordingly, if Congress intends to impose a condition on the grant of federal

3  moneys, it must do so *unambiguously*[.]"  *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1,

4  17 (1981) (emphasis added); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296

5  (2006) (determining the ambiguity of conditions on federal grants requires evaluating "whether [a

6  recipient] . . . would clearly understand . . . the obligations of the [conditions]").  The HUD Grant

7  Conditions are anything but clear.  For the same reasons they are unconstitutionally vague (*see*

8  § IV(C)(1)(b) *supra*), they violate the Spending Clause.

9        The HUD Grant Conditions also fail the third principle.  They fail to have any nexus to the

10  federal interest in providing safe and affordable housing to individuals deemed eligible under the

11  Housing and Community Development Act.  Each of the newly imposed conditions—restricting actions

12  deemed to "facilitate illegal immigration," requiring ongoing compliance with unspecified future

13  immigration directives, prohibiting use of funds to "promote gender ideology," and banning activities

14  that "fund or promote elective abortions"—targets subject matter wholly distinct from the administration

15  of housing programs.  These provisions neither ensure the proper use of housing funds nor advance the

16  delivery of housing assistance to eligible participants.  Rather, they impose ideological and policy-based

17  restrictions unrelated to the statutory purpose of ensuring adequate shelter and community development.

18              **2.    The HUD Grant Conditions Violate the APA**

19        The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary" and

20  "capricious," "not in accordance with law," "contrary to constitutional right," "in excess of statutory

21  jurisdiction," or "without observance of procedure required by law." 5 U.S.C. § 706(2).  Defendants'

22  imposition of the unlawful HUD Grant Conditions violates each of these requirements.

23              **a.    Imposing the HUD Grant Conditions Is a Final Agency Action**

24        As a threshold matter, imposing new conditions on recipients is a "final agency action" subject to

25  review under the APA.  *See* 5 U.S.C. § 704.  Final agency actions "mark the consummation of the

26  agency's decisionmaking process" and are those "by which rights or obligations have been determined,

27  or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned

28  up).  Courts have regularly found that "the new funding conditions at issue here are 'final agency actions'

-17-

RENNE PUBLIC LAW GROUP
Attorneys at Law

for purposes of APA review." *King Cnty.*, 785 F. Supp. 3d at 884 n.18; *Rhode Island Coal. Against Domestic Violence v. Bondi*, --- F. Supp. 3d ----, 2025 WL 2271867, at *6 (D.R.I. Aug. 8, 2025) ("the Court sides with courts that have found that agency placement of new conditions on grant funding amounts to final agency action"); *San Francisco Unified Sch. Dist. v. AmeriCorps* ("*SFUSD II*"), --- F.Supp.3d ----, 2025 WL 1713360 (N.D. Cal. June 18, 2025) at *13-15 (AmeriCorps Directive stating that "All aspects of AmeriCorps grants/awards must comply with President Trump's executive orders" was final agency action under the APA); *City of Fresno v. Turner*, 2025 WL 2721390, at *5–6.

Here, Plaintiffs are challenging HUD's imposition of the challenged conditions.  These actions include the April 2025 amendments to the HUD Policy Terms; the July 17, 2025, Notice PIH 2025-22; the May 23, 2025, FY2025 Capital Fund Processing Guidance for PHAs; the CY 2025 Annual Renewal Guidance and the applicable CY 2025 Terms and Conditions for Multifamily Housing Service Coordinators Program grants; and the September 26, 2025, Notice PIH 2025-24.  Each of these modifications to agency guidance satisfies the two criteria for final agency action: that it "marks the consummation of the agency's decisionmaking process," and is either an action "by which rights or obligations have been determined, or from which legal consequences will flow."  *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (cleaned up).

