1   JONATHAN V. HOLTZMAN (SBN 99795)
    jholtzman@publiclawgroup.com
2   JAMES R. ROSS (SBN 149199)
    jross@publiclawgroup.com
3   RYAN P. McGINLEY-STEMPEL (SBN 296182)
    rmcginleystempel@publiclawgroup.com
4   JAKE D. FREITAS (SBN 341837)
    jfreitas@publiclawgroup.com
5   MARIBEL LOPEZ (SBN 340907)
    mlopez@publiclawgroup.com
6   TAYLOR EVANS (SBN 355492)
    tevans@publiclawgroup.com
7   RENNE PUBLIC LAW GROUP
    350 Sansome Street, Suite 300
8   San Francisco, California 94104
    Telephone: (415) 848-7200
9   Facsimile:  (415) 848-7230

10  *Attorneys for Plaintiffs*
    HOUSING AUTHORITY OF THE COUNTY OF
11  SAN DIEGO; HOME FORWARD; HOUSING
    AUTHORITY OF THE CITY OF LOS
12  ANGELES; LOS ANGELES COUNTY
    DEVELOPMENT AUTHORITY; HOUSING
13  AUTHORITY OF THE CITY OF SALEM;
    HOUSING AUTHORITY OF BALTIMORE
14  CITY; SAN DIEGO HOUSING COMMISSION

15  JUHI S. AGGARWAL (OSB No. 130764)*
    juhi.aggarwal@homeforward.org
16  HOME FORWARD
    135 SW Ash Street
17  Portland, OR 97204
    Telephone:  503-545-5090

18
    *Attorney for Plaintiff*
19  HOME FORWARD
    **Application for admission pro hac vice*
20  *forthcoming*

21

22

23

24

25

26

27

28

DAVID CHIU (SBN 189542)
City Attorney
YVONNE R. MERÉ (SBN 175394)
Chief Deputy City Attorney
MOLLIE M. LEE (SBN 251404)
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
RONALD H. LEE (SBN 238720)
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
Telephone: (415) 554-3935
Facsimile:  (415) 437-4644
ronald.lee@sfcityatty.org

*Attorneys for Plaintiff*
HOUSING AUTHORITY OF THE CITY AND
COUNTY OF SAN FRANCISCO

DANIEL B. ATCHISON (OSB No. 040424)*
datchison@cityofsalem.net
THOMAS V. CUPANI (OSB No. 924654)*
tcupani@cityofsalem.net
City of Salem, Legal Department
PO Box 14300
Salem, Oregon 97309-3986
Telephone: (503) 588-6003
Facsimile:  (503) 361-2202

*Attorneys for Plaintiff*
HOUSING AUTHORITY OF THE CITY OF
SALEM
**Application for admission pro hac vice*
*forthcoming*

MICHAEL BUENNAGEL (SBN 259000)
MBuennagel@counsel.lacounty.gov
THOMAS FAUGHAN (SBN 155238)
tfaughnan@counsel.lacounty.gov
BEHNAZ TASHAKORIAN (SBN 213311)*
Btashakorian@counsel.lacounty.gov
Office of the County Counsel
County of Los Angeles
Kenneth Hahn Hall of Administration
500 West Temple Street #648
Los Angeles, CA 90012
Telephone:  (213) 974-1811
**Application for Northern District Admission*
*forthcoming*

*Attorneys for Plaintiff*
LOS ANGELES COUNTY DEVELOPMENT
AUTHORITY

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

HOUSING AUTHORITY OF THE COUNTY OF
SAN DIEGO; HOME FORWARD; HOUSING
AUTHORITY OF THE CITY OF LOS
ANGELES; LOS ANGELES COUNTY
DEVELOPMENT AUTHORITY; HOUSING
AUTHORITY OF THE CITY OF SALEM;
HOUSING AUTHORITY OF THE CITY AND
COUNTY OF SAN FRANCISCO; HOUSING
AUTHORITY OF BALTIMORE CITY; SAN
DIEGO HOUSING COMMISSION,

      Plaintiff,

v.

SCOTT TURNER in his official capacity as
Secretary of the U.S. Department of Housing and
Urban Development; the U.S. DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT,

      Defendants.

Case No. 4:25-cv-08859-KAW

**DECLARATION OF NICOLE UTZ IN
SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER OR, IN THE
ALTERNATIVE, PRELIMINARY
INJUNCTION**

I, Nicole Utz, declare as follows:

1.  I am over 18 years of age. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would competently testify thereto.

2.  I am the Director of Housing for the Housing Authority of the City of Salem ("Housing Authority"), Oregon (Housing Authority), and have served in this position since February 2019. I have been employed with the Housing Authority since 2004. As Director of Housing, I oversee all operational and administrative aspects of the agency, including finance, compliance, information technology, property management, the Housing Choice Voucher Program, the Family Self Sufficiency Program, and resident services.

3.  The Housing Authority owns and/ or manages approximately 789 units of single-family and multifamily housing serving individuals with disabilities, families, and elderly residents. These units are located throughout the City of Salem and surrounding areas. The Housing Authority also administers multiple U.S. Department of Housing and Urban Development (HUD)-funded rental assistance and supportive service programs that serve low-income households throughout Marion and Polk Counties.

- Public Housing – 137 units (Families)
- Southview Terrace – 60 units (Seniors)
- Englewood West – 54 units (Seniors)
- Englewood East – 50 units (Seniors)
- Robert Lindsey Tower (RAD) – 62 units (Seniors)
- Parkway East / West – 124 units (Families)
- Southfair – 42 units (Families and Individuals with disabilities)
- Brush College, Meadowlark, Livingston and Northgate (RAD) – 108 units (Families)
- Redwood Crossings – 37 units (Individuals with disabilities/ Homeless)
- Yaquina Hall – 52 units (Individuals with disabilities/ Homeless)
- Sequoia Crossings – 60 units (Individuals with disabilities/ Homeless)
- Conventional Homes – 3 units (Families)

4.  This portfolio represents the full scope of the Housing Authority's affordable housing assets and demonstrates a mix of federal, state, and local investments that collectively ensure long-term

-3-

RENNE PUBLIC LAW GROUP
Attorneys at Law

housing stability for around 1,500 of Salem's residents. The properties are supported through Public Housing Operating Funds, Capital Fund grants, Rental Assistance Demonstration (RAD) subsidies, and Project-Based Voucher (PBV) contracts.

5.     These assets are integrated within neighborhoods across Salem to promote economic diversity, access to employment, education, transportation, and supportive services. The Housing Authority's approach to asset management emphasizes preservation, modernization, and service coordination to ensure housing remains affordable, safe, and sustainable for future generations.

6.     The Housing Authority continues to evaluate and implement strategies to preserve and expand its affordable housing portfolio. This section is intended to capture both existing federal allocations and anticipated future funding methods, including repositioning under Section 18 and RAD, as well as opportunities through state and local partnerships.

7.     The Housing Authority administers the following HUD-funded programs, all of which are critical to meeting the housing needs of low-income and vulnerable residents:

- Housing Choice Voucher (HCV) Program
- Family Self Sufficiency (FSS) Program
- Emergency Housing Vouchers (EHV)
- Foster Youth to Independence (FYI) Vouchers
- Family Unification Program (FUP) Vouchers
- Veterans Affairs Supportive Housing (VASH) Vouchers
- Domestic Violence (DV) Vouchers
- Tenant Protection Vouchers (TPV)
- Mainstream Vouchers
- Public Housing Operating Subsidy
- Public Housing Capital Fund Program
- Multifamily Service Coordinator (MFSC) Grant

8.     Each of these programs provides essential rental assistance and services to specific populations. The Housing Authority relies on annual federal allocations from HUD to operate these programs. If the Housing Authority does not receive its anticipated HUD allocations, these programs

-4-

would be immediately and severely impacted. The approximate funding amounts expected or received last year for each program are as follows

- Housing Choice Voucher (HCV): Current annual funding $35,411,483 and projected renewal funding over $36,000,000. A true and correct copy of Housing Choice attached hereto as **Exhibit H.** A true and correct copy of Housing Choice Voucher Program (HCVP) HAP Disbursement – October 2025 (Sept 17, 2025) attached hereto as **Exhibit L.**

- Voucher (HCV) Program Disbursement Schedule – Memo 25-287 (Sept 30, 2025)

- Family Self Sufficiency (FSS): Current annual funding $441,144 and projected renewal funding $347,607. A true and correct copy of Notice PIH 2025-24 FY 2025 Family Self-Sufficiency Grant Program Notification and Application Process attached hereto as **Exhibit E.**

- Emergency Housing Vouchers (EHV): Current annual funding $449,432 and projected renewal funding around $80,000 due to transition to Housing Choice Voucher Program. (included in the HCV increase amount) A true and correct copy of Emergency Housing Voucher Disbursement Schedule – Memo 25-238 (Sept 3, 2025) attached hereto as **Exhibit F.** A true and correct copy of Emergency Housing Voucher Disbursement Schedule – Memo 25-289 (Sept 30, 2025) attached hereto as **Exhibit G.**

- Foster Youth to Independence (FYI): Current annual funding $68,883 and anticipate a need to request additional vouchers in the upcoming year. A true and correct copy of Foster Youth to Independence (FYI) Obligation of Assistance Letter (Jan 10, 2025) attached hereto as **Exhibit I.**

- Family Unification Program (FUP): Included in HCV amount

- Veterans Affairs Supportive Housing (VASH): included in HCV amount. A true and correct copy of HUD-VASH Award Notice FY 2024 Allocation (March 3, 2025) attached hereto as **Exhibit J.**

- Domestic Violence (DV): Included in HCV amount

UTZ DECLARATION ISO TRO & OSC – Case No. 4:25-CV-08859-KAW

Renne Public Law Group
Attorneys at Law

- Tenant Protection Vouchers (TPV): Current annual funding $275,474 and we will be requesting 137 additional vouchers due to the repositioning of the public housing units. This amount includes funding for 28 units it will grow to 170 units. Estimated amount $1,672,520.

- Mainstream Vouchers: Current annual funding $1,685,057 and anticipate a modest increase over the coming year. A true and correct copy of Mainstream Voucher (MS) HAP Disbursement – October 2025 (Sept 16, 2025) attached hereto as **Exhibit K.**

- Public Housing Operating Subsidy: Current annual funding $252,264 and anticipate a similar funding level for the upcoming year. A true and correct copy of the Form HUD-52723 Certifications – Public Housing Operating Fund Grant FY 2026 is attached hereto as **Exhibit A**. A true and correct copy of Notice PIH 2025-22 – Operating Subsidy Processing CY 2026 is attached hereto as **Exhibit B.**

- Public Housing Capital Fund Program: Current annual funding is $595,467 and anticipated to remain flat in the upcoming year.

- Multifamily Service Coordinator (MFSC) Grant: Current annual funding $39,799 and anticipate this funding to increase to $44,388 in the upcoming year. This grant funds resident services at one of our senior sites. A true and correct copy of the MFSC Notice of Award is attached hereto as **Exhibit D**.

9.    The Housing Authority's funding and operations are time sensitive. We recently became aware of amended terms and conditions applicable to Operation Subsidy Funds, Capital Funds, Family Self-Sufficiency grants, and Multifamily Services Coordinator grants. In addition, I have included a non-exhaustive list of other HUD grants we rely on as we continue to review whether new terms and conditions attach to those as well. Failure to receive the above HUD funding by the specified deadlines would result in severe and immediate harm, including but not limited to:

- Reduction or layoff of program and administrative staff;

- Inability to operate and manage public housing developments;

- Loss of maintenance capacity resulting in safety and habitability concerns;

UTZ DECLARATION ISO TRO & OSC – Case No. 4:25-CV-08859-KAW

- Termination of contracted security services that provide coverage from 6:00 PM to 6:00 AM at public housing properties;
- Loss of rental assistance to hundreds of low-income families, seniors, and individuals with disabilities;
- Breach of rental agreements due to loss of subsidy payments;
- Suspension of capital improvement projects and building rehabilitation activities;
- Cancellation of ongoing repositioning efforts under HUD's Section 18 and RAD programs.

10.     The loss or delay of HUD funding would jeopardize the Housing Authority's ability to meet its obligations to residents and partners and would create immediate housing instability for hundreds of households who rely on these programs for safe and affordable housing.

11.     The Housing Authority intends to include relevant documentation and correspondence as attachments to this declaration. These may include official HUD communications, funding notices, program budgets, or other records that demonstrate the scope and impact of HUD program funding administered by the Housing Authority.

## LIST OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| Exhibit A | Form HUD-52723 Certifications – Public Housing Operating Fund Grant FY 2026 |
| Exhibit B | Notice PIH 2025-22 – Operating Subsidy Processing CY 2026 |
| Exhibit C | HUD-50077-CRT-SM Certifications of Compliance with PHA Plan and Civil Rights Requirements |
| Exhibit D | Notice of Award – Multifamily Service Coordinator (MFSC) Grant 2025 (Post-Acceptance) and D.1 Grant Notice of Award. |
| Exhibit E | Notice PIH 2025-24 FY 2025 Family Self-Sufficiency Grant Program Notification and Application Process |

UTZ DECLARATION ISO TRO & OSC – Case No. 4:25-CV-08859-KAW

RENNE PUBLIC LAW GROUP
Attorneys at Law

| Exhibit | Description |
|---------|-------------|
| Exhibit F | Emergency Housing Voucher Disbursement Schedule – Memo 25-238 (Sept 3, 2025) |
| Exhibit G | Emergency Housing Voucher Disbursement Schedule – Memo 25-289 (Sept 30, 2025) |
| Exhibit H | Housing Choice Voucher (HCV) Program Disbursement Schedule – Memo 25-287 (Sept 30, 2025) |
| Exhibit I | Foster Youth to Independence (FYI) Obligation of Assistance Letter (Jan 10, 2025) |
| Exhibit J | HUD-VASH Award Notice FY 2024 Allocation (March 3, 2025) |
| Exhibit K | Mainstream Voucher (MS) HAP Disbursement – October 2025 (Sept 16, 2025) |
| Exhibit L | Housing Choice Voucher Program (HCVP) HAP Disbursement – October 2025 (Sept 17, 2025) |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 16, 2025, at Salem, Oregon.

Signed by:

*Nicole Utz*

7C0DDFC3E4DE4C0...

Nicole Utz
Director of Housing
Housing Authority of the City of Salem, Oregon (OR011)

UTZ DECLARATION ISO TRO & OSC – Case No. 4:25-CV-08859-KAW



# EXHIBIT A

| **Operating Fund Grant:** | **U.S. Department of Housing and Urban Development** |
|---|---|
| **Calculation of Total Program Expense Level** | Office of Public and Indian Housing |
| PHA-Owned Rental Housing | |
| As of 10/09/2025 11:31AM - Form ID: 40473 - Status: Created | OMB Approval No. 2577-0029 (exp.1/31/2027) |

Public Reporting Burden for this collection of information is estimated to average .75 hours per response, including the time for reviewing instructions, searching existing data sources, gathering, and maintaining the data needed, and completing and reviewing the collection of information. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. This information is required by Section 9(e) of the U.S. Housing Act of 1937, as amended, and by 24 CFR Part 990 HUD regulations. HUD makes payments for the operation and maintenance of low-income housing projects to PHAs/projects. The Operating Fund determines the amount of Operating Fund grant to be paid to PHAs/projects. PHAs/projects provide information on the Project Expense Level (PEL), Utilities Expense Level (UEL), Other Formula Expenses (Add-ons) and Formula Income – the major Operating Fund components. HUD reviews the information to determine each PHA's/project's Formula Amount and the funds to be obligated for the Funding Period to each PHA/project based on the appropriation by Congress. HUD also uses the information as the basis for requesting annual appropriations from Congress. Responses to the collection of information are required to obtain a benefit. The information requested does not lend itself to confidentiality.

**Total number of ACC units for this PHA: 137**

| **Section 1** | |
|---|---|
| **1. Name and Address of Public Housing Agency:** | **2. Funding Period:** 1/1/2026 to 12/31/2026 |
| Housing Authority of the City of Salem 360 Church Street SE Salem OR 97301 | **3. Type of Submission:** Initial Submission |

| **4. ACC Number:** | **5. Fiscal Year End:** 09-30-2026 | **6. Operating Fund Project Number:** |
|---|---|---|
| **SF-15** | ☐ 12/31  ☐ 3/31  ☐ 6/30  ☑ 9/30 | O  R  0  1  1  2  0  3  1  0  0 |

| **7. UEI:** | **HUD Use Only** | |
|---|---|---|
| **DDW3C3XPEPU8** | **8. ROFO Code:** 1016 | **9. HUD Staff:** |

| **Section 2** | | | |
|---|---|---|---|
| Line No. | **Category** | **Column A Unit Months** | **Column B Eligible Unit Months (EUMs)** | **Column C Resident Participation Unit Months** |

| Line No. | Category | Column A Unit Months | Column B Eligible Unit Months (EUMs) | Column C Resident Participation Unit Months |
|---|---|---|---|---|
| **Categorization of Unit Months:** | | ☑ First of Month  ☐ Last of Month | | |
| **Occupied Unit Months** | | | | |
| 01 | Occupied dwelling units - by public housing eligible family under lease | 0 | 0 | 0 |
| 02 | Occupied dwelling units - by PHA employee, police officer, or other security personnel who is not otherwise eligible for public housing | 0 | | 0 |
| 03 | Occupied new units - eligible to receive Operating Funds during the funding period but not included on Lines 01, 02, or 05-13 of this section | 0 | 0 | 0 |
| 04 | Occupied new units - eligible to receive funds from 10/1 to 12/31 of previous funding period but not included on previous Calculation of Operating Fund Grant | 0 | 0 | 0 |
| **Vacant Unit Months** | | | | |
| 05 | Units undergoing modernization | 0 | 0 | |
| 06 | Special use units | 0 | 0 | |

Form 52723 Certifications

| | | | |
|---|---|---|---|
| 06a | Units on Line 02 that are occupied by police officers and that also qualify as special use units | | 0 | |
| 07 | Units vacant due to litigation | 0 | 0 | |
| 08 | Units vacant due to disasters | 0 | 0 | |
| 09 | Units vacant due to casualty losses | 0 | 0 | |
| 10 | Units vacant due to changing market conditions | 0 | 0 | |
| 11 | Units vacant and not categorized above | 0 | | |
| **Other ACC Unit Months** | | | | |
| 12 | Units eligible for asset repositioning fee and still on ACC (occupied or vacant) | 0 | | |
| 13 | All other ACC units not categorized above | 0 | | |

Form HUD-52723

Form 52723 Certifications

| | | Operating Fund Project Number: OR011203100 |
|---|---|---|
| **Calculations Based on Unit Months:** | | |
| 14 | Limited vacancies | | 0 | |
| 15 | **Total Unit Months** | 0 | 0 | 0 |
| 16 | Units eligible for funding for resident participation activities (Line 15C ÷ 12) | | | 0 |
| | | | | |
| **Special Provision for Calculation of Utilities Expense Level:** | | |
| 17 | Unit months for which actual consumption is included on Line 01 of form HUD-52722 and that were removed from Lines 01 through 11, above, because of removal from inventory, including eligibility for the asset repositioning fee | | 0 | |

<strong>Section 3</strong>

| Line No. | Description | Requested by PHA | HUD Modifications |
|---|---|---|---|
| **Part A. Formula Expenses** | | | |
| **Project Expense Level (PEL)** | | | |
| 01 | PUM project expense level (PEL) | $604.38 | |
| 02 | Inflation factor | 1.0320 | |
| 03 | PUM inflated PEL (Part A, Line 01 **x** Line 02) | $623.72 | |
| 04 | PEL (Part A, Line 03 **x** Section 2, Line 15, Column B) | $0 | |
| **Utilities Expense Level (UEL)** | | | |
| 05 | PUM utilities expense level (UEL) (from Line 26 of form HUD-52722) | $.00 | |
| 06 | UEL (Part A, Line 05 **x** Section 2, Line 15, Column B) | | |
| **Add-Ons** | | | |
| 07 | Self-sufficiency | | |
| 08 | Add-on-subsidy (AOS) incentive energy performance contract (EPC) | | |
| 09 | Payment in lieu of taxes (PILOT) | $51,073 | |
| 10 | Cost of independent audit | $0 | |
| 11 | Funding for resident participation activities | $0 | |
| 12 | Asset management fee | | |
| 13 | Information technology fee | $0 | |
| 14 | Asset repositioning fee | | |
| 15 | Costs attributable to changes in federal law, regulation, or economy | | |
| 16 | **Total Add-Ons** (Sum of Part A, Lines 07 through 15) | **$51,073** | |
| 17 | **Total Formula Expenses** (Part A, Line 04 **+** Line 06 **+** Line 16) | **$51,073** | |
| **Part B. Formula Income** | | | |
| 01 | PUM formula income | $639.82 | |
| 02 | Resident paid utility (RPU) incentive energy performance contract (EPC) | | |
| 03 | PUM adjusted formula income (Sum of Part B, Lines 01 and 02) | $639.82 | |
| 04 | **Total Formula Income** (Part B, Line 03 **x** Section 2, Line 15, Column B) | $0 | |
| **Part C. Other Formula Provisions** | | | |
| 01 | Moving-to-Work (MTW) | | |
| 02 | Transition funding | $0 | |
| 03 | Other | | |
| 04 | **Total Other Formula Provisions** (Sum of Part C, Lines 01 through 03) | **$0** | |
| **Part D. Calculation of Formula Amount** | | | |
| 01 | Formula calculation (Part A, Line 17 **-** Part B, Line 04 **+** Part C, Line 04) | $51,073 | |
| 02 | Cost of independent audit (same as Part A, Line 10) | $0 | |
| 03 | Formula amount (greater of Part D, Lines 01 or 02) | **$51,073** | |

Form 52723 Certifications

| **Part E. Calculation of Operating Fund Grant (HUD Use Only)** | | | |
|---|---|---|---|
| 01 | Formula amount (same as Part D, Line 03) | | |
| 02 | Adjustment due to availability of funds | | |
| 03 | HUD discretionary adjustments | | |
| 04 | Funds Obligated for Period (Part E, Line 01 – Line 02 – Line 03)<br>Appropriation symbol(s): | | |

Form HUD-52723

Form 52723 Certifications

| | |
|---|---|
| | **Operating Fund Project Number:** |
| | **OR011203100** |
| **Section 4 - Comments** | |

| Section 5 |
|---|

**Certifications:**

☐  In accordance with 24 CFR 990.215, I hereby certify that  Housing Authority of the City of Salem   Housing Agency is in compliance with the annual income reexamination requirements and that rents and utility allowance calculations have been or will be adjusted in accordance with current HUD requirements and regulations.

☐  In accordance with § 213 of Title II of Division L of the Consolidated Appropriations Act, 2023, Pub. L. 117-328 (approved December 29, 2022) and subsequent acts containing the same provisions, I hereby certify that  Housing Authority of the City of Salem   Housing Agency

has 400 or fewer units and is implementing asset management.

☐   In accordance with 24 CFR 990.255 through 990.290 – Compliance of Asset Management Requirements, I hereby certify that  _Housing Authority of the City of Salem_  Housing Agency has 250 units or more and is in compliance with asset management. I understand in accordance with 24 CFR 990.190(f), PHAs that are not in compliance with asset management will forfeit the asset management fee.

☐   I hereby certify the information stated herein, as well as any information provided in the accompaniment herewith, is true and accurate. Warning: Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement up to 5 years, fines, and civil and administrative penalties (18 U.S.C. §§ 287, 1001, 1010, 1012; 31 U.S.C. §§ 3729, 3802).

Form HUD-52723



EXHIBIT B



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-5000

ASSISTANT SECRETARY FOR
PUBLIC AND INDIAN HOUSING

---

**Special Attention of:**
Public Housing Agencies,
Public Housing Directors,
Regional Public Housing Directors,
Field Office Directors, and
Resident Management Corporations

**Notice PIH 2025-22**

**Issued:** July 17, 2025

**Expires:** This notice remains in effect until amended, superseded, or rescinded.

**Cross References**
PIH Notices: 2007-16, 2011-65, 2011-69, 2014-24, 2018-16, 2018-19, 2020-03, 2020-05, 2021-30, 2021-37, 2022-20, 2022-32, 2022-36, 2023-17, 2023-25, 2024-03, 2024-31

Regulations: 24 CFR part 905, 24 CFR 905.300, 24 CFR part 903, 24 CFR part 990, 24 CFR part 970, 24 CFR part 965, 24 CFR part 964, 24 CFR 5.110, 2 CFR 200.333(b)

Statutes: 44 U.S.C. 3520, 42 U.S.C. 4332(2)(C), 42 U.S.C. 1437 et seq., Public Law 110-161, Section 209 of Public Law 115-174

Academic: Harvard Cost Study (2003)

---

**Subject: Public Housing Operating Subsidy Grant Eligibility Calculations and Processing for Calendar Year 2026**

Table of Contents

1. PURPOSE .................................................................................................................. 2
2. BACKGROUND ........................................................................................................ 2
3. SUMMARY OF CHANGES AND ADDITIONS ................................................... 3
4. COMMUNICATIONS AND TIMELY SUBMISSION REQUIREMENTS............................ 3
5. APPLICABILITY...................................................................................................... 3
6. ELIGIBLE USES OF THE OPERATING FUND ................................................. 4
7. FLEXIBILITY FOR OPERATING AND CAPITAL FUNDS ................................ 5
8. HUD'S INITIAL AND CALENDAR YEAR (CY) OBLIGATIONS FOR CY 2026.............. 6
9. OPERATING SUBSIDY GRANT SUBMISSION PROCESSING FOR CY 2026................. 6
10. SUBMISSION PROCESS ......................................................................................... 9

11. PROJECT REGROUPINGS........................................................................... 10
12. PRE-POPULATED DATA ........................................................................... 10
13. SUBMISSION OF FORMS HUD-52723 AND HUD-52722 FOR NEW PROJECTS ........ 12
14. REVISION REQUESTS FOR OPERATING SUBSIDY GRANT ELIGIBILITY.............. 13
15. OPERATING SUBSIDY GRANT CALCULATION............................................. 13
16. INSURANCE REQUIREMENTS.................................................................... 25
17. ENVIRONMENTAL REQUIREMENTS ........................................................... 25
18. MTW AGENCIES WITH ALTERNATIVE OPERATING FUND FORMULA.................. 25
19. THE GENERAL DEPOSITORY AGREEMENT................................................... 26
20. APPEALS ............................................................................................. 27
21.  RENTAL ASSISTANCE DEMONSTRATION (RAD).......................................... 32
22. TURNKEY III PROJECTS .......................................................................... 33
23. ENVISION CENTER PARTICIPATION ........................................................... 34
24. THE FAIRCLOTH LIMIT ........................................................................... 34
25. PHA BOARD RESOLUTION........................................................................ 35
26. RECORD RETENTION............................................................................... 35
27. PERIOD OF PERFORMANCE ...................................................................... 35
28. EXPENDITURE REPORTING....................................................................... 36
29. PAPERWORK REDUCTION ACT.................................................................. 36
30. PENALTY FOR FALSE CLAIMS AND STATEMENTS......................................... 37

## 1. PURPOSE

This notice provides public housing agencies (PHAs) with instructions for calculating Operating Subsidy Grants for Calendar Year (CY) 2026 and establishes submission deadlines.

