1  JONATHAN V. HOLTZMAN (SBN 99795)
   jholtzman@publiclawgroup.com
2  JAMES R. ROSS (SBN 149199)
   jross@publiclawgroup.com
3  RYAN P. McGINLEY-STEMPEL (SBN 296182)
   rmcginleystempel@publiclawgroup.com
4  JAKE D. FREITAS (SBN 341837)
   jfreitas@publiclawgroup.com
5  MARIBEL LOPEZ (SBN 340907)
   mlopez@publiclawgroup.com
6  TAYLOR EVANS (SBN 355492)
   tevans@publiclawgroup.com
7  RENNE PUBLIC LAW GROUP
   350 Sansome Street, Suite 300
8  San Francisco, California 94104
   Telephone: (415) 848-7200
9  Facsimile: (415) 848-7230

10 *Attorneys for Plaintiffs*
   HOUSING AUTHORITY OF THE COUNTY OF
11 SAN DIEGO; HOME FORWARD; HOUSING
   AUTHORITY OF THE CITY OF LOS
12 ANGELES; LOS ANGELES COUNTY
   DEVELOPMENT AUTHORITY; HOUSING
13 AUTHORITY OF THE CITY OF SALEM;
   HOUSING AUTHORITY OF BALTIMORE
14 CITY; SAN DIEGO HOUSING COMMISSION

15 JUHI S. AGGARWAL (OSB No. 130764)*
   juhi.aggarwal@homeforward.org
16 HOME FORWARD
   135 SW Ash Street
17 Portland, OR 97204
   Telephone: 503-545-5090
18
   *Attorney for Plaintiff*
19 HOME FORWARD
   *Application for admission pro hac vice
20 forthcoming*

21

22

23

24

25

26

27

28

DAVID CHIU (SBN 189542)
City Attorney
YVONNE R. MERÉ (SBN 175394)
Chief Deputy City Attorney
MOLLIE M. LEE (SBN 251404)
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
RONALD H. LEE (SBN 238720)
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
Telephone: (415) 554-3935
Facsimile: (415) 437-4644
ronald.lee@sfcityatty.org

*Attorneys for Plaintiff*
HOUSING AUTHORITY OF THE CITY AND
COUNTY OF SAN FRANCISCO

DANIEL B. ATCHISON (OSB No. 040424)*
datchison@cityofsalem.net
THOMAS V. CUPANI (OSB No. 924654)*
tcupani@cityofsalem.net
City of Salem, Legal Department
PO Box 14300
Salem, Oregon 97309-3986
Telephone: (503) 588-6003
Facsimile: (503) 361-2202

*Attorneys for Plaintiff*
HOUSING AUTHORITY OF THE CITY OF
SALEM
*Application for admission pro hac vice
forthcoming*

MICHAEL BUENNAGEL (SBN 259000)
MBuennagel@counsel.lacounty.gov
THOMAS FAUGHAN (SBN 155238)
tfaughnan@counsel.lacounty.gov
BEHNAZ TASHAKORIAN (SBN 213311)*
Btashakorian@counsel.lacounty.gov
Office of the County Counsel
County of Los Angeles
Kenneth Hahn Hall of Administration
500 West Temple Street #648
Los Angeles, CA 90012
Telephone: (213) 974-1811
*Application for Northern District Admission
forthcoming*

*Attorneys for Plaintiff*
LOS ANGELES COUNTY DEVELOPMENT
AUTHORITY

RENNE PUBLIC LAW GROUP
Attorneys at Law

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUSING AUTHORITY OF THE COUNTY OF SAN DIEGO; HOME FORWARD; HOUSING AUTHORITY OF THE CITY OF LOS ANGELES; LOS ANGELES COUNTY DEVELOPMENT AUTHORITY; HOUSING AUTHORITY OF THE CITY OF SALEM; HOUSING AUTHORITY OF THE CITY AND COUNTY OF SAN FRANCISCO; HOUSING AUTHORITY OF BALTIMORE CITY; SAN DIEGO HOUSING COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>        Defendants. | Case No. 4:25-cv-08859-KAW<br><br>**DECLARATION OF LISA JONES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, PRELIMINARY INJUNCTION**<br><br>Complaint Filed: October 15, 2025 |

RENNE PUBLIC LAW GROUP
Attorneys at Law

I, Lisa C. Jones, declare as follows:

1.      I am over 18 years of age. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would competently testify thereto.

2.      I am the President and Chief Executive Officer ("CEO") of San Diego Housing Commission ("SDHC"), a public corporation that contracts with the federal government to administer housing programs in San Diego, California ("City"). I have worked for SDHC for 8 years. In my capacity as CEO, I oversee an agency with approximately 400 employees and an annual budget of more than $710 million. In my more than 20 years of experience, I developed and implemented housing assistance approaches that focus on the unique needs of the people being served. Prior to my current role, I served as SDHC's Executive Vice President of Strategic Initiatives. In that position, I oversaw key strategic and policy initiatives across agency divisions, including SDHC's Strategic Plan, SDHC's Moving to Work designation, and homelessness initiatives.

3.      SDHC is overseen by the Housing Authority of the City of San Diego, the public housing authority located in San Diego, CA. SDHC is authorized by the Housing Authority of the City of San Diego and San Diego Municipal Code to approve the submission of applications for funds where such applications do not constitute a binding agreement to accept the funds and to approve contracts for the receipt of those funds. SDHC is also empowered to approve United States Department of Housing and Urban Development ("HUD")-required documents for the administration of public housing and rent subsidy programs. Moreover, HUD has designated SDHC a Moving to Work ("MTW") public housing authority.

4.      SDHC helps pay rent for approximately 17,000 households with low income annually; is a leader in collaborative efforts to address homelessness, such as the Community Action Plan on Homelessness for the City of San Diego; and creates and preserves affordable rental housing.  SDHC owns or manages more than 4,300 affordable rental housing units. SDHC operates with an annual budget of approximately $700 million.

## HUD ENTITLEMENT FUNDING

5.      SDHC receives United States Department of Housing and Community Development ("HUD") funding from the Operating Subsidy Fund ("Operating Subsidy"), Capital Fund Program

JONES DECLARATION ISO TRO & OSC - Case No. 4:25-CV-08859-KAW

("CFP"), Continuum of Care program ("CoC"), Emergency Housing Voucher program ("EHV"), Mainstream Voucher program ("MV"), Veterans Affairs Supportive Housing program ("VASH"), Housing Choice Voucher program ("HCV")  and Family Self-Sufficiency ("FSS") funding for public housing annually.

6.       SDHC receives approximately $384,246 in Operating Subsidy funding annually. For CY 2026, HUD has allocated approximately $384,246 in Operating Subsidy for SDHC. SDHC uses Operating Subsidy funds for operating and administrative functions, funding ongoing operating needs of public housing and affordable housing units, including repairs and maintenance, security, utilities, on-site staff salaries and benefits.

7.       SDHC also receives approximately $516,795 in Capital Funds annually. SDHC expects to receive approximately $516,795 for FY2025. SDHC receives CFP funding to assist with carrying out capital and management activities for its public housing projects, including replacement and upgrades of major buildings systems such as plumbing, heating ventilation and air conditioning systems, appliance replacements, and water heaters.

8.       In addition, SDHC will be filing a renewal application for FSS funding. The application is due October 29, 2025, at 5 p.m. Eastern Time. Last year, SDHC received approximately $728,478 in FSS funds inclusive of Resident Opportunities and Self-Sufficiency funds.  SDHC received approximately $653,394 in FSS funding alone. SDHC expects to receive a similar amount for this renewal application round. FSS funds are used to fund training and supportive services to families receiving federal assistance to help the families achieve economic independence and self-sufficiency.

## NEW CONDITIONS ON HUD FUNDING

9.       On July 17, 2025, HUD published PIH Notice 2025-22 entitled "Public Housing Operating Subsidy Grant Eligibility Calculations and Processing for Calendar Year 2026" ("Notice"). The Notice included updated terms and conditions SDHC must certify to in order to receive Operating Subsidy funding. Section 3 of the Notice entitled "Summary of Changes and Additions" states that "[t]he SF-424 certification is updated to address waste, fraud, and abuse (see Section 9)." In Section 9, entitled "Operating Subsidy Grant Submission Processing for CY 2026," the Notice states that PHAs must

complete and submit the SF-424 in the Public Housing portal by October 21, 2025 for the PHA to receive the Operating Subsidy and CFP funding. In the same section, the Notice states that "[a] PHA signing the SF-424 is making the following certifications:"

    a.    PHA will "not use grant funds to promote 'gender ideology,' as defined in Executive Order (E.O.) 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;"

    b.    PHA will comply "with all applicable Federal anti-discrimination laws [SIC] material . . . payment decisions for purposes of 31 U.S.C. 3729(b)(4); "

    c.    PHA certifies "it does not operate any programs that violate . . . Federal anti-discrimination laws, including title VI of the Civil Rights Act of 1964;"

    d.    PHA will not use grant to "fund or promote elective abortions" pursuant to E.O. 1418, Enforcing the Hyde Amendment;

    e.    PHA agrees to "administer its grant in accordance with  . . . immigration restrictions and requirements," including eligibility and verification requirements under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act 1996 (PRWORA) and "any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish" in relation to immigration law enforcement;

    f.    PHA will not use funding "in a manner that by design or effect facilitates . . . illegal immigration or abets policies that seek to shield illegal aliens;"

    g.    PHA will us "Systematic Alien Verification for Entitlements Program (SAVE), or an equivalent verification system . . . to prevent any Federal public benefit from being provided to an ineligible alien."

A true and correct copy of the PIH Notice 205-22 is attached hereto as **Exhibit A**.

    10.    On May 23, 2025, HUD released the "Capital Fund Processing Guidance for FY 2025 Grant Awards" ("CFP Guidance").  Although no exact deadline is provided, the CFP Guidance instructs PHAs to sign the Master Annual Contributions Contract ("ACC") Amendment in order access FY 2025 Award. The ACC Amendment includes a new term and condition for FY2025 funding stating that the

JONES DECLARATION ISO TRO & OSC - Case No. 4:25-CV-08859-KAW

RENNE PUBLIC LAW GROUP
Attorneys at Law

CFP grant "is subject to Executive Order 14218, Ending Taxpayer Subsidization of Open Borders." Additionally, it states that HUD will "ensure . . .Federal resources are not used to support "sanctuary" policies of State and local jurisdictions." A true and correct copy of the Capital Fund Processing Guidance for FY2025 is attached hereto as **Exhibit B.**

11.    On September 26, 2025, HUD issued Notice PIH 2025-24 entitled "FY2025 Family Self-Sufficiency Grant Program Annual Funding Notification and Application Process" ("FSS Notice"). The FSS Notice states that the deadline to apply for an FSS funding renewal is October 29, 2025, at 11:59 p.m. Eastern Time. The FSS Notice contains section "XI. Presidential Executive Actions Affecting Federal Financial Assistance Programs." Similar to other HUD grant terms and conditions, the FSS Notice states that grant recipients "are responsible for making sure activities funded by Federal awards comply with applicable existing and future executive orders and other Presidential Actions." Furthermore, the section enumerates a list of "executive orders and related guidance that apply to recipients of HUD's financial assistance programs, but not an exhaustive list:"

a.    EO 14218 Ending Taxpayer Subsidization of Open Borders

b.    EO 14182 Enforcing the Hyde Amendment

c.    EO 14173 Ending Illegal Discrimination and Restoring Merit-Based Opportunity

d.    EO 14168 Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

e.    EO 14151 Ending Radical and Wasteful Government DEI Programs and Preferencing

A true and correct copy of the FSS Notice PIH 2025-24 is attached hereto as **Exhibit C.**

12.    A loss of Operational Subsidy and CFP funds would lead to deferred maintenance, impacting the physical condition of properties, and in turn, may potentially impact the quality of life of residents. In addition, SDHC may be forced to reduce staff and phase out critical services to residents.

13.    Due to the lack of clarity of HUD's new and different requirements, it is impossible to accurately assert compliance and thereby, SDHC may be subject of future HUD audit and/or enforcement actions which may result in a loss or pullback of grant funding for affordable housing and community development needs that are essential to the City of San Diego's most vulnerable.

RENNE PUBLIC LAW GROUP
Attorneys at Law

I declare under penalty of perjury under the laws of the United States of America that this Declaration is true and correct.

Executed this 16th day of October 2025, at City of San Diego, California.

Signed by:

*Lisa Jones*

3B88AA4E8C4E488

Lisa C. Jones
President & CEO
San Diego Housing Commission

RENNE PUBLIC LAW GROUP
Attorneys at Law



# EXHIBIT A



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-5000

ASSISTANT SECRETARY FOR
PUBLIC AND INDIAN HOUSING

---

**Special Attention of:**
Public Housing Agencies,
Public Housing Directors,
Regional Public Housing Directors,
Field Office Directors, and
Resident Management Corporations

**Notice PIH 2025-22**

**Issued:** July 17, 2025

**Expires:** This notice remains in effect until amended, superseded, or rescinded.

**Cross References**
PIH Notices: 2007-16, 2011-65, 2011-69, 2014-24, 2018-16, 2018-19, 2020-03, 2020-05, 2021-30, 2021-37, 2022-20, 2022-32, 2022-36, 2023-17, 2023-25, 2024-03, 2024-31

Regulations: 24 CFR part 905, 24 CFR 905.300, 24 CFR part 903, 24 CFR part 990, 24 CFR part 970, 24 CFR part 965, 24 CFR part 964, 24 CFR 5.110, 2 CFR 200.333(b)

Statutes: 44 U.S.C. 3520, 42 U.S.C. 4332(2)(C), 42 U.S.C. 1437 et seq., Public Law 110-161, Section 209 of Public Law 115-174

Academic: Harvard Cost Study (2003)

---

**Subject: Public Housing Operating Subsidy Grant Eligibility Calculations and Processing for Calendar Year 2026**

Table of Contents

1. PURPOSE ................................................................................................. 2
2. BACKGROUND ....................................................................................... 2
3. SUMMARY OF CHANGES AND ADDITIONS ....................................... 3
4. COMMUNICATIONS AND TIMELY SUBMISSION REQUIREMENTS........................... 3
5. APPLICABILITY ..................................................................................... 3
6. ELIGIBLE USES OF THE OPERATING FUND ...................................... 4
7. FLEXIBILITY FOR OPERATING AND CAPITAL FUNDS ..................... 5
8. HUD'S INITIAL AND CALENDAR YEAR (CY) OBLIGATIONS FOR CY 2026............... 6
9. OPERATING SUBSIDY GRANT SUBMISSION PROCESSING FOR CY 2026................. 6
10. SUBMISSION PROCESS ......................................................................... 9

11. PROJECT REGROUPINGS................................................................. 10
12. PRE-POPULATED DATA .................................................................. 10
13. SUBMISSION OF FORMS HUD-52723 AND HUD-52722 FOR NEW PROJECTS ........ 12
14. REVISION REQUESTS FOR OPERATING SUBSIDY GRANT ELIGIBILITY.............. 13
15. OPERATING SUBSIDY GRANT CALCULATION............................................. 13
16. INSURANCE REQUIREMENTS ......................................................... 25
17. ENVIRONMENTAL REQUIREMENTS ................................................... 25
18. MTW AGENCIES WITH ALTERNATIVE OPERATING FUND FORMULA.................. 25
19. THE GENERAL DEPOSITORY AGREEMENT................................................. 26
20. APPEALS ................................................................................ 27
21.  RENTAL ASSISTANCE DEMONSTRATION (RAD).................................... 32
22. TURNKEY III PROJECTS ............................................................... 33
23. ENVISION CENTER PARTICIPATION ................................................. 34
24. THE FAIRCLOTH LIMIT ................................................................ 34
25. PHA BOARD RESOLUTION ............................................................. 35
26. RECORD RETENTION .................................................................. 35
27. PERIOD OF PERFORMANCE ........................................................... 35
28. EXPENDITURE REPORTING ........................................................... 36
29. PAPERWORK REDUCTION ACT ...................................................... 36
30. PENALTY FOR FALSE CLAIMS AND STATEMENTS................................... 37

## 1. PURPOSE

This notice provides public housing agencies (PHAs) with instructions for calculating Operating Subsidy Grants for Calendar Year (CY) 2026 and establishes submission deadlines.

## 2. BACKGROUND

The U.S. Department of Housing and Urban Development (HUD) provides Operating Subsidy Grants for public housing at the project level on a calendar year basis. The Operating Fund Program is authorized under the United States Housing Act of 1937 (1937 Act) (42 U.S.C. 1437g). Section 1437g(e)(2)(A) of the 1937 Act mandates the HUD Secretary to establish a formula for determining the amount of assistance from the Operating Fund for a fiscal year. The Operating Fund Formula and HUD's regulatory requirements for the Operating Fund Program are located at 24 CFR part 990.

PHAs must electronically submit Operating Subsidy Grant calculations for each public housing project identified in HUD's Inventory Management System/Public and Indian Housing (PIH) Information Center (IMS/PIC). Requirements also apply to any successor of IMS/PIC. PHAs submit this information using electronic forms Operating Fund Grant: Calculation of Utilities Expense Level (Form HUD-52722) and the Operating Fund Grant: Calculation of Total Program Expense Level (Form HUD-52723). PHAs must observe due dates for each submission to avoid negative financial consequences. All submissions should be made through the Public Housing Portal, unless specified otherwise.

## 3. SUMMARY OF CHANGES AND ADDITIONS

Compared to the previous year's Operating Subsidy Grant notice (Notice PIH 2024-25), this notice makes the following changes and additions:

- The SF-424 certification is updated to address waste, fraud, and abuse (see Section 9).
- A new section outlines guidance on permissive deductions in the development of operating budgets (see Section 15.3.3).
- The board chair or executive director can sign and approve the operating budget (see Section 25).

## 4. COMMUNICATIONS AND TIMELY SUBMISSION REQUIREMENTS

Per 24 CFR 990.200(c), PHAs are responsible for submitting data used in the Operating Fund Formula "on a regular and timely basis" to HUD "to ensure accurate calculation." In the case of PHA failure to provide accurate data, the regulation states that "HUD will make a determination as to the PHA's inventory, occupancy, and financial information using available or verified data, which may result in a lower operating subsidy."