### b. Imposing the HUD Grant Conditions Is Not Committed to Agency Discretion

Review under the APA is not available when the challenged agency action is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Courts "read the § 701(a)(2) exception for action committed to agency discretion quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Dep't of Com.*, 588 U.S. at 772 (cleaned up); *see also Webster v. Doe*, 486 U.S. 592, 592 (1988) (section 701(a)(2) applies only where a "statute is drawn in such broad terms… that a court would have no meaningful standard against which to judge the agency's exercise of discretion").  Only in those "rare instances" in which there is "truly no law to apply" is it appropriate to follow section 701(a)(2).  *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1017 (9th Cir. 2024).

The agency action challenged here is not committed to agency discretion.  The grant programs'

-18-

authorizing statutes include non-exhaustive criteria for grantmaking, which help establish a meaningful standard for judicial review of the HUD Grant Conditions.  For instance, the statute authorizing the Family Self-Sufficiency program contains specific guidelines on the eligibility of participating families and participating entities.  *See* 42 U.S.C. § 1437u(c) ("at least 1 household member seeks to become and remain employed in suitable employment or increase earnings").  In addition, eligible entities must "coordinate appropriate supportive services . . . for each participating family entering into a contract of participation."  *See* 42 U.S.C. § 1437u(d).  Similarly, statues authorizing the Multifamily Services Coordinator program direct HUD to enter contracts with PHAs to "provide congregate services programs . . . to promote and encourage maximum independence within a home environment."  42 U.S.C. § 8011(b).  The statute also requires that the term of the contract "shall be for a term of 5 years and shall be renewable at the expiration of the term," *id.*, and enumerates the type of services that should be provided under this funding, such as performing duties and functions "to enable frail elderly persons . . . to live with dignity and independence," *id.* § 8011(d)(4).  Because the statutes provide a basis for this Court to exercise judicial review, Defendants' actions are not committed to agency discretion by law and thus section 701(a)(2) does not preclude Plaintiffs' APA claim.  *See King Cnty.*, 785 F. Supp. 3d at 884 ("each of these enabling statutes provides substantial guidance as to how the agencies' discretion should be exercised in implementing these programs, and for the Court to evaluate whether that discretion is being exercised in a reasonable manner"); *City of Fresno,* 2025 WL 2721390, at 7–8 (concluding similarly in APA challenge to several federal agency's grant conditions); *SFUSD I*, 784 F. Supp. 3d at 1287–91 (concluding similarly in APA challenge to AmeriCorps grant conditions).

### c.   The HUD Grant Conditions Are Contrary to the Constitution and in Excess of Statutory Jurisdiction

Under the APA, a court may set aside agency action that is "contrary to constitutional right, power, privilege, or immunity" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(B), (C).  As discussed above (*supra* § IV(C)(1)), the HUD Grant Conditions are unconstitutional.  This Court may thus enjoin the imposition of the conditions under § 706(2)(B).  Furthermore, Defendants violate § 706(2)(C) because their promulgation of the HUD Grant

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    Conditions does not derive from the authorizing statutes for these grants[6] or any other statutory authority.

2          Congress has enumerated various certifications and requirements that public housing agencies

3    must adhere to as a condition of receiving funds.  They include that the recipient will comply with

4    statutory transparency requirements, submission of an action plan and calculations for each project, as

5    well as ensure funds are expended consistent with each grant's statutory objectives.  42 U.S.C.

6    § 1437g(e) (Operating Fund funds "operation and management of public housing" i.e. anticrime and

7    antidrug activities, procedures and systems to maintain and ensure efficient management and operation,

8    insurance costs, and energy costs); *id.* § 1437g(d) (Capital Fund funds "capital and management

9    activities" i.e. redesign, construction, and reconfiguration of sites and buildings); *id.* § 8011(d)

10   (Multifamily Services Coordinator funds "employment of one or more individuals" to "assess the service

11   needs of eligible residents," "mobiliz[e] public and private resources" to fund services, "monitor[] and

12   evaluat[e] the impact and effectiveness" of services); *id.* § 1437u (g), (h) ("The purpose of the [FSS]

13   program . . . is to . . . use . . . assistance. . . to enable eligible families to achieve economic independence

14   and self-sufficiency.").  None of these statutes authorizes HUD to condition PIH grant funding on

15   prohibiting all forms of DEI, facilitating enforcement of federal immigration laws, verification of

16   immigration status, or prohibiting "promot[ion]" of "gender ideology" or "elective abortion."