## 2. BACKGROUND

The U.S. Department of Housing and Urban Development (HUD) provides Operating Subsidy Grants for public housing at the project level on a calendar year basis. The Operating Fund Program is authorized under the United States Housing Act of 1937 (1937 Act) (42 U.S.C. 1437g). Section 1437g(e)(2)(A) of the 1937 Act mandates the HUD Secretary to establish a formula for determining the amount of assistance from the Operating Fund for a fiscal year. The Operating Fund Formula and HUD's regulatory requirements for the Operating Fund Program are located at 24 CFR part 990.

PHAs must electronically submit Operating Subsidy Grant calculations for each public housing project identified in HUD's Inventory Management System/Public and Indian Housing (PIH) Information Center (IMS/PIC). Requirements also apply to any successor of IMS/PIC. PHAs submit this information using electronic forms Operating Fund Grant: Calculation of Utilities Expense Level (Form HUD-52722) and the Operating Fund Grant: Calculation of Total Program Expense Level (Form HUD-52723). PHAs must observe due dates for each submission to avoid negative financial consequences. All submissions should be made through the Public Housing Portal, unless specified otherwise.

### 3. SUMMARY OF CHANGES AND ADDITIONS

Compared to the previous year's Operating Subsidy Grant notice (Notice PIH 2024-25), this notice makes the following changes and additions:

- The SF-424 certification is updated to address waste, fraud, and abuse (see Section 9).
- A new section outlines guidance on permissive deductions in the development of operating budgets (see Section 15.3.3).
- The board chair or executive director can sign and approve the operating budget (see Section 25).

### 4. COMMUNICATIONS AND TIMELY SUBMISSION REQUIREMENTS

Per 24 CFR 990.200(c), PHAs are responsible for submitting data used in the Operating Fund Formula "on a regular and timely basis" to HUD "to ensure accurate calculation." In the case of PHA failure to provide accurate data, the regulation states that "HUD will make a determination as to the PHA's inventory, occupancy, and financial information using available or verified data, which may result in a lower operating subsidy."

HUD distributes information to PHAs using the following methods:

- *Calendar Year (CY) 2026 Operating Subsidy Grant Processing Webpage* – The webpage contains information such as the annual Operating Subsidy schedule and associated deadlines and guidance related to CY 2026 Operating Subsidy Grant processing. If a submission deadline falls on a weekend or Federal holiday, the deadline will be the next business day. PHAs should check the website frequently for updates. HUD will email PHAs whenever major changes are made to the webpage, including changes to the schedule and associated deadlines.
- *Public Housing Portal* – This portal is crucial for the efficient administration and distribution of HUD's Operating Fund Program. It serves as a centralized platform for PHAs to submit required forms and reports, ensuring compliance with regulatory requirements and facilitating transparent and accurate data reporting.
- *Operating Subsidy Grant Listserv* – This is used to send out mass emails to subscribers.

To receive proper Operating Subsidy amounts without delay, all PHAs must abide by the submission requirements including the calendar due dates that are provided by HUD using the communication channels above. The CY 2026 Operating Subsidy Schedule indicating submission deadlines and all major milestones is available on the Operating Subsidy Grant Processing webpage.

It is the PHA's responsibility to make contingency plans for unexpected events, such as staff turnover, technical problems, or other causes that may disturb their submission processing timeline. HUD is not responsible for negative financial implications and funding issues if a PHA fails to comply with the submission guidelines and due dates.

### 5. APPLICABILITY

This notice applies to PHAs administering the Public Housing Program, including PHAs participating in the Moving to Work (MTW) Demonstration Program. PHAs receiving transition

funding (as defined in 24 CFR 990.115) must be aware that continued qualification for that element of the formula requires continuous compliance with asset management requirements in 24 CFR part 990, subpart H.

Each year (beginning with the Consolidated Appropriations Act, 2008 (Public Law 110-161), and continuing until Congress removes this exemption), Congress allows PHAs with 400 or fewer public housing units to elect an exemption from any asset management requirements imposed by HUD relating to the Operating Fund rule, provided that an agency shall not be eligible to include stop-loss (i.e., a discontinuance of a reduction of subsidy) in its Operating Subsidy submission if it does not comply with the asset management requirements.

## 6. ELIGIBLE USES OF THE OPERATING FUND

Per 42 U.S.C. 1437g(e), the eligible uses of the Operating Fund include the following:

a. Procedures and systems to maintain and ensure the efficient management and operation of public housing units;[1]
b. Activities to ensure a program of routine preventative maintenance;
c. Anticrime and antidrug activities, including the costs of providing adequate security for public housing residents, including above-baseline police service agreements;
d. Activities related to the provision of services, including service coordinators for elderly persons or persons with disabilities;
e. Activities to provide for management and participation in the management and policymaking of public housing by public housing residents;
f. Costs of insurance;
g. Energy costs associated with public housing units, with an emphasis on energy conservation;
h. Costs of administering a public housing work program including economic self-sufficiency programs, which are designed to encourage, assist, train, or facilitate the economic independence of participants and their families or to provide work for participants, including programs for job training, employment counseling, work placement, basic skills training, education, workfare, financial or household management, apprenticeship, or other activities—and associated insurance costs;
i. The cost of repaying, together with rent contributions, debt incurred to finance the rehabilitation and development of public housing units, which are subject to HUD requirements;
j. Costs associated with the operation and management of mixed-finance projects, to the extent HUD deems appropriate; and
k. Costs of operating computer centers in public housing through a Neighborhood Networks initiative as described by the statute.

---

[1] Eligibility also includes amounts that are sufficient to pay for the reasonable costs of review by an independent auditor of the documentation or other information maintained pursuant to 42 U.S.C. 1437d(j)(6) by a PHA or resident management corporation to substantiate the performance of that agency or corporation.

Eligible expenses under the Operating Fund include supportive services programs, which all PHAs can implement. PHAs may use Operating Funds or program-specific funds, such as Family Self-Sufficiency (FSS), Resident Opportunity and Self-Sufficiency (ROSS), and Jobs Plus, for supportive services. PHAs must charge costs to program-specific grants timely. PHAs may not use supportive services grant funds to repay expenses that were previously paid for with Operating Subsidy funds.

## 7. FLEXIBILITY FOR OPERATING AND CAPITAL FUNDS

Section 9(g) of the 1937 Act (42 U.S.C. 1437g(g)) provides for the following flexible use of funds starting in Fiscal Year (FY) 2000 for Capital Funds and FY 2016 for Operating Funds.

### (1) Flexibility in Use of Funds
#### (A) Flexibility for Capital Fund Amounts
Of any amounts appropriated for FY 2000 or any fiscal year thereafter from the Capital Fund for any public housing agency, the agency may use not more than 20 percent[2] for activities that are eligible under section 9(e) of the 1937 Act (42 U.S.C. 1437g(e)) for assistance with amounts from the Operating Fund, but only if the public housing agency plan for the agency provides for such use.

#### (B) Flexibility for Operating Fund Amounts
Of any amounts appropriated for FY 2016 or any fiscal year thereafter from the Operating Fund for any public housing agency, the agency may use not more than 20 percent for activities that are eligible under section (d) of the 1937 Act (42 U.S.C. 1437g(d)) for assistance with amounts from the Capital Fund, but only if the public housing plan under section 1437c–1 of title 42 for the agency provides for such use.

### (2) Full Flexibility for Small PHAs
Of any amounts appropriated for any fiscal year for any public housing agency that owns or operates less than 250 public housing dwelling units, is not designated pursuant to section 1437d(j)(2) of title 42 as a troubled public housing agency, and (in the determination of the Secretary) is operating and maintaining its public housing in a safe, clean, and healthy condition, the agency may use any such amounts for any eligible activities under section (d)(1) of the 1937 Act (42 U.S.C. 1437g(d)(1)) and subsection (e)(1) of the 1937 Act (42 U.S.C. 1437g(e)(1)), regardless of the fund from which the amounts were allocated and provided.

---

[2] Each year since FY 2015, U.S. Congress—through its annual Appropriations Act—authorized to increase the limitation on Capital Funds used for Operating Fund eligible activities from 20 to 25 percent. If the FY 2026 Congressional Appropriations make a similar authorization (i.e., to increase the limit up to 25 percent), the Capital Fund Program Amendment to the Annual Contributions Contract will include the change. Detailed guidance on Capital Fund Processing in CY 2026 will be published at on the Operating Subsidy Grant Processing webpage.

## 8. HUD'S INITIAL AND CY OBLIGATIONS FOR CY 2026

At the beginning of the calendar year, HUD may fund projects using an estimate from data it pre-populates into Forms HUD-52722 and 52723. Later, HUD deploys these forms for projects determined to be eligible. If HUD does not fund or does not generate Forms HUD-52722 and 52723 for a project that the PHA considers eligible for an Operating Subsidy, the PHA should contact its local HUD field office. If HUD funds a project or generates forms for a project that is not eligible, the PHA must not draw down the funding or submit the forms. If a PHA draws ineligible amounts, it must report the transaction to its local field office, which will initiate action to return the amount drawn.

After the PHA processes and validates Forms HUD-52722 and 52723, HUD funds projects based on eligibility. As the PHA updates the forms throughout the year, HUD funds projects based upon the most recently processed Forms HUD-52722 and 52723. There may be a lag in funding because of the time required to process the updated forms and obligate funds.

PHAs can identify the latest Forms HUD-52722 and 52723 processed by HUD in the Public Housing Portal. While HUD's estimated funding is typically accurate on a portfolio level, estimated eligibility can vary significantly from actual eligibility on the project level. The Department funds each project on a cumulative basis (e.g., funding for February would bring total funding for the year up to $^2/_{12}^{ths}$ of prorated eligibility, and funding for March would bring total funding for the year up to $^3/_{12}^{ths}$ of prorated eligibility).

The Department offsets, de-obligates, or requires repayment of any funded amounts for any project deemed ineligible or any project overfunded based on incorrect estimates. HUD publishes obligation reports on the Operating Subsidy Grant Processing webpage, which identifies the amount of funds obligated throughout the calendar year. If a PHA finds the estimated eligibility exceeds the project's actual eligibility for CY 2026, the PHA must not draw down any excess funds and shall immediately notify the appropriate field office.

A PHA can access its current and historic Operating Subsidy eligibility data in the Public Housing Portal, in addition to using the Public Housing Portal to:

- Submit current Forms HUD-52722 and 52723 and supporting documents;
- Access the most recent Forms HUD-52722 and 52723 submitted by the PHA or accepted by HUD;
- Identify the status of new project requests;
- Create and submit Application for Federal Assistance (SF-424), Certification of Payments to Influence Federal Transactions (Form HUD-50071), and Disclosure of Lobbying Activities (SF-LLL);
- Apply for the Rate Reduction Incentive (RII); and
- Elect to participate in the Small and Rural Frozen Rolling Base Program.

## 9. OPERATING SUBSIDY GRANT SUBMISSION PROCESSING FOR CY 2026

A PHA must have a Unique Entity Identifier (UEI) generated by the System for Award Management (SAM). Additionally, PHAs must have an active registration at SAM.gov and an accurate Tax Identification Number (TIN) in the Line of Credit Control System (LOCCS) to

receive an Operating Subsidy Grant. The TIN reported by the PHA in SAM and LOCCS must be the same. The Operating Subsidy Grant Processing webpage provides directions on how to request a UEI. HUD will suspend or not obligate Operating Subsidy Grants for PHAs that do not comply with these requirements.

For HUD to determine the amount of Operating Subsidy Grant eligibility, PHAs must complete and submit the following electronic forms for each project using the Public Housing Portal:

- *Form HUD-52722* – Information on this form is used to calculate the Utility Expense Level. HUD deploys the HUD-52722 and instructions as part of the Forms HUD-52722 and 52723 in the Public Housing Portal.
- *Form HUD-52723* – Information on this form is used to calculate the total amount of Operating Subsidy Grant eligibility. HUD deploys the HUD-52723 and instructions with the Forms HUD-52722 and 52723 in the Public Housing Portal.
- *Application for Federal Assistance (SF-424)* – PHAs complete the SF-424 in the Public Housing Portal. A completed SF-424 must be submitted by the due date, **October 21, 2025, 5:00 p.m., Eastern Time**, for the PHA to receive an Operating Subsidy Grant. **Operating Subsidy will not be obligated to PHAs that do not submit an SF-424 on time**. Each PHA shall complete only one SF-424 for the entire amount of its CY 2026 Operating Subsidy Grant.
- *Certification of Payments to Influence Federal Transactions (Form HUD-50071)* – If applicable, PHAs must complete and electronically sign Form HUD-50071 in the Public Housing Portal.
- Other supporting documentation requested by HUD.

A PHA signing the SF-424 is making the following certifications (depending on the number of units regarding asset management and related fees):

- By signing this application, I certify under penalty of perjury: (1) the statements contained in the list of certifications and (2) that the statements herein are true, complete and accurate to the best of my knowledge. I also provide the required assurance and agree to comply with any resulting terms if I accept an award. I am aware that any false, fictitious or fraudulent statements or claims may subject me to criminal, civil or administrative penalties (e.g. 18 U.S.C. §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. §§ 3729, 3802). I certify the following:
  - *Operating Fund Letter assurance* – The Operating Fund Grant Obligation letter states that by drawing down the funds the PHA confirms compliance with all terms and conditions of the Operating Fund Grant Program, which includes but is not limited to the U.S. Housing Act of 1937, the Consolidated Annual Contributions Contract, 24 CFR 990 and 2 CFR 200.
  - In accordance with Section 235 of the Department of Housing and Urban Development Appropriation Act of 2020 I hereby certify that the PHA is in compliance with the Annual Contributions Contract as was in effect on December 31, 2017.
  - I certify that amount of Operating Subsidy stated in this form is an estimate based on the Operating Subsidy eligibility for the public housing agency from the previous funding year. (f)

- o I acknowledge that HUD obligates Operating Subsidy in the beginning of the funding year based on an estimate of Operating Subsidy eligibility for the public housing agency and that HUD calculates the remaining obligations on cumulative basis based on the Operating Fund Formula in accordance with 24 CFR 990 and data collected in the Form HUD-52723 and HUD updates eligibility throughout the funding year. (424g)
- o I agree that the public housing agency shall not draw down any excess funds when the estimated eligibility exceeds any project's actual eligibility and notify the appropriate HUD office; and that HUD offsets, de-obligates, or requires repayment of any Operating Subsidies for any project deemed ineligible or any project overfunded based on incorrect estimates.
- o Any person who becomes aware of the existence or apparent existence of fraud, waste or abuse of any HUD award must report such incidents to both the HUD official responsible for the award and to HUD's Office of Inspector General (OIG). HUD OIG is available to receive allegations of fraud, waste, and abuse related to HUD programs via its hotline number (1-800-347-3735) and its online hotline form. You must comply with 41 U.S.C. § 4712, which includes informing your employees in writing of their rights and remedies, in the predominant native language of the workforce. Under 41 U.S.C. § 4712, employees of a government contractor, subcontractor, grantee, and subgrantee—as well as a personal services contractor—who make a protected disclosure about a Federal Grant or contract cannot be discharged, demoted, or otherwise discriminated against as long as they reasonably believe the information they disclose is evidence of:
  1. Gross mismanagement of a Federal contract or grant;
  2. Waste of Federal funds;
  3. Abuse of authority relating to a Federal contract or grant;
  4. Substantial and specific danger to public health and safety; or
  5. Violations of law, rule, or regulation related to a Federal contract or grant.
- o I agree that the public housing agency:
  - ▪ Shall not use grant funds to promote "gender ideology," as defined in Executive Order (E.O.) 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;
  - ▪ Is in compliance, in all respects, with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of 31 U.S.C. 3729(b)(4);
  - ▪ Certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including title VI of the Civil Rights Act of 1964;
  - ▪ Shall not use any grant funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment; and
  - ▪ Notwithstanding anything in the Notice of Funding Opportunity (NOFO) or application, this grant shall not be governed by Executive Orders revoked by E.O. 14154, including E.O. 14008, or NOFO requirements implementing Executive Orders that have been revoked.

- o I agree that the public housing agency must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, E.O. 14218, or other Executive Orders or immigration laws.
- o If applicable, no State or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.
- o Unless excepted by PRWORA, I agree that the public housing agency must use Systematic Alien Verification for Entitlements Program (SAVE), or an equivalent verification system approved by the Federal Government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.
- o *Operating Fund, Calculation of Operating Subsidy, PHA-Owned Rental Housing (Form HUD-52723), Section 5, Certifications:*
  - In accordance with 24 CFR 990.215, I hereby certify that the public housing agency is in compliance with the annual income reexamination requirements and that rents and utility allowance calculations have been or will be adjusted in accordance with current HUD requirements and regulations.
  - If applicable, in accordance with § 213 of Title II of Division L of the Consolidated Appropriations Act, 2023, Pub. L. 117-328 (approved December 29, 2022) and subsequent acts containing the same provisions, I hereby certify that the public housing agency has 400 or fewer units and is implementing asset management.
  - If applicable, in accordance with 24 CFR 990.255-290 – Compliance of Asset Management Requirements, I hereby certify that the public housing agency has 250 units or more and is in compliance with asset management.
  - I hereby certify under penalty of perjury the information stated herein, as well as any information provided in the accompaniment herewith, is true, complete, and accurate. WARNING: Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement up to five years, fines, and civil and administrative penalties (18 U.S.C. §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. §§ 3729, 3802).

## 10. SUBMISSION PROCESS

Forms HUD-52722 and 52723 and instructions for completing these forms are posted to the Public Housing Portal. HUD posts other required documents, submission deadlines, and guidance materials related to various formula elements on the Operating Subsidy Grant

Processing webpage. <mark>Failure to meet the posted submission deadline is a ground for HUD's denial of an Operating Subsidy Grant to a PHA.</mark>

PHAs must submit Forms HUD-52722 and 52723 to HUD through the Public Housing Web Portal. Note that PHAs must submit these forms and other required documents to HUD regardless of whether the submission is prepared by the PHA's fee accountants or any other entity acting on behalf of the PHA. Fee accountants, third parties, or entities other than the PHA are not allowed to submit Forms HUD-52722 and 52723 and other required documents to HUD.

## 11. PROJECT REGROUPINGS

Project regrouping changes and transfers and consolidations per Notice PIH 2014-24 will apply to Operating Fund Formula calculations in the funding year following the fiscal year in which the changes become effective (i.e., included in IMS/PIC data pulls of project, building, and unit characteristics data to calculate project expense levels (PELs)). Prior to the point at which the changes are reflected in the HUD data pulls, the Operating Fund Formula will continue to include PELs based on project characteristics that existed prior to the regrouping, transfer, or consolidation. PHAs should use the PEL estimator to understand the possible financial impact of regroupings before proceeding. The PHA must ensure that it is accounting for the Operating Subsidy Grant properly prior to the changes becoming effective.

## 12. PRE-POPULATED DATA

At the beginning of the calendar year, HUD uses unit status data for the reporting period July 1, 2024, through June 30, 2025, as reported in IMS/PIC to pre-populate CY 2026 Forms HUD-52722 and 52723. Asset Repositioning Fee (ARF) eligibility is derived from IMS/PIC (or its successor) data and pre-populated into Form HUD-52723. Unit status data from IMS/PIC (or its successor) is modified based on the ARF eligibility determinations. If pre-populated data is incorrect, PHAs can request modifications in the comments section of Form HUD-52723. The following table presents the edits that PHAs and HUD field offices can and cannot make.

| Item Description | Can PHA Edit? | Can Field Office Edit? |
|---|---|---|
| Project Number | No | No |
| Name of PHA | No | No |
| Address of PHA | No | No |
| UEI (pre-populated; edited to match SAM and LOCCS data) | No | No |
| Unit status data: Form HUD-52723, Section 2, Categorization of Unit Months, Lines 01, 02, and 05-13[3] | No | Yes |

---

[3] On Form HUD-52723, unit status data in Section 2, Categorization of Unit Months, Column A, Lines 03 and 04 are for new units that do not have a full reporting period of unit status data. Guidance is available on the Operating Subsidy Grant Processing webpage on the completion of Forms HUD-52723 and HUD-52722 for new projects.

| Item Description | Can PHA Edit? | Can Field Office Edit? |
|---|---|---|
| Unit status data: Form HUD-52723, Section 2, Categorization of Unit Months Lines 03 and 04; Column A, Lines 6a-17; and Column B1 | Yes | Yes |
| Per Unit Month (PUM) PEL | No | No |
| PEL inflation factor | No | No |
| Utilities expense level (UEL) inflation factor | No | No |
| Payment in lieu of taxes (PILOT) | Yes | Yes |
| Cost of independent audit | Yes | Yes |
| ARF: Form HUD-52723, Section 3, Part A, Line 14 | Yes | Yes |
| PUM Formula Income | Yes | Yes |
| Transition funding[4] | No | No |

In some cases, a PHA will need to allocate data from the Financial Assessment Submission Subsystem (FASS)-Public Housing (PH) Financial Data Schedule (FDS) to multiple projects. Non-asset management PHAs with multiple projects in IMS/PIC may report their portfolio as a single combined project in the FASS-PH FDS. If a non-asset management PHA has multiple projects in IMS/PIC, it will continue to submit the HUD-52722 and 52723 for each project. HUD pre-populates Formula Income, payment in lieu of taxes (PILOT), Jobs Plus Earned Income Disregard (JPEID) (if the PHA participates), and audit fees for projects that submit FDS data.

For projects that were not pre-populated and a PHA submits FDS data that relates to multiple projects, the PHA will need to allocate the FDS data to the sections of Forms HUD-52722 and 52723. The cumulative amount for all projects for each line item must sum to the pre-populated data unless adjusted pursuant to Operating Subsidy Grant guidance (i.e., Formula Income can be adjusted for FSS and PILOT, and audit fees can be updated to reflect more recent expenditures) to the extent consistent with any applicable contract terms. Guidance on how to allocate Formula Income is available on the Operating Subsidy Grant Processing webpage.

**Changes to Pre-Populated Unit Months Data**
PHAs enter unit status data into IMS/PIC, which is used by HUD to calculate each PHA's Operating Subsidy Grant eligibility. PHAs must ensure the unit status data in their Operating Subsidy Grant submissions are correct.

Guidance on timely reporting in Notice PIH 2011-65 requires PHAs to submit forms HUD-50058 and HUD-50058 MTW within 60 days of the effective date of any actions recorded on Line 2b of the forms. HUD pulls unit status data to prepopulate Operating Subsidy forms from IMS/PIC 30 days after the end of the reporting period (July 30) to prepopulate Form HUD-

---

[4] PHAs that did not comply with asset management in a prior funding cycle may not have transition funding pre-populated into its Form HUD-52723.

52723. PHAs are required to have all Form HUD-50058 submissions for the Operating Subsidy reporting period (July 1 of the prior year to June 30 of the current year) complete by July 30 of the current year.

For Expansion MTW agencies that use MTW flexibilities, HUD will not prepopulate unit status data into Section 2 of Form HUD-52723 (Operating Fund Calculation of Operating Subsidy) until a technical solution is implemented to enable the successful submission of 50058s. The reason is that some of the Expansion MTW PHAs cannot submit HUD-50058 data in IMS/PIC due to applying MTW flexibilities to those public housing households. HUD devised an alternative strategy for those PHAs to submit unit status data and implemented a temporary procedure in the 2026 funding cycle. HUD will collaborate with those affected PHAs to implement the alternative procedure for 2026.

**13. SUBMISSION OF FORMS HUD-52722 AND 52723 FOR NEW PROJECTS**

Throughout the funding year, HUD generates a list of potential new projects/units entered by the PHA in IMS/PIC and approved by the field office that have actual Date of Funding Availability (DOFA) data and are in management status. This list is available in the New Project section of the Operating Subsidy Grant Public Housing Portal.

To receive funding for new projects/units, a PHA must initiate the process by submitting an email to its field office representative requesting funding for a new project. The email must contain the project development number with text indicating that it is a new project for which the PHA would like to receive funding. The HUD field office will confirm the eligibility of the new project in the Public Housing Portal. Once the field office confirms, HUD's Financial Management Division will prepare and deploy Forms HUD-52722 and 52723 and make them available to the PHA.

New project requests may be submitted at any point during the year prior to the deadline noted below. To receive funding for new projects in CY 2026, a PHA must email its funding request to its local field office no later than **June 2, 2026, 5:00 p.m., Eastern Time**. HUD encourages PHAs to request new Forms HUD-52722 and 52723 as early as possible. After receiving a request, the field office will complete a request for a new project in the Public Housing Portal no later than **June 9, 2026, 5:00 p.m., Eastern Time**.

HUD deploys the HUD-52722 and 52723 Forms multiple times during the year to provide timely funding to PHAs. PHAs may identify the status of any new project request by accessing the New Project module in the Public Housing Portal. HUD will deploy the HUD-52722 and 52723 Forms for new projects and notify PHAs via email no later than June 24, 2026. To receive funding in 2026, PHAs must submit Forms HUD-52722 and 52723 using the Public Housing Portal to the appropriate field office no later than **June 30, 2026, 5:00 p.m., Eastern Time**. **Submissions received after the deadline will not be considered for funding in CY 2026**. If a project was eligible but did not receive funding in the prior funding year, then PHAs may include eligible unit months for October, November, and December for the prior funding year as appropriate in their new project current year submission in Section 2, Column A, Line 04.

To be considered eligible for funding, new projects/units must, at a minimum, have the following information in IMS/PIC:

- Annual Contributions Contract (ACC) Units
- Management Status
- Actual DOFA

To add a new project in IMS/PIC, PHAs should refer to the IMS/PIC Building and Unit Upload Template and Building and Unit Submission Instructions.

Funding for new projects/units differs from existing projects/units due to the timing and availability of certain data elements that drive the Operating Fund Formula. For example, new projects/units lack sufficient utility information necessary to calculate a stand-alone UEL. Further, new projects/units normally lack audited or unaudited FDS data which is used to compute formula elements such as Formula Income, audit costs, and PILOT. As a result, new projects/units must follow special procedures that are different from existing projects with a full reporting period. Finally, all new projects/units are considered fully occupied until the project/unit has a full year of reporting period data for the purpose of calculating the Eligible Unit Months (EUMs). Detailed guidance can be found in the New Project Guidance.

## 14. REVISION REQUESTS FOR OPERATING SUBSIDY GRANT ELIGIBILITY

Submitting revised Forms HUD-52722 and 52723 by a PHA in the Public Housing Portal constitutes a request for a revision. Prior to making its revision request, the PHA should initiate contact with the field office well in advance to resolve any issues prior to the revision deadline. When making such a submission, the PHA must provide an explanation of the change(s) being requested, and the reason for the change(s). PHAs may request revisions to their original CY 2026 Operating Subsidy Grant submissions based on any of the four reasons listed below:

1. Correction of mathematical, clerical, information system, or other errors
2. Eligibility for Asset Repositioning Fees or new units in existing projects already under payment (24 CFR 990.155)
3. Approval of new utilities incentives/contracts pursuant to 24 CFR 990.185
4. Appeals submitted and approved by HUD in accordance with this notice (pursuant to 24 CFR 990.245)

All revision requests must be submitted by the Executive Directors, and they must have been submitted, via the Public Housing Portal, to the field office no later than **April 23, 2026, 5:00 p.m., Eastern Time**. Requests submitted after this date will not be accepted, unless the change lowers the Operating Subsidy Grant eligibility or is the result of a documented HUD error, in which case such requests are required.