HUD distributes information to PHAs using the following methods:

- *Calendar Year (CY) 2026 Operating Subsidy Grant Processing Webpage* – The webpage contains information such as the annual Operating Subsidy schedule and associated deadlines and guidance related to CY 2026 Operating Subsidy Grant processing. If a submission deadline falls on a weekend or Federal holiday, the deadline will be the next business day. PHAs should check the website frequently for updates. HUD will email PHAs whenever major changes are made to the webpage, including changes to the schedule and associated deadlines.
- *Public Housing Portal* – This portal is crucial for the efficient administration and distribution of HUD's Operating Fund Program. It serves as a centralized platform for PHAs to submit required forms and reports, ensuring compliance with regulatory requirements and facilitating transparent and accurate data reporting.
- *Operating Subsidy Grant Listserv* – This is used to send out mass emails to subscribers.

To receive proper Operating Subsidy amounts without delay, all PHAs must abide by the submission requirements including the calendar due dates that are provided by HUD using the communication channels above. The CY 2026 Operating Subsidy Schedule indicating submission deadlines and all major milestones is available on the Operating Subsidy Grant Processing webpage.

It is the PHA's responsibility to make contingency plans for unexpected events, such as staff turnover, technical problems, or other causes that may disturb their submission processing timeline. HUD is not responsible for negative financial implications and funding issues if a PHA fails to comply with the submission guidelines and due dates.

## 5. APPLICABILITY

This notice applies to PHAs administering the Public Housing Program, including PHAs participating in the Moving to Work (MTW) Demonstration Program. PHAs receiving transition

funding (as defined in 24 CFR 990.115) must be aware that continued qualification for that element of the formula requires continuous compliance with asset management requirements in 24 CFR part 990, subpart H.

Each year (beginning with the Consolidated Appropriations Act, 2008 (Public Law 110-161), and continuing until Congress removes this exemption), Congress allows PHAs with 400 or fewer public housing units to elect an exemption from any asset management requirements imposed by HUD relating to the Operating Fund rule, provided that an agency shall not be eligible to include stop-loss (i.e., a discontinuance of a reduction of subsidy) in its Operating Subsidy submission if it does not comply with the asset management requirements.

## 6. ELIGIBLE USES OF THE OPERATING FUND
Per 42 U.S.C. 1437g(e), the eligible uses of the Operating Fund include the following:

a. Procedures and systems to maintain and ensure the efficient management and operation of public housing units;[1]
b. Activities to ensure a program of routine preventative maintenance;
c. Anticrime and antidrug activities, including the costs of providing adequate security for public housing residents, including above-baseline police service agreements;
d. Activities related to the provision of services, including service coordinators for elderly persons or persons with disabilities;
e. Activities to provide for management and participation in the management and policymaking of public housing by public housing residents;
f. Costs of insurance;
g. Energy costs associated with public housing units, with an emphasis on energy conservation;
h. Costs of administering a public housing work program including economic self-sufficiency programs, which are designed to encourage, assist, train, or facilitate the economic independence of participants and their families or to provide work for participants, including programs for job training, employment counseling, work placement, basic skills training, education, workfare, financial or household management, apprenticeship, or other activities—and associated insurance costs;
i. The cost of repaying, together with rent contributions, debt incurred to finance the rehabilitation and development of public housing units, which are subject to HUD requirements;
j. Costs associated with the operation and management of mixed-finance projects, to the extent HUD deems appropriate; and
k. Costs of operating computer centers in public housing through a Neighborhood Networks initiative as described by the statute.

---

[1] Eligibility also includes amounts that are sufficient to pay for the reasonable costs of review by an independent auditor of the documentation or other information maintained pursuant to 42 U.S.C. 1437d(j)(6) by a PHA or resident management corporation to substantiate the performance of that agency or corporation.

5

Eligible expenses under the Operating Fund include supportive services programs, which all PHAs can implement. PHAs may use Operating Funds or program-specific funds, such as Family Self-Sufficiency (FSS), Resident Opportunity and Self-Sufficiency (ROSS), and Jobs Plus, for supportive services. PHAs must charge costs to program-specific grants timely. PHAs may not use supportive services grant funds to repay expenses that were previously paid for with Operating Subsidy funds.

## 7. FLEXIBILITY FOR OPERATING AND CAPITAL FUNDS

Section 9(g) of the 1937 Act (42 U.S.C. 1437g(g)) provides for the following flexible use of funds starting in Fiscal Year (FY) 2000 for Capital Funds and FY 2016 for Operating Funds.

### (1) Flexibility in Use of Funds

#### (A) Flexibility for Capital Fund Amounts

Of any amounts appropriated for FY 2000 or any fiscal year thereafter from the Capital Fund for any public housing agency, the agency may use not more than 20 percent[2] for activities that are eligible under section 9(e) of the 1937 Act (42 U.S.C. 1437g(e)) for assistance with amounts from the Operating Fund, but only if the public housing agency plan for the agency provides for such use.

#### (B) Flexibility for Operating Fund Amounts

Of any amounts appropriated for FY 2016 or any fiscal year thereafter from the Operating Fund for any public housing agency, the agency may use not more than 20 percent for activities that are eligible under section (d) of the 1937 Act (42 U.S.C. 1437g(d)) for assistance with amounts from the Capital Fund, but only if the public housing plan under section 1437c–1 of title 42 for the agency provides for such use.

### (2) Full Flexibility for Small PHAs

Of any amounts appropriated for any fiscal year for any public housing agency that owns or operates less than 250 public housing dwelling units, is not designated pursuant to section 1437d(j)(2) of title 42 as a troubled public housing agency, and (in the determination of the Secretary) is operating and maintaining its public housing in a safe, clean, and healthy condition, the agency may use any such amounts for any eligible activities under section (d)(1) of the 1937 Act (42 U.S.C. 1437g(d)(1)) and subsection (e)(1) of the 1937 Act (42 U.S.C. 1437g(e)(1)), regardless of the fund from which the amounts were allocated and provided.

---

[2] Each year since FY 2015, U.S. Congress—through its annual Appropriations Act—authorized to increase the limitation on Capital Funds used for Operating Fund eligible activities from 20 to 25 percent. If the FY 2026 Congressional Appropriations make a similar authorization (i.e., to increase the limit up to 25 percent), the Capital Fund Program Amendment to the Annual Contributions Contract will include the change. Detailed guidance on Capital Fund Processing in CY 2026 will be published at on the Operating Subsidy Grant Processing webpage.

## 8. HUD'S INITIAL AND CY OBLIGATIONS FOR CY 2026

At the beginning of the calendar year, HUD may fund projects using an estimate from data it pre-populates into Forms HUD-52722 and 52723. Later, HUD deploys these forms for projects determined to be eligible. If HUD does not fund or does not generate Forms HUD-52722 and 52723 for a project that the PHA considers eligible for an Operating Subsidy, the PHA should contact its local HUD field office. If HUD funds a project or generates forms for a project that is not eligible, the PHA must not draw down the funding or submit the forms. If a PHA draws ineligible amounts, it must report the transaction to its local field office, which will initiate action to return the amount drawn.

After the PHA processes and validates Forms HUD-52722 and 52723, HUD funds projects based on eligibility. As the PHA updates the forms throughout the year, HUD funds projects based upon the most recently processed Forms HUD-52722 and 52723. There may be a lag in funding because of the time required to process the updated forms and obligate funds.

PHAs can identify the latest Forms HUD-52722 and 52723 processed by HUD in the Public Housing Portal. While HUD's estimated funding is typically accurate on a portfolio level, estimated eligibility can vary significantly from actual eligibility on the project level. The Department funds each project on a cumulative basis (e.g., funding for February would bring total funding for the year up to $^2/_{12}^{\text{ths}}$ of prorated eligibility, and funding for March would bring total funding for the year up to $^3/_{12}^{\text{ths}}$ of prorated eligibility).

The Department offsets, de-obligates, or requires repayment of any funded amounts for any project deemed ineligible or any project overfunded based on incorrect estimates. HUD publishes obligation reports on the Operating Subsidy Grant Processing webpage, which identifies the amount of funds obligated throughout the calendar year. If a PHA finds the estimated eligibility exceeds the project's actual eligibility for CY 2026, the PHA must not draw down any excess funds and shall immediately notify the appropriate field office.

A PHA can access its current and historic Operating Subsidy eligibility data in the Public Housing Portal, in addition to using the Public Housing Portal to:

- Submit current Forms HUD-52722 and 52723 and supporting documents;
- Access the most recent Forms HUD-52722 and 52723 submitted by the PHA or accepted by HUD;
- Identify the status of new project requests;
- Create and submit Application for Federal Assistance (SF-424), Certification of Payments to Influence Federal Transactions (Form HUD-50071), and Disclosure of Lobbying Activities (SF-LLL);
- Apply for the Rate Reduction Incentive (RII); and
- Elect to participate in the Small and Rural Frozen Rolling Base Program.

## 9. OPERATING SUBSIDY GRANT SUBMISSION PROCESSING FOR CY 2026

A PHA must have a Unique Entity Identifier (UEI) generated by the System for Award Management (SAM). Additionally, PHAs must have an active registration at SAM.gov and an accurate Tax Identification Number (TIN) in the Line of Credit Control System (LOCCS) to

receive an Operating Subsidy Grant. The TIN reported by the PHA in SAM and LOCCS must be the same. The Operating Subsidy Grant Processing webpage provides directions on how to request a UEI. HUD will suspend or not obligate Operating Subsidy Grants for PHAs that do not comply with these requirements.

For HUD to determine the amount of Operating Subsidy Grant eligibility, PHAs must complete and submit the following electronic forms for each project using the Public Housing Portal:

- *Form HUD-52722* – Information on this form is used to calculate the Utility Expense Level. HUD deploys the HUD-52722 and instructions as part of the Forms HUD-52722 and 52723 in the Public Housing Portal.
- *Form HUD-52723* – Information on this form is used to calculate the total amount of Operating Subsidy Grant eligibility. HUD deploys the HUD-52723 and instructions with the Forms HUD-52722 and 52723 in the Public Housing Portal.
- *Application for Federal Assistance (SF-424)* – PHAs complete the SF-424 in the Public Housing Portal. A completed SF-424 must be submitted by the due date, **October 21, 2025, 5:00 p.m., Eastern Time**, for the PHA to receive an Operating Subsidy Grant. **Operating Subsidy will not be obligated to PHAs that do not submit an SF-424 on time**. Each PHA shall complete only one SF-424 for the entire amount of its CY 2026 Operating Subsidy Grant.
- *Certification of Payments to Influence Federal Transactions (Form HUD-50071)* – If applicable, PHAs must complete and electronically sign Form HUD-50071 in the Public Housing Portal.
- Other supporting documentation requested by HUD.

A PHA signing the SF-424 is making the following certifications (depending on the number of units regarding asset management and related fees):

- By signing this application, I certify under penalty of perjury: (1) the statements contained in the list of certifications and (2) that the statements herein are true, complete and accurate to the best of my knowledge. I also provide the required assurance and agree to comply with any resulting terms if I accept an award. I am aware that any false, fictitious or fraudulent statements or claims may subject me to criminal, civil or administrative penalties (e.g. 18 U.S.C. §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. §§ 3729, 3802). I certify the following:
  - *Operating Fund Letter assurance* – The Operating Fund Grant Obligation letter states that by drawing down the funds the PHA confirms compliance with all terms and conditions of the Operating Fund Grant Program, which includes but is not limited to the U.S. Housing Act of 1937, the Consolidated Annual Contributions Contract, 24 CFR 990 and 2 CFR 200.
  - In accordance with Section 235 of the Department of Housing and Urban Development Appropriation Act of 2020 I hereby certify that the PHA is in compliance with the Annual Contributions Contract as was in effect on December 31, 2017.
  - I certify that amount of Operating Subsidy stated in this form is an estimate based on the Operating Subsidy eligibility for the public housing agency from the previous funding year. (f)

o   I acknowledge that HUD obligates Operating Subsidy in the beginning of the funding year based on an estimate of Operating Subsidy eligibility for the public housing agency and that HUD calculates the remaining obligations on cumulative basis based on the Operating Fund Formula in accordance with 24 CFR 990 and data collected in the Form HUD-52723 and HUD updates eligibility throughout the funding year. (424g)

o   I agree that the public housing agency shall not draw down any excess funds when the estimated eligibility exceeds any project's actual eligibility and notify the appropriate HUD office; and that HUD offsets, de-obligates, or requires repayment of any Operating Subsidies for any project deemed ineligible or any project overfunded based on incorrect estimates.

o   Any person who becomes aware of the existence or apparent existence of fraud, waste or abuse of any HUD award must report such incidents to both the HUD official responsible for the award and to HUD's Office of Inspector General (OIG). HUD OIG is available to receive allegations of fraud, waste, and abuse related to HUD programs via its hotline number (1-800-347-3735) and its online hotline form. You must comply with 41 U.S.C. § 4712, which includes informing your employees in writing of their rights and remedies, in the predominant native language of the workforce. Under 41 U.S.C. § 4712, employees of a government contractor, subcontractor, grantee, and subgrantee—as well as a personal services contractor—who make a protected disclosure about a Federal Grant or contract cannot be discharged, demoted, or otherwise discriminated against as long as they reasonably believe the information they disclose is evidence of:

    1.   Gross mismanagement of a Federal contract or grant;
    2.   Waste of Federal funds;
    3.   Abuse of authority relating to a Federal contract or grant;
    4.   Substantial and specific danger to public health and safety; or
    5.   Violations of law, rule, or regulation related to a Federal contract or grant.

o   I agree that the public housing agency:

    ▪   Shall not use grant funds to promote "gender ideology," as defined in Executive Order (E.O.) 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

    ▪   Is in compliance, in all respects, with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of 31 U.S.C. 3729(b)(4);

    ▪   Certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including title VI of the Civil Rights Act of 1964;

    ▪   Shall not use any grant funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment; and

    ▪   Notwithstanding anything in the Notice of Funding Opportunity (NOFO) or application, this grant shall not be governed by Executive Orders revoked by E.O. 14154, including E.O. 14008, or NOFO requirements implementing Executive Orders that have been revoked.

- o I agree that the public housing agency must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, E.O. 14218, or other Executive Orders or immigration laws.
- o If applicable, no State or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.
- o Unless excepted by PRWORA, I agree that the public housing agency must use Systematic Alien Verification for Entitlements Program (SAVE), or an equivalent verification system approved by the Federal Government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.
- o *Operating Fund, Calculation of Operating Subsidy, PHA-Owned Rental Housing (Form HUD-52723), Section 5, Certifications:*
    - In accordance with 24 CFR 990.215, I hereby certify that the public housing agency is in compliance with the annual income reexamination requirements and that rents and utility allowance calculations have been or will be adjusted in accordance with current HUD requirements and regulations.
    - If applicable, in accordance with § 213 of Title II of Division L of the Consolidated Appropriations Act, 2023, Pub. L. 117-328 (approved December 29, 2022) and subsequent acts containing the same provisions, I hereby certify that the public housing agency has 400 or fewer units and is implementing asset management.
    - If applicable, in accordance with 24 CFR 990.255-290 – Compliance of Asset Management Requirements, I hereby certify that the public housing agency has 250 units or more and is in compliance with asset management.
    - I hereby certify under penalty of perjury the information stated herein, as well as any information provided in the accompaniment herewith, is true, complete, and accurate. WARNING: Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement up to five years, fines, and civil and administrative penalties (18 U.S.C. §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. §§ 3729, 3802).

## 10. SUBMISSION PROCESS

Forms HUD-52722 and 52723 and instructions for completing these forms are posted to the Public Housing Portal. HUD posts other required documents, submission deadlines, and guidance materials related to various formula elements on the Operating Subsidy Grant

Processing webpage. Failure to meet the posted submission deadline is a ground for HUD's denial of an Operating Subsidy Grant to a PHA.

PHAs must submit Forms HUD-52722 and 52723 to HUD through the Public Housing Web Portal. Note that PHAs must submit these forms and other required documents to HUD regardless of whether the submission is prepared by the PHA's fee accountants or any other entity acting on behalf of the PHA. Fee accountants, third parties, or entities other than the PHA are not allowed to submit Forms HUD-52722 and 52723 and other required documents to HUD.

## 11. PROJECT REGROUPINGS

Project regrouping changes and transfers and consolidations per Notice PIH 2014-24 will apply to Operating Fund Formula calculations in the funding year following the fiscal year in which the changes become effective (i.e., included in IMS/PIC data pulls of project, building, and unit characteristics data to calculate project expense levels (PELs)). Prior to the point at which the changes are reflected in the HUD data pulls, the Operating Fund Formula will continue to include PELs based on project characteristics that existed prior to the regrouping, transfer, or consolidation. PHAs should use the PEL estimator to understand the possible financial impact of regroupings before proceeding. The PHA must ensure that it is accounting for the Operating Subsidy Grant properly prior to the changes becoming effective.