17         Far from barring diversity-related "inclusion," Congress requires consideration of diversity when

18   allocating HUD funds.  For instance, PIH requires recipients to designate housing and other social

19   services resources specifically for residents with disabilities and the elderly.  42 U.S.C. § 8011(a).  One

20   of the purposes of the MFSC program is to fund employment of service coordinators in insured and

21   assisted multifamily housing designed for the elderly and persons with disabilities.  *Id.*  Further, HUD

22   requires PHAs to certify they "will affirmatively further fair housing."  42 U.S.C. § 1437c-1(d)(16).

23         Additionally, the Operating Subsidy and MFSC Immigration Status Conditions and the FSSP EO

24

25   _____
     [6] These programs are codified in title 42 of the U.S. Code and were created (or later reauthorized) by the
     Housing Act of 1937, Pub. L. 75-896, 50 Stat. 888, as amended by the Consolidated Appropriations Act
26   of 2023, Pub. L. 117-328, 136 Stat. 5148; the Cranston Gonzalez National Affordable Housing Act
     of 1990, Pub. L. 101-625, 104 Stat. 4079; Housing and Community Development Act of 1992, Pub. L.
27   102-550, 106 Stat. 367, as amended by section 851 of the American Homeownership and Economic
     Opportunity Act of 2000, Pub. L. 106-569, 114 Stat. 2944; and the Economic Growth, Regulatory Relief,
28   and Consumer Protection Act of  2018, Pub. L. 115-174, 132 Stat. 1296.  *See* 42 U.S.C. §§ 1437g
     (Operating Fund and Capital Fund Programs), 8011 (MFSC), 1437u (Family Self-Sufficiency Program).

RENNE PUBLIC LAW GROUP
Attorneys at Law

-20-

Condition incorporating EO 14218 both conflict with section 214 of the Housing and Community Development Act of 1980—which specifically provides public housing eligibility for mixed-status households, *see* 42 U.S.C. § 1436a(b)(2)—and exceed the authority created by PRWORA, even if these grants are "federal public benefits" under that statute.  PRWORA explicitly does not require states to have an immigration status verification system until twenty-four months after the Attorney General promulgates certain final regulations.  8 U.S.C. § 1642(b).  Those regulations must, among other things, establish procedures by which states and local governments may verify eligibility and procedures for applicants to prove citizenship "in a fair and nondiscriminatory manner."  *Id*. § 1642(b)(ii), (iii).  The Attorney General has issued interim guidance and a proposed verification rule but has not implemented a final rule.  *See* Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 62 Fed. Reg. 61344 (Nov. 17, 1997); Verification of Eligibility for Public Benefits, 63 Fed. Reg. 41662 (Aug. 4, 1998) (proposed rule).  This failure to promulgate a final regulation left in place the DOJ's Interim Guidance, which requires only the examination of identity and immigration documentation.  62 Fed. Reg. 61348–49 (Nov. 17, 1997).  Plaintiffs are therefore not required to verify participants' immigration status using SAVE or an equivalent verification system.  *See* 42 U.S.C. § 1320b-7.

### d.    The HUD Grant Conditions Are Arbitrary and Capricious

Under the APA, agency action must be set aside and held unlawful if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Agency action is arbitrary and capricious if it is not "reasonable and reasonably explained."  *Ohio v. Environmental Protection Agency*, 603 U.S. 279, 292 (2024) (cleaned up).  This includes when:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983).  The court may not "infer an agency's reasoning from mere silence."  *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (cleaned up).