## 15. OPERATING SUBSIDY GRANT CALCULATION

This section provides detailed explanations of how Operating Subsidy Grant eligibility is calculated. The formula for Operating Subsidy Grant eligibility is:

**Eligibility = (PEL + UEL) x EUM + Add-ons - [Formula Income x EUM]**

Eligible unit months (EUM) are the number of public housing units in eligible categories expressed in months during the reporting period and for which the units are subject to the entire Operating Fund Formula. Forms HUD-52722 and 52723 are programmed to calculate the Operating Subsidy Grant eligibility using this formula.

Except for ARF, public housing units must be subject to the ACC and be in management status in IMS/PIC to receive Operating Subsidy Grants. In general, for Formula Income, PEL, UEL, and most add-ons to be included in the calculation for eligibility, public housing units must be either: (1) a unit occupied by a public housing-eligible family under lease pursuant to 24 CFR 990.120(b), 24 CFR 990.125(a), and 24 CFR 990.140; (2) a dwelling unit with a HUD-approved vacancy pursuant to 24 CFR 990.125(b) as defined in 24 CFR 990.145; or (3) a vacant unit at or below the limited number of vacancies pursuant to 24 CFR 990.125(c) as defined in 24 CFR 990.150. Eligibility for some add-ons, such as asset management fees and ARF, is limited to units meeting certain criteria (as discussed below).

The remainder of this section discusses the components of the Operating Subsidy Grant eligibility formula in detail.

### 15.1 The PEL

The PEL is a model-generated cost estimate for each project, exclusive of taxes, utilities, and add-ons. The PEL is expressed as a per unit month (PUM) cost and is based on IMS/PIC project, building, and unit characteristics. PELs may change when PHAs regroup their projects. To estimate the impact of project re-groupings, PHAs can use the PEL Estimator located on the Subsidy Grant Processing Page.

### 15.2 The UEL and Central Office Cost Center (COCC)

The UEL is the product of the utility rate, the payable consumption level, consumption incentives, and the utilities inflation factor and is expressed as a PUM dollar amount. COCC utility consumption and costs are not included in the calculation of the PHA's project UEL on Form HUD-52722. If the COCC is located within a project, actual consumption (including the rolling base consumption and utility costs for the COCC) must be excluded from the UEL calculation for the project. PHAs must explain the methodology used to exclude COCC data (e.g., square footage).

To exclude COCC utility consumption and costs from combined consumption and costs in a pre-asset management Energy Performance Contract (EPC), access Processing Central Office Cost Center (COCC) Adjustments for an Existing Energy Performance Contract.

#### 15.2.1 Adjusting the Rolling Base when Units are Removed from Inventory

When a PHA removes a unit from inventory and there is less than a full 12-months of consumption in the reporting period, consumption for these units shall be removed from Line 1 of Form HUD-52722. The consumption for the removed unit is also reduced from the rolling base. Access Notice PIH 2024-31 for guidance on how to adjust the rolling base when units are removed from inventory.

### 15.2.2 Documentation Requirements

PHAs are required to maintain "appropriate utility records, satisfactory to HUD," which includes documentation of all data used to calculate Form HUD-52722 (per 24 CFR 990.170(f)). All records must be maintained by utility and by project for each 12-month period ending June 30 for the reporting period and each year of the rolling base.

Appropriate utility records must include:

- Copies of utility bills
- Utility registers (in Excel or equivalent electronic spreadsheet format), including:
  - Project number
  - If applicable, meter number (e.g., electricity, water, natural gas, propane)
  - Service address
  - Unit of measure
  - Consumption amount
  - Cost

Failure to maintain appropriate utility records, and/or the failure to provide HUD with adequate documentation when requested, may result in HUD initiated adjustments to Form HUD-52722 data and/or calculations. Mixed-finance projects are not exempt from this requirement of adequate documentation, and therefore, upon HUD request, they must submit an audited financial statement (AFS) and utility register records from the project's owner entity.

### 15.2.3 Data Distortions on Form HUD-52722

A PHA/project must report its rolling base so as not to materially distort the rolling base period. Many events trigger the need for an adjustment to the rolling base periods, including (but not limited to) changes to the number of units in a project or changes between PHA paid and resident paid utilities, broken meters, water leaks, changes to the units of measure, incomplete billing and documentation, interrupted service, or any event that leads to a large, unexpected decline in utility consumption. Regardless of the cause of the data distortion, a PHA must adjust their rolling base periods to consumption levels that are directly comparable to the actual current year consumption.

Unexplained drastic declines in actual consumption compared to the rolling base distorts the UEL calculation by triggering the 75/25 percent incentives, which pays the PHAs for 75 percent of their saving from unused utility consumption. Anomalous consumption data can lead to large overpayments.

Consider the following example. A project reports a significant decline in water/sewer consumption, although they maintained the same number of occupied units and have taken no action to curb consumption. The PHA reviews its utility register and finds it has accurately reported what it was billed, however it cannot document why its consumption declined. In this case, the PHA must adjust its rolling base periods to reflect the same lower number it is reporting in Line 01 Actual Consumption. Overpayments made due to the PHA's failure to adjust the rolling base must be repaid to the Department.

### 15.2.4 Unaddressed Data Distortions on Form HUD-52722

HUD will adjust the UEL calculation or submitted data to correct any error or data anomaly detected in Form HUD-52722, as authorized by 24 CFR 990.170, 24 CFR 990.180, and 24 CFR 990.200. HUD will adjust Form HUD-52722 when a PHA is unable to provide proper documentation, and when proper documentation has been provided but the submitted data distorts the UEL calculation. HUD may adjust any part of Form HUD-52722, including, but not limited to, current year consumption, rolling base year consumption, and utility incentive eligibility.

### 15.2.5 Rate Reduction Incentive

The Rate Reduction Incentive (RRI) is a financial incentive for PHAs that pursue special and significant efforts beyond what is required by statute or regulation to reduce their utility rate. The PHA's action must exceed the activities required by statute and/or regulation. Pursuant to HUD regulation 24 CFR 990.185(b), "If a PHA takes action beyond normal public participation in rate-making proceedings, such as well-head purchase of natural gas, administrative appeals, or legal action to reduce the rate it pays for utilities, then the PHA will be permitted to retain one-half the annual savings realized from these actions." Guidance for RRI, including deadlines, is provided by Notice PIH 2024-31 or successor notice. In order for the PHA to claim an RRI, the PHA must have received a signed RRI Approval Letter from HUD for eligible funding year and is then eligible to claim the exact amount of the approved RRI on its Form HUD-52722 on the "Rate Reduction Incentive" line (Line 23) for each approved AMP.

PHAs must submit complete RRI requests to HUD through the Public Housing Portal no later than **September 30th, 2025, 5:00 p.m., Eastern Time**. No additional documentation will be accepted beyond the deadline. Instructions for submitting an RRI request are posted to the Public Housing Portal.

As part of the Operating Subsidy process, PHAs must submit sufficient documentation to validate that the reduced rate for each utility type for which it received RRI approval is reflected in Form HUD-52722.

### 15.2.6 The Small Rural Frozen Rolling Base Program

The Small and Rural Frozen Rolling Base (SR-FRB) Program allows eligible PHAs to elect to have the UEL portion of its Operating Subsidy Grant Formula calculated using the average annual consumption for the most recent three-year period (rolling base) for a period of up to 20 years. Details on the requirements of the program can be found in Notice PIH 2022-32.

### 15.2.7 Electing to Participate in the SR-FRB Program

Interested eligible PHAs must elect to participate through the Public Housing Portal. PHAs make their election through the SR-FRB submodule which is found in the Energy Incentives module. The deadline for a PHA to make an initial election is **August 15th, 2025, 5:00 p.m., Eastern Time**.

### 15.2.8 Adding Utilities to Existing SR-FRB Participation

PHAs may elect to add additional utilities in future funding years within the 20-year term. PHAs must elect to add additional utilities in the Public Housing Portal. PHAs must submit their election to add utilities by the deadline for making an initial election identified above.

### 15.2.9 Exiting the SR-FRB Program

PHAs participating in the SR-FRB Program may remove a project or project(s) from participation through the Public Housing Portal as specified in Notice PIH 2022-32. PHAs must submit their request to remove the project or projects from the SR-FRB Program by **August 15th, 2025, 5:00 p.m., Eastern Time**, for making an initial election identified above.

### 15.2.10. Exclusion of Trash Collection Cost from the UEL

The UEL includes the following utilities: gas, electric, heating fuels, water, and sewer service consistent with the definitions at 24 CFR 990.115. Trash collection cost must not be included in the UEL calculation in form HUD-52722. PHA-paid trash collection cost is included in the pre-populated PEL PUM formula element. Harvard University's Public Housing Operating Cost Study PEL model acknowledges that "trash removal expenses are treated as a maintenance expense and not a utility expense in the Chart of Accounts for public housing." Where waste management companies bill trash collection charges to individual units, PHAs may include trash collection service fees in the tenant utility allowance stipulated in 24 CFR part 965, subpart E.

### 15.2.11. Exclusion of Delinquent Resident Paid Utilities from the UEL

A PHA may choose to pay a resident's overdue utility bill, however it may not include the cost or consumption for these utilities in Form HUD-52722.[5]

### 15.3 Formula Income

Formula Income is an estimate of a PHA's rental revenue. The CY 2026 per unit month (PUM) Formula Income will be pre-populated based on the PHA's approved FY 2024 FASS-PH FDS submission when available. FY 2024 financial data must be used when available. The PUM Formula Income is calculated in two steps:

*Step 1:* Divide the Net Tenant Rental Revenue by Unit Months Leased (UMLs).
*Step 2:* Multiply the PUM Formula Income (determined in Step 1) by the CY 2026 Formula Income inflation factor.

Mixed-finance projects that do not submit Net Tenant Rental Revenue or UMLs in their FDS submission must submit an AFS and 12 months' rent roll data from the project's owner entity, along with its submission of Operating Fund Forms HUD-52722 and 52723 to support the Formula Income amount included on Form HUD-52723. The inflation factor used for mixed-finance projects will always be based upon the Fiscal Year End (FYE) of December 31, as the FYE of owner entities for tax credit projects is always December 31. This may differ from the

---

[5] Public Housing Occupancy Guidebook, Section 4.2 Other Common Practices for Resident-Paid Utilities and Utility Allowances.

PHA's FYE. Guidance on how the Formula Income inflation factor is derived and the Formula Income methodology are posted on the Operating Subsidy Grant Processing webpage.

### 15.3.1 Energy Performance Contracts

Special guidance for capturing the resident-paid utilities incentive in a HUD-approved energy performance contract on Form HUD-52723 (Section 3, Part B, Line 02, Resident Paid Utility Energy Performance Contract Benefit) is on the Operating Subsidy Grant Processing webpage.

### 15.3.2 Jobs Plus Financial Incentive

A PHA's annual Formula Income may be adjusted if the PHA participates in the Jobs Plus Program. Since HUD pre-populates Formula Income with data from the FDS, the financial incentive results in an increase to the Operating Subsidy Grant. A PHA is not permitted to receive Operating Subsidy Grant amounts based on rent not collected due to income disregarded while administering a Jobs Plus Program and its financial incentive component, as the reimbursement for the "lost" rental income must only come from the Jobs Plus Grant. A PHA must submit financial incentive-related data to HUD so that HUD can reverse any increase in Operating Subsidy eligibility caused by participation in a financial incentive. Detailed guidance on PHA data submission requirements and HUD's methodology to make financial incentive-related adjustments to Formula Income is available on the Operating Subsidy Grant Processing webpage. PHAs must submit the financial incentive data to HUD by the date identified in the CY 2026 Operating Subsidy Schedule. If PHAs do not observe the due dates, HUD will derive a financial incentive -related adjustment amount using a conservative methodology to ensure that the PHA is not overfunded. The above noted adjustment does not apply to MTW PHAs that are subject to an Alternative Operating Fund Formula without FDS data as part of their formula.

### 15.3.3 Permissive Deductions

A PHA may adopt additional, or "permissive," deductions from annual income only if the PHA establishes a written policy for such deductions. Permissive deductions may be used to incentivize or encourage self-sufficiency and economic mobility.[6] Consistent with 24 CFR 5.611(b)(1)(i), a PHA that adopts such deductions will not be eligible for an increase in Capital Fund and Operating Fund Formula Grants based on the application of such deductions. PHAs utilizing permissive deductions will be subject to review and compliance with 24 CFR 5.611(b)(1)(i). To properly account for permissive deduction(s) for each project, PHAs will insert the cumulative reduction in rent for the PHA's fiscal year used to determine Formula Income as a negative number in Form HUD-52723 Section 3, Part C, Line 3 Other.

---

[6] A permissive deduction might include, for example, an amount of any family earned income, established at the discretion of the PHA, which may be based on the amount earned by particular members of the family, the amount earned by families having certain characteristics, or the amount earned by families or members during certain periods or from certain sources.

### 15.4 FSS Program

The Family Self-Sufficiency (FSS) Program enables families assisted through Public Housing Programs to increase their earned income and reduce their dependency on social services and rental subsidies. Under the FSS Program, families living in low-income housing enter into a contract and are provided opportunities for education, job training counseling, and other forms of social service assistance to develop the necessary skills required to achieve self-sufficiency. Escrow accounts are established for FSS participants by the PHA.

As the skills of a participant increase, their earnings are also likely to increase, which results in an increase in the participant's rent. Under the FSS Program, the PHA places the rent increase into an escrow account. It is strongly recommended that a PHA reduce the tenant rent portion of Formula Income (on Form HUD-52723) by the amount of its FSS escrow payments, not operational expenses, to prevent decreases in subsidy for funds placed in escrow. Further, adjustments have to align for the time period of the FDS submission being used to generate Formula Income. PHAs must enter appropriate comments in the comment section of Form HUD-52723 when FSS escrow adjustments are made. A PHA must maintain supporting documentation of how they determined the decrease in Formula Income and submit the documentation to the field office upon submission of Forms HUD-52722 and 52723.

The field office uses supporting documents to validate the decrease to Formula Income. Refer to Financial Reporting for the Family Self-Sufficiency (FSS) Program Accounting Brief #26 for detailed guidance on correct accounting for grant costs, other funds going to this activity, and escrow reporting. Also reference Notice PIH 2022-20.

### 15.5 Mixed-Finance Modernization

Mixed-finance development can involve modernization rather than new construction. Mixed-finance modernization often involves the use of Low-Income Housing Tax Credits (LIHTC) to modernize an existing public housing project. Due to LIHTC rules, ownership of the existing public housing project must be transferred to the new owner entity. This requires the project to be removed from inventory (i.e., IMS/PIC) via a Section 18 disposition application, then added back to inventory (i.e., IMS/PIC) via a development proposal. Such projects are subject to 24 CFR 905.304(a)(2) and retain their DOFA date that existed prior to modernization as described in 24 CFR 905.604.

#### *15.5.1 Impact on Operating Subsidy Grants*

Public housing units disposed through mixed-finance modernization in the existing project are **not eligible for ARF**. When the PHA submits the Section 18 disposition application via IMS/PIC, the PHA selects the category "Mixed Finance MOD-REHAB" as the type of units included in the mixed-finance modernization development proposal.

Immediately upon closing, PHAs must add the new project and enter the removal date for the old project into IMS/PIC. Adding the new project to IMS/PIC timely is critical to maintaining uninterrupted funding. To add a new project in IMS/PIC, refer to the IMS/PIC Building and Unit Upload Template and Building and Unit Submission Instructions.

### 15.5.2. Designation of Units as Vacant for Modernization

PHAs using mixed finances to modernize public housing units may submit a request to their field office to place units that must remain vacant during modernization into the status of Vacant for Modernization. See Notice PIH 2024-03 for additional information on this status. Once the work that required the unit to be vacant has been completed, the unit must be re-occupied by an eligible family or placed in vacant status, even if additional modernization work continues.

### 15.6 Add-Ons

Add-ons include the following types of costs: independent audit, PILOTs, asset management fees, information technology fees, ARFs, Elderly/Disabled Service Coordinator (EDSC) (referred to as the self-sufficiency add-on), EPCs, and Resident Participation.

### 15.6.1 Cost of Independent Audit

Independent audit cost is reported for the Operating Subsidy Grant Program when required by the Single Audit Act or when a single audit is not required and the PHA elects to have a financial statement audit prepared. Once audit costs are included in a funding eligibility calculation, the PHA is required to complete an audit for the matching PHA fiscal year and submit it to HUD. Audits are submitted electronically in accordance with the Uniform Financial Reporting Standards (24 CFR part 5, subpart H).

A project in which Operating Subsidy Grant eligibility is determined to be zero is still eligible to receive an Operating Subsidy Grant amount equal to its most recent audit costs pursuant to 24 CFR 990.190(d), subject to proration. This may occur when program expenses [**(PEL +UEL) + Add-Ons - Formula Income**] are equal to or less than zero.

Project audit costs are pre-populated in Form HUD-52723 when CY 2024 FDS data is available. Where a PHA has a more recent actual audit cost than the pre-populated amount, it may replace that amount with the most recently paid amount and provide the payment documentation. If the audit cost is not pre-populated, the PHA shall report its most recent actual audit cost and attach proof of payment when submitting CY 2026 Form HUD-52723.

For mixed-finance projects with both ACC and non-ACC units, the audit costs are prorated to the amount allocable to ACC Public Housing units. The amount is based on the ratio of ACC units divided by total units: **Ratio = ACC units ÷ (ACC units + non-ACC units)**.

### 15.6.2. Payments in Lieu of Taxes (PILOT)

For CY 2026, project PILOT amounts are calculated and pre-populated in Form HUD-52723 based upon approved CY 2024 FASS-PH FDS data. If a PHA submits Form HUD-52723 with a project's PILOT amount greater than the amount pre-populated, the PHA must attach proof of payment with the submission.

Regulatory requirements at 24 CFR 990.190(c) stipulate that "each PHA will receive an amount for PILOT in accordance with Section 6(d) of the 1937 Act, based on its cooperation agreement or its latest actual PILOT payment." Section 6(d) of the 1937 Act specifies the PILOT is equal to "10 per centum of the sum of the shelter rents charged in such project, or such lesser amount as (i) is prescribed by State law, or (ii) is agreed to by the local governing body in its agreement for

local cooperation with the public housing agency required under Section 5(e)(2) of this Act, or (iii) is due to failure of a local public body or bodies other than the PHA to perform any obligation under such agreement."

PILOT is pre-populated in Form HUD-52723 by calculating ten percent of shelter rents (i.e., rent less utilities). If one of the lesser amounts identified in (i), (ii) or (iii) above apply, the PHA must override the pre-populated amount with the lesser amount. For existing projects, the following line items from the Low Rent Public Housing column of the project's audited FASS-PH FDS submission are used to calculate the PILOT:

- 70300 Net Tenant Rental Revenue
- 93100 Water
- 93200 Electricity
- 93300 Gas
- 93400 Fuel
- 93600 Sewer
- 93800 Other Utilities

**PILOT = [Line 70300 - (Lines: 93100 + 93200 + 93300 + 93400 + 93600 + 93800)] x 0.10**

For mixed-finance projects the PILOT may not be pre-populated, in which case the PHA submits the owner entity's audited financial statement to the field office when submitting CY 2026 Form HUD-52723. For mixed-finance projects with both ACC and non-ACC units, the PILOT may need to be prorated to determine the amount allocable to public housing units. This happens only when both non-ACC and ACC units are subject to PILOT. Public housing units paying real estate taxes and not subject to PILOT may not include PILOT in its Operating Subsidy Grant calculation.

### 15.6.2 Asset Management Fee
PHAs not in compliance with asset management requirements are not eligible for the asset management fee pursuant to 24 CFR 990.190(f) or stop loss pursuant to guidance in Notice PIH 2007-16 and regulations at 24 CFR 990.230(d).

Asset management fees are determined as follows: (1) PHAs with at least 250 units are eligible for a $4 per unit asset management fee for each month the project is subject to the ACC and in management status; and (2) PHAs with fewer than 250 units that are in compliance with asset management requirements under 24 CFR 990.255-290 (subpart H) are eligible for a $2 per unit asset management fee for each month the project is subject to the ACC and in management status. PHAs with only one project, regardless of number of units, are not eligible for an asset management fee pursuant to 24 CFR 990.190(f). MTW agencies' eligibility for asset management fees is subject to the terms of their MTW agreement. PHAs with one project may continue to receive stop loss based on compliance with the limited asset management requirements of their stop loss approval. For further explanation, refer to the Transition/Stop Loss and Asset Management Fee Funding for PHAs with One Project.

*15.6.3 Information Technology Fee*

In accordance with 24 CFR 990.190(g), Operating Subsidy Grant calculations include $2 PUM for costs attributable to information technology based on the total number of ACC units in management status.

*15.6.4 ARF*

PHAs must follow regulatory requirements at 24 CFR 990.190(h). PHAs must ensure that IMS/PIC data is accurate in calculating their ARF eligibility. Critical data elements include the HUD demolition/disposition approval date. Additional elements include Days to Relocation in the Demolition and Disposition (Demo/Dispo) module and End of Participation (EOP) of the first move out after the relocation date. PHAs should work with their field office to make any needed corrections. Modifications to the Demo/Dispo module should conform with guidance in Notice PIH 2021-37. ARF is only available for dispositions or demolitions conducted under 24 CFR part 970.

When a unit is eligible for ARF, PHAs should move any unit months used to calculate ARF to Section 2 Column A, Line 12 of Form HUD-52723 except as noted below. After ARF eligibility ends, if the units are not yet removed from IMS/PIC, they are reported in Column A, Line 13.

Section 3, Part A, Line 14 of Form HUD-52723 is pre-populated with ARF eligibility calculated based on IMS/PIC data. However, PHAs must confirm the accuracy of this data element and revise it as needed prior to submitting their Form HUD-52723. It is especially important to review the ARF calculation in the first year of ARF eligibility, because after the first year of eligibility PHAs may not change data elements used in the calculation. PHAs must submit supporting documentation detailing the ARF calculation for the requested amount.

When Section 3, Part A, Line 14 of Form HUD-52723 must be modified, in addition to changing the pre-populated data in Section 3, Part A, Line 14, unit status data in Section 2 of Form HUD-52723 may also need to be changed. If the underlying IMS/PIC data is inaccurate, the PHA should work with the field office and the Special Application Center to correct the data. The field office will follow the ARF Standard Operating Procedures found on the FMD SharePoint site. To initiate corrections, the PHA must submit documentation required by its field office along with Form HUD-52723.

When making a change to ARF eligibility in Form HUD-52723, the PHA should present a spreadsheet showing the ARF eligibility calculation and related information, including:

- Project number and Demo/Dispo application number
- Date of the approval letter
- Number of days to relocate after the approval letter is issued and the resulting planned relocation start date
- First move-out after the planned relocation start date is consistent with the EOP in IMS/PIC or a statement that all units were vacant on the date of the approval letter, or the planned relocation start date
- ARF unit months for the project or building(s), which equals the number of ARF eligible months multiplied by the number of ARF eligible units

- Detailed calculation of ARF funding for each year of eligibility, including ARF unit months, the PEL, and the PEL inflation factor

PHAs must revise their Form HUD-52723 submissions to reflect changes in eligibility (based on the removal of units) on a quarterly basis. If the entire project is ARF eligible, the project is no longer Operating Subsidy eligible after the expiration of ARF eligibility. If a project is only partially ARF eligible, the units that are not ARF eligible remain eligible for non-ARF portions of the Operating Fund Formula.

### 15.6.5 EDSC Program
The reasonable costs for salary, fringe benefits, and administrative costs for the EDSC services are eligible for this formula element. Only PHAs previously receiving EDSC funding are eligible. Eligibility is posted on the CY 2026 Operating Fund Grant Processing webpage.

Specifically, eligible EDSC Program costs include salary, fringe benefits, and administrative costs for an EDSC service coordinator, or third-party costs if EDSC services are provided by an outside entity. Service coordinators assist elderly or disabled individuals living in public housing to obtain needed supportive services from community organizations and/or agencies. Service coordinators may perform activities such as assessing elderly or disabled resident needs, identifying and linking residents to appropriate services, monitoring the delivery of services, and offering one-on-one case management. A service coordinator may also educate residents about what services are available and how to use them, and help residents build informal support networks with other residents, family, and friends. Generally, for elderly individuals and persons with disabilities, services are intended to extend the length and improve the quality of independent living.

The total EDSC eligibility cap increases annually up to the amount of the annual inflation factor in Section 3, Part A, Line 02 of Form HUD-52723. Eligible PHAs should enter the eligibility amount in Section 3, Part A, Line 07 of Form HUD-52723. Where a PHA's eligible EDSC costs are less than the EDSC eligibility cap, they should enter the EDSC costs. This "Self-Sufficiency" line is restricted to the EDSC Program and does not include ROSS funding.

If a PHA's public housing inventory (i.e., the number of units in IMS/PIC that are subject to the ACC) decreases (e.g., due to RAD conversion), the PHA's EDSC (funded as an Operating Subsidy Grant add-on) decreases proportionately. The PHA must make the proportionate decrease in its Form HUD-52723. In the case of transfers, consolidations, or mergers:

- If a PHA is eligible for the EDSC Program and elects to consolidate or merge with another PHA, eligibility is maintained. The EDSC eligibility amount is allocated to the receiving PHA.
- If there is a transfer of some but not all projects between PHAs, EDSC eligibility, which is at a PHA level, is not transferred.

### 15.6.6 EPC
With a HUD-approved EPC, a PHA may qualify for certain incentives under the subsidy formula described in 24 CFR 990.185. To claim EPC incentives, the PHA must have unpaid EPC debt on

the current EPC. If the EPC debt is paid, the PHA is not eligible for the EPC Incentive toward that EPC.

### 15.6.7 Annual EPC Submissions

PHAs will not be required to send EPC Measurement and Verification (M&V) reports to HUD for CY 2026. Instead, for CY 2026, PHAs will be required to conduct an Annual EPC Savings Verification for their active EPC. The EPC Savings Verification is an important mechanism to help ensure EPCs are funded in compliance with Public Housing regulations and HUD's EPC approval letter. The deadline for submitting EPC Savings Verification workbooks will be posted on the Operating Subsidy Grant Processing webpage. HUD may adjust, remove, or recapture EPC incentives from the PHA's Operating Subsidy form for errors in the EPC incentives included on Forms HUD-52722 and 52723.