## 12. PRE-POPULATED DATA

At the beginning of the calendar year, HUD uses unit status data for the reporting period July 1, 2024, through June 30, 2025, as reported in IMS/PIC to pre-populate CY 2026 Forms HUD-52722 and 52723. Asset Repositioning Fee (ARF) eligibility is derived from IMS/PIC (or its successor) data and pre-populated into Form HUD-52723. Unit status data from IMS/PIC (or its successor) is modified based on the ARF eligibility determinations. If pre-populated data is incorrect, PHAs can request modifications in the comments section of Form HUD-52723. The following table presents the edits that PHAs and HUD field offices can and cannot make.

| Item Description | Can PHA Edit? | Can Field Office Edit? |
|---|---|---|
| Project Number | No | No |
| Name of PHA | No | No |
| Address of PHA | No | No |
| UEI (pre-populated; edited to match SAM and LOCCS data) | No | No |
| Unit status data: Form HUD-52723, Section 2, Categorization of Unit Months, Lines 01, 02, and 05-13[3] | No | Yes |

---

[3] On Form HUD-52723, unit status data in Section 2, Categorization of Unit Months, Column A, Lines 03 and 04 are for new units that do not have a full reporting period of unit status data. Guidance is available on the Operating Subsidy Grant Processing webpage on the completion of Forms HUD-52723 and HUD-52722 for new projects.

| Item Description | Can PHA Edit? | Can Field Office Edit? |
|---|---|---|
| Unit status data: Form HUD-52723, Section 2, Categorization of Unit Months Lines 03 and 04; Column A, Lines 6a-17; and Column B1 | Yes | Yes |
| Per Unit Month (PUM) PEL | No | No |
| PEL inflation factor | No | No |
| Utilities expense level (UEL) inflation factor | No | No |
| Payment in lieu of taxes (PILOT) | Yes | Yes |
| Cost of independent audit | Yes | Yes |
| ARF: Form HUD-52723, Section 3, Part A, Line 14 | Yes | Yes |
| PUM Formula Income | Yes | Yes |
| Transition funding[4] | No | No |

In some cases, a PHA will need to allocate data from the Financial Assessment Submission Subsystem (FASS)-Public Housing (PH) Financial Data Schedule (FDS) to multiple projects. Non-asset management PHAs with multiple projects in IMS/PIC may report their portfolio as a single combined project in the FASS-PH FDS. If a non-asset management PHA has multiple projects in IMS/PIC, it will continue to submit the HUD-52722 and 52723 for each project. HUD pre-populates Formula Income, payment in lieu of taxes (PILOT), Jobs Plus Earned Income Disregard (JPEID) (if the PHA participates), and audit fees for projects that submit FDS data.

For projects that were not pre-populated and a PHA submits FDS data that relates to multiple projects, the PHA will need to allocate the FDS data to the sections of Forms HUD-52722 and 52723. The cumulative amount for all projects for each line item must sum to the pre-populated data unless adjusted pursuant to Operating Subsidy Grant guidance (i.e., Formula Income can be adjusted for FSS and PILOT, and audit fees can be updated to reflect more recent expenditures) to the extent consistent with any applicable contract terms. Guidance on how to allocate Formula Income is available on the Operating Subsidy Grant Processing webpage.

**Changes to Pre-Populated Unit Months Data**
PHAs enter unit status data into IMS/PIC, which is used by HUD to calculate each PHA's Operating Subsidy Grant eligibility. PHAs must ensure the unit status data in their Operating Subsidy Grant submissions are correct.

Guidance on timely reporting in Notice PIH 2011-65 requires PHAs to submit forms HUD-50058 and HUD-50058 MTW within 60 days of the effective date of any actions recorded on Line 2b of the forms. HUD pulls unit status data to prepopulate Operating Subsidy forms from IMS/PIC 30 days after the end of the reporting period (July 30) to prepopulate Form HUD-

---

[4] PHAs that did not comply with asset management in a prior funding cycle may not have transition funding pre-populated into its Form HUD-52723.

52723. PHAs are required to have all Form HUD-50058 submissions for the Operating Subsidy reporting period (July 1 of the prior year to June 30 of the current year) complete by July 30 of the current year.

For Expansion MTW agencies that use MTW flexibilities, HUD will not prepopulate unit status data into Section 2 of Form HUD-52723 (Operating Fund Calculation of Operating Subsidy) until a technical solution is implemented to enable the successful submission of 50058s. The reason is that some of the Expansion MTW PHAs cannot submit HUD-50058 data in IMS/PIC due to applying MTW flexibilities to those public housing households. HUD devised an alternative strategy for those PHAs to submit unit status data and implemented a temporary procedure in the 2026 funding cycle. HUD will collaborate with those affected PHAs to implement the alternative procedure for 2026.

## 13. SUBMISSION OF FORMS HUD-52722 AND 52723 FOR NEW PROJECTS

Throughout the funding year, HUD generates a list of potential new projects/units entered by the PHA in IMS/PIC and approved by the field office that have actual Date of Funding Availability (DOFA) data and are in management status. This list is available in the New Project section of the Operating Subsidy Grant Public Housing Portal.

To receive funding for new projects/units, a PHA must initiate the process by submitting an email to its field office representative requesting funding for a new project. The email must contain the project development number with text indicating that it is a new project for which the PHA would like to receive funding. The HUD field office will confirm the eligibility of the new project in the Public Housing Portal. Once the field office confirms, HUD's Financial Management Division will prepare and deploy Forms HUD-52722 and 52723 and make them available to the PHA.

New project requests may be submitted at any point during the year prior to the deadline noted below. To receive funding for new projects in CY 2026, a PHA must email its funding request to its local field office no later than **June 2, 2026, 5:00 p.m., Eastern Time**. HUD encourages PHAs to request new Forms HUD-52722 and 52723 as early as possible. After receiving a request, the field office will complete a request for a new project in the Public Housing Portal no later than **June 9, 2026, 5:00 p.m., Eastern Time**.

HUD deploys the HUD-52722 and 52723 Forms multiple times during the year to provide timely funding to PHAs. PHAs may identify the status of any new project request by accessing the New Project module in the Public Housing Portal. HUD will deploy the HUD-52722 and 52723 Forms for new projects and notify PHAs via email no later than June 24, 2026. To receive funding in 2026, PHAs must submit Forms HUD-52722 and 52723 using the Public Housing Portal to the appropriate field office no later than **June 30, 2026, 5:00 p.m., Eastern Time**. **Submissions received after the deadline will not be considered for funding in CY 2026**. If a project was eligible but did not receive funding in the prior funding year, then PHAs may include eligible unit months for October, November, and December for the prior funding year as appropriate in their new project current year submission in Section 2, Column A, Line 04.

To be considered eligible for funding, new projects/units must, at a minimum, have the following information in IMS/PIC:

- Annual Contributions Contract (ACC) Units
- Management Status
- Actual DOFA

To add a new project in IMS/PIC, PHAs should refer to the IMS/PIC Building and Unit Upload Template and Building and Unit Submission Instructions.

Funding for new projects/units differs from existing projects/units due to the timing and availability of certain data elements that drive the Operating Fund Formula. For example, new projects/units lack sufficient utility information necessary to calculate a stand-alone UEL. Further, new projects/units normally lack audited or unaudited FDS data which is used to compute formula elements such as Formula Income, audit costs, and PILOT. As a result, new projects/units must follow special procedures that are different from existing projects with a full reporting period. Finally, all new projects/units are considered fully occupied until the project/unit has a full year of reporting period data for the purpose of calculating the Eligible Unit Months (EUMs). Detailed guidance can be found in the New Project Guidance.

## 14. REVISION REQUESTS FOR OPERATING SUBSIDY GRANT ELIGIBILITY

Submitting revised Forms HUD-52722 and 52723 by a PHA in the Public Housing Portal constitutes a request for a revision. Prior to making its revision request, the PHA should initiate contact with the field office well in advance to resolve any issues prior to the revision deadline. When making such a submission, the PHA must provide an explanation of the change(s) being requested, and the reason for the change(s). PHAs may request revisions to their original CY 2026 Operating Subsidy Grant submissions based on any of the four reasons listed below:

1. Correction of mathematical, clerical, information system, or other errors
2. Eligibility for Asset Repositioning Fees or new units in existing projects already under payment (24 CFR 990.155)
3. Approval of new utilities incentives/contracts pursuant to 24 CFR 990.185
4. Appeals submitted and approved by HUD in accordance with this notice (pursuant to 24 CFR 990.245)

All revision requests must be submitted by the Executive Directors, and they must have been submitted, via the Public Housing Portal, to the field office no later than **April 23, 2026, 5:00 p.m., Eastern Time**. Requests submitted after this date will not be accepted, unless the change lowers the Operating Subsidy Grant eligibility or is the result of a documented HUD error, in which case such requests are required.

## 15. OPERATING SUBSIDY GRANT CALCULATION

This section provides detailed explanations of how Operating Subsidy Grant eligibility is calculated. The formula for Operating Subsidy Grant eligibility is:

**Eligibility = (PEL + UEL) x EUM + Add-ons - [Formula Income x EUM]**

Eligible unit months (EUM) are the number of public housing units in eligible categories expressed in months during the reporting period and for which the units are subject to the entire Operating Fund Formula. Forms HUD-52722 and 52723 are programmed to calculate the Operating Subsidy Grant eligibility using this formula.

Except for ARF, public housing units must be subject to the ACC and be in management status in IMS/PIC to receive Operating Subsidy Grants. In general, for Formula Income, PEL, UEL, and most add-ons to be included in the calculation for eligibility, public housing units must be either: (1) a unit occupied by a public housing-eligible family under lease pursuant to 24 CFR 990.120(b), 24 CFR 990.125(a), and 24 CFR 990.140; (2) a dwelling unit with a HUD-approved vacancy pursuant to 24 CFR 990.125(b) as defined in 24 CFR 990.145; or (3) a vacant unit at or below the limited number of vacancies pursuant to 24 CFR 990.125(c) as defined in 24 CFR 990.150. Eligibility for some add-ons, such as asset management fees and ARF, is limited to units meeting certain criteria (as discussed below).

The remainder of this section discusses the components of the Operating Subsidy Grant eligibility formula in detail.

### 15.1 The PEL

The PEL is a model-generated cost estimate for each project, exclusive of taxes, utilities, and add-ons. The PEL is expressed as a per unit month (PUM) cost and is based on IMS/PIC project, building, and unit characteristics. PELs may change when PHAs regroup their projects. To estimate the impact of project re-groupings, PHAs can use the PEL Estimator located on the Subsidy Grant Processing Page.

### 15.2 The UEL and Central Office Cost Center (COCC)

The UEL is the product of the utility rate, the payable consumption level, consumption incentives, and the utilities inflation factor and is expressed as a PUM dollar amount. COCC utility consumption and costs are not included in the calculation of the PHA's project UEL on Form HUD-52722. If the COCC is located within a project, actual consumption (including the rolling base consumption and utility costs for the COCC) must be excluded from the UEL calculation for the project. PHAs must explain the methodology used to exclude COCC data (e.g., square footage).

To exclude COCC utility consumption and costs from combined consumption and costs in a pre-asset management Energy Performance Contract (EPC), access Processing Central Office Cost Center (COCC) Adjustments for an Existing Energy Performance Contract.

#### 15.2.1 Adjusting the Rolling Base when Units are Removed from Inventory

When a PHA removes a unit from inventory and there is less than a full 12-months of consumption in the reporting period, consumption for these units shall be removed from Line 1 of Form HUD-52722. The consumption for the removed unit is also reduced from the rolling base. Access Notice PIH 2024-31 for guidance on how to adjust the rolling base when units are removed from inventory.

15

*15.2.2 Documentation Requirements*

PHAs are required to maintain "appropriate utility records, satisfactory to HUD," which includes documentation of all data used to calculate Form HUD-52722 (per 24 CFR 990.170(f)). All records must be maintained by utility and by project for each 12-month period ending June 30 for the reporting period and each year of the rolling base.

Appropriate utility records must include:

- Copies of utility bills
- Utility registers (in Excel or equivalent electronic spreadsheet format), including:
  - Project number
  - If applicable, meter number (e.g., electricity, water, natural gas, propane)
  - Service address
  - Unit of measure
  - Consumption amount
  - Cost

Failure to maintain appropriate utility records, and/or the failure to provide HUD with adequate documentation when requested, may result in HUD initiated adjustments to Form HUD-52722 data and/or calculations. Mixed-finance projects are not exempt from this requirement of adequate documentation, and therefore, upon HUD request, they must submit an audited financial statement (AFS) and utility register records from the project's owner entity.

*15.2.3 Data Distortions on Form HUD-52722*

A PHA/project must report its rolling base so as not to materially distort the rolling base period. Many events trigger the need for an adjustment to the rolling base periods, including (but not limited to) changes to the number of units in a project or changes between PHA paid and resident paid utilities, broken meters, water leaks, changes to the units of measure, incomplete billing and documentation, interrupted service, or any event that leads to a large, unexpected decline in utility consumption. Regardless of the cause of the data distortion, a PHA must adjust their rolling base periods to consumption levels that are directly comparable to the actual current year consumption.

Unexplained drastic declines in actual consumption compared to the rolling base distorts the UEL calculation by triggering the 75/25 percent incentives, which pays the PHAs for 75 percent of their saving from unused utility consumption. Anomalous consumption data can lead to large overpayments.

Consider the following example. A project reports a significant decline in water/sewer consumption, although they maintained the same number of occupied units and have taken no action to curb consumption. The PHA reviews its utility register and finds it has accurately reported what it was billed, however it cannot document why its consumption declined. In this case, the PHA must adjust its rolling base periods to reflect the same lower number it is reporting in Line 01 Actual Consumption. Overpayments made due to the PHA's failure to adjust the rolling base must be repaid to the Department.

### 15.2.4 Unaddressed Data Distortions on Form HUD-52722

HUD will adjust the UEL calculation or submitted data to correct any error or data anomaly detected in Form HUD-52722, as authorized by 24 CFR 990.170, 24 CFR 990.180, and 24 CFR 990.200. HUD will adjust Form HUD-52722 when a PHA is unable to provide proper documentation, and when proper documentation has been provided but the submitted data distorts the UEL calculation. HUD may adjust any part of Form HUD-52722, including, but not limited to, current year consumption, rolling base year consumption, and utility incentive eligibility.

### 15.2.5 Rate Reduction Incentive

The Rate Reduction Incentive (RRI) is a financial incentive for PHAs that pursue special and significant efforts beyond what is required by statute or regulation to reduce their utility rate. The PHA's action must exceed the activities required by statute and/or regulation. Pursuant to HUD regulation 24 CFR 990.185(b), "If a PHA takes action beyond normal public participation in rate-making proceedings, such as well-head purchase of natural gas, administrative appeals, or legal action to reduce the rate it pays for utilities, then the PHA will be permitted to retain one-half the annual savings realized from these actions." Guidance for RRI, including deadlines, is provided by Notice PIH 2024-31 or successor notice. In order for the PHA to claim an RRI, the PHA must have received a signed RRI Approval Letter from HUD for eligible funding year and is then eligible to claim the exact amount of the approved RRI on its Form HUD-52722 on the "Rate Reduction Incentive" line (Line 23) for each approved AMP.

PHAs must submit complete RRI requests to HUD through the Public Housing Portal no later than **September 30th, 2025, 5:00 p.m., Eastern Time**. No additional documentation will be accepted beyond the deadline. Instructions for submitting an RRI request are posted to the Public Housing Portal.

As part of the Operating Subsidy process, PHAs must submit sufficient documentation to validate that the reduced rate for each utility type for which it received RRI approval is reflected in Form HUD-52722.

### 15.2.6 The Small Rural Frozen Rolling Base Program

The Small and Rural Frozen Rolling Base (SR-FRB) Program allows eligible PHAs to elect to have the UEL portion of its Operating Subsidy Grant Formula calculated using the average annual consumption for the most recent three-year period (rolling base) for a period of up to 20 years. Details on the requirements of the program can be found in Notice PIH 2022-32.

### 15.2.7 Electing to Participate in the SR-FRB Program

Interested eligible PHAs must elect to participate through the Public Housing Portal. PHAs make their election through the SR-FRB submodule which is found in the Energy Incentives module. The deadline for a PHA to make an initial election is **August 15th, 2025, 5:00 p.m., Eastern Time**.

*15.2.8 Adding Utilities to Existing SR-FRB Participation*

PHAs may elect to add additional utilities in future funding years within the 20-year term. PHAs must elect to add additional utilities in the Public Housing Portal. PHAs must submit their election to add utilities by the deadline for making an initial election identified above.

*15.2.9 Exiting the SR-FRB Program*

PHAs participating in the SR-FRB Program may remove a project or project(s) from participation through the Public Housing Portal as specified in Notice PIH 2022-32. PHAs must submit their request to remove the project or projects from the SR-FRB Program by **August 15th, 2025, 5:00 p.m., Eastern Time**, for making an initial election identified above.

*15.2.10. Exclusion of Trash Collection Cost from the UEL*

The UEL includes the following utilities: gas, electric, heating fuels, water, and sewer service consistent with the definitions at 24 CFR 990.115. Trash collection cost must not be included in the UEL calculation in form HUD-52722. PHA-paid trash collection cost is included in the pre-populated PEL PUM formula element. Harvard University's Public Housing Operating Cost Study PEL model acknowledges that "trash removal expenses are treated as a maintenance expense and not a utility expense in the Chart of Accounts for public housing." Where waste management companies bill trash collection charges to individual units, PHAs may include trash collection service fees in the tenant utility allowance stipulated in 24 CFR part 965, subpart E.

*15.2.11. Exclusion of Delinquent Resident Paid Utilities from the UEL*

A PHA may choose to pay a resident's overdue utility bill, however it may not include the cost or consumption for these utilities in Form HUD-52722.[5]

### 15.3 Formula Income

Formula Income is an estimate of a PHA's rental revenue. The CY 2026 per unit month (PUM) Formula Income will be pre-populated based on the PHA's approved FY 2024 FASS-PH FDS submission when available. FY 2024 financial data must be used when available. The PUM Formula Income is calculated in two steps:

*Step 1:* Divide the Net Tenant Rental Revenue by Unit Months Leased (UMLs).
*Step 2:* Multiply the PUM Formula Income (determined in Step 1) by the CY 2026 Formula Income inflation factor.

Mixed-finance projects that do not submit Net Tenant Rental Revenue or UMLs in their FDS submission must submit an AFS and 12 months' rent roll data from the project's owner entity, along with its submission of Operating Fund Forms HUD-52722 and 52723 to support the Formula Income amount included on Form HUD-52723. The inflation factor used for mixed-finance projects will always be based upon the Fiscal Year End (FYE) of December 31, as the FYE of owner entities for tax credit projects is always December 31. This may differ from the

---

[5] Public Housing Occupancy Guidebook, Section 4.2 Other Common Practices for Resident-Paid Utilities and Utility Allowances.

PHA's FYE. Guidance on how the Formula Income inflation factor is derived and the Formula Income methodology are posted on the Operating Subsidy Grant Processing webpage.