Furthermore, the standard is more exacting when an agency changes positions or "'is not writing on a blank slate.'"  *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1915

Renne Public Law Group
Attorneys at Law

1    (2020) (citation omitted).  "[L]ongstanding policies may have engendered serious reliance interests that

2    must be taken into account."  *Id*. at 1915 (cleaned up).  Accordingly, when changing its position, an

3    agency must "assess whether there were reliance interests, determine whether they were significant, and

4    weigh any such interests against competing policy concerns."  *Id*.  It is "arbitrary and capricious to ignore

5    such matters."  *Id*.  Defendants have failed to meet these basic requirements for lawful agency action.

6          Here, grant recipients have not previously been subject to conditions prohibiting the promotion of

7    DEI, gender ideology, and elective abortion or requiring cooperation with federal immigration

8    enforcement until now.  The fact that some conditions and EOs include language such as ". . . in

9    accordance with all applicable immigration restrictions and requirements," ". . . any applicable

10   requirements . . . to comply with PRWORA, E.O. 14218, or other Executive Orders or immigration

11   laws," "[u]nless excepted by PRWORA," ". . . [DEI programs] that violate any applicable Federal anti-

12   discrimination laws," or "unqualified aliens" does not transform them into pre-existing conditions to

13   comply with federal law.  *See San Francisco*, 897 F.3d at 1238–40 (upholding the lower court's holding

14   that the phrase "consistent with law" did not save certain Executive Orders).  These references signal

15   new policies that are framed as being legally compliant—even though they change how the law is

16   interpreted and applied.  The HUD Grant Conditions clearly reflect changes in agency position that

17   require not only an explanation of reasoning but also consideration of reliance interests among other

18   important factors.  *See Regents*, 140 S. Ct. at 1915.  Despite this change in agency policy, there is no

19   indication that Defendants either followed required notice-and-comment procedures, considered reliance

20   interests, or supplied a reasoned, non-arbitrary basis for the HUD Grant Conditions.  *See King Cnty.*, 785

21   F. Supp. 3d at 888 (concluding "that Defendants have failed to demonstrate that the new funding

22   conditions were the result of 'reasoned decisionmaking,' let alone have been 'reasonably explained'").

23         HUD Secretary Turner stated in a letter to grantees and stakeholders that the President ordered the

24   changes, describing the Secretary's "responsibility to effectively implement" EO 14173 and promising

25   senior leadership review to "ensure that HUD programs are compliant" with that order.  *See* HUD, Ltr. to

26   Grantees and Stakeholders (Apr. 4, 2025), https://www.hud.gov/sites/dfiles/PA/documents/2025-04-04-

27   HUD-Grantee-and-Stakeholder-Letter.pdf.  However, "an executive order is not 'law,'" *California v.*

28   *Env't Prot. Agency*, 72 F.4th 308, 318 (D.C. Cir. 2023), and such an order does not exempt an agency

1  from the APA's requirements of "reasoning, deliberation, and process," nor permit "flip-flop[s]" "on the

2  whims of each new administration." *California v. Bernhardt*, 472 F. Supp. 3d 573, 600–01 (N.D. Cal.

3  2020).  Invoking a presidential directive does not relieve an agency of its duty to grapple with "important

4  aspect[s] of the problem," *State Farm*, 463 U.S. at 43, including defining critical terms, assessing

5  statutory authority, addressing programmatic impacts, and considering reliance interests.

6      Plaintiffs are unaware of any indication HUD engaged in the contemporaneous, evidence-based

7  reasoning the APA demands.  *See State Farm*, 463 U.S. at 43; *Dep't of Com.*, 588 U.S. at 785 (reasoned

8  decisionmaking ensures agencies provide genuine justifications subject to public scrutiny and prevents

9  judicial review from becoming an "empty ritual").  Instead, HUD has only provided bare assertions of

10  presidential direction or political preference, untethered to statutory authority or the agencies' missions.