### 15.6.8 AOS EPC Incentive

Pursuant to 24 CFR 990.190(b), a PHA with a HUD-approved EPC for the Add-On Subsidy (AOS) incentive is eligible to enter the amount of the AOS incentive in Section 3, Part A, Line 8 for energy loan amortization. Copies of EPC approval letters (and amended versions) must be retained by the PHA and field office for the life of the EPC. MTW PHAs with self-approval authority in their Standard MTW Agreement must submit a request to their field office describing the type and term of EPC benefits claimed and a list of projects for which the benefits are claimed.

The AOS benefit is subject to the lesser of EPC Project Costs or EPC Project Savings associated with the respective energy conservation measure (ECM). If the cost savings for the AOS reporting period in any year during the contract period are less than the amount of AOS incentive claimed, the deficiency will be offset against the PHA's Operating Subsidy Grant eligibility for the PHA's next fiscal year. The difference is offset by entering a negative number Section 3, Part C, Line 3 "Other" of the Form HUD-52723. There are methods to compute the AOS based on the M&V Methods: Option A and Option C.

A. AOS Option A uses stipulated consumption savings based on acceptable operational, or performance parameters that must be approved in the EPC Approval Letter:
   **Savings = (Stipulated Consumption Savings) x (Authority-Paid Utility Rate)**
B. AOS Option B uses measured consumption from the ECM. The PHA is responsible for submitting the measured consumption for the reporting period with their Form HUD-52723 submission:
   **Savings = (ECM Measured Consumption Savings) x (HUD-52722 Utility Rate)**
C. AOS Option C uses a Reference Baseline for savings comparison, which is determined by the average of historical consumptions (found on Lines 02 through 04 on Form HUD-52722). The Reference Baseline is not frozen on Form HUD-52722 but is identified in the EPC Approval letter and is only used to calculate EPC Savings:
   **Savings = (Reference Baseline – Current Consumption) x (HUD-52722 Utility Rate)**

*15.6.9 FRB and RPU EPC Incentives*

If the EPC Incentive is Frozen Rolling Base (FRB) and/or Resident-Paid Utilities, documentation should be submitted to the HUD field office that identifies if at least 75 percent of the energy savings from the incentives is used for debt service or other eligible EPC Project Costs.

*15.6.10 Funding for Resident Participation Activities*

Pursuant to 24 CFR 990.190(e), PHA Operating Subsidy Grant calculations include $25 per occupied unit, per year for resident participation activities, including but not limited to those described in 24 CFR part 964. A unit is eligible to receive resident participation funding if it is occupied by a public housing resident or occupied by a non-assisted PHA employee, or police officer or other security personnel who is not otherwise eligible for public housing. In any fiscal year, if appropriations are not sufficient to meet all funding requirements under this part, then the resident participation component of the formula is adjusted accordingly.

## 16. INSURANCE REQUIREMENTS

PHAs Insurance requirements are codified in regulation at 24 CFR part 965 and further delineated in the applicable ACC for the PHA. ACC forms can be found under "Project-Based Funding" on the Operating Fund webpage. A PHA is required to maintain adequate insurance to protect against potential financial losses caused by various hazards. In certain circumstances, PHAs may have just cause to vary from mandatory insurance requirements applicable to all PHAs. Such variations would require the PHA to obtain a waiver of the ACC insurance requirement(s). Notice PIH 2018-16 provides guidance and direction regarding the waiver submission process.

When a PHA determines that insurance costs have risen so substantially as to cause the PEL to be unrepresentative of non-utility operating expenses, it may consider submitting a PEL appeal. Section 20 of this notice provides guidance regarding the submission of PEL appeals. Some PHAs may be eligible for Shortfall funding if insurance costs have risen by such a significant degree that reserves are substantially diminished.

Information regarding insurance risk pools, insurance requirements, and insurance-related guidance can be found on the Operating Subsidy Grant Processing webpage.

## 17. CROSS-CUTTING REQUIREMENTS

As noted in the Operating Fund rule at 24 CFR 990.116, environmental review procedures of the National Environmental Policy Act of 1969 (42 U.S.C. 4332(2)(C)) and implementing regulations at 24 CFR parts 50 and 58 are applicable for the Operating Fund Program.

## 18. MTW AGENCIES WITH ALTERNATIVE OPERATING FUND FORMULA

MTW PHAs with Alternative Operating Fund Formula (AOFF) agreements submit requests for Operating Subsidy Grants in accordance with their MTW agreements in Attachment A. In cases where this involves submitting one request on a PHA-level, Form HUD-52722 is not submitted. PHAs must submit Form HUD-52723 to their field offices in accordance with the MTW agreement, which generally includes entries for Section 1 and Section 3, Part C, Line 01.

Documentation supporting the agreement's formula (i.e., the PHA's calculation workbook for the CY 2026 Operating Subsidy Grant, which must include unit months data for the reporting period, add-on subsidies, non-utility and utility subsidies, and the RAD adjustment (if any) for converted units as referenced in Attachment A of the MTW agreement) must be submitted with Form HUD-52723 by the scheduled deadline.

MTW PHAs whose submissions are not limited to one form will have their electronic form pre-populated in the same manner as regular formula PHAs and shall complete and submit all sections of Forms HUD-52722 and 52723 on a project-level basis in the same manner as regular formula PHAs.

## 19. THE GENERAL DEPOSITORY AGREEMENT

In accordance with U.S. Treasury requirements and 2 CFR part 200, PHAs are subject to cash management requirements. Further, the ACC (Section 12) requires PHAs to place public housing funds in accounts subject to a General Depository Agreement (GDA) (Form HUD-51999).

When PHAs enter into depository agreements with financial institutions for accounts holding public housing funds such as Operating Subsidy Grants, program income (rental and non-rental income), and disposition proceeds (PHA deposits), PHAs are required to have a GDA with the financial institution that establishes the terms and conditions dictating the investment, and collateral and securitization requirements for the PHA's deposits.

A GDA ensures that all the PHA's deposits or funds otherwise associated with public housing for purposes of public housing remain available for its required purpose. This is accomplished by requiring such financial grant assistance to be deposited into interest-bearing accounts at financial institutions whose deposits and accounts are insured by the Federal Deposit Insurance Corporation or the National Credit Union Share Insurance Fund. Moreover, whenever PHA deposits exceed the insured limits, the GDA requires those PHA deposits to be fully and continuously collateralized with Treasury-approved investments. The Department generally does not approve modifications to the GDA, but, if a PHA wants to request approval to modify or add an addendum to the GDA, it must request a HUD waiver under 24 CFR 5.110 and follow the usual HUD regulatory waiver process detailed in Notice PIH 2018-19.

Operating Subsidy held by a PHA is required to be deposited in an interest-bearing account with a depository institution with which the PHA has entered in a GDA. PHAs are not required to maintain their Operating Subsidy in an interest-bearing account as provided in 2 CFR 200.305(b)(8) **if**:

- o The PHA receives less than $250,000 in Federal awards per year;
- o The best reasonably available interest-bearing account would not be expected to earn interest more than $500 per year on Federal cash balances; or
- o The depositary would require an average minimum balance so high that it would not be feasible within the expected Federal and non-Federal cash resources, including rental and non-rental income.

At least once each year the PHA is required to return this interest income to the Department of Health and Human Services Payment Management System, in accordance with Office of Management and Budget (OMB) procedures. Interest amounts up to $500 per year may be retained by the PHA for administrative expenses.

For the purposes of requirements pertaining to interest, to the extent that a PHA does not account for its reserves based upon sources of funds, all such amounts shall be considered Federal awards.

## 20. APPEALS

Pursuant to 24 CFR 990.240, appeals are voluntary and cover the PHA's entire portfolio, not single projects. The Assistant Secretary for Public and Indian Housing has the discretion to accept appeals that are less than an entire portfolio for PHAs with more than 5,000 public housing units. All other appeals must be based on an impact that affects the entire PHA, not an impact to a single project or set of projects. Any appeals that address single projects and not the entire portfolio will be denied.

In the past, the Operating Fund Program considered appeals of Formula Income for economic hardship. Such appeals were permitted in the first two years of the Operating Fund Program, during which period Formula Income was frozen. Because Formula Income is no longer frozen, appeals of Formula Income for economic hardship are no longer permitted.

MTW PHAs with AOFFs may not appeal any part of the AOFF, as the AOFF is not derived from 24 CFR part 990.

### 20.1 Four Types of Appeals and Requirements under 24 CFR 990.245

1. *Streamlined Appeal* – Requires PHAs to demonstrate a blatant and objective flaw in the application of a specific Operating Fund Formula component. This appeal must be submitted once annually and must be submitted for new projects entering a PHA's inventory within one year of the applicable DOFA.

2. *Appeal for Changing Market Conditions* – PHAs may appeal to receive Operating Subsidy Grant funding for vacant units due to changing market conditions after the PHA undertakes aggressive marketing and outreach measures to rent these units. The vacancies cannot be the result of action or inaction by PHA management, but an appeal may be approved for changing market conditions if a PHA is in an area suffering economic dislocations. While normal economic cycles may increase the number of low-income households in an area and increase demand for public housing, severe economic dislocation might lead to population loss significant enough to cause a shortage of applicants, even with aggressive marketing and outreach. Market conditions can be approved at any time, but not retroactively.[7] See Notice PIH 2024-03 for more information on this appeal type.

---

[7] With the exception of 2027, see Section 20.2.5 for explanation of this exception.

The other two types of appeals are limited to PEL issues. The PEL is a pre-populated formula data that cannot be edited by field offices or PHAs (see Section 12). However, a PHA may appeal to a pre-populated PEL based on the effects of specific local conditions and actual project cost data. PEL appeals are not based upon current costs and are not a reimbursement program. In contrast, these appeals are based on historic costs, specifically either actual Public Housing costs, or market comparables. The PEL represents the normal operating expenses of well-run Public Housing projects, excluding utilities and add-ons. Costs associated with the PEL are administration, management fees, maintenance, protective services, leasing, occupancy, staffing, and other expenses such as property insurance.

3. *Appeal for Specific Local Conditions* – This appeal requires the PHA to demonstrate that the PEL fails to reflect specific local conditions. To be eligible, the affected PHA must demonstrate, using an independent cost assessment, that the PEL is not accurate for comparable properties in the PHA's market area, with a variance of 10 percent or greater at the PHA's public housing portfolio level. The cost of services for the independent cost assessment is paid by the appellant PHA. Appeals for specific local conditions must assume that 100 percent of available unit months, except those eligible for ARF, receive full Operating Subsidy eligibility. This appeal must be submitted once annually and must be submitted for new projects entering a PHA's inventory within one year of the applicable DOFA.

4. *Appeal to Substitute Actual Project Cost Data* – A PHA may appeal its PEL if it can produce actual project cost data, that is comparable to the PEL and derived from actual asset management as outlined in 24 CFR 990 Subpart H, for a period of at least two years. Only data from audited FDS submissions approved by HUD may be used for this type of appeal. For this type of appeal, the PHA must also submit an independent cost assessment, paid for by the PHA. Because adjustments must be made to the audited FDS data, the audit itself does not satisfy the requirement for an independent cost assessment. Appeals to substitute actual project cost data must assume that 100 percent of available unit months, except those eligible for ARF, receive full Operating Subsidy eligibility.

### 20.2 Appeal Requirements

#### *20.2.1 Streamlined Appeal Requirements*

The Streamlined appeal applies when a PHA has discovered an error in the calculation of its PEL. For streamlined appeals, the PHA must describe the flaw and submit supporting documentation (e.g., if HUD used data from California to calculate the PEL for a PHA in Illinois). An insufficient PEL is not the result of an error with the execution of the formula, thus it would not qualify for a streamlined appeal. Alternatively, in instances when the PEL is not sufficient, PHAs may submit either a Specific Local Conditions appeal, or, if they have two FDS submissions made in compliance with asset management requirements, they may submit an Actual Costs appeal.

#### *20.2.2 Special Local Conditions Appeal Requirements*

For "specific local conditions" appeals and "substitute actual project cost data" appeals, the PHA must acquire, at its own expense, an independent cost assessment. The cost assessment must assume full funding levels. Assessments must fully disclose any adjustments made to the FDS data including the amount of each adjustment, the reason for each adjustment, the adjustment

method and citation of source documents. Where potentially necessary adjustments identified in this notice are not made, the assessment must provide a justification. Supporting documentation must be included if necessary to provide a complete understanding of the adjustments. Assessments must present the entire PHA's portfolio in a table format and include the data identified below for each individual project.

|  | Specific Local Conditions | Actual Costs |
|---|---|---|
| Occupancy Type | X | N/A |
| Building Type(s) | X | N/A |
| Number of Units | X | For each year in assessment |
| Current PEL Per Unit Month | X | For each year in assessment |
| Requested PEL Per Unit Month | X | X |

For "specific local conditions" appeals of the PHA's independent cost assessor's report must compare costs for comparable affordable housing properties (for cost items included in the PEL) to the PEL for each of their public housing projects. The data showing comparable affordable housing properties must be adjusted so that the expenses included are comparable to the expense categories included in the PEL.

In summary, the properties must be comparable to the PHA's properties, and the expense items included in the assessment must be comparable to the PEL. The PHA's Public Housing properties do not constitute comparable properties for the purpose of a specific local conditions appeal. Rather they are the actual properties, with data from them (FDS data) being used for actual cost appeals as described below. PHAs may not submit hybrid appeals, using both data from comparable properties and data from the PHA's own Public Housing properties.

Comparable data can be inflated through 2026 using the PEL inflation factor. Generally, comparable market data is at least one year old. Because insurance costs are the main driver for many PEL appeals, and further because of recent volatility in insurance costs, if a PHA can obtain more current market level insurance data, that may be used as part of the specific local conditions PEL appeal.

The independent assessment must derive a portfolio level PEL PUM by weighing the PEL of each project based on the number of units. Similarly, the independent cost assessment must weigh the proposed PEL for each project based upon comparable property types of each building by the number of units in the buildings for each property type. For example, if there were 60 units in row/townhouse properties and 40 in walkup/garden properties, the proposed PEL PUM for row/townhouse would be weighted 60 percent, and the proposed PEL PUM for walkup/garden would be weighted 40 percent. The person performing the assessment must have appropriate knowledge of multifamily operating costs within the local market.

Data cited in the assessment must be verifiable by HUD with complete source identification. Itemized comparative data must include locality, occupancy type, and building type.

Adjustments made to the cited data to make it comparable to cost elements are included in the PEL.[8]

### 20.2.3 Actual Costs Eligibility Requirements

For "actual costs" appeals the independent cost assessor's report must adjust the FDS data such that only PEL-related costs are included. FDS data can be inflated through 2026 using the PEL inflation factor.

The PEL represents the normal expenses to operate Public Housing projects, excluding utilities and add-ons. Costs associated with the PEL are administration, management fees, maintenance, protective services, leasing, occupancy, staffing, and other expenses such as property insurance. Any FDS-reported costs not allocable to PEL must be removed from the analysis. As such, operating costs reported in the FDS should be adjusted to back-out costs attributable to utilities (UEL) and add-ons. The FDS data should be adjusted to remove any non-front line operating costs. Front-line costs are defined in the Supplement to HUD Handbook 7475.1 REV., CHG-1, Financial Management Handbook. PEL costs do not include costs paid for by the Capital Fund. The FDS operating expense data should be adjusted to remove any expensed item paid for with Capital Funds.

FDS operating expense data for mixed-finance projects typically only include Operating Funds transferred to the owner entity. Non-PEL elements of the grant funds must be backed out of the transfer. To accomplish this, utilizing data from the Operating Subsidy forms (Forms HUD-52722 and 52723) for the year in question, undertake the following calculation:

- Add the total PEL, UEL, add-ons, and transition funding to derive total expenses.
- Divide the PEL by total expenses to derive the PEL expense percentage (this is the percentage of total expenses attributable to the PEL).
- Multiply the amount transferred to the owner entity that is reported as an operating expense in the FDS by the PEL expense percentage.
- Subtract any Capital Funds transferred to the owner entity that is reported as an operating expense in the FDS.
- The result is the amount of funds transferred to the owner entity reported as an expense in the FDS that can be included in the cost assessment.

**Bad debt is contra-revenue.** The Operating Fund Formula, created via negotiated rulemaking, did not factor collection losses into Formula Income, nor is bad debt part of the PEL. Therefore, the FDS must be adjusted to remove bad debt expenses.

The PEL assumes limited employee benefits. According to the Harvard Cost Study, HUD's PEL formula does not need to include additional costs for employee benefits "even when State and local practices (either by custom or by statute) result in higher than private operator levels of

---

[8] For definition of building types, see Public and Indian Housing IMS/PIC Development Submodule User Manual.

wages and benefits" because "even when local or State benefit packages are mandated, PHAs are free to compete with lower wages to offset the higher benefits." In their appeal submissions, PHAs must identify the costs associated with salaries and, separately, employee benefits. Employee benefits include payroll taxes, State/Federal unemployment insurance, health insurance, retirement (separately identifying pensions and other post-employment benefits to the extent applicable), and disability insurance, but not worker's compensation. HUD will only consider staff and employee benefit costs consistent with the norms identified above. PHAs should adjust their FDS data where it exceeds these norms.

Energy performance contracts provide additional funding eligibility to PHAs in the form of EPC incentives included in the Formula. The EPC Program is structured such that, if performing in accordance with the PHA's application, EPC costs are covered by incentives. Given the above, the FDS data must be adjusted to remove any EPC-related costs. Such costs may include M&V, equipment replacements, maintenance for equipment maintenance not covered under the PEL, resident training, and any other costs approved by HUD as part of the EPC.

PHAs report Income Statements for both the Capital Fund Program and Low-Rent Public Housing. Only expenses for the Low-Rent Program should be included in the PEL analysis. The independent cost assessment must be included in the PHA's submission to HUD and must include comparable data.

### 20.2.4 Impact of Stop Loss on PEL Appeals

Stop Loss eligibility, stops the reduction of the amount PHAs received for the Allowable Expense Level (AEL) under the Performance Funding System (PFS), which was the precursor to the Operating Fund Program, and the Operating Funds' PEL, thereby increasing the PEL. Thus, Stop Loss must be considered part of the PEL for the purpose of PEL appeals. For example, if a project's Form HUD-52723 shows PEL eligibility of $1,000,000, and Stop Loss of $100,000, for the purpose of the PEL appeal the PEL would be considered $1,100,000.

### 20.2.5 Appeal Submission Timelines

PHA appeals for "changing market conditions" are to be submitted to the Field Office Director of Public Housing and staff point of contact no later than August 29, which is 30 days prior to publication. Because changing market conditions appeals cannot be retroactive and must be on a reporting period basis for the entire reporting period as outlined in Notice PIH 2024-03 this provides sufficient time for the field office to review and respond prior to the start of the next Reporting Period. For the 2027 reporting period only, which begins on July 1, 2025, these appeals can be retroactive to the beginning of the reporting period. However, for all future years the deadline for PHAs to make submissions will be May 31 or the first business day thereafter if it falls on a weekend or Federal holiday.

Streamlined "local conditions," and "actual project cost data" appeals must be sent by email to OBPHFMDHUD@hud.gov with the subject line "Appeal under 24 CFR 990.245." These appeals must be sent within 120 days of the deadline for PHA's initial submission of CY 2026 Forms HUD-52722 and 52723. If the deadline falls on a weekend or Federal holiday, the deadline will be the next business day. As a necessary condition for an appeal submission, it is required that CY 2026 Forms HUD-52722 and 52723 must have been submitted and accepted by

HUD beforehand. The PHA **must** also provide a copy of the appeal to the Director of Public Housing and staff point of contact at the local HUD field office.

Final appeal decisions will be issued no later than 15 days prior to the revision deadline. If a PEL appeal is granted, HUD will deploy new Forms HUD-52722 and 52723 to the Public Housing Portal. The PHA must then submit revised Forms HUD-52722 and 52723 by the revision deadline. After the form is processed, HUD will adjust the PHA's Operating Subsidy Grant by the appropriate amount, which will be retroactive to the beginning of the year.

## 21. RENTAL ASSISTANCE DEMONSTRATION (RAD)

### 21.1 Funding

For units that convert, through the remainder of the first Calendar Year (i.e., the "Initial Year") in which a Housing Assistance Payment (HAP) contract is effective, Operating Subsidy Grants will be obligated to the PHA for the Covered Project based on Operating Subsidy Grant eligibility calculated as it is normally. Without regard to the converted units,[9] PHAs must submit Forms HUD-52722 and 52723 and follow the normal Operating Subsidy Grant process (including revisions where corrections are needed) for the project for the Initial Year.[10]

The amount of Operating Subsidy Grants that can be used for HAP payments during the initial year is capped at HUD's Operating Subsidy Grant obligations to the project for the remainder of the year of conversion, prorated by the portion of units in the project that are converting and will be removed from IMS/PIC (Operating Subsidy transfer cap). In the year after the HAP effective date, the converted units shall not receive any further Operating Subsidy Grant.

PHAs are reminded that they may not contribute Public Housing Program funds to projects post-RAD conversion beyond the operating subsidy transfer cap identified above unless those public housing funds (Operating Subsidy and/or Capital Funds) have been identified in the RAD Conversion Commitment (RCC) and those public housing funds are converted at closing for Section 8 RAD purposes. When a unit is approved but not removed via Section 18 and subsequently converts through RAD, the unit will be identified in IMS/PIC as approved for removal via Section 18 until it converts through RAD. Such units must be transferred to the RAD application in IMS/PIC immediately before the conversion occurs.

For partial conversions, the rolling base must be adjusted in the Operating Subsidy Grant submission the year after the HAP effective date. Please see the instructions for Form HUD-52722 (available on the Operating Subsidy Grant Processing webpage and HUDClips) for details on adjusting the rolling base. Also, the webpage includes further guidance on adjusting the rolling base when units are removed from inventory.

---

[9] For example, a RAD closing on December 10 will result in a HAP Contract that is effective on January 1 or February 1. For the remainder of the Calendar Year which includes the January 1 or February 1 date, this action will not impact the Operating Subsidy Grant.
[10] The HAP effective date is the day on which HAP payments begin.

Projects that are fully converted through RAD with HAP effective dates in 2025 or before are not eligible for the CY 2026 Operating Subsidy Grant.

For projects that are fully converted with HAP effective dates before 2025, or in 2025 if the conversion happened early in 2025, HUD will not deploy Form HUD-527223 or HUD-52723 for 2026 for the project. However, if the conversion happened late in 2025, HUD may deploy Forms HUD-52722 and 52723 and/or fund the project in error because of the timing of data availability. If Form HUD-52722 and HUD-52723 are deployed for a project for 2026 but that project is fully converted and has a 2025 HAP effective date, the PHA must not submit Forms HUD-52722 and 52723. If such a project is funded in 2026, the PHA must not draw down funds and must notify its field office that the project should not have been funded.

The PHA and field office must ensure that no EUMs for units that converted through RAD are included in Forms HUD-52722 and 52723 for projects that are partially converted with HAP effective dates in 2025 or before. For projects that close early in the year prior to the funding year, HUD will remove EUMs from the RAD units from Section 2 of Form HUD-52723. In all instances, the field office and PHA must ensure that the EUMs from converted units are removed.

> *21.2 Designation of Units Converting through RAD as Vacant for Modernization*

Units in a project with a commitment to execute a HAP approval, which the PHA plans to modernize and are vacant because a PHA has not reoccupied them in preparation for modernization pursuant to a RAD conversion plan, can be considered as "units undergoing modernization" provided it complies with 24 CFR 990.145. Such vacant units may be categorized as undergoing modernization for a maximum of two years (24 months) prior to RAD conversion (i.e., HAP effective date). See Notice PIH 2024-03 for more information on the unit status Vacant for Modernization.

Vacant units converting through RAD that will not be modernized are not eligible to be categorized as units undergoing modernization.

## 22. TURNKEY III PROJECTS

Funding requests for the Turnkey III Program that use Form HUD-53087 "Calculation of Subsidies for Operations: Non-Rental Housing" are accepted only for projects/units under the final lease-purchase agreement for closing out the program. These requests must have supporting documentation, including ACC and active lease purchase agreements. New lease/purchase agreements will not be funded. A PHA needs to provide the status of the properties addressing the following:

- Are units still occupied by a family under an option to purchase under a homeownership agreement?
- What is the remaining term of the agreement?

If there is no effective contract with the residents and the PHA is under the Faircloth limit, the PHA may apply under the 24 CFR part 905 acquisition development method to make these properties public housing rental units. These units will otherwise be ineligible for Operating

Subsidy funding as Turnkey III units. Once the units are transitioned to regular public housing units, the PHA must ensure that the units' IMS/PIC program type is changed to Low Rent. The submission deadline for Turnkey projects is the same as that for the initial submission of Forms HUD-52722 and 52723. Turnkey III submissions after the deadline will not be accepted and projects will be ineligible for funding that year.

## 23. ENVISION CENTER PARTICIPATION

HUD EnVision Centers provide communities with a centralized hub for support in economic empowerment, educational advancement, health/wellness, as well as character and leadership development. EnVision Center participation for predominant use by public housing residents can be assisted with Operating Subsidy Grants. A unit allocated for the center will be classified as one of the HUD-approved vacant units used for resident services, resident organization offices, and related activities such as self-sufficiency and anti-crime initiatives pursuant to 24 CFR 990.145(a)(2) and as such should be reported in Section 2, Line 06 of Form HUD-52723.

## 24. THE FAIRCLOTH LIMIT

Section 9(g)(3) of the United States Housing Act of 1937 (Faircloth Amendment) limits the number of public housing units that may receive public housing funding. The Faircloth Amendment stipulates that the Department cannot fund the construction or operation of new public housing units with Capital Funds or Operating Subsidy if the construction of those units would result in a net increase in the number of units the PHA owned, assisted, or operated as of October 1, 1999. This requirement is referred to as the Faircloth Limit. The Faircloth Limit is adjusted for PHA transfers of units under ACC, consolidations, and RAD removals. PHAs will not be funded for those units that exceed the posted Faircloth Limit and are responsible for reviewing Faircloth limits and notifying HUD if it believes its posted Faircloth Limit is in error. PIH's Capital Programs Division determines the Faircloth Limit. Additional information on how the Capital Programs Division determines the Faircloth limit can be found on the Office of Capital Improvements webpage.

Because the Operating Subsidy Grant is calculated on an EUM basis, the Faircloth Limit is converted to unit months attributable to a funding year (the Faircloth Unit Month Limit) before being posted on the Operating Subsidy Grant Processing webpage. Where the aggregate of unit months (Form HUD-52723, Section 2, Column A, Line 15 minus Line 4) for all PHA's projects exceeds the Faircloth Unit Month Limit, the excess units must be removed from the PHA's Operating Subsidy Grant forms.

Removal of excess units shall be accomplished by reducing Line 1 and Line 3 in Columns A, B, and C of Section 2 Form HUD-52723, beginning with the most recently added project to inventory. If the total number of unit months in the most recently added projects is less than the excess units, Line 1 and Line 3 of the next newest project added to inventory shall be reduced in the same manner until no excess units remain. It is important to note that appropriate adjustments need to be made to the EUMs on Form HUD-52722 whenever units are being reduced on Form HUD-52723.