### 15.3.1 Energy Performance Contracts

Special guidance for capturing the resident-paid utilities incentive in a HUD-approved energy performance contract on Form HUD-52723 (Section 3, Part B, Line 02, Resident Paid Utility Energy Performance Contract Benefit) is on the Operating Subsidy Grant Processing webpage.

### 15.3.2 Jobs Plus Financial Incentive

A PHA's annual Formula Income may be adjusted if the PHA participates in the Jobs Plus Program. Since HUD pre-populates Formula Income with data from the FDS, the financial incentive results in an increase to the Operating Subsidy Grant. A PHA is not permitted to receive Operating Subsidy Grant amounts based on rent not collected due to income disregarded while administering a Jobs Plus Program and its financial incentive component, as the reimbursement for the "lost" rental income must only come from the Jobs Plus Grant. A PHA must submit financial incentive-related data to HUD so that HUD can reverse any increase in Operating Subsidy eligibility caused by participation in a financial incentive. Detailed guidance on PHA data submission requirements and HUD's methodology to make financial incentive-related adjustments to Formula Income is available on the Operating Subsidy Grant Processing webpage. PHAs must submit the financial incentive data to HUD by the date identified in the CY 2026 Operating Subsidy Schedule. If PHAs do not observe the due dates, HUD will derive a financial incentive -related adjustment amount using a conservative methodology to ensure that the PHA is not overfunded. The above noted adjustment does not apply to MTW PHAs that are subject to an Alternative Operating Fund Formula without FDS data as part of their formula.

### 15.3.3 Permissive Deductions

A PHA may adopt additional, or "permissive," deductions from annual income only if the PHA establishes a written policy for such deductions. Permissive deductions may be used to incentivize or encourage self-sufficiency and economic mobility.[6] Consistent with 24 CFR 5.611(b)(1)(i), a PHA that adopts such deductions will not be eligible for an increase in Capital Fund and Operating Fund Formula Grants based on the application of such deductions. PHAs utilizing permissive deductions will be subject to review and compliance with 24 CFR 5.611(b)(1)(i). To properly account for permissive deduction(s) for each project, PHAs will insert the cumulative reduction in rent for the PHA's fiscal year used to determine Formula Income as a negative number in Form HUD-52723 Section 3, Part C, Line 3 Other.

---

[6] A permissive deduction might include, for example, an amount of any family earned income, established at the discretion of the PHA, which may be based on the amount earned by particular members of the family, the amount earned by families having certain characteristics, or the amount earned by families or members during certain periods or from certain sources.

### 15.4 FSS Program

The Family Self-Sufficiency (FSS) Program enables families assisted through Public Housing Programs to increase their earned income and reduce their dependency on social services and rental subsidies. Under the FSS Program, families living in low-income housing enter into a contract and are provided opportunities for education, job training counseling, and other forms of social service assistance to develop the necessary skills required to achieve self-sufficiency. Escrow accounts are established for FSS participants by the PHA.

As the skills of a participant increase, their earnings are also likely to increase, which results in an increase in the participant's rent. Under the FSS Program, the PHA places the rent increase into an escrow account. It is strongly recommended that a PHA reduce the tenant rent portion of Formula Income (on Form HUD-52723) by the amount of its FSS escrow payments, not operational expenses, to prevent decreases in subsidy for funds placed in escrow. Further, adjustments have to align for the time period of the FDS submission being used to generate Formula Income. PHAs must enter appropriate comments in the comment section of Form HUD-52723 when FSS escrow adjustments are made. A PHA must maintain supporting documentation of how they determined the decrease in Formula Income and submit the documentation to the field office upon submission of Forms HUD-52722 and 52723.

The field office uses supporting documents to validate the decrease to Formula Income. Refer to Financial Reporting for the Family Self-Sufficiency (FSS) Program Accounting Brief #26 for detailed guidance on correct accounting for grant costs, other funds going to this activity, and escrow reporting. Also reference Notice PIH 2022-20.

### 15.5 Mixed-Finance Modernization

Mixed-finance development can involve modernization rather than new construction. Mixed-finance modernization often involves the use of Low-Income Housing Tax Credits (LIHTC) to modernize an existing public housing project. Due to LIHTC rules, ownership of the existing public housing project must be transferred to the new owner entity. This requires the project to be removed from inventory (i.e., IMS/PIC) via a Section 18 disposition application, then added back to inventory (i.e., IMS/PIC) via a development proposal. Such projects are subject to 24 CFR 905.304(a)(2) and retain their DOFA date that existed prior to modernization as described in 24 CFR 905.604.

#### 15.5.1 Impact on Operating Subsidy Grants

Public housing units disposed through mixed-finance modernization in the existing project are **not eligible for ARF**. When the PHA submits the Section 18 disposition application via IMS/PIC, the PHA selects the category "Mixed Finance MOD-REHAB" as the type of units included in the mixed-finance modernization development proposal.

Immediately upon closing, PHAs must add the new project and enter the removal date for the old project into IMS/PIC. Adding the new project to IMS/PIC timely is critical to maintaining uninterrupted funding. To add a new project in IMS/PIC, refer to the IMS/PIC Building and Unit Upload Template and Building and Unit Submission Instructions.

*15.5.2. Designation of Units as Vacant for Modernization*

PHAs using mixed finances to modernize public housing units may submit a request to their field office to place units that must remain vacant during modernization into the status of Vacant for Modernization. See Notice PIH 2024-03 for additional information on this status. Once the work that required the unit to be vacant has been completed, the unit must be re-occupied by an eligible family or placed in vacant status, even if additional modernization work continues.

**15.6 Add-Ons**

Add-ons include the following types of costs: independent audit, PILOTs, asset management fees, information technology fees, ARFs, Elderly/Disabled Service Coordinator (EDSC) (referred to as the self-sufficiency add-on), EPCs, and Resident Participation.

*15.6.1 Cost of Independent Audit*

Independent audit cost is reported for the Operating Subsidy Grant Program when required by the Single Audit Act or when a single audit is not required and the PHA elects to have a financial statement audit prepared. Once audit costs are included in a funding eligibility calculation, the PHA is required to complete an audit for the matching PHA fiscal year and submit it to HUD. Audits are submitted electronically in accordance with the Uniform Financial Reporting Standards (24 CFR part 5, subpart H).

A project in which Operating Subsidy Grant eligibility is determined to be zero is still eligible to receive an Operating Subsidy Grant amount equal to its most recent audit costs pursuant to 24 CFR 990.190(d), subject to proration. This may occur when program expenses [**(PEL +UEL) + Add-Ons - Formula Income**] are equal to or less than zero.

Project audit costs are pre-populated in Form HUD-52723 when CY 2024 FDS data is available. Where a PHA has a more recent actual audit cost than the pre-populated amount, it may replace that amount with the most recently paid amount and provide the payment documentation. If the audit cost is not pre-populated, the PHA shall report its most recent actual audit cost and attach proof of payment when submitting CY 2026 Form HUD-52723.

For mixed-finance projects with both ACC and non-ACC units, the audit costs are prorated to the amount allocable to ACC Public Housing units. The amount is based on the ratio of ACC units divided by total units: **Ratio = ACC units ÷ (ACC units + non-ACC units)**.

*15.6.2. Payments in Lieu of Taxes (PILOT)*

For CY 2026, project PILOT amounts are calculated and pre-populated in Form HUD-52723 based upon approved CY 2024 FASS-PH FDS data. If a PHA submits Form HUD-52723 with a project's PILOT amount greater than the amount pre-populated, the PHA must attach proof of payment with the submission.

Regulatory requirements at 24 CFR 990.190(c) stipulate that "each PHA will receive an amount for PILOT in accordance with Section 6(d) of the 1937 Act, based on its cooperation agreement or its latest actual PILOT payment." Section 6(d) of the 1937 Act specifies the PILOT is equal to "10 per centum of the sum of the shelter rents charged in such project, or such lesser amount as (i) is prescribed by State law, or (ii) is agreed to by the local governing body in its agreement for

local cooperation with the public housing agency required under Section 5(e)(2) of this Act, or (iii) is due to failure of a local public body or bodies other than the PHA to perform any obligation under such agreement."

PILOT is pre-populated in Form HUD-52723 by calculating ten percent of shelter rents (i.e., rent less utilities). If one of the lesser amounts identified in (i), (ii) or (iii) above apply, the PHA must override the pre-populated amount with the lesser amount. For existing projects, the following line items from the Low Rent Public Housing column of the project's audited FASS-PH FDS submission are used to calculate the PILOT:

- 70300 Net Tenant Rental Revenue
- 93100 Water
- 93200 Electricity
- 93300 Gas
- 93400 Fuel
- 93600 Sewer
- 93800 Other Utilities

**PILOT = [Line 70300 - (Lines: 93100 + 93200 + 93300 + 93400 + 93600 + 93800)] x 0.10**

For mixed-finance projects the PILOT may not be pre-populated, in which case the PHA submits the owner entity's audited financial statement to the field office when submitting CY 2026 Form HUD-52723. For mixed-finance projects with both ACC and non-ACC units, the PILOT may need to be prorated to determine the amount allocable to public housing units. This happens only when both non-ACC and ACC units are subject to PILOT. Public housing units paying real estate taxes and not subject to PILOT may not include PILOT in its Operating Subsidy Grant calculation.

### 15.6.2 Asset Management Fee

PHAs not in compliance with asset management requirements are not eligible for the asset management fee pursuant to 24 CFR 990.190(f) or stop loss pursuant to guidance in Notice PIH 2007-16 and regulations at 24 CFR 990.230(d).

Asset management fees are determined as follows: (1) PHAs with at least 250 units are eligible for a $4 per unit asset management fee for each month the project is subject to the ACC and in management status; and (2) PHAs with fewer than 250 units that are in compliance with asset management requirements under 24 CFR 990.255-290 (subpart H) are eligible for a $2 per unit asset management fee for each month the project is subject to the ACC and in management status. PHAs with only one project, regardless of number of units, are not eligible for an asset management fee pursuant to 24 CFR 990.190(f). MTW agencies' eligibility for asset management fees is subject to the terms of their MTW agreement. PHAs with one project may continue to receive stop loss based on compliance with the limited asset management requirements of their stop loss approval. For further explanation, refer to the Transition/Stop Loss and Asset Management Fee Funding for PHAs with One Project.

### 15.6.3 Information Technology Fee

In accordance with 24 CFR 990.190(g), Operating Subsidy Grant calculations include $2 PUM for costs attributable to information technology based on the total number of ACC units in management status.

### 15.6.4 ARF

PHAs must follow regulatory requirements at 24 CFR 990.190(h). PHAs must ensure that IMS/PIC data is accurate in calculating their ARF eligibility. Critical data elements include the HUD demolition/disposition approval date. Additional elements include Days to Relocation in the Demolition and Disposition (Demo/Dispo) module and End of Participation (EOP) of the first move out after the relocation date. PHAs should work with their field office to make any needed corrections. Modifications to the Demo/Dispo module should conform with guidance in Notice PIH 2021-37. ARF is only available for dispositions or demolitions conducted under 24 CFR part 970.

When a unit is eligible for ARF, PHAs should move any unit months used to calculate ARF to Section 2 Column A, Line 12 of Form HUD-52723 except as noted below. After ARF eligibility ends, if the units are not yet removed from IMS/PIC, they are reported in Column A, Line 13.

Section 3, Part A, Line 14 of Form HUD-52723 is pre-populated with ARF eligibility calculated based on IMS/PIC data. However, PHAs must confirm the accuracy of this data element and revise it as needed prior to submitting their Form HUD-52723. It is especially important to review the ARF calculation in the first year of ARF eligibility, because after the first year of eligibility PHAs may not change data elements used in the calculation. PHAs must submit supporting documentation detailing the ARF calculation for the requested amount.

When Section 3, Part A, Line 14 of Form HUD-52723 must be modified, in addition to changing the pre-populated data in Section 3, Part A, Line 14, unit status data in Section 2 of Form HUD-52723 may also need to be changed. If the underlying IMS/PIC data is inaccurate, the PHA should work with the field office and the Special Application Center to correct the data. The field office will follow the ARF Standard Operating Procedures found on the FMD SharePoint site. To initiate corrections, the PHA must submit documentation required by its field office along with Form HUD-52723.

When making a change to ARF eligibility in Form HUD-52723, the PHA should present a spreadsheet showing the ARF eligibility calculation and related information, including:

- Project number and Demo/Dispo application number
- Date of the approval letter
- Number of days to relocate after the approval letter is issued and the resulting planned relocation start date
- First move-out after the planned relocation start date is consistent with the EOP in IMS/PIC or a statement that all units were vacant on the date of the approval letter, or the planned relocation start date
- ARF unit months for the project or building(s), which equals the number of ARF eligible months multiplied by the number of ARF eligible units

- Detailed calculation of ARF funding for each year of eligibility, including ARF unit months, the PEL, and the PEL inflation factor

PHAs must revise their Form HUD-52723 submissions to reflect changes in eligibility (based on the removal of units) on a quarterly basis. If the entire project is ARF eligible, the project is no longer Operating Subsidy eligible after the expiration of ARF eligibility. If a project is only partially ARF eligible, the units that are not ARF eligible remain eligible for non-ARF portions of the Operating Fund Formula.

### 15.6.5 EDSC Program

The reasonable costs for salary, fringe benefits, and administrative costs for the EDSC services are eligible for this formula element. Only PHAs previously receiving EDSC funding are eligible. Eligibility is posted on the CY 2026 Operating Fund Grant Processing webpage.

Specifically, eligible EDSC Program costs include salary, fringe benefits, and administrative costs for an EDSC service coordinator, or third-party costs if EDSC services are provided by an outside entity. Service coordinators assist elderly or disabled individuals living in public housing to obtain needed supportive services from community organizations and/or agencies. Service coordinators may perform activities such as assessing elderly or disabled resident needs, identifying and linking residents to appropriate services, monitoring the delivery of services, and offering one-on-one case management. A service coordinator may also educate residents about what services are available and how to use them, and help residents build informal support networks with other residents, family, and friends. Generally, for elderly individuals and persons with disabilities, services are intended to extend the length and improve the quality of independent living.

The total EDSC eligibility cap increases annually up to the amount of the annual inflation factor in Section 3, Part A, Line 02 of Form HUD-52723. Eligible PHAs should enter the eligibility amount in Section 3, Part A, Line 07 of Form HUD-52723. Where a PHA's eligible EDSC costs are less than the EDSC eligibility cap, they should enter the EDSC costs. This "Self-Sufficiency" line is restricted to the EDSC Program and does not include ROSS funding.

If a PHA's public housing inventory (i.e., the number of units in IMS/PIC that are subject to the ACC) decreases (e.g., due to RAD conversion), the PHA's EDSC (funded as an Operating Subsidy Grant add-on) decreases proportionately. The PHA must make the proportionate decrease in its Form HUD-52723. In the case of transfers, consolidations, or mergers:

- If a PHA is eligible for the EDSC Program and elects to consolidate or merge with another PHA, eligibility is maintained. The EDSC eligibility amount is allocated to the receiving PHA.
- If there is a transfer of some but not all projects between PHAs, EDSC eligibility, which is at a PHA level, is not transferred.

### 15.6.6 EPC

With a HUD-approved EPC, a PHA may qualify for certain incentives under the subsidy formula described in 24 CFR 990.185. To claim EPC incentives, the PHA must have unpaid EPC debt on

the current EPC. If the EPC debt is paid, the PHA is not eligible for the EPC Incentive toward that EPC.

### 15.6.7 Annual EPC Submissions

PHAs will not be required to send EPC Measurement and Verification (M&V) reports to HUD for CY 2026. Instead, for CY 2026, PHAs will be required to conduct an Annual EPC Savings Verification for their active EPC. The EPC Savings Verification is an important mechanism to help ensure EPCs are funded in compliance with Public Housing regulations and HUD's EPC approval letter. The deadline for submitting EPC Savings Verification workbooks will be posted on the Operating Subsidy Grant Processing webpage. HUD may adjust, remove, or recapture EPC incentives from the PHA's Operating Subsidy form for errors in the EPC incentives included on Forms HUD-52722 and 52723.

### 15.6.8 AOS EPC Incentive

Pursuant to 24 CFR 990.190(b), a PHA with a HUD-approved EPC for the Add-On Subsidy (AOS) incentive is eligible to enter the amount of the AOS incentive in Section 3, Part A, Line 8 for energy loan amortization. Copies of EPC approval letters (and amended versions) must be retained by the PHA and field office for the life of the EPC. MTW PHAs with self-approval authority in their Standard MTW Agreement must submit a request to their field office describing the type and term of EPC benefits claimed and a list of projects for which the benefits are claimed.

The AOS benefit is subject to the lesser of EPC Project Costs or EPC Project Savings associated with the respective energy conservation measure (ECM). If the cost savings for the AOS reporting period in any year during the contract period are less than the amount of AOS incentive claimed, the deficiency will be offset against the PHA's Operating Subsidy Grant eligibility for the PHA's next fiscal year. The difference is offset by entering a negative number Section 3, Part C, Line 3 "Other" of the Form HUD-52723. There are methods to compute the AOS based on the M&V Methods: Option A and Option C.

A. AOS Option A uses stipulated consumption savings based on acceptable operational, or performance parameters that must be approved in the EPC Approval Letter:
   **Savings = (Stipulated Consumption Savings) x (Authority-Paid Utility Rate)**
B. AOS Option B uses measured consumption from the ECM. The PHA is responsible for submitting the measured consumption for the reporting period with their Form HUD-52723 submission:
   **Savings = (ECM Measured Consumption Savings) x (HUD-52722 Utility Rate)**
C. AOS Option C uses a Reference Baseline for savings comparison, which is determined by the average of historical consumptions (found on Lines 02 through 04 on Form HUD-52722). The Reference Baseline is not frozen on Form HUD-52722 but is identified in the EPC Approval letter and is only used to calculate EPC Savings:
   **Savings = (Reference Baseline – Current Consumption) x (HUD-52722 Utility Rate)**

*15.6.9 FRB and RPU EPC Incentives*

If the EPC Incentive is Frozen Rolling Base (FRB) and/or Resident-Paid Utilities, documentation should be submitted to the HUD field office that identifies if at least 75 percent of the energy savings from the incentives is used for debt service or other eligible EPC Project Costs.