11      **D.**    **Plaintiffs Will Suffer Irreparable Harm If the Conditions Are Not Enjoined**

12      Plaintiffs are being compelled to agree to vague, ambiguous, and unlawful conditions at the risk

13  of incurring financial penalties and legal liability, or giving up funds already awarded and, in many cases,

14  accounted for in budget and project planning.  Courts have recognized that this injury of acute budgetary

15  uncertainty is irreparable.  *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal.

16  2017).  Loss of the funds at issue would result in immediate, irreparable, and reverberating harms to

17  Plaintiffs—including upending their budgets and forcing them to reduce services and resources critical to

18  providing safe, decent, habitable, affordable public housing.  Furthermore, Plaintiffs face imminent

19  deadlines of October 21 and 29 requiring them to either accept the unlawful HUD Grant Conditions or

20  forgo millions of dollars in federal funding, thereby necessitating immediate injunctive relief.  These

21  harms are "quintessentially" irreparable.  *See Martin Luther King, Jr. Cnty.*, 2025 WL 2322763, at *16.

22      Plaintiffs' loss of funding would cause deterioration of habitable public housing and program

23  infrastructure, leading Plaintiffs' vulnerable communities to inevitably suffer a shortage of public

24  housing and increase in homelessness.  For instance, the loss of the Operating Subsidy would delay

25  critical repairs and maintenance to housing units and buildings.  Adams Decl. ¶ 11; Salas Decl. ¶ 6.

26  Deferred maintenance quickly snowballs into more expensive repairs such as broken elevators, leaking

27  roofs, mold, infestation, faulty plumbing, or faulty heating, ventilation, and air-conditioning systems.

28  Salas Decl. ¶ 6.  In addition, the loss of the Operating Subsidy would lead to staffing reductions resulting

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLAINTIFFS' MPA ISO REPLY MOTION ISO TRO AND OSC FOR A PRELIM INJUNCTION - Case No. 4:25-cv-08859-KAW

in security issues, work order backlogs, delays in the housing application process, and reduction in resident services, including case management. Adams Decl. ¶ 11; Salas Decl. ¶ 6; Abraham Decl. ¶¶ 12-13. The loss of Capital Fund grants would also cause property deterioration over time, leading to more expensive future repairs. Adams Decl. ¶ 11; Salas Dec. ¶ 7. Plaintiffs would have to delay or cancel unit modernization and rehabilitation projects, including elevator upgrades, plumbing repairs, accessibility improvements, and roof replacements. Salas Decl. ¶ 7. Ongoing and future construction projects across Plaintiffs' jurisdictions would be cancelled or suspended due to lack of funding. Likewise, the loss of Family Self-Sufficiency or Resident Services funding would deprive families served by all Plaintiffs of essential supports such as childcare, transportation assistance, vocational training, and job-search resources designed to promote economic self-sufficiency. For example, LACDA would have to reduce its number of program coordinators who assist families in setting goals, tracking progress, and providing essential resources. Salas Decl. ¶ 9. Families would lose access to resources, such as childcare, transportation assistance, vocational training, and job search support, which are designed to help them overcome barriers to economic security. Salas Decl. ¶ 9. This would negatively impact 322 families who receive services funded by the program. Plaintiff Home Forward may lose $448,831 in Multifamily Services Coordinator funding, which has already been nearly expended. Davie Decl. ¶ 13. The same pattern of harm would occur across all Plaintiffs, each of whom relies on these funds to provide comparable programs and services.

### E. The Balance of Equities Weighs in Plaintiffs' Favor, and a Preliminary Injunction Is in the Public Interest

The equities and public interest, which merge when the government is a party, tip sharply in Plaintiffs' favor. *Wolford v. Lopez*, 116 F.4th 959, 976 (9th Cir. 2024). Plaintiffs face immediate and irreparable harm from the enforcement of grant conditions that threaten vital funding for public programs and services. By contrast, the federal government's interest in imposing these new conditions before the legality of its actions has been adjudicated is minimal. Preserving Plaintiffs' constitutional rights, and preventing the government from enforcing potentially unlawful conditions, clearly serves the public interest. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (cleaned up).