## 25. PHA BOARD RESOLUTION

Pursuant to 24 CFR 990.315, PHAs are required to prepare an operating budget and have it reviewed and approved by its Board of Commissioners. The PHA Board Resolution (Form HUD-52574) approving the PHA's operating budget must be signed by the board chair or executive director (as authorized). PHAs must submit their Form HUD-52574 in the Public Housing Portal on or before the start of the PHA's fiscal year. The table below presents due dates for Form HUD-52574. Only one Board Resolution needs to be submitted per PHA, regardless of the number of projects.

| PHA Fiscal Year End | PHA Fiscal Year Beginning | PHA Board Resolution Due |
|---|---|---|
| December 31 | January 1 | January 1 |
| March 31 | April 1 | April 1 |
| June 30 | July 1 | July 1 |
| September 30 | October 1 | October 1 |

## 26. RECORD RETENTION

HUD regulations at 24 CFR 990.325 require PHAs to retain documents related to all financial management and activities funded under the Operating Subsidy Grant for five fiscal years after the fiscal year in which the funds were received. However, the OMB super circular at 2 CFR 200.334(b) provides that "financial records, supporting documents, statistical records, and all other non-Federal entity records pertinent to a Federal award must be retained for a period of three years from the date of submission of the final expenditure report," which may be longer than the requirement at 24 CFR 990.325.

HUD is clarifying that the record-retention requirement for Operating Subsidy Grants beginning with CY 2026 is the longer of five years after the fiscal year in which funds are received by the PHA, or three years from the date the PHA submits a final SF-425 for the grant showing all funds obligated, drawn down, and liquidated.

If HUD determines that a recipient has failed to comply with its financial accounting, documentation, and reporting responsibilities, it is authorized to initiate additional conditions or sanctions, as stipulated in 2 CFR 200.208 and 200.339. These include requiring payment as reimbursements rather than advance payments, requiring PHAs to obtain technical or management assistance, requiring prior approvals of vouchers, disallowing costs in whole or in part, and terminating the recipient's HUD-funded grant in whole or in part.

## 27. PERIOD OF PERFORMANCE

Pursuant to the ACC, PHAs must comply with all applicable statutes, executive orders, and regulations, including all Regulations at Title 2 of the Code of Federal Regulations and Title 24 of the Code of Federal Regulations.

The Operating Subsidy Period of Performance (also known as the grant period) for each grant year shall begin with the PHA's initial receipt of grant funds and end on the date identified in the table below. PHAs should be cognizant that the Period of Performance for Operating Subsidy Grants may end sooner for PHAs exiting public housing. LOCCS will be restricted 120 days after the end of the Period of Performance (which is usually April 30 but could be a different

date for PHAs exiting public housing if the Period of Performance does not end on December 31). PHAs will no longer be permitted to draw down additional funds once LOCCS is restricted after 120 days from the Period of Performance end date. Additional information regarding the requirements for the Period of Performance can be found in Notice PIH 2019-13.

PHAs shall not obligate or expend any grant funds that are not obligated by the end of the Period of Performance. Any funds that are not obligated by the end of the Period of Performance must be returned to HUD.

Any funds that are obligated by the end of the Period of Performance must be liquidated within 120 days. The PHA cannot liquidate any obligations that are not liquidated within this timeframe. Any obligations that are not liquidated within this 120-day timeframe must be returned to HUD pursuant to 2 CFR 200.313 (e).

PHAs should contact their field office for instructions on how to return funds.

| Federal Fiscal Year | Period of Performance Ending |
|---|---|
| FY 2021 | 12/31/2027 |
| FY 2022 | 12/31/2028 |
| FY 2023 | 12/31/2029 |
| FY 2024 | 12/31/2030 |
| FY 2025 | 12/31/2031 |

## 28. EXPENDITURE REPORTING

HUD is implementing new grants management and reporting tools, which will be rolled out for your use in the near term. As a grantee, you will be required to report on grant performance and financial activities (including vendor and cash disbursement supporting details for yourself and your sub-recipients) using these new tools when it is released. HUD will work with you to support your transition to this new reporting environment. Once implemented, timely reporting in this new environment will be mandatory. HUD reserves the right to exercise all available rights and remedies for any noncompliance with these grants management and financial reporting requirements, to include requiring 100 percent review or stopping future disbursements altogether if reporting is not submitted on time.

## 29. POST-AWARD REQUIREMENTS AND ADMINISTRATION.

General administrative and eligibility requirements are posted on the HUD Policies and Regulations website and updated annually. To receive an award, you must adhere to the applicable requirements at the time of application. You must also adhere to the applicable requirements for the life of any award to remain eligible for the award.

## 30. PAPERWORK REDUCTION ACT

The information collection requirements contained in this notice have been approved by OMB under the Paperwork Reduction Act of 1995 (44 U.S.C. §3520) and assigned OMB approval numbers 2577-0026, 2577-0029, 2577-0157, and 2577-0246. In accordance with the Paperwork

Reduction Act, HUD may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a currently valid OMB number.

## 31. PENALTY FOR FALSE CLAIMS AND STATEMENTS

Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement for up to 5 years, fines, and civil and administrative penalties (e.g., 18 U.S.C. §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. §3729, 3802).

PHAs should contact their field office if they have any questions about the information included in this notice.

Benjamin Hobbs
Principal Deputy Assistant Secretary
Office of Public and Indian Housing



EXHIBIT C

Docusign Envelope ID: E8241353-C17A-4404-9BA9-894404EEBB27

HUD-50077-CRT-SM

Status: Submitted

| Certifications of Compliance with PHA Plan and Related Regulations (Small PHAs) | U.S. Department of Housing and Urban Development Office of Public and Indian Housing OMB No. 2577-0226 Expires 09/30/2027 |
|---|---|

## PHA Certifications of Compliance with PHA Plan, Civil Rights, and Related Laws and Regulations including PHA Plan Elements that Have Changed

*Acting on behalf of the Board of Commissioners of the Public Housing Agency (PHA) listed below, as its Chairperson or other authorized PHA official if there is no Board of Commissioners, I approve the submission of the __ 5-Year and/or X Annual PHA Plan, hereinafter referred to as "the Plan" of which this document is a part, and make the following certification and agreements with the Department of Housing and Urban Development (HUD) for the PHA fiscal year beginning 10/2025 in which the PHA receives assistance under 42 U.S.C. 1437f and/or 1437g in connection with the submission of the Plan and implementation thereof:*

1. The Plan is consistent with the applicable comprehensive housing affordability strategy (or any plan incorporating such strategy) for the jurisdiction in which the PHA is located (24 CFR § 91.2).

2. The Plan contains a certification by the appropriate State or local officials that the Plan is consistent with the applicable Consolidated Plan, which includes a certification that requires the preparation of an Analysis of Impediments to Fair Housing Choice (AI) or Assessment of Fair Housing (AFH) as applicable, for the PHA's jurisdiction and a description of the manner in which the PHA Plan is consistent with the applicable Consolidated Plan (24 CFR §§ 91.2, 91.225, 91.325, and 91.425).

3. The PHA has established a Resident Advisory Board or Boards, the membership of which represents the residents assisted by the PHA, consulted with this Board or Boards in developing the Plan, and considered the recommendations of the Board or Boards (24 CFR § 903.13). The PHA has included in the Plan submission a copy of the recommendations made by the Resident Advisory Board or Boards and a description of the manner in which the Plan addresses these recommendations.

4. The PHA certifies that the following policies, programs, and plan components have been revised since submission of its last Annual PHA Plan (check all policies, programs, and components that have been changed):

___ 903.7a Housing Needs

___ 903.7b Deconcentration and Other Policies Governing Eligibility, Selection, Occupancy, and Admissions Policies

___ 903.7c Financial Resources

___ 903.7d Rent Determination Policies

_X_ 903.7h Demolition and Disposition

___ 903.7k Homeownership Programs

___ 903.7r Additional Information

___ A. Progress in meeting 5-year mission and goals

___ B. Criteria for substantial deviation and significant amendments

___ C. Other information requested by HUD

Docusign Envelope ID: E8241353-C17A-4404-9BA9-894404EEBB27

HUD-50077-CRT-SM

— 1. Resident Advisory Board consultation process
— 2. Membership of Resident Advisory Board
— 3. Resident membership on PHA governing board

Docusign Envelope ID: E8241353-C17A-4404-9BA9-894404EEB827

HUD-50077-CRT-SM

The PHA provides assurance as part of this certification that:

(i) The Resident Advisory Board had an opportunity to review and comment on the changes to the policies and programs before implementation by the PHA;

(ii) The changes were duly approved by the PHA Board of Directors (or similar governing body); and

(iii) The revised policies and programs are available for review and inspection, at the principal office of the PHA during normal business hours.

5. The PHA made the proposed Plan and all information relevant to the public hearing available for public inspection at least 45 days before the hearing, published a notice that a hearing would be held and conducted a hearing to discuss the Plan and invited public comment.

6. The PHA certifies that it will carry out the public housing program of the agency in conformity with title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d-2000d—4), the Fair Housing Act (42 U.S.C. 3601-19), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), title II of the Americans with Disabilities Act (42 U.S.C. 12101 et seq.), and other applicable civil rights requirements and that it will affirmatively further fair housing in the administration of the program. In addition, if it administers a Housing Choice Voucher Program, the PHA certifies that it will administer the program in conformity with the Fair Housing Act, title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, title II of the Americans with Disabilities Act, and other applicable civil rights requirements, and that it will affirmatively further fair housing in the administration of the program.

7. The PHA will affirmatively further fair housing, which means that it will take meaningful actions to further the goals identified in the Assessment of Fair Housing (AFH) conducted in accordance with the requirements of 24 CFR § 5.150 through 5.180, that it will take no action that is materially inconsistent with its obligation to affirmatively further fair housing, and that it will address fair housing issues and contributing factors in its programs, in accordance with 24 CFR § 903.7(o)(3). The PHA will fulfill the requirements at 24 CFR § 903.7(o) and 24 CFR § 903.15(d). Until such time as the PHA is required to submit an AFH, the PHA will fulfill the requirements at 24 CFR § 903.7(o) promulgated prior to August 17, 2015, which means that it examines its programs or proposed programs; identifies any impediments to fair housing choice within those programs; addresses those impediments in a reasonable fashion in view of the resources available; works with local jurisdictions to implement any of the jurisdiction's initiatives to affirmatively further fair housing that require the PHA's involvement; and maintains records reflecting these analyses and actions.

8. For a PHA Plan that includes a policy for site-based waiting lists:

- The PHA regularly submits required data to HUD's 50058 PIC/IMS Module in an accurate, complete and timely manner (as specified in PIH Notice 2010-25);

- The system of site-based waiting lists provides for full disclosure to each applicant in the selection of the development in which to reside, including basic information about available sites; and an estimate of the period of time the applicant would likely have to wait to be admitted to units of different sizes and types at each site;

- Adoption of site-based waiting lists would not violate any court order or settlement agreement or be inconsistent with a pending complaint brought by HUD;

- The PHA shall take reasonable measures to assure that such waiting list is consistent with affirmatively furthering fair housing; and

- The PHA provides for review of its site-based waiting list policy to determine if it is consistent with civil rights laws and certifications, as specified in 24 CFR 903.7(c)(1).

9. The PHA will comply with the prohibitions against discrimination on the basis of age pursuant to the Age Discrimination Act of 1975.

Docusign Envelope ID: E8241353-C17A-4404-9BA9-894404EEB827

HUD-50077-CRT-SM

10. In accordance with 24 CFR § 5.105(a)(2), HUD's Equal Access Rule, the PHA will not make a determination of eligibility for housing based on sexual orientation, gender identify, or marital status and will make no inquiries concerning the gender identification or sexual orientation of an applicant for or occupant of HUD-assisted housing.

11. The PHA will comply with the Architectural Barriers Act of 1968 and 24 CFR Part 41, Policies and Procedures for the Enforcement of Standards and Requirements for Accessibility by the Physically Handicapped.

12. The PHA will comply with the requirements of Section 3 of the Housing and Urban Development Act of 1968, Employment Opportunities for Low-or Very-Low Income Persons, and with its implementing regulation at 24 CFR Part 135.

13. The PHA will comply with acquisition and relocation requirements of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 and implementing regulations at 49 CFR Part 24 as applicable.

14. The PHA will take appropriate affirmative action to award contracts to minority and women's business enterprises under 24 CFR 5.105(a).

15. The PHA will provide the responsible entity or HUD any documentation that the responsible entity or HUD needs to carry out its review under the National Environmental Policy Act and other related authorities in accordance with 24 CFR Part 58 or Part 50, respectively.

16. With respect to public housing the PHA will comply with Davis-Bacon or HUD determined wage rate requirements under Section 12 of the United States Housing Act of 1937 and the Contract Work Hours and Safety Standards Act.

17. The PHA will keep records in accordance with 24 CFR 85.20 and facilitate an effective audit to determine compliance with program requirements.

18. The PHA will comply with the Lead-Based Paint Poisoning Prevention Act, the Residential Lead-Based Paint Hazard Reduction Act of 1992, and 24 CFR Part 35.

19. The PHA will comply with the policies, guidelines, and requirements of 2 CFR Part 200, Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Financial Assistance, including but not limited to submitting the assurances required under 24 CFR §§ 1.5, 3.115, 8.50, and 107.25 by submitting an SF-424, including the required assurances in SF-424B or D, as applicable.

20. The PHA will undertake only activities and programs covered by the Plan in a manner consistent with its Plan and will utilize covered grant funds only for activities that are approvable under the regulations and included in its Plan.

21. All attachments to the Plan have been and will continue to be available at all times and all locations that the PHA Plan is available for public inspection. All required supporting documents have been made available for public inspection along with the Plan and additional requirements at the primary business office of the PHA and at all other times and locations identified by the PHA in its PHA Plan and will continue to be made available at least at the primary business office of the PHA.

22. The PHA certifies that it is in compliance with applicable Federal statutory and regulatory requirements, including the Declaration of Trust(s).

Housing Authority of the City of Salem

PHA Name

___ 5-Year PHA Plan for Fiscal Years 20 _20_

**OR011**

PHA Number/HA Code

__X__   Annual PHA Plan for Fiscal Year 2025

I hereby certify that all the information stated herein, as well as any information provided in the accompaniment herewith, is true and accurate. **Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802).

| Name of Executive Director:   **MS Nicole Utz** | Name of Board Chairman:   **Linda Nishioka** |
|---|---|

Docusign Envelope ID: E8241353-C17A-4404-9BA9-894404EEBB27

HUD-50077-CRT-SM

Signature _Signed by: Nicole Utz_    Date 7/24/2025

Signature _Signed by: Linda ↑ Mslushka_    Date 7/24/2025

The United States Department of Housing and Urban Development is authorized to solicit the information requested in this form by virtue of Title 12, U.S. Code, Section 1701 et seq., and regulations promulgated thereunder at Title 12, Code of Federal Regulations. Responses to the collection of information are required to obtain a benefit or to retain a benefit. The information requested does not lend itself to confidentiality. This information is collected to ensure compliance with PHA Plan, Civil Rights, and related laws and regulations including PHA plan elements that have changed.

Public reporting burden for this information collection is estimated to average 0.16 hours per year per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. HUD may not collect this information, and respondents are not required to complete this form, unless it displays a currently valid OMB Control Number.

**Form identification:** *OR011-Housing Authority of the City of Salem form HUD-50077-CRT-SM (Form ID – 208) printed by Nicole Utz in HUD Secure Systems/Public Housing*

*Portal at 07/24/2025 06:06PM EST*



# EXHIBIT D

# MFSC Grant Renewal through 12/31/2025; Original Award 1/1/2017

## Post Acceptance Notice of Award, Article X – Certifications

Thank you for contacting GrantSolutions Technical Support. To accept your grant, please have your Authorizing Official log into GrantSolutions, and on "My Grants List" screen, click on the downward arrow next to his/her initial on top right corner, scroll down to Pending Grants and click on on it. Click on Accept under Action and follow the prompt to accept the award.

**Pending Grants**

| Grant Number | Issued Date | Program | Program Office | Grant Program | Action |
|---|---|---|---|---|---|
| MFSC176025-01-12 | 09/22/2025 | Multifamily Housing | Service Coordinators (MFH) (SCMF) | Service Coordinators in Multifamily Housing (MFSC) | View Award Accept Decline |

**Accepted Grants**

There are no Accepted Grants

Please note that only an Authorizing Official can accept a Grant award.

This ticket will now close, please do not reply to this email. A response may result in the loss of your information. For future support, please submit a new email to: help@grantsolutions.gov

# My Grants List (Switch to New Experience)

## TETON NON-PROFIT HOUSING CORPORATION                    Show Expired Grants

| | | |
|---|---|---|
| Grant Number: | MFSC176025-01-12 | View NGA |
| Grant Program: | Service Coordinators in Multifamily Housing (MFSC) | Grant Notes |
| Program Office: | HUD Central Office | Funding Restrictions |
| Project Title: | CY2025 Service Coordinator Grant Renewal | History |
| Award Issue Date: ⓘ | 10/03/2025 | Manage Amendments |
| Project Period: | 01/01/2017 to 12/31/2025 | |
| Budget Period: | 01/01/2017 to 12/31/2025 | |
| Total Approved Budget (Federal): | $281,703.00 | |
| Next T&C Due Date: | N/A | |
| Status: | No Existing Amendments | |

NGA dated 9/22/2025

Accepted

ARTICLE X - CERTIFICATIONS The grantee certifies that it shall comply with the provisions of the Fair Housing Act (42 U.S.C. 3601-3619); Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2010d); Executive Order 11063 as amended by Executive Order 12259 (3 CFR 1958-1963 Comp., p. 652 and 3 CFR 1980 Comp., p. 307); Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794); the Age Discrimination Act of 1975 (42 U.S.C. 6101-6107); Section 3 of the Housing and Urban Development Act of 1968 (12 U.S.C. 1701u), Executive Order 11246 (3 C.F.R. 1964-1965 Comp., p. 339), Executive Orders 11625, 12432, 12138, EO 14219, Ensuring Lawful Governance and Implementing the Presidentís ìDepartment of Government Efficiencyî Deregulatory Initiative; EO 14218, Ending Taxpayer Subsidization of Open Borders; EO 14202, Eradicating Anti-Christian Bias; EO 14205, Establishment of the White House Faith Office; EO 14182, Enforcing the Hyde Amendment; EO 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity; EO 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal

Government; EO 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing; and EO 14148, Initial Rescissions of Harmful Executive Orders and Actions and all implementing regulations issued pursuant to these statutes and authorities. By accepting the grant renewal, the grantee agrees that it will comply in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for the purposes of section 3729(b)(4) of title 31, United States Code; and certifies that it does not operate any programs promoting Diversity, Equity, and Inclusion (DEI) that violate any applicable Federal anti-discrimination laws. EO 14218 prohibits HUD from making financial assistance available to persons other than United States citizens or certain categories of eligible noncitizens in Federal grant programs. This means that HUD grantees Docusign Envelope ID: 6244BBF8-75FA-49A7-AB71-7682E16F602D have an obligation to ensure that grant monies and benefits do not go to unqualified aliens.

10/13/25, 9:30 AM                                          GrantSolutions

[J Blakely] | GrantSolutions-11.2.4 10/09/2025 | Back

GrantSolutions.gov

| Account Management ▽ | Funding Opportunity ▽ | Applications | Grants ▽ | Online Data Collection | Help/Support ▽ |

🔖 Page Help

# GrantSolutions Application Control Checklist

## Awarded  (Read Only)

This is your GrantSolutions Application Control Checklist (EACC). You will use the EACC to track the status of your application.

To complete your application electronically, enter information by using the online forms and/or adding attachments (upload/mail-in). Required items are noted by the exclamation point image.  If an enclosure has not been verified, a red 'X' image is displayed.

To review the grant announcement and application kit details, including all guidance and requirements, please click here.

Please verify that all documents submitted with the application package appear as expected in the Original Submission PDF. Not all file types may accurately print to PDF.

**Print Application:**

Original Submission

| | |
|---|---|
| Applicant | Teton Non-Profit Housing, Inc. |
| Application Number | SCMF17001121 |
| Program | MFH - Multifamily Housing |
| Announcement | Fiscal Year (FY) 2017 Service Coordinator in Multifamily Housing Grant Program |
| Service Area | HUD Central Office |
| Project Title | Multifamily Service Coordinator position at Englewood East Apartments. Provides supportive services to 52 seniors and disabled residents. |
| Due Date | 08/30/2019 05:00 PM (GMT - 05:00) Eastern Time (US & Canada) |
| Submitted Date | 12/27/2016 12:58 PM Eastern Time |

| Online Forms | Enclosure(s) | Attachment(s) | Status |
|---|---|---|---|
| SF-424 Application for Federal Assistance Version 2 | View Online<br>Print Completed<br>No Comments Entered | N/A | ✓ |
| **Additional Information to be Submitted** | **Enclosure(s)** | **Attachment(s)** | **Status** |
| HUD-91186-A | View Web Page<br>No Comments Entered | 1 Uploaded Files<br>0 Mail-In Items | ✓ |
| **Information for the Applicant** | **Enclosure(s)** | **Attachment(s)** | **Status** |
| FY2017 Service Coordinator Extension - Full Announcement Information | View PDF<br>View Original Version | N/A | ⌣ |

**Post Submission Supplemental Information**

| Description | Attachment(s): Uploaded Files |
|---|---|
| | No Attachments Uploaded |

**Application Package Status:** Awarded

**Mail-In Package Information:** Service Coordinators (MFH) (SCMF) is currently not expecting to receive a Mail-In Package for this application.

[ Close ]

**Submission Notice**

GrantSolutions does not hold any responsibility for data loss prior to your submission. Your electronic submission components will be confirmed by an on-line acknowledgement and you will also receive an acknowledgement of receipt by regular postal mail when all mail-in attachments of the application package have been received. Please be aware that even if

you submit the electronic portion of your application, GrantSolutions will NOT consider your application complete unless GrantSolutions receives all the required attachments by the due date requirements specified in the grant announcement. Please be sure to label all your correspondence with the correct application number.

**GrantSolutions User Support | (866) 577-0771 | help@grantsolutions.gov**

Contact Us  |  Web Accessibility  |  Privacy and Security Notice  |  Freedom of Information Act  |  Disclaimers  |  Feedback

10/13/25, 9:31 AM                                    GrantSolutions

[JBlakely] | GrantSolutions-11.2.4 10/09/2025 | Back

GrantSolutions.gov

| Account Management | ⇥ | Funding Opportunity | Applications | Grants | ⇥ | Online Data Collection | Help/Support | ⇥ |

# Application Status Confirmation

Grants has marked the following application as "Awarded"....

| | |
|---|---|
| Applicant | Teton Non-Profit Housing, Inc. |
| Application Number | SCMF17001121 |
| Program | MFH - Multifamily Housing |
| Announcement | Fiscal Year (FY) 2017 Service Coordinator in Multifamily Housing Grant Program |
| Region | HUD Central Office |
| Project Title | Multifamily Service Coordinator position at Englewood East Apartments. Provides supportive services to 52 seniors and disabled |
| residents. | |
| Due Date | 06/30/2019 05:00 PM (GMT - 05:00) Eastern Time (US & Canada) |
| Submitted Date | 12/27/2016 12:58 PM Eastern Time |

## Application Details

| Items | Item Attachments | | |
|---|---|---|---|
| | Type | Date Expected | Date Received |
| **SF-424 Application for Federal Assistance Version 2** | | | |
| Areas-Affected Attachment | OnlineForms-Upload | N/A | 12/27/2016 |
| Additional Project Title-Explanation Attachment | OnlineForms-Upload | N/A | 12/27/2016 |
| **HUD-91186-A** | | | |
| HUD91186-A | Upload | N/A | 12/27/2016 |

Application Control Checklist

GrantSolutions

Contact Us | Web Accessibility | Privacy and Security Notice | Freedom of Information Act | Disclaimers | Feedback

| 1. DATE ISSUED *MM/DD/YYYY* | 1a. SUPERSEDES AWARD NOTICE dated | |
|---|---|---|
| 09/22/2025 | except that any additions or restrictions previously imposed remain in effect unless specifically rescinded | THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT |

| 2. ASSISTANCE LISTING NUMBER |
|---|
| 14.191 - Multifamily Housing Service Coordinators |

451 7Th Street S W
Washington, DC 20410-0001

| 3. ASSISTANCE TYPE    Block Grant | |
|---|---|
| 4. GRANT NO. MFSC176025-01-12 Formerly | 5. TYPE OF AWARD Other |
| 4a. FAIN  MFSC176025 | 5a. ACTION TYPE Post Award Amendment |

**NOTICE OF AWARD**

| 6. PROJECT PERIOD | *MM/DD/YYYY* | | *MM/DD/YYYY* |
|---|---|---|---|
| From | 01/01/2017 | Through | 12/31/2025 |
| 7. BUDGET PERIOD | *MM/DD/YYYY* | | *MM/DD/YYYY* |
| From | 01/01/2017 | Through | 12/31/2025 |

| 8. TITLE OF PROJECT (OR PROGRAM) |
|---|
| CY2025 Service Coordinator Grant Renewal |

| 9a. GRANTEE NAME AND ADDRESS | 9b. GRANTEE PROJECT DIRECTOR |
|---|---|
| TETON NON-PROFIT HOUSING CORP 2735 12th St SE Salem, OR 97302-3186 | Mrs. Kalena Plath 360 Church St SE Salem, OR 97301-3707 Phone: 503-373-3809 |

| 10a. GRANTEE AUTHORIZING OFFCIAL | 10b. FEDERAL PROJECT OFFICER |
|---|---|
| Mrs. Kalena Plath 360 Church St SE Salem, OR 97301-3707 Phone: 503-373-3809 | Ms. Elizabeth Fernandez 451 7th Street S W Washington, DC 20410-0001 Phone: 202 402 6763 |

**ALL AMOUNTS ARE SHOWN IN USD**

| 11. AWARD COMPUTATION FOR GRANT | | 14. THIS AWARD IS BASED ON AN APPLICATION SUBMITTED TO, AND AS APPROVED BY, HUD ON THE ABOVE TITLED PROJECT AND IS SUBJECT TO THE TERMS AND CONDITIONS INCORPORATED EITHER DIRECTLY OR BY REFERENCE IN THE FOLLOWING: |
|---|---|---|
| a. Amount of HUD Financial Assistance | 281,703.00 | |
| b. Less Unobligated Balance From Prior Budget Periods | 0.00 | a.    The grant program legislation cited in remarks or attachment below. |
| c. Less Cumulative Prior Award(s) This Budget Period | 246,493.00 | b.    The grant program regulations cited in remarks or attachment below. |
| d. AMOUNT OF FINANCIAL ASSISTANCE THIS ACTION | 35,210.00 | c.    This award notice including terms and conditions, if any, noted below under REMARKS. |
| 12. Total Federal Funds Awarded to Date for Project Period | 281,703.00 | In the event there are conflicting or otherwise inconsistent policies applicable to the grant, the above order of precedence shall prevail. Acceptance of this award by the grantee acknowledges acceptance of these terms and conditions. |

| 13. RECOMMENDED FUTURE SUPPORT |
|---|
| ( Subject to the availability of funds and satisfactory progress of the project): |

| YEAR | TOTAL DIRECT COSTS | YEAR | TOTAL  DIRECT COSTS |
|---|---|---|---|
| a. | | d. | |
| b. | | e. | |
| c. | | f. | |

REMARKS    (Other Terms and Conditions Attached -  ● Yes    ○ No)

This Notice of Award obligates funding at 100% of the requested and approvable amount, minus any offset amount if applicable, providing funding for Calendar Year 2025, January 1, 2025 through December 31, 2025. Terms and Conditions apply to this grant award.