*15.6.10 Funding for Resident Participation Activities*

Pursuant to 24 CFR 990.190(e), PHA Operating Subsidy Grant calculations include $25 per occupied unit, per year for resident participation activities, including but not limited to those described in 24 CFR part 964. A unit is eligible to receive resident participation funding if it is occupied by a public housing resident or occupied by a non-assisted PHA employee, or police officer or other security personnel who is not otherwise eligible for public housing. In any fiscal year, if appropriations are not sufficient to meet all funding requirements under this part, then the resident participation component of the formula is adjusted accordingly.

## 16. INSURANCE REQUIREMENTS

PHAs Insurance requirements are codified in regulation at 24 CFR part 965 and further delineated in the applicable ACC for the PHA. ACC forms can be found under "Project-Based Funding" on the Operating Fund webpage. A PHA is required to maintain adequate insurance to protect against potential financial losses caused by various hazards. In certain circumstances, PHAs may have just cause to vary from mandatory insurance requirements applicable to all PHAs. Such variations would require the PHA to obtain a waiver of the ACC insurance requirement(s). Notice PIH 2018-16 provides guidance and direction regarding the waiver submission process.

When a PHA determines that insurance costs have risen so substantially as to cause the PEL to be unrepresentative of non-utility operating expenses, it may consider submitting a PEL appeal. Section 20 of this notice provides guidance regarding the submission of PEL appeals. Some PHAs may be eligible for Shortfall funding if insurance costs have risen by such a significant degree that reserves are substantially diminished.

Information regarding insurance risk pools, insurance requirements, and insurance-related guidance can be found on the Operating Subsidy Grant Processing webpage.

## 17. CROSS-CUTTING REQUIREMENTS

As noted in the Operating Fund rule at 24 CFR 990.116, environmental review procedures of the National Environmental Policy Act of 1969 (42 U.S.C. 4332(2)(C)) and implementing regulations at 24 CFR parts 50 and 58 are applicable for the Operating Fund Program.

## 18. MTW AGENCIES WITH ALTERNATIVE OPERATING FUND FORMULA

MTW PHAs with Alternative Operating Fund Formula (AOFF) agreements submit requests for Operating Subsidy Grants in accordance with their MTW agreements in Attachment A. In cases where this involves submitting one request on a PHA-level, Form HUD-52722 is not submitted. PHAs must submit Form HUD-52723 to their field offices in accordance with the MTW agreement, which generally includes entries for Section 1 and Section 3, Part C, Line 01.

Documentation supporting the agreement's formula (i.e., the PHA's calculation workbook for the CY 2026 Operating Subsidy Grant, which must include unit months data for the reporting period, add-on subsidies, non-utility and utility subsidies, and the RAD adjustment (if any) for converted units as referenced in Attachment A of the MTW agreement) must be submitted with Form HUD-52723 by the scheduled deadline.

MTW PHAs whose submissions are not limited to one form will have their electronic form pre-populated in the same manner as regular formula PHAs and shall complete and submit all sections of Forms HUD-52722 and 52723 on a project-level basis in the same manner as regular formula PHAs.

## 19. THE GENERAL DEPOSITORY AGREEMENT

In accordance with U.S. Treasury requirements and 2 CFR part 200, PHAs are subject to cash management requirements. Further, the ACC (Section 12) requires PHAs to place public housing funds in accounts subject to a General Depository Agreement (GDA) (Form HUD-51999).

When PHAs enter into depository agreements with financial institutions for accounts holding public housing funds such as Operating Subsidy Grants, program income (rental and non-rental income), and disposition proceeds (PHA deposits), PHAs are required to have a GDA with the financial institution that establishes the terms and conditions dictating the investment, and collateral and securitization requirements for the PHA's deposits.

A GDA ensures that all the PHA's deposits or funds otherwise associated with public housing for purposes of public housing remain available for its required purpose. This is accomplished by requiring such financial grant assistance to be deposited into interest-bearing accounts at financial institutions whose deposits and accounts are insured by the Federal Deposit Insurance Corporation or the National Credit Union Share Insurance Fund. Moreover, whenever PHA deposits exceed the insured limits, the GDA requires those PHA deposits to be fully and continuously collateralized with Treasury-approved investments. The Department generally does not approve modifications to the GDA, but, if a PHA wants to request approval to modify or add an addendum to the GDA, it must request a HUD waiver under 24 CFR 5.110 and follow the usual HUD regulatory waiver process detailed in Notice PIH 2018-19.

Operating Subsidy held by a PHA is required to be deposited in an interest-bearing account with a depository institution with which the PHA has entered in a GDA. PHAs are not required to maintain their Operating Subsidy in an interest-bearing account as provided in 2 CFR 200.305(b)(8) **if**:

- o The PHA receives less than $250,000 in Federal awards per year;
- o The best reasonably available interest-bearing account would not be expected to earn interest more than $500 per year on Federal cash balances; or
- o The depositary would require an average minimum balance so high that it would not be feasible within the expected Federal and non-Federal cash resources, including rental and non-rental income.

At least once each year the PHA is required to return this interest income to the Department of Health and Human Services Payment Management System, in accordance with Office of Management and Budget (OMB) procedures. Interest amounts up to $500 per year may be retained by the PHA for administrative expenses.

For the purposes of requirements pertaining to interest, to the extent that a PHA does not account for its reserves based upon sources of funds, all such amounts shall be considered Federal awards.

## 20. APPEALS

Pursuant to 24 CFR 990.240, appeals are voluntary and cover the PHA's entire portfolio, not single projects. The Assistant Secretary for Public and Indian Housing has the discretion to accept appeals that are less than an entire portfolio for PHAs with more than 5,000 public housing units. All other appeals must be based on an impact that affects the entire PHA, not an impact to a single project or set of projects. Any appeals that address single projects and not the entire portfolio will be denied.

In the past, the Operating Fund Program considered appeals of Formula Income for economic hardship. Such appeals were permitted in the first two years of the Operating Fund Program, during which period Formula Income was frozen. Because Formula Income is no longer frozen, appeals of Formula Income for economic hardship are no longer permitted.

MTW PHAs with AOFFs may not appeal any part of the AOFF, as the AOFF is not derived from 24 CFR part 990.

### 20.1 Four Types of Appeals and Requirements under 24 CFR 990.245

1. *Streamlined Appeal* – Requires PHAs to demonstrate a blatant and objective flaw in the application of a specific Operating Fund Formula component. This appeal must be submitted once annually and must be submitted for new projects entering a PHA's inventory within one year of the applicable DOFA.

2. *Appeal for Changing Market Conditions* – PHAs may appeal to receive Operating Subsidy Grant funding for vacant units due to changing market conditions after the PHA undertakes aggressive marketing and outreach measures to rent these units. The vacancies cannot be the result of action or inaction by PHA management, but an appeal may be approved for changing market conditions if a PHA is in an area suffering economic dislocations. While normal economic cycles may increase the number of low-income households in an area and increase demand for public housing, severe economic dislocation might lead to population loss significant enough to cause a shortage of applicants, even with aggressive marketing and outreach. Market conditions can be approved at any time, but not retroactively.[7] See Notice PIH 2024-03 for more information on this appeal type.

---

[7] With the exception of 2027, see Section 20.2.5 for explanation of this exception.

The other two types of appeals are limited to PEL issues. The PEL is a pre-populated formula data that cannot be edited by field offices or PHAs (see Section 12). However, a PHA may appeal to a pre-populated PEL based on the effects of specific local conditions and actual project cost data. PEL appeals are not based upon current costs and are not a reimbursement program. In contrast, these appeals are based on historic costs, specifically either actual Public Housing costs, or market comparables. The PEL represents the normal operating expenses of well-run Public Housing projects, excluding utilities and add-ons. Costs associated with the PEL are administration, management fees, maintenance, protective services, leasing, occupancy, staffing, and other expenses such as property insurance.

3. *Appeal for Specific Local Conditions* – This appeal requires the PHA to demonstrate that the PEL fails to reflect specific local conditions. To be eligible, the affected PHA must demonstrate, using an independent cost assessment, that the PEL is not accurate for comparable properties in the PHA's market area, with a variance of 10 percent or greater at the PHA's public housing portfolio level. The cost of services for the independent cost assessment is paid by the appellant PHA. Appeals for specific local conditions must assume that 100 percent of available unit months, except those eligible for ARF, receive full Operating Subsidy eligibility. This appeal must be submitted once annually and must be submitted for new projects entering a PHA's inventory within one year of the applicable DOFA.

4. *Appeal to Substitute Actual Project Cost Data* – A PHA may appeal its PEL if it can produce actual project cost data, that is comparable to the PEL and derived from actual asset management as outlined in 24 CFR 990 Subpart H, for a period of at least two years. Only data from audited FDS submissions approved by HUD may be used for this type of appeal. For this type of appeal, the PHA must also submit an independent cost assessment, paid for by the PHA. Because adjustments must be made to the audited FDS data, the audit itself does not satisfy the requirement for an independent cost assessment. Appeals to substitute actual project cost data must assume that 100 percent of available unit months, except those eligible for ARF, receive full Operating Subsidy eligibility.

### 20.2 Appeal Requirements

#### 20.2.1 Streamlined Appeal Requirements

The Streamlined appeal applies when a PHA has discovered an error in the calculation of its PEL. For streamlined appeals, the PHA must describe the flaw and submit supporting documentation (e.g., if HUD used data from California to calculate the PEL for a PHA in Illinois). An insufficient PEL is not the result of an error with the execution of the formula, thus it would not qualify for a streamlined appeal. Alternatively, in instances when the PEL is not sufficient, PHAs may submit either a Specific Local Conditions appeal, or, if they have two FDS submissions made in compliance with asset management requirements, they may submit an Actual Costs appeal.

#### 20.2.2 Special Local Conditions Appeal Requirements

For "specific local conditions" appeals and "substitute actual project cost data" appeals, the PHA must acquire, at its own expense, an independent cost assessment. The cost assessment must assume full funding levels. Assessments must fully disclose any adjustments made to the FDS data including the amount of each adjustment, the reason for each adjustment, the adjustment

method and citation of source documents. Where potentially necessary adjustments identified in this notice are not made, the assessment must provide a justification. Supporting documentation must be included if necessary to provide a complete understanding of the adjustments. Assessments must present the entire PHA's portfolio in a table format and include the data identified below for each individual project.

|  | *Specific Local Conditions* | *Actual Costs* |
|---|---|---|
| Occupancy Type | X | N/A |
| Building Type(s) | X | N/A |
| Number of Units | X | For each year in assessment |
| Current PEL Per Unit Month | X | For each year in assessment |
| Requested PEL Per Unit Month | X | X |

For "specific local conditions" appeals of the PHA's independent cost assessor's report must compare costs for comparable affordable housing properties (for cost items included in the PEL) to the PEL for each of their public housing projects. The data showing comparable affordable housing properties must be adjusted so that the expenses included are comparable to the expense categories included in the PEL.

In summary, the properties must be comparable to the PHA's properties, and the expense items included in the assessment must be comparable to the PEL. The PHA's Public Housing properties do not constitute comparable properties for the purpose of a specific local conditions appeal. Rather they are the actual properties, with data from them (FDS data) being used for actual cost appeals as described below. PHAs may not submit hybrid appeals, using both data from comparable properties and data from the PHA's own Public Housing properties.

Comparable data can be inflated through 2026 using the PEL inflation factor. Generally, comparable market data is at least one year old. Because insurance costs are the main driver for many PEL appeals, and further because of recent volatility in insurance costs, if a PHA can obtain more current market level insurance data, that may be used as part of the specific local conditions PEL appeal.

The independent assessment must derive a portfolio level PEL PUM by weighing the PEL of each project based on the number of units. Similarly, the independent cost assessment must weigh the proposed PEL for each project based upon comparable property types of each building by the number of units in the buildings for each property type. For example, if there were 60 units in row/townhouse properties and 40 in walkup/garden properties, the proposed PEL PUM for row/townhouse would be weighted 60 percent, and the proposed PEL PUM for walkup/garden would be weighted 40 percent. The person performing the assessment must have appropriate knowledge of multifamily operating costs within the local market.

Data cited in the assessment must be verifiable by HUD with complete source identification. Itemized comparative data must include locality, occupancy type, and building type.

Adjustments made to the cited data to make it comparable to cost elements are included in the PEL.[8]

### 20.2.3 Actual Costs Eligibility Requirements

For "actual costs" appeals the independent cost assessor's report must adjust the FDS data such that only PEL-related costs are included. FDS data can be inflated through 2026 using the PEL inflation factor.

The PEL represents the normal expenses to operate Public Housing projects, excluding utilities and add-ons. Costs associated with the PEL are administration, management fees, maintenance, protective services, leasing, occupancy, staffing, and other expenses such as property insurance. Any FDS-reported costs not allocable to PEL must be removed from the analysis. As such, operating costs reported in the FDS should be adjusted to back-out costs attributable to utilities (UEL) and add-ons. The FDS data should be adjusted to remove any non-front line operating costs. Front-line costs are defined in the Supplement to HUD Handbook 7475.1 REV., CHG-1, Financial Management Handbook. PEL costs do not include costs paid for by the Capital Fund. The FDS operating expense data should be adjusted to remove any expensed item paid for with Capital Funds.

FDS operating expense data for mixed-finance projects typically only include Operating Funds transferred to the owner entity. Non-PEL elements of the grant funds must be backed out of the transfer. To accomplish this, utilizing data from the Operating Subsidy forms (Forms HUD-52722 and 52723) for the year in question, undertake the following calculation:

- Add the total PEL, UEL, add-ons, and transition funding to derive total expenses.
- Divide the PEL by total expenses to derive the PEL expense percentage (this is the percentage of total expenses attributable to the PEL).
- Multiply the amount transferred to the owner entity that is reported as an operating expense in the FDS by the PEL expense percentage.
- Subtract any Capital Funds transferred to the owner entity that is reported as an operating expense in the FDS.
- The result is the amount of funds transferred to the owner entity reported as an expense in the FDS that can be included in the cost assessment.

**Bad debt is contra-revenue.** The Operating Fund Formula, created via negotiated rulemaking, did not factor collection losses into Formula Income, nor is bad debt part of the PEL. Therefore, the FDS must be adjusted to remove bad debt expenses.

The PEL assumes limited employee benefits. According to the Harvard Cost Study, HUD's PEL formula does not need to include additional costs for employee benefits "even when State and local practices (either by custom or by statute) result in higher than private operator levels of

---

[8] For definition of building types, see Public and Indian Housing IMS/PIC Development Submodule User Manual.

wages and benefits" because "even when local or State benefit packages are mandated, PHAs are free to compete with lower wages to offset the higher benefits." In their appeal submissions, PHAs must identify the costs associated with salaries and, separately, employee benefits. Employee benefits include payroll taxes, State/Federal unemployment insurance, health insurance, retirement (separately identifying pensions and other post-employment benefits to the extent applicable), and disability insurance, but not worker's compensation. HUD will only consider staff and employee benefit costs consistent with the norms identified above. PHAs should adjust their FDS data where it exceeds these norms.

Energy performance contracts provide additional funding eligibility to PHAs in the form of EPC incentives included in the Formula. The EPC Program is structured such that, if performing in accordance with the PHA's application, EPC costs are covered by incentives. Given the above, the FDS data must be adjusted to remove any EPC-related costs. Such costs may include M&V, equipment replacements, maintenance for equipment maintenance not covered under the PEL, resident training, and any other costs approved by HUD as part of the EPC.

PHAs report Income Statements for both the Capital Fund Program and Low-Rent Public Housing. Only expenses for the Low-Rent Program should be included in the PEL analysis. The independent cost assessment must be included in the PHA's submission to HUD and must include comparable data.

### 20.2.4 Impact of Stop Loss on PEL Appeals

Stop Loss eligibility, stops the reduction of the amount PHAs received for the Allowable Expense Level (AEL) under the Performance Funding System (PFS), which was the precursor to the Operating Fund Program, and the Operating Funds' PEL, thereby increasing the PEL. Thus, Stop Loss must be considered part of the PEL for the purpose of PEL appeals. For example, if a project's Form HUD-52723 shows PEL eligibility of $1,000,000, and Stop Loss of $100,000, for the purpose of the PEL appeal the PEL would be considered $1,100,000.

### 20.2.5 Appeal Submission Timelines

PHA appeals for "changing market conditions" are to be submitted to the Field Office Director of Public Housing and staff point of contact no later than August 29, which is 30 days prior to publication. Because changing market conditions appeals cannot be retroactive and must be on a reporting period basis for the entire reporting period as outlined in Notice PIH 2024-03 this provides sufficient time for the field office to review and respond prior to the start of the next Reporting Period. For the 2027 reporting period only, which begins on July 1, 2025, these appeals can be retroactive to the beginning of the reporting period. However, for all future years the deadline for PHAs to make submissions will be May 31 or the first business day thereafter if it falls on a weekend or Federal holiday.

Streamlined "local conditions," and "actual project cost data" appeals must be sent by email to OBPHFMDHUD@hud.gov with the subject line "Appeal under 24 CFR 990.245." These appeals must be sent within 120 days of the deadline for PHA's initial submission of CY 2026 Forms HUD-52722 and 52723. If the deadline falls on a weekend or Federal holiday, the deadline will be the next business day. As a necessary condition for an appeal submission, it is required that CY 2026 Forms HUD-52722 and 52723 must have been submitted and accepted by

HUD beforehand. The PHA **must** also provide a copy of the appeal to the Director of Public Housing and staff point of contact at the local HUD field office.

Final appeal decisions will be issued no later than 15 days prior to the revision deadline. If a PEL appeal is granted, HUD will deploy new Forms HUD-52722 and 52723 to the Public Housing Portal. The PHA must then submit revised Forms HUD-52722 and 52723 by the revision deadline. After the form is processed, HUD will adjust the PHA's Operating Subsidy Grant by the appropriate amount, which will be retroactive to the beginning of the year.