RENNE PUBLIC LAW GROUP
Attorneys at Law

Whatever interest the Executive may have in introducing new grant conditions at this stage of the grant cycle, and in enforcing them during the pendency of this litigation, that interest pales in comparison to the constitutional and programmatic harms Plaintiffs will suffer if forced to either sign assurances to comply with vague and likely unlawful conditions or forgo federal funding for essential services.  As the Ninth Circuit has recognized, "[b]y establishing a likelihood that [the government's] policy violates the U.S. Constitution," Plaintiffs have also "established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).  Accordingly, the balance of equities and the public interest decisively support interim relief here.

## F.    Plaintiffs Request No Bond or a Nominal Bond

The public interest favors an order enjoining Defendants from imposing its new unlawful grant conditions without undermining the protections of such an order with a bond or stay.  *See King Cnty.*, 785 F. Supp. 3d 863 at 893 (denying federal defendants' request for bond); *SFUSD II*, 2025 WL 1713360, at *26 (same); *California v. United States Dep't of Transportation*, --- F.Supp.3d ----, 2025 WL 1711531 at *4 (D.R.I. June 19, 2025) (same).  It is within the district court's "wide discretion" to waive the bond requirement "if there is no evidence the party will suffer damages from the injunction," *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (citations omitted), or if "there is a high probability of success that equity compels waiving the bond, the balance of the equities overwhelmingly favors the movant . . . or the requirement of a bond would negatively impact the movant's constitutional rights," *Gilmore v. Wells Fargo Bank, N.A.*, No. C 14-2389 CW, 2014 WL 3749984, at *6 (N.D. Cal. July 29, 2014).  Alternatively, if the Court decides a bond is needed, Plaintiffs request a nominal bond to reflect the resulting hardship of losing access to the very funds Plaintiffs seek to protect.  *See City of Fresno*, 2025 WL 2721390, at *20.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a temporary restraining order enjoining Defendants from imposing or enforcing the HUD Grant Conditions or any materially similar terms or conditions to any federal funds received by or awarded to Plaintiffs, directly or indirectly.  Immediate relief is necessary to preserve the status quo, prevent irreparable harm to Plaintiffs and their residents, and uphold the constitutional and statutory limits on executive authority.

-25-

Dated:  October 16, 2025

RENNE PUBLIC LAW GROUP


By:  _____*/s/ Jonathan V. Holtzman*_____
         JONATHAN V. HOLTZMAN

Attorney for Plaintiffs
HOUSING AUTHORITY OF THE COUNTY
OF SAN DIEGO; HOME FORWARD
DEVELOPMENT ENTERPRISES
CORPORATION; HOUSING AUTHORITY OF
CITY OF LOS ANGELES; LOS ANGELES
COUNTY DEVELOPMENT AUTHORITY;
SALEM HOUSING AUTHORITY; HOUSING
AUTHORITY OF BALTIMORE CITY; SAN
DIEGO HOUSING COMMISSION

Dated:  October 16, 2025

SAN FRANCISCO CITY ATTORNEY'S
OFFICE


By:  _____*/s/ David Chiu*_____
         DAVID CHIU

Attorney for Plaintiff
HOUSING AUTHORITY OF THE CITY AND
COUNTY OF SAN FRANCISCO

RENNE PUBLIC LAW GROUP
Attorneys at Law

**ECF ATTESTATION**

I, JONATHAN V. HOLTZMAN, am the ECF user whose identification and password are being used to file PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.


Dated:  October 16, 2025                                    RENNE PUBLIC LAW GROUP


                                                           By:  _____*/s/ Jonathan V. Holtzman*_____
                                                                JONATHAN V. HOLTZMAN