12-Month Authorized Amount: $39,799.00
CY2024 Offset: $4,589.00

| GRANTS MANAGEMENT OFFICER: | ISSUE DATE: | GRANTEE ACCEPTANCE: | ACCEPTANCE DATE: |
|---|---|---|---|
| Jared Machado 451 7th Street S W Washington, DC 20410-0001 Phone: (202) 402-8201 | 09/22/2025 | Jessica Blakely, Director - Development and Strategy | 10/03/2025 |

| 15. OBJ CLASS 410001 | 16a. VENDOR CODE 930775337 | 16b. EIN 930775337 | 17a. UEI J8PZRSML11G9 | 17b. DUNS 171044766 | 18. CONG. DIST. 05 |
|---|---|---|---|---|---|
| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | AMT ACTION FIN ASST | | APPROPRIATION |
| 19. a. 5-SC2528 | b.   MFSC176025 | c. MFSC | d. | $35,210.00 | e. |
| 20. a. | b. | c. | d. | | e. |
| 21. a. | b. | c. | d. | | e. |

NOTICE OF AWARD (Continuation Sheet)

| PAGE  2 of 2 | DATE ISSUED 09/22/2025 |
|---|---|
| GRANT NO.    MFSC176025-01-12 | |

REMARKS:

This Notice of Award obligates funding at 100% of the requested and approvable amount, minus any offset amount if applicable, providing funding for Calendar Year 2025, January 1, 2025 through December 31, 2025. Terms and Conditions apply to this grant award.

12-Month Authorized Amount: $39,799.00
CY2024 Offset: $4,589.00

# AWARD ATTACHMENTS

TETON NON-PROFIT HOUSING CORP                                           MFSC176025-01-12

1. CY 2025 SCMF/CHSP Terms and Conditions



3. Notes of any relevant meetings or discussions.
4. Service coordinator/aide job position descriptions.
5. Copies of pay statements.
6. Invoices for purchasing of goods or services.
7. Records of other administrative costs.
8. Official grant documents.
9. Information from HUD.

**C. Confidentiality.** The Service Coordinator shall maintain confidential files on residents served. Service Coordinators shall keep paper files in a locked filing cabinet and protect all electronic resident files with a personal password. Service coordinators may maintain resident files electronically, on paper, or in both formats.

Property management staff may have access to a Service Coordinator's confidential resident files only if the files contain a "release of information" consent form signed by the resident. A release of information form must clearly indicate which parties may have access to a resident's file. Such parties might include the property management staff and HUD/Contract Administration staff. Service Coordinators must only share resident files with those parties listed on the signed form for the purpose indicated on the consent form. If a resident has not signed the consent form, the parties listed may not read that resident's file. While Service Coordinators may not share resident files with management staff without a signed consent form, they may disclose residents' personal information to management staff if the information falls within the three following categories:

- Abuse to self or others,
- Illegal activity, or
- Potential lease violation.

These categories serve as guidelines to Service Coordinators and property management staff. The Service Coordinator must determine if the resident's confidential information will significantly affect the safety and security of that individual, other residents, management staff, or the housing site itself. Service Coordinators and other program staff must also maintain confidential VAWA-related information, including the fact that an individual is a victim of domestic violence, dating violence, sexual assault, or stalking.  Confidentiality requirements and exceptions are identified in HUD's VAWA regulation. 24 CFR § 5.2007(c).

Service Coordinators are prohibited from accessing a tenant's Enterprise Income verification (EIV) documents, except in situations where the Service Coordinator is assisting a resident during an occupancy recertification. Residents must be present during the recertification.

Service Coordinators may have access to a resident's "Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures", form HUD-50059, only if a resident has signed a consent form agreeing to this. Residents may also share the copy of their 50059 forms with Service Coordinators at their own discretion. Service Coordinators may have access to non-EIV documents in the property management's resident files, provided that the resident has signed a consent form permitting this access.



## ARTICLE V - OTHER PROGRAM REQUIREMENTS

**A. Private Office.** The Grantee shall make sufficient on-site, accessible, and entirely private office space available for the Service Coordinator and/or aide, to allow for confidential meetings with residents. Such office space shall be provided as a permanent private office with a door, ceiling, and four walls.

The office must be accessible to individuals with disabilities and meet the Uniform Federal Accessibility Standards (UFAS) requirements of accessibility or HUD's Notice on "Instructions for use of alternative accessibility standard" ("Deeming Notice"). 79 Fed. Reg. 29671 (May 23, 2014). Refer to the United States Access Board website, https://www.access-board.gov/aba/ufas.html for more information. The appropriate HUD Regional/Satellite Office must approve both the proposed costs and activities associated with
creating a new office space. Expenses must be one-time only start-up costs and
may include acquisition, leasing, rehabilitation, or conversion of space.

**B. Training.** Service Coordinators funded through this grant shall meet all training requirements and follow all training guidelines as set forth in the Management Agent Handbook 4381.5, REV-2, CHG-2, Chapter 8, Section 8.9 and other HUD guidance. Reasonable and relevant travel costs associated with training are allowable program costs.

**C. Insurance Coverage.** The Grantee shall obtain and carry adequate insurance coverage to protect itself against any potential liabilities arising out of any eligible activities under this program.

**D. Record Retention.** The Grantee must comply with the record retention requirements described in 2 CFR §200.334. Financial records, supporting documents, statistical records, and all other non-Federal entity records pertinent to a Federal award must be retained for a period of three years from the date of submission of the final expenditure report or, for Federal awards that are renewed annually, from the date of the submission of the last semi-annual financial report, respectively, as reported to the Federal awarding agency.

**E. Waste, Fraud, Abuse, and Whistleblower Protections.** Any person who becomes aware of the existence or apparent existence of fraud, waste or abuse of any HUD award must report such incidents to both the HUD official responsible for the award and to HUD's Office of Inspector General (OIG). HUD OIG is available to receive allegations of fraud, waste, and abuse related to HUD programs via its hotline number (1-800-347-3735) and its online hotline form. You must comply with 41 U.S.C. § 4712, which includes informing your employees in writing of their rights and remedies, in the predominant native language of the workforce. Under 41 U.S.C. § 4712, employees of a contractor, subcontractor, grantee, and subgrantee—as well as a personal services contractor—who make a protected disclosure about a Federal grant or contract cannot be discharged, demoted, or otherwise discriminated against as long as they reasonably believe the information they disclose is evidence of:

1. Gross mismanagement of a Federal contract or grant;
2. Gross waste of Federal funds;
3. Abuse of authority relating to a Federal contract or grant;
4. Substantial and specific danger to public health and safety; or
5. Violations of law, rule, or regulation related to a Federal contract or grant.



**F. Drug-Free Workplace.** You as the grantee must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 CFR part 2429, which adopts the governmentwide implementation (2 CFR part 182) of sections 5152-5158 of the Drug-Free Workplace Act of 1988 (Pub. L. 100-690, Title V, Subtitle D; 41 U.S.C. 701-707).

**G. Conflicts of Interest.** Potential conflicts of interest must be disclosed in writing per 2 CFR 200.112.

**H. Mandatory Disclosures.** Pursuant to 2 CFR 200. 113, Grantee must disclose, in a timely manner, in writing to HUD all violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the grant award. Failure to make required disclosures can result in any of the remedies described in 2 CFR 200.339. Delinquent Federal Debts. Consistent with the purposes and intent of 31 U.S.C. 3720B 41 and 28 U.S.C. 3201(e), Grantees with an outstanding federal debt must provide to HUD a negotiated repayment schedule which is not delinquent or have made other arrangements satisfactory to HUD. If arrangements satisfactory to HUD cannot be completed within 90 days of notification of selection, HUD will not make an award of funds to the Grantee but offer the award to the next eligible Grantee. Applicants selected for funding, or awarded funds, must report to HUD changes in status of current agreements covering federal debt. If a previously agreed-upon payment schedule has not been adhered to or a new agreement with the federal agency to which the debt is owed has not been signed, the Grantee will be considered to be in default under this Agreement.

**I. Compliance with the Federal Funding Accountability and Transparency Act of 2006** (Pub. L. 109-282) (Transparency Act), as amended and 2 CFR 170, as amended. Please refer to www.fsrs.gov for complete information on requirements under the Transparency Act and OMB guidance.

## ARTICLE VI - QUALITY ASSURANCE

If Quality Assurance (QA) is included as a program expense in the Grantee's budget, the Grantee shall comply with the following items:

**A.** Eligible QA activities are those that evaluate the Grantee's program to assure that the position and program are effectively implemented. The Grantee's QA activities shall identify short-term and long-term program outcomes and performance indicators that will help measure program performance. QA activities shall include one program evaluation review six months following the Program's start date and then at least one review every 12 months thereafter.

**B.** Qualifications for QA providers include at a minimum:
1. Education or licensing in either social work or a related health care field,
2. Work experience in social or health care services, and
3. At least 3 years supervisory experience.

**C.** Individuals who may perform Quality Assurance include:
1. A third-party contractor (such as staff of an Area Agency on Aging), or
2. Staff of an owner or managing agent corporation who work in a central or regional office and who do not perform activities routinely assigned to the property management agent.

On-site housing management staff cannot perform Quality Assurance work and the current



salaries of in-house staff may not be augmented for this purpose. The QA provider may not be the Service Coordinator's first line supervisor. These are two distinct roles which must remain separate.

**D.** The Grantee shall submit documentation (for example, a resume) to HUD indicating the qualifications of the individual employed to perform Quality Assurance. The Grantee shall submit such documentation with the first grant reimbursement request for QA services. The Grantee shall also maintain the documentation in their program files for future reference.

**E.** To demonstrate work performed by the QA professional, the Grantee shall provide copies of all written evaluation reports provided by the QA provider to the Service Coordinator during the period of each federal fiscal year (i.e. October 1 through September 30). Copies must be sent to the appropriate Regional/Satellite office staff on or before October 30 of each year.

The Grantee shall provide copies of such reviews with each LOCCS voucher review that requests grant funds to reimburse QA expenses.

**F.** HUD will only approve use of grant funds to pay QA expenses if the Grantee can demonstrate that an appropriate service was provided to the Service Coordinator and the Grantee.

## ARTICLE VII - AMENDMENTS

**A.** Any amendment request must be approved by the appropriate HUD Regional/Satellite office staff before proceeding with any changes to the approved budget. Amendments must reflect the rights and obligations of all parties and shall be executed by HUD and the Grantee, through the Notice of Award

**B.** If there is a change in ownership of the lead property served by this grant, it is the responsibility of the Grantee to notify their Grant Specialist immediately.

## ARTICLE VIII - CHANGES TO NOTICE OF AWARD (NOA)

**A.** If an ownership change occurs after an award has been issued, the new entity will be required to submit a new application. Any new users that were not processed during the initial renewal submission period will be processed on a quarterly schedule, beginning the first quarter after the deadline date. The GrantSolutions record and the eLOCCS account associated with the old ownership entity will be closed out.

**B.** **Address Changes.** The ownership entity must complete HUD-27056, Change of Address Request for Recipients of HUD Grants or Contracts Form and email executed form to their Grant Specialist.

**C.** **Banking Information.** If there is new banking information, an SF-1199A Direct Deposit Sign-Up form and voided check, or a letter from the bank stating account number and routing number, is required and should be submitted in Grant Notes in GrantSolutions.

## ARTICLE IX - GRANT CLOSEOUT

**A.** 2 CFR 200 prescribes uniform closeout procedures for Federal grants.

**B.** The grantee shall comply with all closeout reporting requirements and shall submit closeout reports in a timely manner.

**C.** The closeout process may entail a review by HUD staff to determine compliance with this NOA by the grantee and all participating parties. The grantee shall cooperate with any review in any way possible, including making available records requested by HUD staff for inspection.



**D.** When HUD has determined to its satisfaction that the grant activities were completed, and all Federal requirements were satisfied, HUD staff will prepare and execute a closeout agreement in consultation with the grantee. The agreement will identify any unused funds to be deobligated (recaptured) by HUD.

**E. Closeout of Award.** HUD staff must conduct the necessary reviews to ascertain that the statutory, regulatory, and programmatic requirements have been met prior to closing out a grant. Closeout is subject to any of the following criteria:

1. The Grantee did not initiate a request for a renewal in the prior performance period.
2. The Grantee no longer satisfies the eligibility requirements.
3. The Grantee no longer wishes to participate in the Service Coordinator program and alerts the Grant Specialist.
4. Grantee fails to comply with reporting requirements.
5. Non-responsiveness.
6. The Service Coordinator position has been absorbed into the budget.
7. The Grantee fails to report the Service Coordinator position has been vacant for 90 days and does not submit an action plan.
8. The Service Coordinator position has been vacant for 180 days and the Grantee cannot provide supporting documentation that they have been actively working to fill the position.
9. The Service Coordinator position has remained vacant for 365 days.

## ARTICLE X - CERTIFICATIONS

The grantee certifies that it shall comply with the provisions of the Fair Housing Act (42 U.S.C. 3601-3619); Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2010d); Executive Order 11063 as amended by Executive Order 12259 (3 CFR 1958-1963 Comp., p. 652 and 3 CFR 1980 Comp., p. 307); Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794); the Age Discrimination Act of 1975 (42 U.S.C. 6101-6107); Section 3 of the Housing and Urban Development Act of 1968 (12 U.S.C. 1701u), Executive Order 11246 (3 C.F.R. 1964-1965 Comp., p. 339), Executive Orders 11625, 12432, 12138, EO 14219, Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative; EO 14218, Ending Taxpayer Subsidization of Open Borders; EO 14202, Eradicating Anti-Christian Bias; EO 14205, Establishment of the White House Faith Office; EO 14182, Enforcing the Hyde Amendment; EO 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity; EO 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government; EO 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing; and EO 14148, Initial Rescissions of Harmful Executive Orders and Actions and all implementing regulations issued pursuant to these statutes and authorities. By accepting the grant renewal, the grantee agrees that it will comply in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for the purposes of section 3729(b)(4) of title 31, United States Code; and certifies that it does not operate any programs promoting Diversity, Equity, and Inclusion (DEI) that violate any applicable Federal anti-discrimination laws. EO 14218 prohibits HUD from making financial assistance available to persons other than United States citizens or certain categories of eligible noncitizens in Federal grant programs. This means that HUD grantees



have an obligation to ensure that grant monies and benefits do not go to unqualified aliens.

## ARTICLE XI – DEFAULT

Default under this NOA shall consist of:

**A.** Any use of grant funds for a purpose other than as authorized by this Agreement,

**B.** Any material noncompliance with regulations, Federal, State, or local law as determined by HUD,

**C.** Any other material breach of this Notice of Award, or

**D.** If HUD determines preliminarily that the Grantee is in default, HUD will give the Grantee notice of this determination and the corrective or remedial action proposed by HUD. The Grantee shall have an opportunity to demonstrate, within the time prescribed by HUD (not to exceed 30 days from the date of the notice), and on the basis of facts and data, that it is not in default, or that the proposed corrective or remedial action is inappropriate, before HUD implements the corrective or remedial action.

Where HUD determines that corrective or remedial actions by the Grantee have not been undertaken as instructed, or will not be effective to correct the default and to prevent further default, HUD may take the following additional corrective and remedial actions under this NOA:

1. Temporarily withhold payments until the Grantee takes corrective action.
2. Disallow all or part of the activity or action not in compliance.
3. Wholly or partly suspend or terminate the grant.
4. Initiate suspension or debarment proceedings are authorized under 2 CFR 2424.
5. Withold new or continued funding for the program.
6. Take any other remedies that may be legally available, including requiring reimbursement by the Grantee for amounts used improperly.

## ARTICLE XII - JOINT AGENCIES UNDER THIS AWARD

This Article pertains to grants awarded to a combination of separate owners.

The designated lead agency is the official funding recipient. As such, the lead agency performs functions including the following:

1. Maintaining the eLOCCS account,
2. Drawing down and dispersing grant funds,
3. Paying the salary of the Service Coordinator and related administrative expenses,
4. Monitoring the work of the Service Coordinator, and
5. Submitting all required reports to their Grant Specialist.

All owners of properties served by the Service Coordinator under this NOA must sign the NOA. By doing so, all entities are legally bound to comply with all the terms and conditions set forth in this Agreement. Should one or more parties not comply at any time, HUD has the right to drop the proportion of the Service Coordinator's time at the related property.

Non-lead owners, in complying with this NOA, are responsible for monitoring the time and work of



the Service Coordinator at their sites and for assuring that the lead agency has the proper information it needs to submit required reports to HUD and to maintain the grant's LOCCS account.

All parties involved in this NOA may, on their own, make any other mutually beneficial arrangements for the proper administration of this grant.

## ARTICLE XIII – TERMINATION OF AWARD

HUD may terminate an award if a grant has been inactive for more than 180 days and the Grantee fails to provide a justification and has not complied with HUD's request to satisfy the terms of the agreement. If an owner's eligibility status changes during the course of a funding period, making the owner ineligible to receive Service Coordinator grant funding, HUD has the right to terminate this award. A change in eligibility status may be due to prepayment of the mortgage, sale of the property, or opting out of an assistance contract. Owners are encouraged to communicate with their assigned Grant Specialist to minimize any interruptions to future grant funding. HUD staff must notify the Grantee of HUD's intention to terminate the grant.



EXHIBIT E



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
**WASHINGTON, D.C. 20410–8000**

OFFICE OF PUBLIC AND INDIAN HOUSING

| | |
|---|---|
| **Special Attention of:** | **Notice PIH 2025–24** |
| Public Housing Agencies | |
| Multifamily PBRA Project Owners | **Issued:** September 26, 2025 |
| | |
| | **Expires:** This notice remains in effect until amended, superseded, or rescinded. |
| | |
| | **Supersedes:** Notice PIH 2025-16 |

---

**SUBJECT:    FY 2025 Family Self-Sufficiency Grant Program Annual Funding Notification and Application Process**

## I.    PURPOSE

This notice provides guidance to public housing agencies (PHAs) and Project-Based Rental Assistance (PBRA) owners seeking Family Self-Sufficiency (FSS) grant funding. This notice contains the specific application criteria and funding process for the Fiscal Year (FY) 2025 FSS competition.

This notice should be read together with Notice PIH 2025-15, Family Self-Sufficiency Grant Program General Funding Requirements and Procedures – Revised, which establishes general application and program administration requirements related to the FSS program.

Funding for this program in FY25 is authorized by the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119-4), approved March 15, 2025.

## II.    APPLICATION PROCESS

This section provides additional requirements beyond those found in Notice PIH 2025-15. It is important that you review this section in conjunction with Section III— "Application Process" of Notice PIH 2025-15 during the completion of your application. Further and more detailed application instructions, videos, webinars, frequently asked questions, etc., may be provided on HUD's FSS webpage: https://www.hud.gov/hud-partners/family-self-sufficiency.

**A.  All Applicants.** You must complete the following steps before you can apply for funding. These steps can take time to process, so please complete them as soon as possible to avoid delays in your ability to apply for, receive, or access any award:

1.  **System for Award Management (SAM) & Unique Entity Identifier (UEI):** You must have a current and active SAM.gov registration and active UEI in

SAM.gov at the time of application and throughout the life of the award. You <u>must</u> renew your UEI annually to keep it active. You <u>cannot</u> apply for funding, and we <u>cannot</u> issue you an award, if your SAM registration or UEI are inactive.

2. **GrantSolutions:** Ensure that your organization has an active Authorized Organizational Representative (AOR) in <u>GrantSolutions</u>. If you do not already have an AOR to your organization, or do not know who your AOR is, or if they are no longer part of your organization, submit a <u>Grantee User Account Request form</u> to GrantSolutions, copying <u>FSS@HUD.gov</u>, so that we can assign your organization an AOR. You <u>must</u> have an AOR to apply for funding or accept any award.

B. <u>**Renewal Applicants.**</u>  You may apply for FSS funding through a Directed Announcement on GrantSolutions if you meet all applicable requirements under the FSS Funding Notices (Notice PIH 2025-15 and this Notice) and have been funded in the FY22, FY23, or FY24 FSS Funding Notices or FSS Notices of Funding Opportunity (NOFO).

1. **Application Notification.**  On or after the publication date of this notice, all eligible renewal applicants' AORs will receive an email notification from GrantSolutions inviting them to apply. If you do NOT receive an email from GrantSolutions, please ensure that you have completed the mandatory steps above before contacting <u>FSS@HUD.gov</u> for support.

2. **Priority Deadline.**  To be awarded renewal funds before January 1, 2026, or to be considered for Expansion Positions (as defined in Notice PIH 2025-15) under this notice, you should apply by October 29, 2025, at 11:59 p.m. Eastern Daylight Time (EDT).

3. **Late Applications.**  Any applications received after this deadline may not be guaranteed funding, although every effort will be made to provide renewal funding if available.

C. <u>**New Applicants.**</u>  If you have <u>not</u> been funded in the FY22, FY23, or FY24 FSS Funding Notices or FSS NOFO, and you are an otherwise Eligible Applicant under this FSS Funding Notice, you may submit a Statement of Interest via the FSS New Applicant posting on GrantSolutions to be considered as a New Applicant.

1. **Statement of Interest.**  Your New Applicant Statement of Interest should:
   a. Be on official organizational letterhead.
   b. Certify that you are an eligible applicant for FSS funding.
   c. Include a list specifying the names and contract numbers of the properties intended to be served under this application.
   d. Certify that you have the capacity to run an FSS program.
   e. Certify that you agree to meet all FSS program requirements.
   f. Certify that you will continue to serve all FSS participants throughout the duration of their Contracts of Participation (CoPs), regardless of whether you continue to receive funding under this or any subsequent FSS Funding Notice.
   g. Be signed and dated by an official authorized by your organization to request such funding.

2

2. **Applying for Funding.** If your Statement of Interest is accepted, you may then apply for funding through the instructions for Renewal Applicants above.
3. **No Guarantee of Funding.** Acceptance as a New Applicant is not a guarantee of funding, and New Applicants will only be funded in accordance with the FSS Funding Notices, subject to congressional appropriation.

## III. ELIGIBLE AND INELIGIBLE USES OF FUNDS

Review this section in conjunction with Section V, "Eligible and Ineligible Uses of Funds," of Notice PIH 2025-15 during the completion of the application.

    A. **Eligible Expenses.** Funds awarded to FSS grantees under this notice may only be used to pay the salary and fringe benefits of FSS program coordinators, including supervisors performing FSS program functions.

      1. **Training Stipend.** FSS applicants may include a training allowance in your calculation of salary and fringe benefits. This may include associated travel costs for out-of-area training and membership in professional organizations.
      2. **Job Sharing.** The funds awarded per eligible FSS coordinator position may support multiple staff through job sharing. However, the number of hours billed to the grant for each funded position may be no more than the "Full-Time Equivalent." This is typically 40 hours, unless defined differently for all employees at your organization.

    B. **Ineligible Expenses.** FSS funds must not be used for the following purposes (consistent with applicable statutory and regulatory requirements as well as applicable 2 CFR Part 200 requirements):

      1. Administrative expenses.
      2. Direct services for FSS program participants.
      3. The Resident Opportunities and Self-Sufficiency (ROSS), Jobs Plus, or other supportive services program.
      4. Routine Public Housing, PBRA, or Housing Choice Voucher (HCV) program functions, such as annual reexaminations.
        a. Programs may seek HUD approval to perform these functions only if all of the following conditions are met:
          i. They are only performing these functions for FSS participants;
          ii. Performing these functions enhances the effectiveness of the FSS program;
          iii. They are able to fully fulfill their primary roles as FSS coordinators; and
          iv. FSS coordinators are not being used to fill in or replace traditional staff.
      5. Homeownership functions performed for families not enrolled in the FSS program.
      6. A Contract Administrator, an overall Grant Administrator, or a Financial Management Agent that oversees the implementation or financial aspects of the grant.
      7. Indirect costs, including an Indirect Cost Rate.

## IV. ELIGIBLE AND INELIGIBLE APPLICANTS

Review this section in conjunction with Section VI, "Eligible and Ineligible Applicants," of Notice PIH 2025-15.

**A. <u>Verification of Eligibility</u>.** Applicants may be deemed ineligible if information provided on the application does not match PHA or PBRA owner information in HUD's administrative systems, such as the integrated Real Estate Management System (iREMS), Inventory Management System/Public and Indian Housing Information Center (IMS/PIC), or its successor.

**B. <u>Troubled PHAs</u>.** If you have been identified by HUD as Troubled in the Public Housing Assessment System (PHAS) or Section Eight Management Assessment Program (SEMAP), you are subject to a review, corrective action plan, and monitoring of your Public Housing or HCV program, including the FSS program, if applicable.[1]

1. **Recovery Agreement.** If deemed necessary by the local HUD field office, you will be required to enter into a Recovery Agreement with the HUD field office, which may include contracting with an entity acceptable to the HUD field office to act as Contract Administrator for the program. The HUD field office may also require a Recovery Agreement if you have had serious program management findings from Inspector General audits or serious outstanding HUD management review or Independent Public Accountant audit findings for your PH and HCV programs or your FSS program.

2. **Funding Contingency.** The HUD field office will work with you to put a Recovery Agreement in place prior to the funds being made available. If a Recovery Agreement is required, funding will be contingent upon execution of the Agreement. If the Recovery Agreement requires a Contract Administrator, funding cannot be disbursed until the Contract Administrator is in place, even if the Recovery Agreement has been executed.

**C. <u>Troubled PBRA Assets</u>.** A PBRA owner's FSS property that has a Risk Rating of Troubled with a Risk Rating of 1-3 at the time of application or award is ineligible to be funded, either individually or as part of a Joint Application. Ineligible properties may be removed from a Joint Application, so long as an eligible entity is made the Lead Applicant.

**D. <u>Meeting Departmental Requirements</u>.** Please note that the General Administrative, National, and Departmental Policy Requirements and Terms for HUD's Financial Assistance Programs and the General Statutory and Regulatory Requirements Affecting Eligibility for HUD's Financial Assistance Programs for FY 2025 are posted on HUD's Policies and Regulations webpage. In order to be eligible for an FSS grant, organizations must meet these requirements at the time of application and continue to meet them throughout the life of the grant.

---

[1] As required by HUD regulations at 24 CFR 902.73 and/or 24 CFR 985.107.

E. **Reporting Requirements.**  You must comply with the following reporting requirements to remain eligible for HUD funding.  See Section XI for remedies for noncompliance.