## 21.    RENTAL ASSISTANCE DEMONSTRATION (RAD)

### 21.1 Funding

For units that convert, through the remainder of the first Calendar Year (i.e., the "Initial Year") in which a Housing Assistance Payment (HAP) contract is effective, Operating Subsidy Grants will be obligated to the PHA for the Covered Project based on Operating Subsidy Grant eligibility calculated as it is normally. Without regard to the converted units,[9] PHAs must submit Forms HUD-52722 and 52723 and follow the normal Operating Subsidy Grant process (including revisions where corrections are needed) for the project for the Initial Year.[10]

The amount of Operating Subsidy Grants that can be used for HAP payments during the initial year is capped at HUD's Operating Subsidy Grant obligations to the project for the remainder of the year of conversion, prorated by the portion of units in the project that are converting and will be removed from IMS/PIC (Operating Subsidy transfer cap). In the year after the HAP effective date, the converted units shall not receive any further Operating Subsidy Grant.

PHAs are reminded that they may not contribute Public Housing Program funds to projects post-RAD conversion beyond the operating subsidy transfer cap identified above unless those public housing funds (Operating Subsidy and/or Capital Funds) have been identified in the RAD Conversion Commitment (RCC) and those public housing funds are converted at closing for Section 8 RAD purposes. When a unit is approved but not removed via Section 18 and subsequently converts through RAD, the unit will be identified in IMS/PIC as approved for removal via Section 18 until it converts through RAD. Such units must be transferred to the RAD application in IMS/PIC immediately before the conversion occurs.

For partial conversions, the rolling base must be adjusted in the Operating Subsidy Grant submission the year after the HAP effective date. Please see the instructions for Form HUD-52722 (available on the Operating Subsidy Grant Processing webpage and HUDClips) for details on adjusting the rolling base. Also, the webpage includes further guidance on adjusting the rolling base when units are removed from inventory.

---

[9] For example, a RAD closing on December 10 will result in a HAP Contract that is effective on January 1 or February 1. For the remainder of the Calendar Year which includes the January 1 or February 1 date, this action will not impact the Operating Subsidy Grant.
[10] The HAP effective date is the day on which HAP payments begin.

Projects that are fully converted through RAD with HAP effective dates in 2025 or before are not eligible for the CY 2026 Operating Subsidy Grant.

For projects that are fully converted with HAP effective dates before 2025, or in 2025 if the conversion happened early in 2025, HUD will not deploy Form HUD-527223 or HUD-52723 for 2026 for the project. However, if the conversion happened late in 2025, HUD may deploy Forms HUD-52722 and 52723 and/or fund the project in error because of the timing of data availability. If Form HUD-52722 and HUD-52723 are deployed for a project for 2026 but that project is fully converted and has a 2025 HAP effective date, the PHA must not submit Forms HUD-52722 and 52723. If such a project is funded in 2026, the PHA must not draw down funds and must notify its field office that the project should not have been funded.

The PHA and field office must ensure that no EUMs for units that converted through RAD are included in Forms HUD-52722 and 52723 for projects that are partially converted with HAP effective dates in 2025 or before. For projects that close early in the year prior to the funding year, HUD will remove EUMs from the RAD units from Section 2 of Form HUD-52723. In all instances, the field office and PHA must ensure that the EUMs from converted units are removed.

> *21.2 Designation of Units Converting through RAD as Vacant for Modernization*

Units in a project with a commitment to execute a HAP approval, which the PHA plans to modernize and are vacant because a PHA has not reoccupied them in preparation for modernization pursuant to a RAD conversion plan, can be considered as "units undergoing modernization" provided it complies with 24 CFR 990.145. Such vacant units may be categorized as undergoing modernization for a maximum of two years (24 months) prior to RAD conversion (i.e., HAP effective date). See Notice PIH 2024-03 for more information on the unit status Vacant for Modernization.

Vacant units converting through RAD that will not be modernized are not eligible to be categorized as units undergoing modernization.

## 22. TURNKEY III PROJECTS

Funding requests for the Turnkey III Program that use Form HUD-53087 "Calculation of Subsidies for Operations: Non-Rental Housing" are accepted only for projects/units under the final lease-purchase agreement for closing out the program. These requests must have supporting documentation, including ACC and active lease purchase agreements. New lease/purchase agreements will not be funded. A PHA needs to provide the status of the properties addressing the following:

- Are units still occupied by a family under an option to purchase under a homeownership agreement?
- What is the remaining term of the agreement?

If there is no effective contract with the residents and the PHA is under the Faircloth limit, the PHA may apply under the 24 CFR part 905 acquisition development method to make these properties public housing rental units. These units will otherwise be ineligible for Operating

Subsidy funding as Turnkey III units. Once the units are transitioned to regular public housing units, the PHA must ensure that the units' IMS/PIC program type is changed to Low Rent. The submission deadline for Turnkey projects is the same as that for the initial submission of Forms HUD-52722 and 52723. Turnkey III submissions after the deadline will not be accepted and projects will be ineligible for funding that year.

## 23. ENVISION CENTER PARTICIPATION

HUD EnVision Centers provide communities with a centralized hub for support in economic empowerment, educational advancement, health/wellness, as well as character and leadership development. EnVision Center participation for predominant use by public housing residents can be assisted with Operating Subsidy Grants. A unit allocated for the center will be classified as one of the HUD-approved vacant units used for resident services, resident organization offices, and related activities such as self-sufficiency and anti-crime initiatives pursuant to 24 CFR 990.145(a)(2) and as such should be reported in Section 2, Line 06 of Form HUD-52723.

## 24. THE FAIRCLOTH LIMIT

Section 9(g)(3) of the United States Housing Act of 1937 (Faircloth Amendment) limits the number of public housing units that may receive public housing funding. The Faircloth Amendment stipulates that the Department cannot fund the construction or operation of new public housing units with Capital Funds or Operating Subsidy if the construction of those units would result in a net increase in the number of units the PHA owned, assisted, or operated as of October 1, 1999. This requirement is referred to as the Faircloth Limit. The Faircloth Limit is adjusted for PHA transfers of units under ACC, consolidations, and RAD removals. PHAs will not be funded for those units that exceed the posted Faircloth Limit and are responsible for reviewing Faircloth limits and notifying HUD if it believes its posted Faircloth Limit is in error. PIH's Capital Programs Division determines the Faircloth Limit. Additional information on how the Capital Programs Division determines the Faircloth limit can be found on the Office of Capital Improvements webpage.

Because the Operating Subsidy Grant is calculated on an EUM basis, the Faircloth Limit is converted to unit months attributable to a funding year (the Faircloth Unit Month Limit) before being posted on the Operating Subsidy Grant Processing webpage. Where the aggregate of unit months (Form HUD-52723, Section 2, Column A, Line 15 minus Line 4) for all PHA's projects exceeds the Faircloth Unit Month Limit, the excess units must be removed from the PHA's Operating Subsidy Grant forms.

Removal of excess units shall be accomplished by reducing Line 1 and Line 3 in Columns A, B, and C of Section 2 Form HUD-52723, beginning with the most recently added project to inventory. If the total number of unit months in the most recently added projects is less than the excess units, Line 1 and Line 3 of the next newest project added to inventory shall be reduced in the same manner until no excess units remain. It is important to note that appropriate adjustments need to be made to the EUMs on Form HUD-52722 whenever units are being reduced on Form HUD-52723.

## 25. PHA BOARD RESOLUTION

Pursuant to 24 CFR 990.315, PHAs are required to prepare an operating budget and have it reviewed and approved by its Board of Commissioners. The PHA Board Resolution (Form HUD-52574) approving the PHA's operating budget must be signed by the board chair or executive director (as authorized). PHAs must submit their Form HUD-52574 in the Public Housing Portal on or before the start of the PHA's fiscal year. The table below presents due dates for Form HUD-52574. Only one Board Resolution needs to be submitted per PHA, regardless of the number of projects.

| PHA Fiscal Year End | PHA Fiscal Year Beginning | PHA Board Resolution Due |
|---|---|---|
| December 31 | January 1 | January 1 |
| March 31 | April 1 | April 1 |
| June 30 | July 1 | July 1 |
| September 30 | October 1 | October 1 |

## 26. RECORD RETENTION

HUD regulations at 24 CFR 990.325 require PHAs to retain documents related to all financial management and activities funded under the Operating Subsidy Grant for five fiscal years after the fiscal year in which the funds were received. However, the OMB super circular at 2 CFR 200.334(b) provides that "financial records, supporting documents, statistical records, and all other non-Federal entity records pertinent to a Federal award must be retained for a period of three years from the date of submission of the final expenditure report," which may be longer than the requirement at 24 CFR 990.325.

HUD is clarifying that the record-retention requirement for Operating Subsidy Grants beginning with CY 2026 is the longer of five years after the fiscal year in which funds are received by the PHA, or three years from the date the PHA submits a final SF-425 for the grant showing all funds obligated, drawn down, and liquidated.

If HUD determines that a recipient has failed to comply with its financial accounting, documentation, and reporting responsibilities, it is authorized to initiate additional conditions or sanctions, as stipulated in 2 CFR 200.208 and 200.339. These include requiring payment as reimbursements rather than advance payments, requiring PHAs to obtain technical or management assistance, requiring prior approvals of vouchers, disallowing costs in whole or in part, and terminating the recipient's HUD-funded grant in whole or in part.

## 27. PERIOD OF PERFORMANCE

Pursuant to the ACC, PHAs must comply with all applicable statutes, executive orders, and regulations, including all Regulations at Title 2 of the Code of Federal Regulations and Title 24 of the Code of Federal Regulations.

The Operating Subsidy Period of Performance (also known as the grant period) for each grant year shall begin with the PHA's initial receipt of grant funds and end on the date identified in the table below. PHAs should be cognizant that the Period of Performance for Operating Subsidy Grants may end sooner for PHAs exiting public housing. LOCCS will be restricted 120 days after the end of the Period of Performance (which is usually April 30 but could be a different

date for PHAs exiting public housing if the Period of Performance does not end on December 31). PHAs will no longer be permitted to draw down additional funds once LOCCS is restricted after 120 days from the Period of Performance end date. Additional information regarding the requirements for the Period of Performance can be found in Notice PIH 2019-13.

PHAs shall not obligate or expend any grant funds that are not obligated by the end of the Period of Performance. Any funds that are not obligated by the end of the Period of Performance must be returned to HUD.

Any funds that are obligated by the end of the Period of Performance must be liquidated within 120 days. The PHA cannot liquidate any obligations that are not liquidated within this timeframe. Any obligations that are not liquidated within this 120-day timeframe must be returned to HUD pursuant to 2 CFR 200.313 (e).

PHAs should contact their field office for instructions on how to return funds.

| Federal Fiscal Year | Period of Performance Ending |
|---|---|
| FY 2021 | 12/31/2027 |
| FY 2022 | 12/31/2028 |
| FY 2023 | 12/31/2029 |
| FY 2024 | 12/31/2030 |
| FY 2025 | 12/31/2031 |

## 28. EXPENDITURE REPORTING
HUD is implementing new grants management and reporting tools, which will be rolled out for your use in the near term. As a grantee, you will be required to report on grant performance and financial activities (including vendor and cash disbursement supporting details for yourself and your sub-recipients) using these new tools when it is released. HUD will work with you to support your transition to this new reporting environment. Once implemented, timely reporting in this new environment will be mandatory. HUD reserves the right to exercise all available rights and remedies for any noncompliance with these grants management and financial reporting requirements, to include requiring 100 percent review or stopping future disbursements altogether if reporting is not submitted on time.

## 29. POST-AWARD REQUIREMENTS AND ADMINISTRATION.
General administrative and eligibility requirements are posted on the HUD Policies and Regulations website and updated annually. To receive an award, you must adhere to the applicable requirements at the time of application. You must also adhere to the applicable requirements for the life of any award to remain eligible for the award.

## 30. PAPERWORK REDUCTION ACT
The information collection requirements contained in this notice have been approved by OMB under the Paperwork Reduction Act of 1995 (44 U.S.C. §3520) and assigned OMB approval numbers 2577-0026, 2577-0029, 2577-0157, and 2577-0246. In accordance with the Paperwork

Reduction Act, HUD may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a currently valid OMB number.

## 31. PENALTY FOR FALSE CLAIMS AND STATEMENTS

Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement for up to 5 years, fines, and civil and administrative penalties (e.g., 18 U.S.C. §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. §3729, 3802).

PHAs should contact their field office if they have any questions about the information included in this notice.

Benjamin Hobbs
Principal Deputy Assistant Secretary
Office of Public and Indian Housing



# EXHIBIT B

# CAPITAL FUND PROCESSING GUIDANCE FOR FY 2025 GRANT AWARDS (as of 05/23/2025)

## PURPOSE:

This notice provides Public Housing Agencies (PHAs) with guidance on the Capital Fund Program (CFP) Award process for Fiscal Year (FY) 2025. 24 CFR 905.300 establishes the Capital Fund submission process.

## COMUNICATION OF AWARD:

### How will PHAs be notified of their FY 2025 Award?

The Department of Housing and Urban Development (HUD) will send each PHA receiving Capital Funds an email notifying the PHA of the award of a CFP Grant.

*PHAs are responsible for maintaining the correct contact information, including the correct email address for the Executive Director, in the Inventory Management System/Public Housing Information (IMS/PIC) system.*

### How will PHAs receive their FY 2025 Capital Fund ACC Amendments?

HUD will post the Master ACC (Annual Contributions Contract) Amendment signed by the Deputy Assistant Secretary (DAS) for the Office of Public Housing Investments (OPHI) on the FY 2025 Capital Fund Processing page, fulfilling the requirement for a HUD signature on the ACC Amendment.

## SUBMISSION PROCESS:

### What are the Steps PHAs Need to Follow to Access the Award?

**1. PHAs Sign the ACC Amendment.**

To accept their Award, PHAs must sign their ACC and submit the required elements of the capital fund submission to HUD. PHAs download their ACC on the 2025 Processing page of the Capital Fund website. PHAs open the spreadsheet "Master ACC Amendment" and select their PHA code. The spreadsheet will populate the grant specific information in the ACC Amendment.

PHAs must sign the ACC to receive CFP grant funding. PHAs have the option to digitally sign, or to manually sign. The ACC must be signed, dated, and box #8 marked "Yes" or "No." Should PHAs choose to digitally sign, they must use a valid electronic medium. Should PHAs choose to manually sign, they will scan the document to submit to HUD for approval. Regardless of choice, the signature must be by a person authorized to enter into agreements on behalf of the PHA.

**2. Collect the Required Documents Needed for Submission to HUD**

PHAs are responsible for <u>submitting the most recently approved OMB version of each form listed below</u>, and the correct form based on the size of the PHA. PHAs may reuse documents that were submitted to HUD for the Operating Fund submission.

The following documents should be signed and dated consistent with the PHA's 2025 fiscal year:

- ❑ 2025 Capital Fund Formula ACC Amendment (Board approved if required)
- ❑ Lobbying Form – <u>SFLLL</u> (If applicable)
- ❑ <u>HUD Form 50071, Certification of Payments to Influence Federal Transactions</u> (if applicable).
- ❑ Certification of Compliance with Public Hearing - PHA must *submit* a copy of one of the following:
  - ○ *For Non-Qualified PHAs*: form <u>HUD-50077-ST-HCV-HP</u> includes this certification.
  - ○ *For Qualified PHAs:* A statement certifying that the PHA conducted a public hearing in compliance with 24 CFR Part 905, signed and dated by the Executive Director.

    | **Y / N** Was the public hearing conducted in FY 2025 |
    | --- |

- ❑ Civil Rights Certification - PHA must have a copy of one of the following:
  - ○ *For Non-Qualified PHAs*: form <u>HUD-50077-ST-HCV-HP</u>
  - ○ *For Qualified PHAs*: HUD form <u>HUD-50077-CR</u>

Additionally, PHAs must submit the following:

- ❑ **Written Statement Defining Significant Amendment/Modification to a CFP 5-Year Action Plan.** Each PHA must submit a written statement defining the criteria the PHA will use for determining a significant amendment or modification to the CFP 5- Year Action Plan. In addition to the criteria established by the PHA, a proposed demolition, disposition, homeownership, Capital Fund Financing, development, or mixed finance proposal is considered by HUD to be significant amendment to the CFP 5-year Action Plan based on the Capital Fund Final Rule. This must be submitted as a separate written statement.

- ❑ **Recommendations and Comments Received during the Public Hearing and Resident Consultation.** The PHA is required to hold a public hearing and meet with the Resident Advisory Board (RAB) to advise residents of the proposed CFP 5-Year Action Plan covering FY 2025. The PHA may elect to conduct the annual public hearing at the same time as the hearing for the PHA Plan or hold the hearing at a separate time specifically to cover the CFP 5-Year Action Plan. The PHA must include a copy of the comments and recommendations that were received during the public hearing and resident consultation. The PHA must also include a description of how it addressed the

recommendations from the RAB and any comments from the public before it submits the CFP 5-Year Action Plan to HUD.

❑ **_Moving To Work (MTW) PHAs:_** MTW PHAs should refer to the submission requirements outlined in their MTW agreement with HUD. The requirements for some MTW PHAs may not align with the requirements above. For example, MTW Agreements define the significant amendment criteria and PHAs do not have to upload a separate one.

## 3. Complete the Necessary Steps in EPIC

To comply with regulatory and Notice requirements to obtain access to FY 2025 CFP grant funds, PHAs must complete these actions in the EPIC system:

❑ **All PHAs must have a HUD-approved CFP 5-Year Action Plan.** PHAs should submit their 5-Year Action Plan into EPIC covering FY 2025 to be approved by the Field Office as soon as possible if they have not already done so[1].
  - *For PHAs with rolling plans* – the years should include FY 2025 -2028
  - *For PHAs with fixed plans* – FY 2025 must be included as one of the years. Please note, the PHA may need to revise its plan to be sure that the work activities it needs to accomplish with FY 2025 funds are in the approved plan.

❑ **All PHAs must have a HUD-approved Initial Award Document Package for their 2025 CFP Formula grant.** When grants are available EPIC, HUD will notify PHAs. At that point PHAs may begin creating and submitting their Initial Award Document Packages for review by their Field Office. The PHA will upload the required documentation as outlined above into EPIC for review and approval by the Field Office.