HUD is implementing new grants management and reporting tools, which will be rolled out for your use. As a grantee, you will be required to report on grant performance and financial activities (including vendor and cash disbursement supporting details for yourself and your sub-recipients) using these new tools when they are released.  Once the tools are available for use, HUD will work with you to support your transition to this new reporting environment.  Once implemented, timely reporting in this new environment will be mandatory.  HUD reserves the right to exercise all available rights and remedies for any noncompliance with these grants management and financial reporting requirements, to include requiring 100% review of grant vouchers or stopping future disbursements altogether if reporting is not timely submitted.

F. **Environmental Requirements.** In accordance with 24 CFR 50.19(b)(4) and (12), 58.34(a)(4), and 58.35(b)(2), activities funded under this Notice are exempt or categorically excluded from environmental review under the National Environmental Policy Act of 1969 (42 U.S.C. 4321) and not subject to environmental review under related laws and authorities.

V.  **JOINT APPLICANTS**

A. **Transferring or Consolidating FSS Programs.**  If an existing award has been transferred from one eligible entity to another under an active FSS program, the new entity will be treated as a Renewal Applicant for purposes of this notice.

1. **HUD Approval.**  Must be received in case of:
   a. *PHAs.*  Consolidation.
   b. *PBRA Owners.*  Transfer of physical assets or assignment of a Housing Assistance Payments (HAP) contract.

2. **Funding Formula Impact.**  A receiving FSS program under a program transfer or consolidation will be eligible for the combined renewal funding of the receiving and divesting FSS programs.  We will consider annual participant counts from all combined or transferred programs for purposes of determining eligible renewal positions.

3. **Impact on PBRA New Applications.**  If a grant has been accepted by a PBRA owner, it may be transferred to a new eligible ownership entity after closing, with HUD approval.  However, any transfer in ownership during the period between an application for FSS funding and execution of an FSS grant agreement may result in the application being deemed ineligible and removed from further consideration for funding, unless the application is updated to reflect new eligible ownership, with HUD approval.

5

**B.  FSS Applications with Multiple Applicants: Joint Applicants and Combining Programs.**  PHAs or PBRA owners may submit Joint Applications with other PHAs or PBRA owners for funding, combine programs, or enter into cooperative agreements with one another, provided that a Lead Applicant is designated.

    **1.  Designation of Lead Applicant.**  For the purposes of a joint FSS funding application or when executing a cooperative agreement, a single participating PHA or PBRA property must be designated as the Lead Applicant.

        **Mixed PHA and PBRA Owner Applications:** Any applications with joint PHA and PBRA owner applicants must have a PHA as the Lead Applicant.

    **2.  New Applicants.**  Every PHA or PBRA property that is part of a joint award must have a Cooperative Agreement prior to implementation of their FSS program.

    **3.  Renewal Applicants.**  If two or more PHAs or PBRA owners wish to operate a joint program, they may request that their grants be combined into one grant, provided a single Lead Applicant is designated, and FSS Action Plans for the affected properties are amended to reflect the changes.  The applicant for the combined grant must be PHA or PBRA owner of one of the properties served.

**C.  Removing Joint Applicants.**  If two or more Joint Applicants no longer wish to remain part of a Joint Application, the Lead Applicant on the Joint Application may remain eligible for renewal funding, along with any remaining Joint Applicants.

    **1.  Lead Applicant Remains.**  If the lead PHA or property owner remains part of the Joint Application, any properties that are removed from the Joint Application will no longer be eligible for renewal funding, and the withdrawing PHA or PBRA owner must apply as a New Applicant to receive future FSS funding.

    **2.  Lead Applicant Withdraws.**  If the Lead Applicant on a Joint Application withdraws from the application, another PHA or PBRA owner on the Joint Application may be designated as the new Lead Applicant at the time of application.

**D.  Cooperative Agreements.**  A PHA or PBRA property owner with an FSS program may serve the residents of another eligible nearby PBRA property via a Cooperative Agreement if their FSS coordinator has capacity to serve additional participants, as determined by the FSS grantee.

**E.  Program Impacts:**

    **1.  FSS Action Plans.**  Each entity that is part of a Joint Application or Cooperative Agreement must have, or develop, an approved FSS Action Plan.  The plans may be essentially the same, but demographic information must be broken out separately for each property and must specify any differences in how the FSS program operates at the different properties (such as different service partners).  A copy of the Action Plan and Action Plan checklist must be submitted for approval to the Account Executive (or Resolution Specialist) of each participating property.

2. **FSS Escrow and PBRA HAP Vouchering.** Each PHA or PBRA owner that is part of a Joint Application or Cooperative Agreement remains responsible for FSS Escrow management, including PBRA HAP Vouchering, and reporting, for their own residents.

3. **FSS Participant Count.** Participants from all PHAs or properties in a Joint Application or Cooperative Agreement will be included in the number of participants served for all purposes related to the grant.

4. **Honoring All Existing CoPs.** PHAs or property owners with active FSS programs must honor all existing CoPs, even if they no longer receive grant funding for any reason, including non-renewal of funding or splitting a Joint Application.

## VI. FUNDING PRIORITY

Review this section in conjunction with Section VII, "Funding Priority," of Notice PIH 2025-15.

A. <u>Renewal Awards</u>. Eligible programs funded in FY22, FY23, or FY24 may request Renewal Funding under this 2025 Funding Notice.

1. **Ratio of Participants to Positions.** The ratio of participants to eligible FSS Positions is as follows:

| Participants | Positions |
|---|---|
| 15-24 | 1 FSS part-time position |
| 25-74 | 1 FSS full-time position |
| 75-124 | 2 FSS full-time positions |
| Each additional 50 participants | 1 additional FSS Full-time Position |

- **Example**: Last year, you were funded for 1 Full-time Position.
  - Last year, you served 60 participants.
  - Two years ago, you served 70 participants.
  - Three years ago, you served 80 participants.
- Your highest number of participants is 80, so your Participant Count is 80.
- For 2 Full-time Positions, you need 75-125 participants, which you qualify for based on your Participant Count of 80.
- Therefore, you may request 2 positions:
  - 1 Full-time Renewal Position
  - 1 Full-time Expansion Position, based on your Participant Count.

B. <u>Expansion Positions</u>. Renewal awards are eligible for Expansion Positions under this 2025 Funding Notice. Eligible requests for Expansion Positions will be considered, however HUD does not anticipate that there will be sufficient funding available for new Expansion Positions. Consistent with the 2024 Consolidated Appropriations Act, HUD will not utilize the FSS Achievement Metrics (FAM) score in the determination of which grantees will be awarded Expansion Positions under the FY25 funding cycle.

C. **New Applicants.**  Under this Funding Notice, New Applications will be accepted but may only be considered for funding if all Expansion Positions are fully funded. Unfunded New Applicants that remain eligible may be funded in the future, pending funds availability and congressional appropriations.

D. **Incentives for Innovation and High Performance.**  There is no set-aside for incentives for innovation and high performance in this Funding Notice.

## VII. FUNDING FORMULAS

Review this section in conjunction with Section VIII, "Funding Formula," of Notice PIH 2025-15.

A. **The Bureau of Labor Statistics (BLS) Locality Pay Data.**  The BLS median salary for the job title "Social Worker: Other" in your ZIP Code.

1. **BLS Data Source.**  You can look up the BLS data for your ZIP Code online at: www.careeronestop.org/Toolkit/Wages/find-salary.aspx.
   a. *Determining your ZIP Code*
      i. **Local PHAs:** The ZIP Code of the Lead Applicant from your last application on record, as validated by HUD data systems, such as IMS/PIC or its successor.
      ii. **State-wide PHAs:** Use State-level data for your state.
      iii. **PBRA Properties:** The property ZIP Code of the Lead Applicant (PHA) or Lead Property (PBRA owner) from your last application on record, as validated by HUD data systems, such as iREMS.

B. **Eligible Positions.**  The number of eligible positions is based on the Participant Count, except for new grantees and applicants, as follows: A count of 15 participants is needed for a Part-time Position, 25 participants for a Full-time Position, 75 for a second Full-time Position, continuing in this manner with an additional position at intervals of 50.

1. **Participant Count.**  The highest annual Participant Count in the past three calendar years.
   a. *Initial Moving to Work (MTW) PHAs:* For the 2025 Annual Funding Notice, you must request a link to submit your Annual Participant Counts for CY24, CY23, and CY22 in a self-certification report.
   b. *Expansion MTW PHAs:* For the 2025 Annual Funding Notice, if you have been holding your 50058 submissions, you may request a link to submit your Annual Participant Counts for CY24, CY23, and CY22 in a self-certification report, if a self-certification would impact your eligibility.
   c. *PHAs serving PBRA Properties:* You must indicate if your PHA is serving a PBRA property and include the Multifamily Contract Number for each property.  We will then add the number of participants you served at these properties to your participant count for each year, as reported in the Multifamily FSS Annual Report.
   d. *All other PHAs:* Determined by grantee-entered information reported in PIC. If the data reported into IMS/PIC is incorrect and would result in the loss of

eligibility for a position, you may request a link to submit your Annual Participant Counts for CY24, CY23, and CY22 in a self-certification report.

  e. *PBRA Owners:* Participant number will be taken from FSS Multifamily Annual Report.

  f. *New Grantees within the past three years of the year this notice is posted:* A minimum of one Full-time Eligible Position.

  g. *New Applicants:* Exactly one Full-time Initial Position in the first year of funding.

C. **Funding Limits.**

  1. **Funding Floor.** For the 2025 Annual Funding Notice, the Funding Floor is Eligible Positions multiplied by $43,680.

  2. **Funding Ceiling.** For the 2025 Annual Funding Notice, the Funding Ceiling is Eligible Positions multiplied by $195,200, which is the annual rate of basic pay payable for a position at level IV of the Executive Schedule.

D. **Renewal Funding.**

  1. **Submitting a Funding Request.** Applicants will submit their funding requests using SF-424.

      i. In line 18.a. (federal), enter the amount requested from HUD for the FY25 award (Period of Performance is CY26). The dollar amount entered in 18.a. must include the dollar amount for fringe benefits, if applicable.

          1) HUD reserves the right to request more information or send a deficiency request.

  2. **Annual Cost Adjustment.** For the 2025 Annual Funding Notice, the Annual Cost Adjustment is up to two and a half percent (2.5%).

  3. **Initial Renewal Funding.** Initial Renewal Funding is based on the previous year's eligible award, whether funded or not, plus the Annual Cost Adjustment, up to the Funding Ceiling.

  4. **Requesting a Funding Modification.** Renewal Applicants may request a Funding Modification, so long as the request represents an accurate estimation of anticipated eligible costs.

      a. *Renewal Funding Increase.* Upon request, a Renewal Applicant's funding request may be increased up to 10% above the higher of:

          i. Renewal Funding, and

          ii. Their Eligible Positions, multiplied by the BLS locality pay data + 40%, up to the Funding Ceiling, or

          iii. A greater amount with adequate justification, if approved by HUD, up to the Funding Ceiling.

      b. *Renewal Funding Decrease.* Upon request, a Renewal Applicant's funding request may be decreased to the lower of:

          i. Their Funding Floor, or

          ii. A lesser amount with adequate justification, if approved by HUD, but under no circumstance less than the local, State, or Federal Minimum Wage (for the 2024 Funding Notice, $7.25 an hour, or $15,080 annual full-time pay) per Eligible Position.

9

5. **Funding Offset.** <u>You should ensure timely expenditure of your current FSS funds, as your expenditure rate of the current award at the time funding determinations are made may be used to prorate your award for the next year.</u> The use of a Funding Offset will not affect renewal eligibility. Please see Notice PIH-2025-15 for more information and an example of the offset procedure.

## VIII.  GRANT TERM

Under this Funding Notice, the Period of Performance will be CY 2026 (January 1, 2026-December 31, 2026). Pursuant to 2 CFR 200.308(g)(2), HUD authorizes grantees to initiate a one-time extension for FY25 funds until December 31, 2027, if the grantee notifies HUD in writing with the supporting justification and its proposed revised period of performance at least 10 calendar days before the end of the period of performance—i.e. by December 21, 2026. **Please note:** Extensions are not authorized for the sole purpose of using unobligated balances.

## IX.  ACCEPTING AN AWARD

Review this section in conjunction with Section X, "Accepting an Award," of Notice PIH 2025-15.

A. <u>**Confirming Ownership of Lead Property.**</u>  For New PBRA Owner Applicants, before an award is made, HUD will confirm whether the Lead Property ownership entity that applied still owns the Lead Property at the time of award.  This may be determined by changes in the UEI and/or Tax ID Number (TIN).  If the Lead Property ownership has changed, another eligible property on the application may become the Lead Property at the time of award.

B. <u>**Accessing Funds in the electronic Line of Credit Control System (eLOCCS).**</u> FSS funds will be disbursed in eLOCCS, in accordance with the Grant Agreement.

All grantees should have already obtained access to eLOCCS or should begin the process of obtaining access.  Obtaining access to eLOCCS requires HUD approval and can be a lengthy process.  If your organization does not currently have eLOCCS access, HUD encourages you to begin the process as soon as possible in the event that your organization is awarded funds under this notice.  Should you not get eLOCCS approval in sufficient time, you could potentially face a lapse in availability of FSS program coordinator funding.

Visit:
https://www.hud.gov/program_offices/cfo/finsys/eLOCCS_access/quick_reference
for the steps to gain access to eLOCCS through HUD's Secure Systems platform.

## X. REMEDIES FOR NONCOMPLIANCE AND TERMINATION

HUD may terminate all or a part of your award pursuant to the terms and conditions of the Federal award as described under 2 CFR 200.340-343, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities.  HUD may also impose specific conditions on your award or take other remedies as described by 2 CFR 200.339-343 if you do not comply with your award terms and conditions. Additional remedies for noncompliance may be found in applicable HUD statutes and regulations pertaining to the FSS program and may also be restated in your grant agreement.

## XI. PRESIDENTIAL EXECUTIVE ACTIONS AFFECTING FEDERAL FINANCIAL ASSISTANCE PROGRAMS

Regarding current and future Presidential Actions, all recipients of Federal financial assistance are responsible for making sure activities funded by Federal awards comply with applicable existing and future executive orders and other Presidential Actions, as advised by the Department, whether the recipients carry out those activities.  The list below highlights some of the executive orders and related guidance that apply to recipients of HUD's financial assistance programs, but is not an exhaustive list of all executive orders applicable to HUD awards: EOs 14219 (*Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative*); 14218 (*Ending Taxpayer Subsidization of Open Borders*); guidance issued by the White House Task Force established by EO 14202 (*Eradicating Anti-Christian Bias*) and the Senior Advisor to the White House Faith Office assigned by EO 14205 (*Establishment of the White House Faith Office*); 14182 (*Enforcing the Hyde Amendment*); 14173 (*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*); 14168 (*Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*); 14151 (*Ending Radical and Wasteful Government DEI Programs and Preferencing*); and *14148 (Initial Rescissions of Harmful Executive Orders and Actions*).

Recipients may find additional executive orders at the following webpage:  Presidential Actions – The White House.

## XII. NOTICE IMPACT DETERMINATION RELATED TO THE ENVIRONMENT

This Notice provides funding under 24 CFR part 984, which concerns activities that are listed in 24 CFR 50.19(b) as categorically excluded from environmental review under the National Environmental Policy Act of 1969 (42 USC § 4321) ("NEPA"). So, under 24 CFR 50.19(c)(5)(ii), this NOFO is categorically excluded from environmental review under NEPA.

## XIII. PAPERWORK REDUCTION ACT

The information collection requirements contained in this notice have been approved by OMB under the Paperwork Reduction Act of 1995 (44 U.S.C. § 3520) and assigned OMB approval numbers OMB 2577-0178.  In accordance with the Paperwork Reduction Act, HUD may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a currently valid OMB number.

## XIV. CONTACT

For more information, FSS applicants or grantees may contact FSS@hud.gov.


_____
Benjamin Hobbs
Principal Deputy Assistant Secretary
Office of Public and Indian Housing



EXHIBIT F



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
Financial Management Center
2380 McGee Street, Suite 400
Kansas City, MO 64108-2605

OFFICE OF PUBLIC AND INDIAN HOUSING

September 03, 2025

OR011
HOUSING AUTHORITY OF THE CITY OF SALEM
360 CHURCH ST SE
SALEM, OR  97301-7301

Dear Executive Director:

Subject:  Notification of Monthly Disbursement Schedule for Emergency Housing Voucher
Payments and Fees

This email serves as HUD's notification that funding will be disbursed for your agency's Emergency Housing Voucher (EHV) program. Attached you will find the current disbursement schedule reflecting the monthly HAP and/or Ongoing Admin Fees, Preliminary Fees, Service Fees, and Placement/Issuance Fee amounts. A separate notification will be provided to your agency for new units and funding received or program specific reductions.

If you have any questions regarding how the monthly disbursement amounts were derived, please contact your Financial Analyst at the FMC.

Sincerely

ROBERT BOEPPLE
Digitally signed by ROBERT BOEPPLE
DN: CN = ROBERT BOEPPLE  C = US O
= U.S. Government OU = Department of
Housing and Urban Development, Office
of Administration.
Reason:  I am approving this document

Director

Enclosure(s)
Memo Reference:  25-238

# Housing Choice Voucher Program

## Disbursement Schedule

FO Code:           0EPH
HA Name:           HOUSING AUTHORITY OF THE CITY OF SALEM
HA Number:         OR011
FYE:               09/30

| Month | HAP Disbursement | Service Fees Disbursement | Preliminary Fees Disbursement | Ongoing Admin Fees Disbursement | Placement Fees Disbursement | Issuance Fees Disbursement |
|---|---|---|---|---|---|---|
| October 2024 | $32,804 | | | $4,075 | | |
| November 2024 | $40,426 | | | $4,416 | | |
| December 2024 | $40,426 | | | $4,416 | | |
| January 2025 | $42,062 | | | $3,807 | | |
| February 2025 | $42,062 | | | $3,807 | | |
| March 2025 | $44,078 | | | $4,207 | | |
| April 2025 | $31,660 | | | $3,407 | | |
| May 2025 | $28,863 | | | $4,803 | | |
| June 2025 | $27,182 | | | $3,727 | | |
| July 2025 | $36,106 | | | $3,941 | | |
| August 2025 | $33,812 | | | $3,940 | | |
| September 2025 | $27,046 | | | $3,941 | | |



EXHIBIT G

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

Financial Management Center
2380 McGee Street, Suite 400
Kansas City, MO 64108-2605

OFFICE OF PUBLIC AND INDIAN HOUSING

September 30, 2025

OR011
HOUSING AUTHORITY OF THE CITY OF SALEM
360 CHURCH ST SE
SALEM, OR  97301-7301

Dear Executive Director:

Subject:  Notification of Monthly Disbursement Schedule for Emergency Housing Voucher
             Payments and Fees

        This email serves as HUD's notification that funding will be disbursed for your agency's
Emergency Housing Voucher (EHV) program. Attached you will find the current disbursement
schedule reflecting the monthly HAP and/or Ongoing Admin Fees, Preliminary Fees, Service
Fees, and Placement/Issuance Fee amounts. A separate notification will be provided to your
agency for new units and funding received or program specific reductions.

        If you have any questions regarding how the monthly disbursement amounts were
derived, please contact your Financial Analyst at the FMC.

                                      Sincerely

ROBERT BOEPPLE
Digitally signed by ROBERT BOEPPLE
DN: CN = ROBERT BOEPPLE  C = US O
= U.S. Government OU = Department of
Housing and Urban Development, Office
of Administration.
Reason:  I am approving this document

                                      Director

Enclosure(s)
Memo Reference:  25-289

# Housing Choice Voucher Program

## Disbursement Schedule

FO Code:        0EPH
HA Name:      HOUSING AUTHORITY OF THE CITY OF SALEM
HA Number:   OR011
FYE:           09/30

| Month | HAP Disbursement | Service Fees Disbursement | Preliminary Fees Disbursement | Ongoing Admin Fees Disbursement | Placement Fees Disbursement | Issuance Fees Disbursement |
|---|---|---|---|---|---|---|
| October 2024 | $32,804 | | | $4,075 | | |
| November 2024 | $40,426 | | | $4,416 | | |
| December 2024 | $40,426 | | | $4,416 | | |
| January 2025 | $42,062 | | | $3,807 | | |
| February 2025 | $42,062 | | | $3,807 | | |
| March 2025 | $44,078 | | | $4,207 | | |
| April 2025 | $31,660 | | | $3,407 | | |
| May 2025 | $28,863 | | | $4,803 | | |
| June 2025 | $27,182 | | | $3,727 | | |
| July 2025 | $36,106 | | | $3,941 | | |
| August 2025 | $33,812 | | | $3,940 | | |
| September 2025 | $27,046 | | | $3,941 | | |
| October 2025 | $22,905 | | | | | |



EXHIBIT H

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

Financial Management Center
2380 McGee Street, Suite 400
Kansas City, MO 64108-2605

OFFICE OF PUBLIC AND INDIAN HOUSING

September 30, 2025

OR011
HOUSING AUTHORITY OF THE CITY OF SALEM
360 CHURCH ST SE
SALEM, OR  97301-7301

Dear Executive Director:

Subject:  Notification of Monthly Disbursement Schedule for Housing Assistance Payments and
Administrative Fees

    This email serves as HUD's notification that funding will be disbursed for your agency's Housing Choice Voucher (HCV) program.  Attached you will find the current disbursement schedule reflecting the monthly HAP and/or Administrative Fee amounts.  A separate notification will be provided to your agency for new units and funding received or program specific reductions.

    If you have any questions regarding how the monthly disbursement amounts were derived, please contact your Financial Analyst at the FMC.

Sincerely

ROBERT BOEPPLE

Digitally signed by ROBERT BOEPPLE
DN: CN = ROBERT BOEPPLE, C = US O
= U.S. Government OU = Department of
Housing and Urban Development, Office
of Administration.
Reason:  I am approving this document

Director

Enclosure(s)
Memo Reference:  25-287

# Housing Choice Voucher Program

## Disbursement Schedule

FO Code:        0EPH
HA Name:        HOUSING AUTHORITY OF THE CITY OF SALEM
HA Number:      OR011
FYE:            09/30

| Month | HAP Disbursement | AF Disbursement |
|---|---|---|
| October 2024 | $2,569,671 | $264,857 |
| October 2024 | $21,322 | |
| November 2024 | $2,618,680 | $267,423 |
| November 2024 | $21,321 | $5,250 |
| November 2024 | $5,740 | |
| November 2024 | | $77,718 |
| December 2024 | $2,635,910 | $267,423 |
| December 2024 | $21,321 | |
| December 2024 | $5,740 | |
| January 2025 | $2,631,851 | $274,840 |
| January 2025 | $21,321 | |
| January 2025 | $5,740 | |
| January 2025 | $11,481 | |
| February 2025 | $2,631,851 | $274,840 |
| February 2025 | $21,321 | |
| February 2025 | $22,961 | |
| February 2025 | | $76,894 |
| March 2025 | $2,585,003 | $274,840 |
| March 2025 | $21,321 | |
| March 2025 | $22,961 | |
| March 2025 | $19,416 | |
| April 2025 | $2,585,003 | $274,840 |
| April 2025 | $21,321 | |
| April 2025 | $22,961 | |
| April 2025 | $19,416 | |
| May 2025 | $2,667,198 | $271,820 |
| May 2025 | $21,321 | |

| | | |
|---|---|---|
| May 2025 | $22,961 | |
| May 2025 | $19,416 | |
| May 2025 | $120,525 | $47,472 |
| June 2025 | $2,850,787 | $280,738 |
| June 2025 | $21,321 | $13,728 |
| June 2025 | $22,961 | |
| July 2025 | $2,716,152 | $280,738 |
| July 2025 | $21,321 | |
| July 2025 | $22,961 | |
| August 2025 | $2,739,890 | $280,738 |
| August 2025 | $22,961 | |
| August 2025 | | $9,165 |
| August 2025 | | $24,693 |
| September 2025 | $2,739,890 | $280,738 |
| September 2025 | $22,961 | |
| September 2025 | | $177,883 |
| October 2025 | $2,784,822 | $280,738 |
| October 2025 | $22,963 | |
| November 2025 | $22,961 | |
| December 2025 | $22,961 | |
| January 2026 | $11,480 | |



EXHIBIT I



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
Financial Management Center
2380 McGee Street, Suite 400
Kansas City, MO 64108-2605

OFFICE OF PUBLIC AND INDIAN HOUSING

January 10,  2025

OR011
HOUSING AUTHORITY OF THE CITY OF SALEM
360 CHURCH ST SE
SALEM, OR  97301-7301

Dear Executive Director:

SUBJECT:  Foster Youth to Independence – Obligation of Assistance
          FOSTER YOUTH INITIATIVE

 This letter is to notify you that funds have been obligated to provide Foster Youth to Independence (FYI) vouchers to assistance eligible youth identified in the request for assistance submitted to HUD under the requirements of Notice PIH 2020-28, amended by Notice PIH 2021-26.

 As with other new special purpose voucher funding, only three months of funding will be automatically scheduled for disbursement to your agency. Subsequent disbursements will be calculated and scheduled based on expenses reported in the Voucher Management System (VMS) as part of the regular monthly HAP disbursement. The terms of the funding, including the approximate amount of the initial monthly payment, are reflected in the enclosed table.

 FYI vouchers do not "sunset" like the FYI Tenant Protection Vouchers (TPV) awarded under Notice 2019-18. Public housing agencies (PHAs) should continue to use FYI vouchers awarded under Notice PIH 2020-28/2021-26 for eligible youth upon turnover. If another eligible youth is not available and the PHA does not anticipate future eligible applicants, the PHA must provide notification to FYI@hud.gov and the PHA's respective Financial Management Center (FMC) Financial Analyst. HUD will reduce the PHA's HCV baseline to account for the return of FYI assistance. Individual participants are still subject to the 36-month limit in receiving assistance with the FYI voucher.

 PHAs must maintain a special program code for FYI participants in line 2n of the Family Report (form HUD-50058) or line 2p of the MTW Family Report (form HUD-50058), as applicable. The special program code is "FYI." As a reminder, PHAs should be responding to the homeless at admission field (line 4C), of the form as well. PHAs should also report the leasing and expense information for these vouchers in the VMS, Form HUD-52681B. The "Family Unification 2008/Forward – MTW" or "Family Unification – Non MTW" category, as appropriate for your PHA, must be used. Additional program-specific requirements are outlined and clarified in Notice PIH 2021-26.

Enclosed is your executed copy of the notice to amend the Consolidated Annual Contributions Contract (CACC) with revised funding exhibits reflecting the changes described above. The amendment notice and revised funding exhibits should be filed with your most recent executed CACC.

Public housing agencies receiving an increment in excess of $100,000 in Budget Authority (BA) are required to submit Form HUD-50071, Certification of Payments to Influence Federal Transactions, and if applicable, Form SF-LLL, Disclosure of Lobbying Activities. If this letter notifies you of a renewal in excess of $100,000, and your PHA has not submitted the Form(s) HUD-50071 (and SF-LLL where applicable) for your current fiscal year; the documents must be submitted to your local field office and Financial Analyst at the Financial Management Center (FMC) within 30 days of the date of this letter.