❑ **All PHAs must submit an Annual Statement/Budget in EPIC for their 2025 CFP Formula grant.** Once the Field Office has approved the Initial Document Package and the 5-Year Action Plan the PHA will see funds on BLI 0100 in LOCCS. At that point the PHA can create their Annual Statement/Budget. EPIC will not allow PHAs to submit an Annual Statement/Budget for the FY 2025 grant until the Field Office (FO) has approved the document package in EPIC. An Annual Statement/Budget will trigger the budget line items to spread in LOCCS.

**What else is required to obtain access to the 2025 Capital Fund Formula Grant?**

❑ **Updated SAM registration/Unique Entity ID (UEI) Number**
   The UEI registration in the System for Award Management (SAM) is a requirement to receive federal awards, and the registration must be active. If you have an expired registration in SAM or there is a discrepancy between your UEI number and your Tax Identification Number (TIN), your FY 2025 CFP grant will not be obligated/awarded

---

[1] See 24 CFR 905.300. The submission must be available to the RAB, and a notice of public hearing must be published no more than 45 days prior to the public hearing.

until the registration is updated.

PHAs without an active UEI in the System for Award Management (SAM) or TIN number in the LOCCS system should take immediate action to resolve these issues. Contact your FO for assistance with resolving SAM/UEI number issues. Once the UEI registration is updated, HUD will obligate the funds and issue an ACC Amendment. Please note that the obligation end date of the FY 2025 grant will remain the same, so PHAs with expired UEI numbers will have less than 2 years to obligate the funds.

❑ **OCI obligation of the award in the Line of Credit Control System (LOCCS)**
OCI will obligate the 2025 awards LOCCS up-front **f**or PHAs with active Universal Entity Identifiers (UEIs) and Taxpayer Identification Numbers (TINs). *Note that the Federal Government transitioned from using DUNS numbers to UEIs as of April 1, 2022.*

**<u>Additional Information Regarding the Terms and Conditions of FY 2025 Capital Fund Grant Awards:</u>**

***The following language has been added to the Capital Fund ACC Amendment for FY 2025:***
14. This grant is subject to Executive Order 14218, Ending Taxpayer Subsidization of Open Borders and applicable law. HUD will take steps to ensure that Federal resources are not used to support "sanctuary" policies of State and local jurisdictions that actively prevent federal authorities from deporting illegal aliens.

## ELIGBLE USES OF THE CAPITAL FUND:

24 CFR 905.200 outlines the eligible activities under the Capital Fund Program.  PHAs report the details of their proposed activities in EPIC which translates those activities into BLIs in LOCCS as follows:

**1480 General Capital Activity**
- Contract Administration (1480)
- Dwelling Unit - Conversion (1480)
- Dwelling Unit - Demolition (1480)
- Dwelling Unit-Development (1480)
- Dwelling Unit-Exterior (1480)
- Dwelling Unit-Interior (1480)
- Dwelling Unit-Site Work (1480)
- Housing Related Hazards (1480)
- Non-Dwelling Construction - Mechanical (1480)
- Non-Dwelling Construction-New Construction (1480)
- Non-Dwelling Equipment-Expendable/Non-Expendable (1480)
- Non-Dwelling Exterior (1480)
- Non-Dwelling Interior (1480)
- Non-Dwelling Site Work (1480)

-    RAD Funds Pre-Closing (1480)

**1410 Administration FI**
**1408 Management Improvements**
**1406 Operations**
**1492 Moving To Work**

**Debt Services**
-    Debt Service Bond Payment-Paid by HUD (9000)
-    Debt Service Bond Payment-Paid by PHA (1501)
-    Bond Debt Obligation (9001)
-    Loan Debt Obligation (9002)
.
**RAD Conversions**
-    RAD HAP (1503)
-    RAD Investment Activity (1504)

# FLEXIBILITY FOR OPERATING AND CAPITAL FUND:

Section 9(g) of the 1937 Act (42 U.S.C. 1437g(g)) provides for the following flexible use of Capital Funds and Operating Funds.

(1) Flexibility in Use of Funds for PHAs with 250 or more units:

    (A) Flexibility for Capital Fund Amounts

    PHAs may use up to 20% of the grant for activities that are eligible under the Operating Fund.

    (B) Flexibility for Operating Fund Amounts

    PHAs may request to use up to 20 percent of their Operating Funds for Capital Fund eligible activities, if the PHA Plan includes plans for such use. PHAs wishing to request to use these funds submit a request in EPIC under Additional Capital Resources.

(2) Full Flexibility for Small PHAs with fewer than 250 units:

A PHA with less than 250 public housing units, that is not designated as troubled, may use up to 100% of its annual Capital Fund grant for activities that are eligible under the Operating Fund at 24 CFR Part 990, so long as the PHA has written determinations and provides such records of this determination upon HUD request that there are no debt service payments, significant Capital Fund needs, or emergency needs that must be met prior to using 100% of its Capital Funds for Operating Fund purposes. PHAs wishing to use 100% of their grant for Operating Fund purposes must include such plans in an approved 5-Year Action plan. A PHA may not use funds under BLI 1406 for CFP modernization activities. Those activities are to be reported under BLI 1480.

**Flexibility for Capital Fund Amounts**.
Starting with FY 2015 CFP awards, the limitation on Capital Funds used for Operating Fund eligible activities under BLI 1406 is increased from 20% to 25%, as identified in paragraph 2 of the FY 2025 CFP ACC Amendment.

**Waiver for Anticrime and Antidrug Activities for Large PHAs (those owning/operating 250 or more public housing units).**
As noted above, for FY 2025 the limitation in section 9(g)(1) of the 1937 Act is increased from 20% to 25%. For FY 2025, upon a PHA's request to HUD the Secretary may waive this limitation to allow PHAs to fund activities authorized under section 9(e)(1)(C) of the 1937 Act which allows PHAs to use Operating Funds for anticrime and anti-drug activities, including the costs of providing adequate security for public housing residents, including above-baseline police service agreements.

The PHA *must* provide the following information and documentation along with its waiver request, in a thorough and concise narrative form:

- ☐ Identify the amount above 25% of the FY 2025 CFP award both in dollars and by percentage the PHA seeks to use in BLI 1406 Operations
- ☐ Identify and describe the threat that crime and drug-related activity poses to health and safety of PHA's public housing residents
  - ▪ Describe whether this is a new threat, ongoing, or increased threat
  - ▪ Include the most recent crime data of the PHA's locality (e.g., town, city, parish, or county) from a recognized source such as local law enforcement or Uniform Crime Reports that lists types and numbers of offences (may include as an attachment)
- ☐ Identify the applicable projects(s)
- ☐ Identify and describe the specific anticrime and antidrug activities the PHA plans to undertake, including the costs of such activities
- ☐ *Optional Attachments*: The PHA may also wish to include supporting narrative or agreements from one or more of the following:
  - ▪ Resident Advisory Boards or PHA security personnel;
  - ▪ local Community Policing Organizations; OR
  - ▪ local officials (e.g., business council executives, or city council executives).

## OTHER REQUIREMENTS:

**Build America, Buy America (BABA) requirements for CFP 2025 Formula Grants.**
CFP 2025 Formula Grants may be subject to the requirements of the Build America Buy, America Act (BABA) which was enacted on November 15, 2021, as part of the Infrastructure Investment and Jobs Act (Public Law 117–58), unless waived by the Department.

**Obligation reminder.**
PHAs must obligate at least 90% of a Capital Fund Formula grant within 2 years of receiving the grant. The last day the PHA can obligate funds without receiving a penalty on a future grant is the obligation end date (OED). PHAs may request an extension to the OED in limited

circumstances if they meet one of the statutory criteria. All requests for an extension must be received prior to the OED. Section 9(j) of the United States Housing Act of 1937 (42 U.S.C. 1437g) and 24 CFR 905.306 detail the obligation requirements and the criteria for requesting an extension.

**Prohibition regarding Procurement of Security Equipment produced by Huawei Technologies Company or ZTE Corporation.**
Per 2 C.F.R. § 200.216 and Public Law 115-232, section 889, Capital Fund Program grantees are prohibited from using grant funds to purchase, lease, or renew or extend contracts for security equipment produced by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities).

**Reimbursement of CFP Eligible Activities Funded with other Sources.**
PHAs are not permitted to use any amount of a CFP grant to reimburse for eligible Capital Fund activities that were funded from another source, including another Capital Fund grant. For example, a PHA may not use its Capital Fund formula grant to perform emergency work and then apply for an Emergency grant to reimburse itself for work already performed with funding from the Formula grant. All Capital Fund obligations, expenditures, and disbursements must be recorded the grant.

**PHA Plan Submission.**
To comply with the requirements of 24 CFR 903.7(g), PHAs are required to include a statement of capital improvements needed in the PHA Annual Plan. To satisfy that requirement, a PHA must reference its latest HUD approved CFP 5-Year Action Plan covering the current Fiscal Year in its PHA Plan, prior to submission of the PHA Annual Plan. PHAs can reference the form by including the following language in Section 8.0 of the PHA Plan Template: "See HUD Form 50075.2 approved by HUD on XX/XX/XXXX."

**Environmental Review.**
In accordance with the changes in process announced in Notice 2016-22, all activities at project site(s) assisted or to be assisted by HUD must receive environmental clearance before the PHA takes any choice-limiting actions or obligates any funds. HUD has made a programmatic determination under Part 50 that the operating activities listed in Appendix A of Notice 2016-22 are not subject to further environmental review; for any other activities, PHAs must request and receive clearance from either a Responsible Entity or HUD.

HUD FOs are not required to withhold approval of CFP 5-Year Action Plans or place manual holds on CFP grants in LOCCS, pending receipt of environmental clearance documentation. Even though FOs are permitted to approve CFP 5-Year Action Plans without confirming environmental clearance, the Work Activity Description in a PHA's CFP 5-Year Action Plan must provide sufficient specificity to facilitate effective HUD FO review of the plan and subsequent environmental review monitoring. Specificity is required so that FOs staff can determine the level of environmental review required for a given work activity. PHAs are encouraged to enter information in the Description field on the scope of the activity (e.g., number of units impacted). For example, for a work activity covering roof replacement, a sufficient description may read: "Installing new 20-year roof, as well as gutters and soffits, at

low-rise building containing 5 Public Housing units." A work description simply stating "Roof" would be insufficient because it does not indicate whether the activity will cover full-scale replacement of the roof or simply patching portions of the roof, a distinction with implications for the level of environmental review required.

**PHAs Rejecting a Capital Fund Grant.**
If a PHA elects to reject any CFP grant(s), the Executive Director must send a written statement to the local HUD FO which identifies the grant number(s) and dollar amount(s) of the grant(s) to be rejected. PHAs are also required to have on file a resolution from its board rejecting the CFP grant(s) for the fiscal year.

<u>**Additional Information.**</u>
If you have any questions or need additional information, please contact the FO staff in your jurisdiction. For assistance from PIH Headquarters, OCI, you may email your questions to PIHOCI@HUD.gov.



# EXHIBIT C



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
**WASHINGTON, D.C. 20410–8000**

OFFICE OF PUBLIC AND INDIAN HOUSING

| | |
|---|---|
| **Special Attention of:** | **Notice PIH 2025–24** |
| Public Housing Agencies | |
| Multifamily PBRA Project Owners | **Issued:** September 26, 2025 |
| | |
| | **Expires:** This notice remains in effect until amended, superseded, or rescinded. |
| | |
| | **Supersedes:** Notice PIH 2025-16 |

---

**SUBJECT:**     **FY 2025 Family Self-Sufficiency Grant Program Annual Funding Notification and Application Process**

### I.    PURPOSE

This notice provides guidance to public housing agencies (PHAs) and Project-Based Rental Assistance (PBRA) owners seeking Family Self-Sufficiency (FSS) grant funding. This notice contains the specific application criteria and funding process for the Fiscal Year (FY) 2025 FSS competition.

This notice should be read together with Notice PIH 2025-15, Family Self-Sufficiency Grant Program General Funding Requirements and Procedures – Revised, which establishes general application and program administration requirements related to the FSS program.

Funding for this program in FY25 is authorized by the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119-4), approved March 15, 2025.

### II.    APPLICATION PROCESS

This section provides additional requirements beyond those found in Notice PIH 2025-15. It is important that you review this section in conjunction with Section III— "Application Process" of Notice PIH 2025-15 during the completion of your application. Further and more detailed application instructions, videos, webinars, frequently asked questions, etc., may be provided on HUD's FSS webpage: https://www.hud.gov/hud-partners/family-self-sufficiency.

A. **All Applicants.** You must complete the following steps before you can apply for funding. These steps can take time to process, so please complete them as soon as possible to avoid delays in your ability to apply for, receive, or access any award:
1. **System for Award Management (SAM) & Unique Entity Identifier (UEI):** You must have a current and active SAM.gov registration and active UEI in

SAM.gov at the time of application and throughout the life of the award. You <u>must</u> renew your UEI annually to keep it active. You <u>cannot</u> apply for funding, and we <u>cannot</u> issue you an award, if your SAM registration or UEI are inactive.

2. **GrantSolutions:** Ensure that your organization has an active Authorized Organizational Representative (AOR) in <u>GrantSolutions</u>. If you do not already have an AOR to your organization, do not know who your AOR is, or if they are no longer part of your organization, submit a <u>Grantee User Account Request form</u> to GrantSolutions, copying <u>FSS@HUD.gov</u>, so that we can assign your organization an AOR. You <u>must</u> have an AOR to apply for funding or accept any award.

B. <u>**Renewal Applicants.**</u> You may apply for FSS funding through a Directed Announcement on GrantSolutions if you meet all applicable requirements under the FSS Funding Notices (Notice PIH 2025-15 and this Notice) and have been funded in the FY22, FY23, or FY24 FSS Funding Notices or FSS Notices of Funding Opportunity (NOFO).

1. **Application Notification.** On or after the publication date of this notice, all eligible renewal applicants' AORs will receive an email notification from GrantSolutions inviting them to apply. If you do NOT receive an email from GrantSolutions, please ensure that you have completed the mandatory steps above before contacting <u>FSS@HUD.gov</u> for support.

2. **Priority Deadline.** To be awarded renewal funds before January 1, 2026, or to be considered for Expansion Positions (as defined in Notice PIH 2025-15) under this notice, you should apply by October 29, 2025, at 11:59 p.m. Eastern Daylight Time (EDT).

3. **Late Applications.** Any applications received after this deadline may not be guaranteed funding, although every effort will be made to provide renewal funding if available.

C. <u>**New Applicants.**</u> If you have <u>not</u> been funded in the FY22, FY23, or FY24 FSS Funding Notices or FSS NOFO, and you are an otherwise Eligible Applicant under this FSS Funding Notice, you may submit a Statement of Interest via the FSS New Applicant posting on GrantSolutions to be considered as a New Applicant.

1. **Statement of Interest.** Your New Applicant Statement of Interest should:
   a. Be on official organizational letterhead.
   b. Certify that you are an eligible applicant for FSS funding.
   c. Include a list specifying the names and contract numbers of the properties intended to be served under this application.
   d. Certify that you have the capacity to run an FSS program.
   e. Certify that you agree to meet all FSS program requirements.
   f. Certify that you will continue to serve all FSS participants throughout the duration of their Contracts of Participation (CoPs), regardless of whether you continue to receive funding under this or any subsequent FSS Funding Notice.
   g. Be signed and dated by an official authorized by your organization to request such funding.

      **2. Applying for Funding.** If your Statement of Interest is accepted, you may then apply for funding through the instructions for Renewal Applicants above.

      **3. No Guarantee of Funding.** Acceptance as a New Applicant is not a guarantee of funding, and New Applicants will only be funded in accordance with the FSS Funding Notices, subject to congressional appropriation.

## III. ELIGIBLE AND INELIGIBLE USES OF FUNDS

Review this section in conjunction with Section V, "Eligible and Ineligible Uses of Funds," of Notice PIH 2025-15 during the completion of the application.

    **A. <u>Eligible Expenses</u>.** Funds awarded to FSS grantees under this notice may only be used to pay the salary and fringe benefits of FSS program coordinators, including supervisors performing FSS program functions.

      **1. Training Stipend.** FSS applicants may include a training allowance in your calculation of salary and fringe benefits. This may include associated travel costs for out-of-area training and membership in professional organizations.

      **2. Job Sharing.** The funds awarded per eligible FSS coordinator position may support multiple staff through job sharing. However, the number of hours billed to the grant for each funded position may be no more than the "Full-Time Equivalent." This is typically 40 hours, unless defined differently for all employees at your organization.

    **B. <u>Ineligible Expenses</u>.** FSS funds must not be used for the following purposes (consistent with applicable statutory and regulatory requirements as well as applicable 2 CFR Part 200 requirements):

      **1.** Administrative expenses.

      **2.** Direct services for FSS program participants.

      **3.** The Resident Opportunities and Self-Sufficiency (ROSS), Jobs Plus, or other supportive services program.

      **4.** Routine Public Housing, PBRA, or Housing Choice Voucher (HCV) program functions, such as annual reexaminations.

        a. Programs may seek HUD approval to perform these functions only if all of the following conditions are met:

           i. They are only performing these functions for FSS participants;

           ii. Performing these functions enhances the effectiveness of the FSS program;

           iii. They are able to fully fulfill their primary roles as FSS coordinators; and

           iv. FSS coordinators are not being used to fill in or replace traditional staff.

      **5.** Homeownership functions performed for families not enrolled in the FSS program.

      **6.** A Contract Administrator, an overall Grant Administrator, or a Financial Management Agent that oversees the implementation or financial aspects of the grant.

      **7.** Indirect costs, including an Indirect Cost Rate.

## IV.  ELIGIBLE AND INELIGIBLE APPLICANTS

Review this section in conjunction with Section VI, "Eligible and Ineligible Applicants," of Notice PIH 2025-15.

**A.  <u>Verification of Eligibility</u>.**  Applicants may be deemed ineligible if information provided on the application does not match PHA or PBRA owner information in HUD's administrative systems, such as the integrated Real Estate Management System (iREMS), Inventory Management System/Public and Indian Housing Information Center (IMS/PIC), or its successor.