These forms are located on the Internet at the following addresses:

Form HUD-50071
https://www.hud.gov/sites/documents/50071.pdf
Form SF-LLL
https://www.hud.gov/sites/documents/19161_SF-LLL.PDF

If you have any questions, please contact your Financial Analyst.

Sincerely,

ROBERT BOEPPLE

Digitally signed by ROBERT BOEPPLE
DN: CN = ROBERT BOEPPLE. C = US O
= U.S. Government OU = Department of
Housing and Urban Development, Office
of Administration.
Reason:  I am approving this document

Robert Boepple
Director

Enclosures

# Increment Number Table

**U. S. Department of Housing and Urban Development**
Office of Public and Indian Housing

Housing Choice Voucher Program                                    Section 8

| Increment Number | Program Funding | No. of Units | Budget Authority Assigned | Effective Date | Term | Approximate Monthly Disbursement |
|---|---|---|---|---|---|---|
| OR011VO0319 | VO | 7 | $68,883 | 11/1/2024 | 12 | $5,740 |
| OR011AF0163 | AF | N/A | $5,250 | 11/1/2024 | 1 | $5,250 |

**(The terms of the funding, including the approximate amount of the monthly payment, are reflected in the table above)**

**Consolidated
Annual Contributions Contract**

**U.S. Department of Housing and Urban Development**
Office of Public and Indian Housing

Housing Choice Voucher Program                                    Section 8

## HUD NOTICE TO HOUSING AGENCY AMENDING

## CONSOLIDATED ANNUAL CONTRIBUTIONS CONTRACT

**Housing Agency:**      **OR011**
**HOUSING AUTHORITY OF THE CITY OF SALEM**

In accordance with Paragraph 2.c. of the Consolidated Annual Contributions Contract between HUD and the HA, you are notified that the funding exhibits of the Consolidated Annual Contributions Contract is hereby revised to add a new funding increment as provided in the attached revised funding exhibit. (This notice adds one or more funding increments listed on the attached funding exhibit.)

The revised funding exhibit is attached to this HUD notice. This revised funding exhibit replaces and revises the prior funding exhibit.

In accordance with Paragraph 2.d. of the Consolidated Annual Contributions Contract, this HUD notice and the attached funding exhibit constitutes an amendment to the Consolidated Annual Contributions Contract.

**United States of America**          Secretary of Housing and Urban Development          Date of Document:
                                      Authorized Representative

                                      Robert H. Boepple, Director                          1/10/2025
                                      Financial Management Center

Form HUD-52520A (12/97)

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
PIH SECTION 8 - FUNDING EXHIBIT
PROGRAM-BASED

ACC NUMBER:    OR011

FIELD OFFICE:    **0EPH**

OR011
HOUSING AUTHORITY OF THE CITY OF SALEM
360 CHURCH ST SE
SALEM, OR 97301

HA FISCAL YEAR-END:    **09/30**    PROGRAM TYPE: HAP-Voucher Program

| FUNDING INCREMENT NUMBER | FIRST DAY OF TERM | LAST DAY OF TERM | CONTRACT TERM | BUDGET AUTHORITY | UNITS |
|---|---|---|---|---|---|
| OR011AF0148 | 1/1/2023 | 2/28/2023 | 2 | 485,566 | N/A |
| OR011AFR322 | 2/1/2023 | 2/28/2023 | 1 | 49,204 | N/A |
| OR011VO0284 | 1/1/2023 | 2/28/2023 | 2 | 4,173,104 | 2924 |
| OR011AF0149 | 3/1/2023 | 3/31/2023 | 1 | 243,343 | N/A |
| OR011VO0292 | 3/1/2023 | 3/31/2023 | 1 | 2,112,593 | 2924 |
| OR011VO0294 | 4/1/2023 | 4/30/2023 | 1 | 99,545 | N/A |
| OR011AF0150 | 4/1/2023 | 5/31/2023 | 2 | 486,686 | N/A |
| OR011VO0293 | 4/1/2023 | 5/31/2023 | 2 | 4,225,186 | 2924 |
| OR011AFR422 | 6/1/2023 | 6/30/2023 | 1 | 20,713 | N/A |
| OR011AFR123 | 7/1/2023 | 7/31/2023 | 1 | 108,506 | N/A |
| OR011AF0151 | 6/1/2023 | 9/30/2023 | 4 | 981,700 | N/A |
| OR011AF0153 | 9/1/2023 | 9/30/2023 | 1 | 107,660 | N/A |
| OR011AFRF23 | 9/1/2023 | 9/30/2023 | 1 | 107,519 | N/A |
| OR011VO0282 | 10/1/2022 | 9/30/2023 | 12 | 124,305 | 14 |
| OR011VO0295 | 6/1/2023 | 9/30/2023 | 4 | 7,681,858 | 2924 |
| OR011AF0152 | 10/1/2023 | 10/31/2023 | 1 | 245,425 | N/A |
| OR011VO0296 | 10/1/2023 | 10/31/2023 | 1 | 1,920,465 | 2938 |
| OR011VO0298 | 11/1/2023 | 11/30/2023 | 1 | 94,573 | N/A |
| OR011AF0154 | 11/1/2023 | 12/31/2023 | 2 | 544,680 | N/A |
| OR011VO0285 | 1/1/2023 | 12/31/2023 | 12 | 1 | 25 |
| OR011VO0286 | 1/1/2023 | 12/31/2023 | 12 | 1 | 4 |
| OR011VO0287 | 1/1/2023 | 12/31/2023 | 12 | 1 | 9 |
| OR011VO0288 | 1/1/2023 | 12/31/2023 | 12 | 1 | 25 |
| OR011VO0289 | 1/1/2023 | 12/31/2023 | 12 | 1 | 5 |
| OR011VO0290 | 1/1/2023 | 12/31/2023 | 12 | 1 | 20 |
| OR011VO0297 | 11/1/2023 | 12/31/2023 | 2 | 4,022,644 | 2938 |
| OR011AF0155 | 1/1/2024 | 1/31/2024 | 1 | 258,007 | N/A |
| OR011VO0291 | 2/1/2023 | 1/31/2024 | 12 | 183,924 | 25 |
| OR011VO0300 | 1/1/2024 | 1/31/2024 | 1 | 2,169,144 | 2938 |

| FUNDING INCREMENT NUMBER | FIRST DAY OF TERM | LAST DAY OF TERM | CONTRACT TERM | BUDGET AUTHORITY | UNITS |
|---|---|---|---|---|---|
| OR011AF0156 | 2/1/2024 | 2/29/2024 | 1 | 258,007 | N/A |
| OR011AFR323 | 2/1/2024 | 2/29/2024 | 1 | 31,448 | N/A |
| OR011VO0301 | 2/1/2024 | 2/29/2024 | 1 | 2,169,144 | 2938 |
| OR011AF0157 | 3/1/2024 | 3/31/2024 | 1 | 258,007 | N/A |
| OR011VO0309 | 3/1/2024 | 3/31/2024 | 1 | 2,171,502 | 2938 |
| OR011VO0310 | 4/1/2024 | 4/30/2024 | 1 | 2,417,962 | 2938 |
| OR011AF0158 | 4/1/2024 | 5/31/2024 | 2 | 518,692 | N/A |
| OR011VO0311 | 5/1/2024 | 5/31/2024 | 1 | 2,358,286 | 2938 |
| OR011VOPR23 | 5/1/2024 | 5/31/2024 | 1 | 4,954 | N/A |
| OR011AFR124 | 7/1/2024 | 7/31/2024 | 1 | 80,396 | N/A |
| OR011AFR423 | 7/1/2024 | 7/31/2024 | 1 | 82,589 | N/A |
| OR011AF0160 | 8/1/2024 | 8/31/2024 | 1 | 36,076 | N/A |
| OR011VO0312 | 6/1/2024 | 8/31/2024 | 3 | 6,980,499 | 2938 |
| OR011VO0315 | 9/1/2024 | 9/30/2024 | 1 | 4,377,318 | 2938 |
| OR011AF0159 | 6/1/2024 | 10/31/2024 | 5 | 1,324,285 | N/A |
| OR011VO0316 | 10/1/2024 | 10/31/2024 | 1 | 2,283,318 | 2938 |
| OR011AF0161 | 11/1/2024 | 11/30/2024 | 1 | 267,423 | N/A |
| OR011AF0163 | 11/1/2024 | 11/30/2024 | 1 | 5,250 | N/A |
| OR011AFR224 | 11/1/2024 | 11/30/2024 | 1 | 77,718 | N/A |
| OR011VO0318 | 11/1/2024 | 11/30/2024 | 1 | 3,360,599 | N/A |
| OR011AF0162 | 12/1/2024 | 12/31/2024 | 1 | 267,423 | N/A |
| OR011VO0302 | 1/1/2024 | 12/31/2024 | 12 | 1 | 25 |
| OR011VO0303 | 1/1/2024 | 12/31/2024 | 12 | 1 | 4 |
| OR011VO0304 | 1/1/2024 | 12/31/2024 | 12 | 1 | 9 |
| OR011VO0305 | 1/1/2024 | 12/31/2024 | 12 | 1 | 25 |
| OR011VO0306 | 1/1/2024 | 12/31/2024 | 12 | 1 | 5 |
| OR011VO0307 | 1/1/2024 | 12/31/2024 | 12 | 1 | 20 |
| OR011VO0308 | 2/1/2024 | 12/31/2024 | 11 | 1 | 25 |
| OR011VO0317 | 11/1/2024 | 12/31/2024 | 2 | 2,472,636 | 2938 |
| OR011AF0164 | 1/1/2025 | 2/28/2025 | 2 | 549,680 | N/A |
| OR011VO0323 | 1/1/2025 | 2/28/2025 | 2 | 5,317,862 | 2938 |
| OR011VO0314 | 8/1/2024 | 7/31/2025 | 12 | 255,853 | 26 |
| OR011VO0319 | 11/1/2024 | 10/31/2025 | 12 | 68,883 | 7 |
| OR011VO0321 | 1/1/2025 | 12/31/2025 | 12 | 137,767 | 14 |
| OR011VO0322 | 2/1/2025 | 1/31/2026 | 12 | 137,767 | 14 |



EXHIBIT J

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
Financial Management Center
2380 McGee Street, Suite 400
Kansas City, MO 64108-2605

OFFICE OF PUBLIC AND INDIAN HOUSING

March 3, 2025

OR011
HOUSING AUTHORITY OF THE CITY OF SALEM
360 CHURCH ST SE
SALEM, OR 97301-7301

Dear Executive Director:

SUBJECT:    FY 2024 Housing Choice Vouchers,  HUD-Veterans Affairs Supportive Housing Award (VASH)

Your agency was recently notified that it has been awarded funds for HUD-Veterans Affairs Supportive Housing (HUD-VASH) awards under notice PIH 2024-18 (Registration of Interest for HUD-VASH Vouchers) from the Fiscal Year (FY) 2024 allocation.  This letter provides the specific details of the funding awarded and information concerning the disbursement of these funds.  The effective date for these initial VASH awards as noted in the table below have been agreed to by your agency.  Initially, the first three months of disbursements will be automatically scheduled.  Each disbursement will equal 1/12th of your award amount.  Thereafter, monthly disbursements will be scheduled based on monthly expenses report in the Voucher Management System (VMS).  If at any time the disbursements are not sufficient to cover your monthly expenses, your agency should contact your Financial Analyst at the FMC.

These vouchers must be administered in accordance with the HUD-VASH Operation requirements.  Information about these requirements is provided at the following Internet link: http://portal.hud.gov/hudportal/HUD?src=/program_offices/public_indian_housing/programs/hcv/vash.  Information can also be found in PIH Notice 2017-21 and PIH Notice 2011-53.

Administrative fees are not being provided at this time.  They will be funded for units leased as of the first day of the month, based on data reported in the Voucher Management System (VMS).

Please be aware that these funds are obligated under the Housing Choice Voucher program and are identified as a "VO" program type, rather than the "VA" program type that was established previously to track the VASH awards in HUD's accounting system.

Attached is your Notice to Amend the Consolidated Annual Contributions Contract (CACC) with revised funding exhibits reflecting the change(s) described above.  The amendment notice and revised funding exhibits should be filed with your most recent CACC.  No execution by HUD or your PHA is required.

Housing agencies receiving an increment in excess of $100,000 in Budget Authority (BA) are required to submit Form HUD-50071, Certification of Payments to Influence Federal Transactions, and, if applicable, Form SF-LLL, Disclosure of Lobbying Activities.  If this letter notifies you of a renewal in excess of $100,000, and your HA has not submitted the Form(s) HUD-50071 (and SF-LLL where applicable) with a budget or budget revision for your current fiscal year which includes the estimated BA for that renewal increment, the documents must be submitted to your Financial Analyst at the Financial Management Center (FMC) within 30 days of the date of this letter.  These forms are located on the Internet at the following addresses:

Form HUD-50071
https://www.hud.gov/sites/documents/50071.pdf

Form SF-LLL
https://files.hudexchange.info/resources/documents/HUD-Form-Sflll.pdf

If you have any questions about the matters discussed in this letter, please contact your Financial Analyst (FA) at the Financial Management Center (FMC).

Sincerely,

ROBERT BOEPPLE

Digitally signed by ROBERT BOEPPLE
DN: CN = ROBERT BOEPPLE  C = US O
= U.S. Government OU = Department of
Housing and Urban Development, Office
of Administration.
Reason:  I am approving this document

Robert Boepple
 Director

Attachment

# Increment Number Table

**U. S. Department of Housing and Urban Development**
Office of Public and Indian Housing

Housing Choice Voucher Program                                    Section 8

| Increment Number | Program Funding | No. of Units | Budget Authority Assigned | Effective Date | Term | Approximate Monthly Disbursement |
|---|---|---|---|---|---|---|
| OR011VO0324 | VO | 25 | $233,001 | 3/1/2025 | 12 | $19,417 |

**(The terms of the funding, including the approximate amount of the monthly payment, are reflected in the table above)**

**Consolidated
Annual Contributions Contract**

**U.S. Department of Housing and Urban Development**
Office of Public and Indian Housing

Housing Choice Voucher Program                              Section 8

## HUD NOTICE TO HOUSING AGENCY AMENDING

## CONSOLIDATED ANNUAL CONTRIBUTIONS CONTRACT

**Housing Agency:**     **OR011**

**HOUSING AUTHORITY OF THE CITY OF SALEM**

In accordance with Paragraph 2.c. of the Consolidated Annual Contributions Contract between HUD and the HA, you are notified that the funding exhibits of the Consolidated Annual Contributions Contract is hereby revised to add a new funding increment as provided in the attached revised funding exhibit. (This notice adds one or more funding increments listed on the attached funding exhibit.)

The revised funding exhibit is attached to this HUD notice. This revised funding exhibit replaces and revises the prior funding exhibit.

In accordance with Paragraph 2.d. of the Consolidated Annual Contributions Contract, this HUD notice and the attached funding exhibit constitutes an amendment to the Consolidated Annual Contributions Contract.

**United States of America**     Secretary of Housing and Urban Development          Date of Document:
Authorized Representative

Robert H. Boepple, Director                              2/28/2025
Financial Management Center

Form HUD-52520A (12/97)

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
PIH SECTION 8 - FUNDING EXHIBIT
PROGRAM-BASED

ACC NUMBER:     OR011

FIELD OFFICE:     **0EPH**

OR011
HOUSING AUTHORITY OF THE CITY OF SALEM
360 CHURCH ST SE
SALEM, OR  97301

HA FISCAL YEAR-END:     **09/30**          PROGRAM TYPE:  HAP-Voucher Program

| FUNDING INCREMENT NUMBER | FIRST DAY OF TERM | LAST DAY OF TERM | CONTRACT TERM | BUDGET AUTHORITY | UNITS |
|---|---|---|---|---|---|
| OR011AF0149 | 3/1/2023 | 3/31/2023 | 1 | 243,343 | N/A |
| OR011VO0292 | 3/1/2023 | 3/31/2023 | 1 | 2,112,593 | 2924 |
| OR011VO0294 | 4/1/2023 | 4/30/2023 | 1 | 99,545 | N/A |
| OR011AF0150 | 4/1/2023 | 5/31/2023 | 2 | 486,686 | N/A |
| OR011VO0293 | 4/1/2023 | 5/31/2023 | 2 | 4,225,186 | 2924 |
| OR011AFR422 | 6/1/2023 | 6/30/2023 | 1 | 20,713 | N/A |
| OR011AFR123 | 7/1/2023 | 7/31/2023 | 1 | 108,506 | N/A |
| OR011AF0151 | 6/1/2023 | 9/30/2023 | 4 | 981,700 | N/A |
| OR011AF0153 | 9/1/2023 | 9/30/2023 | 1 | 107,660 | N/A |
| OR011AFRF23 | 9/1/2023 | 9/30/2023 | 1 | 107,519 | N/A |
| OR011VO0282 | 10/1/2022 | 9/30/2023 | 12 | 124,305 | 14 |
| OR011VO0295 | 6/1/2023 | 9/30/2023 | 4 | 7,681,858 | 2924 |
| OR011AF0152 | 10/1/2023 | 10/31/2023 | 1 | 245,425 | N/A |
| OR011VO0296 | 10/1/2023 | 10/31/2023 | 1 | 1,920,465 | 2938 |
| OR011VO0298 | 11/1/2023 | 11/30/2023 | 1 | 94,573 | N/A |
| OR011AF0154 | 11/1/2023 | 12/31/2023 | 2 | 544,680 | N/A |
| OR011VO0285 | 1/1/2023 | 12/31/2023 | 12 | 1 | 25 |
| OR011VO0286 | 1/1/2023 | 12/31/2023 | 12 | 1 | 4 |
| OR011VO0287 | 1/1/2023 | 12/31/2023 | 12 | 1 | 9 |
| OR011VO0288 | 1/1/2023 | 12/31/2023 | 12 | 1 | 25 |
| OR011VO0289 | 1/1/2023 | 12/31/2023 | 12 | 1 | 5 |
| OR011VO0290 | 1/1/2023 | 12/31/2023 | 12 | 1 | 20 |
| OR011VO0297 | 11/1/2023 | 12/31/2023 | 2 | 4,022,644 | 2938 |
| OR011AF0155 | 1/1/2024 | 1/31/2024 | 1 | 258,007 | N/A |
| OR011VO0291 | 2/1/2023 | 1/31/2024 | 12 | 183,924 | 25 |
| OR011VO0300 | 1/1/2024 | 1/31/2024 | 1 | 2,169,144 | 2938 |
| OR011AF0156 | 2/1/2024 | 2/29/2024 | 1 | 258,007 | N/A |
| OR011AFR323 | 2/1/2024 | 2/29/2024 | 1 | 31,448 | N/A |
| OR011VO0301 | 2/1/2024 | 2/29/2024 | 1 | 2,169,144 | 2938 |

| FUNDING INCREMENT NUMBER | FIRST DAY OF TERM | LAST DAY OF TERM | CONTRACT TERM | BUDGET AUTHORITY | UNITS |
|---|---|---|---|---|---|
| OR011AF0157 | 3/1/2024 | 3/31/2024 | 1 | 258,007 | N/A |
| OR011VO0309 | 3/1/2024 | 3/31/2024 | 1 | 2,171,502 | 2938 |
| OR011VO0310 | 4/1/2024 | 4/30/2024 | 1 | 2,417,962 | 2938 |
| OR011AF0158 | 4/1/2024 | 5/31/2024 | 2 | 518,692 | N/A |
| OR011VO0311 | 5/1/2024 | 5/31/2024 | 1 | 2,358,286 | 2938 |
| OR011VOPR23 | 5/1/2024 | 5/31/2024 | 1 | 4,954 | N/A |
| OR011AFR124 | 7/1/2024 | 7/31/2024 | 1 | 80,396 | N/A |
| OR011AFR423 | 7/1/2024 | 7/31/2024 | 1 | 82,589 | N/A |
| OR011AF0160 | 8/1/2024 | 8/31/2024 | 1 | 36,076 | N/A |
| OR011VO0312 | 6/1/2024 | 8/31/2024 | 3 | 6,980,499 | 2938 |
| OR011VO0315 | 9/1/2024 | 9/30/2024 | 1 | 4,377,318 | 2938 |
| OR011AF0159 | 6/1/2024 | 10/31/2024 | 5 | 1,324,285 | N/A |
| OR011VO0316 | 10/1/2024 | 10/31/2024 | 1 | 2,283,318 | 2938 |
| OR011AF0161 | 11/1/2024 | 11/30/2024 | 1 | 267,423 | N/A |
| OR011AF0163 | 11/1/2024 | 11/30/2024 | 1 | 5,250 | N/A |
| OR011AFR224 | 11/1/2024 | 11/30/2024 | 1 | 77,718 | N/A |
| OR011VO0318 | 11/1/2024 | 11/30/2024 | 1 | 3,360,599 | N/A |
| OR011AF0162 | 12/1/2024 | 12/31/2024 | 1 | 267,423 | N/A |
| OR011VO0302 | 1/1/2024 | 12/31/2024 | 12 | 1 | 25 |
| OR011VO0303 | 1/1/2024 | 12/31/2024 | 12 | 1 | 4 |
| OR011VO0304 | 1/1/2024 | 12/31/2024 | 12 | 1 | 9 |
| OR011VO0305 | 1/1/2024 | 12/31/2024 | 12 | 1 | 25 |
| OR011VO0306 | 1/1/2024 | 12/31/2024 | 12 | 1 | 5 |
| OR011VO0307 | 1/1/2024 | 12/31/2024 | 12 | 1 | 20 |
| OR011VO0308 | 2/1/2024 | 12/31/2024 | 11 | 1 | 25 |
| OR011VO0317 | 11/1/2024 | 12/31/2024 | 2 | 2,472,636 | 2938 |
| OR011AF0164 | 1/1/2025 | 2/28/2025 | 2 | 549,680 | N/A |
| OR011AFR324 | 2/1/2025 | 2/28/2025 | 1 | 76,894 | N/A |
| OR011VO0323 | 1/1/2025 | 2/28/2025 | 2 | 5,317,862 | 2938 |
| OR011AF0165 | 3/1/2025 | 4/30/2025 | 2 | 549,680 | N/A |
| OR011VO0326 | 3/1/2025 | 4/30/2025 | 2 | 5,326,304 | 2938 |
| OR011VO0314 | 8/1/2024 | 7/31/2025 | 12 | 255,853 | 26 |
| OR011VO0319 | 11/1/2024 | 10/31/2025 | 12 | 68,883 | 7 |
| OR011VO0321 | 1/1/2025 | 12/31/2025 | 12 | 137,767 | 14 |
| OR011VO0325 | 1/1/2025 | 12/31/2025 | 12 | 1 | 7 |
| OR011VO0327 | 1/1/2025 | 12/31/2025 | 12 | 1 | 113 |
| OR011VO0322 | 2/1/2025 | 1/31/2026 | 12 | 137,767 | 14 |
| OR011VO0324 | 3/1/2025 | 2/28/2026 | 12 | 233,001 | 25 |



EXHIBIT K



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-5000

OFFICE OF PUBLIC AND INDIAN HOUSING

September 16, 2025

Dear Executive Director:

Subject:  **Mainstream Vouchers (MS) Housing Assistance Payment (HAP)**
　　　　　**Disbursements – October 2025**

　　　　This letter concerns the disbursement of MS HAP renewal funds to your public housing agency (PHA) for the month of October 2025 under the cash management procedures. It is important that you review this letter, and Enclosure A included, concerning the process by which HUD has calculated the disbursement of renewal HAP funds to your PHA for this month.

**October 2025 HAP Disbursements**

　　　　HUD has determined the funds needed for disbursements for October 2025 on the basis of PHA-reported HAP expenses in the Voucher Management System (VMS) for the month of June 2025, the most recent month for which we have validated VMS data.  The date of the VMS download was September 16, 2025.  The most recent month is used in lieu of the most recent three months as that is considered more accurate at this time, due to national leasing trends.

　　　　 Enclosed are the calculation and data used to establish the October 2025 HAP disbursements for your PHA.  PHAs are advised that the monthly disbursement is the calculated need plus a 2% margin.

**Transition of Excess Cash**

　　　　The Department continues to transition PHA-held Restricted Net Position (RNP) to HUD-held funds until needed by the PHA, in order to comply with cash management requirements.  HUD reduces budget authority from future HAP disbursements to ensure PHAs use available RNP balances first.  Any unpent RNP that was reported through December 31, 2024 (HAP Cash Reconciliation), will be offset from CY2025 HAP disbursements.

　　　　In closing, it is critical that participants are not placed at risk or payments delayed as a result of your PHA having insufficient funds to support HAP payments due to the cash management methodology or the transition of RNP-funds to HUD-held reserves.  If your PHA does not have sufficient funds, please contact your Financial Management Center (FMC) Financial Analyst (FA) and your local Field Office representative.

Thank you for your attention to this matter.  If you have any questions concerning this letter, please contact your FA at the FMC.

Sincerely,

Miguel A. Fontánez

Digitally signed by Miguel A. Fontánez
DN: CN = Miguel A. Fontánez, C = US.
O = Housing Voucher Financial
Management Division, OU = Director
Reason: I am approving this document

Miguel A. Fontanez
Director
Housing Voucher Financial
  Management Division



EXHIBIT L



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-5000

OFFICE OF PUBLIC AND INDIAN HOUSING

September 17, 2025

Dear Executive Director:

Subject:  **Housing Choice Voucher Program (HCVP) Housing Assistance Payment (HAP)
Disbursements – October 2025**

This letter concerns the disbursement of HCVP HAP renewal funds to your public
housing agency (PHA) for the month of October 2025 under the cash management procedures.
It is important that you review this letter and Enclosure A included concerning the process by
which HUD has calculated the disbursement of renewal HAP funds to your PHA for this
month.

**October 2025 HAP Disbursements**

HUD has determined the funds needed for disbursements for October 2025 on the
basis of PHA-reported HAP expenses in the Voucher Management System (VMS) for the
month of July 2025, the most recent month for which we have validated VMS data.  The date
of the VMS download was September 8th, 2025.  The most recent month is used in lieu of
the most recent three months as that is considered more accurate at this time, due to national
leasing trends.

Enclosed are the calculations and data used to establish the October 2025 HAP
disbursements for your PHA.  PHAs are advised that the monthly disbursement is the calculated
need plus a 2% margin.

**Transition of Excess Cash**

The Department continues to transition PHA-held Restricted Net Position (RNP) to
HUD-held funds until needed by the PHA, in order to comply with cash management
requirements.  Based on the completion of the December 31, 2024 HAP Cash Reconciliation,
Excess Cash from Line 18 of the Year End 2024 HAP Reconciliation Enclosure has been fully
transitioned to HUD-held reserves with September 2025 disbursements.

It is critical that participants are not placed at risk or payments delayed as a result of
your PHA having insufficient funds to support HAP payments due to the cash management
methodology or the transition of RNP-funds to HUD-held reserves.  If your PHA does not
have sufficient funds, please contact your Financial Management Center (FMC) Financial
Analyst (FA) and your local Field Office representative.

Thank you for your attention to this matter.  If you have any questions concerning this letter, please contact your FA at the FMC.

Sincerely,

Miguel A. Fontanez
Director
Housing Voucher Financial
  Management Division