**B.  <u>Troubled PHAs</u>.**  If you have been identified by HUD as Troubled in the Public Housing Assessment System (PHAS) or Section Eight Management Assessment Program (SEMAP), you are subject to a review, corrective action plan, and monitoring of your Public Housing or HCV program, including the FSS program, if applicable.[1]

    **1.  Recovery Agreement.**  If deemed necessary by the local HUD field office, you will be required to enter into a Recovery Agreement with the HUD field office, which may include contracting with an entity acceptable to the HUD field office to act as Contract Administrator for the program.  The HUD field office may also require a Recovery Agreement if you have had serious program management findings from Inspector General audits or serious outstanding HUD management review or Independent Public Accountant audit findings for your PH and HCV programs or your FSS program.

    **2.  Funding Contingency.**  The HUD field office will work with you to put a Recovery Agreement in place prior to the funds being made available. If a Recovery Agreement is required, funding will be contingent upon execution of the Agreement.  If the Recovery Agreement requires a Contract Administrator, funding cannot be disbursed until the Contract Administrator is in place, even if the Recovery Agreement has been executed.

**C.  <u>Troubled PBRA Assets</u>.**  A PBRA owner's FSS property that has a Risk Rating of Troubled with a Risk Rating of 1-3 at the time of application or award is ineligible to be funded, either individually or as part of a Joint Application.  Ineligible properties may be removed from a Joint Application, so long as an eligible entity is made the Lead Applicant.

**D.  <u>Meeting Departmental Requirements</u>.**  Please note that the General Administrative, National, and Departmental Policy Requirements and Terms for HUD's Financial Assistance Programs and the General Statutory and Regulatory Requirements Affecting Eligibility for HUD's Financial Assistance Programs for FY 2025 are posted on HUD's Policies and Regulations webpage.  In order to be eligible for an FSS grant, organizations must meet these requirements at the time of application and continue to meet them throughout the life of the grant.

---

[1] As required by HUD regulations at 24 CFR 902.73 and/or 24 CFR 985.107.

E. **Reporting Requirements.**  You must comply with the following reporting requirements to remain eligible for HUD funding.  See Section XI for remedies for noncompliance.

   HUD is implementing new grants management and reporting tools, which will be rolled out for your use. As a grantee, you will be required to report on grant performance and financial activities (including vendor and cash disbursement supporting details for yourself and your sub-recipients) using these new tools when they are released.  Once the tools are available for use, HUD will work with you to support your transition to this new reporting environment.  Once implemented, timely reporting in this new environment will be mandatory.  HUD reserves the right to exercise all available rights and remedies for any noncompliance with these grants management and financial reporting requirements, to include requiring 100% review of grant vouchers or stopping future disbursements altogether if reporting is not timely submitted.

F. **Environmental Requirements.** In accordance with 24 CFR 50.19(b)(4) and (12), 58.34(a)(4), and 58.35(b)(2), activities funded under this Notice are exempt or categorically excluded from environmental review under the National Environmental Policy Act of 1969 (42 U.S.C. 4321) and not subject to environmental review under related laws and authorities.

## V.  JOINT APPLICANTS

A. **Transferring or Consolidating FSS Programs.**  If an existing award has been transferred from one eligible entity to another under an active FSS program, the new entity will be treated as a Renewal Applicant for purposes of this notice.

   1. **HUD Approval.**  Must be received in case of:
      a. *PHAs.*  Consolidation.
      b. *PBRA Owners.*  Transfer of physical assets or assignment of a Housing Assistance Payments (HAP) contract.

   2. **Funding Formula Impact.**  A receiving FSS program under a program transfer or consolidation will be eligible for the combined renewal funding of the receiving and divesting FSS programs.  We will consider annual participant counts from all combined or transferred programs for purposes of determining eligible renewal positions.

   3. **Impact on PBRA New Applications.**  If a grant has been accepted by a PBRA owner, it may be transferred to a new eligible ownership entity after closing, with HUD approval.  However, any transfer in ownership during the period between an application for FSS funding and execution of an FSS grant agreement may result in the application being deemed ineligible and removed from further consideration for funding, unless the application is updated to reflect new eligible ownership, with HUD approval.

**B.** **FSS Applications with Multiple Applicants: Joint Applicants and Combining Programs.**  PHAs or PBRA owners may submit Joint Applications with other PHAs or PBRA owners for funding, combine programs, or enter into cooperative agreements with one another, provided that a Lead Applicant is designated.

   **1.** **Designation of Lead Applicant.**  For the purposes of a joint FSS funding application or when executing a cooperative agreement, a single participating PHA or PBRA property must be designated as the Lead Applicant.

   **Mixed PHA and PBRA Owner Applications:** Any applications with joint PHA and PBRA owner applicants must have a PHA as the Lead Applicant.

   **2.** **New Applicants.**  Every PHA or PBRA property that is part of a joint award must have a Cooperative Agreement prior to implementation of their FSS program.

   **3.** **Renewal Applicants.**  If two or more PHAs or PBRA owners wish to operate a joint program, they may request that their grants be combined into one grant, provided a single Lead Applicant is designated, and FSS Action Plans for the affected properties are amended to reflect the changes.  The applicant for the combined grant must be PHA or PBRA owner of one of the properties served.

**C.** **Removing Joint Applicants.**  If two or more Joint Applicants no longer wish to remain part of a Joint Application, the Lead Applicant on the Joint Application may remain eligible for renewal funding, along with any remaining Joint Applicants.

   **1.** **Lead Applicant Remains.**  If the lead PHA or property owner remains part of the Joint Application, any properties that are removed from the Joint Application will no longer be eligible for renewal funding, and the withdrawing PHA or PBRA owner must apply as a New Applicant to receive future FSS funding.

   **2.** **Lead Applicant Withdraws.**  If the Lead Applicant on a Joint Application withdraws from the application, another PHA or PBRA owner on the Joint Application may be designated as the new Lead Applicant at the time of application.

**D.** **Cooperative Agreements.**  A PHA or PBRA property owner with an FSS program may serve the residents of another eligible nearby PBRA property via a Cooperative Agreement if their FSS coordinator has capacity to serve additional participants, as determined by the FSS grantee.

**E.** **Program Impacts:**

   **1.** **FSS Action Plans.**  Each entity that is part of a Joint Application or Cooperative Agreement must have, or develop, an approved FSS Action Plan. The plans may be essentially the same, but demographic information must be broken out separately for each property and must specify any differences in how the FSS program operates at the different properties (such as different service partners).  A copy of the Action Plan and Action Plan checklist must be submitted for approval to the Account Executive (or Resolution Specialist) of each participating property.

6

2. **FSS Escrow and PBRA HAP Vouchering.** Each PHA or PBRA owner that is part of a Joint Application or Cooperative Agreement remains responsible for FSS Escrow management, including PBRA HAP Vouchering, and reporting, for their own residents.

3. **FSS Participant Count.** Participants from all PHAs or properties in a Joint Application or Cooperative Agreement will be included in the number of participants served for all purposes related to the grant.

4. **Honoring All Existing CoPs.** PHAs or property owners with active FSS programs must honor all existing CoPs, even if they no longer receive grant funding for any reason, including non-renewal of funding or splitting a Joint Application.

## VI. FUNDING PRIORITY

Review this section in conjunction with Section VII, "Funding Priority," of Notice PIH 2025-15.

A. <u>Renewal Awards</u>. Eligible programs funded in FY22, FY23, or FY24 may request Renewal Funding under this 2025 Funding Notice.

1. **Ratio of Participants to Positions.** The ratio of participants to eligible FSS Positions is as follows:

| Participants | Positions |
|---|---|
| 15-24 | 1 FSS part-time position |
| 25-74 | 1 FSS full-time position |
| 75-124 | 2 FSS full-time positions |
| Each additional 50 participants | 1 additional FSS Full-time Position |

- **Example**: Last year, you were funded for 1 Full-time Position.
  - o Last year, you served 60 participants.
  - o Two years ago, you served 70 participants.
  - o Three years ago, you served 80 participants.
- Your highest number of participants is 80, so your Participant Count is 80.
- For 2 Full-time Positions, you need 75-125 participants, which you qualify for based on your Participant Count of 80.
- Therefore, you may request 2 positions:
  - o 1 Full-time Renewal Position
  - o 1 Full-time Expansion Position, based on your Participant Count.

B. <u>Expansion Positions</u>. Renewal awards are eligible for Expansion Positions under this 2025 Funding Notice. Eligible requests for Expansion Positions will be considered, however HUD does not anticipate that there will be sufficient funding available for new Expansion Positions. Consistent with the 2024 Consolidated Appropriations Act, HUD will not utilize the FSS Achievement Metrics (FAM) score in the determination of which grantees will be awarded Expansion Positions under the FY25 funding cycle.

C. **New Applicants.**  Under this Funding Notice, New Applications will be accepted but may only be considered for funding if all Expansion Positions are fully funded. Unfunded New Applicants that remain eligible may be funded in the future, pending funds availability and congressional appropriations.

D. **Incentives for Innovation and High Performance.**  There is no set-aside for incentives for innovation and high performance in this Funding Notice.

## VII. FUNDING FORMULAS

Review this section in conjunction with Section VIII, "Funding Formula," of Notice PIH 2025-15.

A. **The Bureau of Labor Statistics (BLS) Locality Pay Data.**  The BLS median salary for the job title "Social Worker: Other" in your ZIP Code.
  1. **BLS Data Source.**  You can look up the BLS data for your ZIP Code online at: www.careeronestop.org/Toolkit/Wages/find-salary.aspx.
     a. *Determining your ZIP Code*
        i. **Local PHAs:** The ZIP Code of the Lead Applicant from your last application on record, as validated by HUD data systems, such as IMS/PIC or its successor.
        ii. **State-wide PHAs:** Use State-level data for your state.
        iii. **PBRA Properties:** The property ZIP Code of the Lead Applicant (PHA) or Lead Property (PBRA owner) from your last application on record, as validated by HUD data systems, such as iREMS.

B. **Eligible Positions.**  The number of eligible positions is based on the Participant Count, except for new grantees and applicants, as follows: A count of 15 participants is needed for a Part-time Position, 25 participants for a Full-time Position, 75 for a second Full-time Position, continuing in this manner with an additional position at intervals of 50.
  1. **Participant Count.**  The highest annual Participant Count in the past three calendar years.
     a. *Initial Moving to Work (MTW) PHAs:* For the 2025 Annual Funding Notice, you must request a link to submit your Annual Participant Counts for CY24, CY23, and CY22 in a self-certification report.
     b. *Expansion MTW PHAs:* For the 2025 Annual Funding Notice, if you have been holding your 50058 submissions, you may request a link to submit your Annual Participant Counts for CY24, CY23, and CY22 in a self-certification report, if a self-certification would impact your eligibility.
     c. *PHAs serving PBRA Properties:* You must indicate if your PHA is serving a PBRA property and include the Multifamily Contract Number for each property.  We will then add the number of participants you served at these properties to your participant count for each year, as reported in the Multifamily FSS Annual Report.
     d. *All other PHAs:* Determined by grantee-entered information reported in PIC. If the data reported into IMS/PIC is incorrect and would result in the loss of

eligibility for a position, you may request a link to submit your Annual Participant Counts for CY24, CY23, and CY22 in a self-certification report.

    e. *PBRA Owners:* Participant number will be taken from FSS Multifamily Annual Report.

    f. *New Grantees within the past three years of the year this notice is posted:* A minimum of one Full-time Eligible Position.

    g. *New Applicants:* Exactly one Full-time Initial Position in the first year of funding.

## C. Funding Limits.

  **1. Funding Floor.** For the 2025 Annual Funding Notice, the Funding Floor is Eligible Positions multiplied by $43,680.

  **2. Funding Ceiling.** For the 2025 Annual Funding Notice, the Funding Ceiling is Eligible Positions multiplied by $195,200, which is the annual rate of basic pay payable for a position at level IV of the Executive Schedule.

## D. Renewal Funding.

  **1. Submitting a Funding Request.** Applicants will submit their funding requests using SF-424.

      i. In line 18.a. (federal), enter the amount requested from HUD for the FY25 award (Period of Performance is CY26). The dollar amount entered in 18.a. must include the dollar amount for fringe benefits, if applicable.

         1) HUD reserves the right to request more information or send a deficiency request.

  **2. Annual Cost Adjustment.** For the 2025 Annual Funding Notice, the Annual Cost Adjustment is up to two and a half percent (2.5%).

  **3. Initial Renewal Funding.** Initial Renewal Funding is based on the previous year's eligible award, whether funded or not, plus the Annual Cost Adjustment, up to the Funding Ceiling.

  **4. Requesting a Funding Modification.** Renewal Applicants may request a Funding Modification, so long as the request represents an accurate estimation of anticipated eligible costs.

    a. *Renewal Funding Increase.* Upon request, a Renewal Applicant's funding request may be increased up to 10% above the higher of:

      i. Renewal Funding, and

      ii. Their Eligible Positions, multiplied by the BLS locality pay data + 40%, up to the Funding Ceiling, or

      iii. A greater amount with adequate justification, if approved by HUD, up to the Funding Ceiling.

    b. *Renewal Funding Decrease.* Upon request, a Renewal Applicant's funding request may be decreased to the lower of:

      i. Their Funding Floor, or

      ii. A lesser amount with adequate justification, if approved by HUD, but under no circumstance less than the local, State, or Federal Minimum Wage (for the 2024 Funding Notice, $7.25 an hour, or $15,080 annual full-time pay) per Eligible Position.

**5. Funding Offset.** <u>You should ensure timely expenditure of your current FSS funds, as your expenditure rate of the current award at the time funding determinations are made may be used to prorate your award for the next year.</u> The use of a Funding Offset will not affect renewal eligibility. Please see Notice PIH-2025-15 for more information and an example of the offset procedure.

## VIII.  GRANT TERM

Under this Funding Notice, the Period of Performance will be CY 2026 (January 1, 2026-December 31, 2026). Pursuant to 2 CFR 200.308(g)(2), HUD authorizes grantees to initiate a one-time extension for FY25 funds until December 31, 2027, if the grantee notifies HUD in writing with the supporting justification and its proposed revised period of performance at least 10 calendar days before the end of the period of performance—i.e. by December 21, 2026. **Please note:** Extensions are not authorized for the sole purpose of using unobligated balances.

## IX.  ACCEPTING AN AWARD

Review this section in conjunction with Section X, "Accepting an Award," of Notice PIH 2025-15.

**A.  <u>Confirming Ownership of Lead Property.</u>**  For New PBRA Owner Applicants, before an award is made, HUD will confirm whether the Lead Property ownership entity that applied still owns the Lead Property at the time of award.  This may be determined by changes in the UEI and/or Tax ID Number (TIN).  If the Lead Property ownership has changed, another eligible property on the application may become the Lead Property at the time of award.

**B.  <u>Accessing Funds in the electronic Line of Credit Control System (eLOCCS).</u>**  FSS funds will be disbursed in eLOCCS, in accordance with the Grant Agreement.

All grantees should have already obtained access to eLOCCS or should begin the process of obtaining access.  Obtaining access to eLOCCS requires HUD approval and can be a lengthy process.  If your organization does not currently have eLOCCS access, HUD encourages you to begin the process as soon as possible in the event that your organization is awarded funds under this notice.  Should you not get eLOCCS approval in sufficient time, you could potentially face a lapse in availability of FSS program coordinator funding.

Visit:
https://www.hud.gov/program_offices/cfo/finsys/eLOCCS_access/quick_reference
for the steps to gain access to eLOCCS through HUD's Secure Systems platform.

## X. REMEDIES FOR NONCOMPLIANCE AND TERMINATION

10

HUD may terminate all or a part of your award pursuant to the terms and conditions of the Federal award as described under 2 CFR 200.340-343, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities.  HUD may also impose specific conditions on your award or take other remedies as described by 2 CFR 200.339-343 if you do not comply with your award terms and conditions. Additional remedies for noncompliance may be found in applicable HUD statutes and regulations pertaining to the FSS program and may also be restated in your grant agreement.

## XI. PRESIDENTIAL EXECUTIVE ACTIONS AFFECTING FEDERAL FINANCIAL ASSISTANCE PROGRAMS

Regarding current and future Presidential Actions, all recipients of Federal financial assistance are responsible for making sure activities funded by Federal awards comply with applicable existing and future executive orders and other Presidential Actions, as advised by the Department, whether the recipients carry out those activities.  The list below highlights some of the executive orders and related guidance that apply to recipients of HUD's financial assistance programs, but is not an exhaustive list of all executive orders applicable to HUD awards: EOs 14219 (*Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative*); 14218 (*Ending Taxpayer Subsidization of Open Borders*); guidance issued by the White House Task Force established by EO 14202 (*Eradicating Anti-Christian Bias*) and the Senior Advisor to the White House Faith Office assigned by EO 14205 (*Establishment of the White House Faith Office*); 14182 (*Enforcing the Hyde Amendment*); 14173 (*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*); 14168 (*Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*); 14151 (*Ending Radical and Wasteful Government DEI Programs and Preferencing*); and *14148 (Initial Rescissions of Harmful Executive Orders and Actions*).

Recipients may find additional executive orders at the following webpage:  Presidential Actions – The White House.

## XII. NOTICE IMPACT DETERMINATION RELATED TO THE ENVIRONMENT

This Notice provides funding under 24 CFR part 984, which concerns activities that are listed in 24 CFR 50.19(b) as categorically excluded from environmental review under the National Environmental Policy Act of 1969 (42 USC  § 4321) ("NEPA"). So, under 24 CFR 50.19(c)(5)(ii), this NOFO is categorically excluded from environmental review under NEPA.

## XIII. PAPERWORK REDUCTION ACT

The information collection requirements contained in this notice have been approved by OMB under the Paperwork Reduction Act of 1995 (44 U.S.C. § 3520) and assigned OMB approval numbers OMB 2577-0178.  In accordance with the Paperwork Reduction Act, HUD may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a currently valid OMB number.

**XIV. CONTACT**

For more information, FSS applicants or grantees may contact FSS@hud.gov.

Benjamin Hobbs
Principal Deputy Assistant Secretary
Office of Public and Indian Housing