JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
TAYLOR EVANS (SBN 355492)
tevans@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile:  (415) 848-7230

*Attorneys for Plaintiffs*
HOUSING AUTHORITY OF THE COUNTY OF
SAN DIEGO; HOME FORWARD; HOUSING
AUTHORITY OF THE CITY OF LOS
ANGELES; LOS ANGELES COUNTY
DEVELOPMENT AUTHORITY; HOUSING
AUTHORITY OF THE CITY OF SALEM;
HOUSING AUTHORITY OF BALTIMORE
CITY; SAN DIEGO HOUSING COMMISSION

JUHI S. AGGARWAL (OSB No. 130764)*
juhi.aggarwal@homeforward.org
HOME FORWARD
135 SW Ash Street
Portland, OR 97204
Telephone:  503-545-5090

*Attorney for Plaintiff*
HOME FORWARD
*Admitted pro hac vice*

DAVID CHIU (SBN 189542)
City Attorney
YVONNE R. MERÉ (SBN 175394)
Chief Deputy City Attorney
MOLLIE M. LEE (SBN 251404)
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
RONALD H. LEE (SBN 238720)
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
Telephone: (415) 554-3935
Facsimile:  (415) 437-4644
ronald.lee@sfcityatty.org

*Attorneys for Plaintiff*
HOUSING AUTHORITY OF THE CITY AND
COUNTY OF SAN FRANCISCO

DANIEL B. ATCHISON (OSB No. 040424)*
datchison@cityofsalem.net
THOMAS V. CUPANI (OSB No. 924654)*
tcupani@cityofsalem.net
City of Salem, Legal Department
PO Box 14300
Salem, Oregon 97309-3986
Telephone: (503) 588-6003
Facsimile:  (503) 361-2202

*Attorneys for Plaintiff*
HOUSING AUTHORITY OF THE CITY OF
SALEM
*Admitted pro hac vice*

MICHAEL BUENNAGEL (SBN 259000)
MBuennagel@counsel.lacounty.gov
THOMAS FAUGHNAN (SBN 155238)
tfaughnan@counsel.lacounty.gov
BEHNAZ TASHAKORIAN (SBN 213311)*
Btashakorian@counsel.lacounty.gov
Office of the County Counsel
County of Los Angeles
Kenneth Hahn Hall of Administration
500 West Temple Street #648
Los Angeles, CA 90012
Telephone:  (213) 974-1811
*Application for Northern District Admission
forthcoming*

*Attorneys for Plaintiff*
LOS ANGELES COUNTY DEVELOPMENT
AUTHORITY

RENNE PUBLIC LAW GROUP
Attorneys at Law

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUSING AUTHORITY OF THE COUNTY OF SAN DIEGO; HOME FORWARD; HOUSING AUTHORITY OF CITY OF LOS ANGELES; LOS ANGELES COUNTY DEVELOPMENT AUTHORITY; HOUSING AUTHORITY OF THE CITY OF SALEM; HOUSING AUTHORITY OF THE CITY AND COUNTY OF SAN FRANCISCO; HOUSING AUTHORITY OF BALTIMORE CITY; SAN DIEGO HOUSING COMMISSION, | Case No. 4:25-cv-08859-JST |
| Plaintiffs, | **PLAINTIFFS' REPLY IN RESPONSE TO OSC RE PRELIMINARY INJUNCTION** |
| v. | Complaint Filed: October 15, 2025 |
| SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | Hon. Jon S. Tigar |
| Defendant. | Hearing Date: November 12, 2025<br>Time: 9:30 a.m.<br>Location: Zoom Videoconference |

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .........................................................................................................1

    A.   The Tucker Act Does Not Prevent This Court from Setting Aside the
    Unlawful Agency Directives at Issue..............................................................1

    B.   Plaintiffs Are Likely to Prevail on the Merits of Their Claims.......................3

        1.   Plaintiffs' Constitutional Claims Are Likely to Succeed ...................3

            a.   The HUD Grant Conditions are unconstitutionally vague
            and ambiguous in violation of the Due Process and
            Spending Clauses. .................................................................3

            b.   The HUD Grant Conditions violate the Spending Clause's
            nexus requirement. .................................................................7

            c.   The HUD Grant Conditions violate the Separation of
            Powers. ...................................................................................8

        2.   Plaintiffs' APA Claims Are Likely to Succeed...................................9

            a.   The federal agency actions at issue are "final agency action"
            reviewable under the APA. .....................................................9

            b.   Defendants' unlawful funding conditions are not committed
            to agency discretion by law...................................................10

            c.   The HUD Grant Conditions are in excess of statutory
            jurisdiction. ..........................................................................11

            d.   The HUD Grant Conditions are arbitrary and capricious. ...................12

    C.   Injunctive Relief Is Necessary to Prevent Irreparable Harm to Plaintiffs...................13

    D.   The Equities Weigh in Plaintiffs' Favor.......................................................14

    E.   Plaintiffs Seek an Appropriately Tailored Prohibitory Preliminary
    Injunction ......................................................................................................15

    F.   A Preliminary Injunction Serves the Public Interest; a Bond or Stay Does
    Not.................................................................................................................15

III. CONCLUSION....................................................................................................15

RENNE PUBLIC LAW GROUP
Attorneys at Law

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ariz. Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ...........................................................................14, 15

*California v. EPA*,
   72 F.4th 308 (D.C. Cir. 2023) ...................................................................................3

*California v. U.S. DOT*,
   2025 WL 1711531 ...................................................................................................15

*City & Cnty. of San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) ........................................................................4, 8, 11

*City of Fresno v. Turner*,
   No. 25-cv-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025).................. *passim*

*City of Los Angeles v. Barr*,
   941 F.3d 931 (9th Cir. 2019) .....................................................................................8

*Climate United Fund v. Citibank, N.A.*,
   --- F.4th ---, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025)....................................2, 3

*Clinton v. City of New York*,
   524 U.S. 417 (1998) ..................................................................................................8

*Cnty. of Santa Clara v. Trump*,
   250 F. Supp. 3d 497 (N.D. Cal. 2017) ...................................................................7, 8

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*,
   68 F.4th 864 (4th Cir. 2023) ......................................................................................5

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024)................................................................................................10

*Dalton v. Specter*,
   511 U.S. 462 (1994)..................................................................................................8

*Department of Education v. California*,
   145 S. Ct. 966 (2025)................................................................................................1

*Diemert v. City of Seattle*,
   776 F. Supp. 3d 922 (W.D. Wash. 2025)..................................................................5

*Erickson v. Wisc. Dep't of Corrs.*,
   469 F.3d 600 (7th Cir. 2006) .....................................................................................5

RENNE PUBLIC LAW GROUP
Attorneys at Law

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*,
  82 F.4th 664 (9th Cir. 2023) ...................................................................................15

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010)..............................................................................................11

*Gay Men's Health Crisis v. Sullivan*,
  792 F. Supp. 278 (S.D.N.Y. 1992) ..........................................................................3

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)................................................................................................5

*Heckler v. Chaney*,
  470 U.S. 821 (1985)..............................................................................................10

*Illinois v. FEMA*,
  --- F. Supp. 3d ---, 2025 WL 2716277 (D.R.I. Sept. 24, 2025) ....................6, 7, 8

*Jajati v. United States Customs & Border Prot.*,
  102 F.4th 1011 (9th Cir. 2024) ..............................................................................10

*Martin Luther King, Jr. Cnty. v. Turner*,
  785 F. Supp. 3d 863 (W.D. Wash. 2025)..........................................................12, 15

*Lincoln v. Vigil*,
  508 U.S. 182 (1993)..........................................................................................10, 11

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) .................................................................................14

*Murphy Co. v. Biden*,
  65 F.4th 1122 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1111 (2024)...............................8

*Nat'l Educ. Ass'n v. United States Dep't of Educ.*,
  779 F. Supp. 3d 149 (D.N.H. 2025).........................................................................5

*National Endowment for the Arts v. Finley*,
  524 U.S. 569 (1998)................................................................................................7

*National Institutes of Health v. American Public Health Association*,
  145 S. Ct. 2658 (2025)........................................................................................1, 2

*Newsom v. Trump*,
  141 F.4th 1032 (9th Cir. 2025) ................................................................................8

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) .................................................................................................10

*San Francisco A.I.D.S. Found. v. Trump*,
  786 F. Supp. 3d 1184 (N.D. Cal. 2025) ...................................................... *passim*

*San Francisco Unified Sch. Dist. v. AmeriCorps*,
  789 F. Supp. 3d 716 (N.D. Cal. 2025) ........................................................ *passim*

*Sierra Club v. Trump*,
  929 F.3d 670 (9th Cir. 2019) .....................................................................................8

*Thakur v. Trump*,
  --- F. Supp. 3d ---, 2025 WL 2696424 (N.D. Cal. Sept. 22, 2025) .......................2

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ..................................................................................................1

**Statutes**

5 U.S.C. § 553(a)(2) .................................................................................................12

5 U.S.C. § 705 .........................................................................................................10

5 U.S.C. § 706(2) .....................................................................................................10

5 U.S.C. § 706(2)(C) ................................................................................................11

42 U.S.C. § 300a-6 .....................................................................................................9

42 U.S.C. § 1436a(b)(2) .............................................................................................9

42 U.S.C. § 1437c-1(d)(16) ........................................................................................9

42 U.S.C. § 1437u(c) ................................................................................................10

42 U.S.C. § 8011(b) .................................................................................................10

**Regulations**

2 C.F.R. § 200.211(c)(1)(ii) .....................................................................................12

2 C.F.R. § 200.300(a) ...............................................................................................12

2 C.F.R. § 200.300(b) .................................................................................................6

24 C.F.R. § 10.1 .......................................................................................................12

RENNE PUBLIC LAW GROUP
Attorneys at Law

## I.    INTRODUCTION

Rather than address the lawfulness of the agency directives imposing new and unauthorized HUD Grant Conditions enjoined by the temporary restraining order (or many of the conditions or programs themselves), Defendants try to reframe this case as a contractual dispute.  *See* Dkt. 40 at 10:14–15, 30:15.[1]  That framing is incorrect and fails to meaningfully engage with the agency actions Plaintiffs challenge or the relief Plaintiffs seek—prohibitory injunctive relief and ultimately an order setting aside the agency directives to impose the new, unauthorized, and unlawful conditions on federal funding.

Defendants' arguments on the merits fare no better.  When viewed against the backdrop of pronouncements from the Attorney General, the Deputy Attorney General, and Secretary Turner himself, the challenged conditions leave Plaintiffs to guess at their own peril what they prohibit, arm the Administration with boundless discretion to arbitrarily enforce them against political opponents, and rewrite federal spending and anti-discrimination law by executive fiat.  Defendants' unpersuasive effort to find statutory authority for these conditions reveals their reliance on a seemingly limitless conception of Article II power that runs headlong into Justice Jackson's evergreen warning more than 70 years ago:

> With all its defects, delays and inconveniences, men have discovered no technique for long preserving free government except that the Executive be under the law, and that the law be made by parliamentary deliberations.
>
> Such institutions may be destined to pass away.  But it is the duty of the Court to be last, not first, to give them up.

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) (Jackson, J., concurring).

Because injunctive relief is necessary to protect Plaintiffs from irreparable harm while this case proceeds, this Court should issue a preliminary injunction to maintain the status quo.

## II.    ARGUMENT

### A.    The Tucker Act Does Not Prevent This Court from Setting Aside the Unlawful Agency Directives at Issue

Relying primarily on the Supreme Court's recent decisions in *Department of Education v. California*, 145 S. Ct. 966 (2025), and *National Institutes of Health v. American Public Health*

---

[1] Dkt. 40 refers to Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction filed in the *City of Fresno v. Turner*, N.D. Cal. Case No. 25-cv-07070-RS, which Defendants have elected to rely on in lieu of filing an opposition specifically responding to Plaintiffs' request for injunctive relief.  Unless otherwise noted, all pin cites for ECF-filed documents refer to the page numbers in the top-right corner.

RENNE PUBLIC LAW GROUP
Attorneys at Law

Association ("NIH"), 145 S. Ct. 2658 (2025), Defendants contend that the Tucker Act divests this Court of jurisdiction over some—but concededly not all (*see* Dkt. 40 at 18 n.3)—of Plaintiffs' claims. Dkt. 40 at 18–22. Plaintiffs already explained why these cases do not preclude (and in fact support) this Court's jurisdiction over their constitutional and APA claims for equitable relief. Dkt. 9-1 at 21–22. Still, Defendants insist that Plaintiffs' requested relief is "fundamentally contractual," assert that Plaintiffs do not seek "'vacatur of internal guidance,'" and accuse Plaintiffs of "artful pleading." Dkt. 40 at 20–22 & n.5 (quoting *NIH*, 145 S. Ct. at 2661). But the "contractual" language Defendants complain about (*see* Dkt. 40 at 21) appears nowhere in Plaintiffs' proposed order (*see* Dkt. 9-12), and the Complaint quite clearly seeks vacatur in connection with the APA claims. *See* Compl., Prayer for Relief ¶ E.

Nor is there anything "artful" about Plaintiffs' "'characterization of [their] claim[s].'" Dkt. 40 at 20–21 (quoting *Climate United Fund v. Citibank, N.A.*, --- F.4th ---, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025)). In *Citibank*, the plaintiffs alleged that the EPA's termination of their grant agreements violated OMB regulations because the agency "relied on a basis for termination not set forth in the grant agreements, in violation of 2 C.F.R. § 200.340(a)(4)"; "failed to provide written notice of termination as required by 2 C.F.R. § 200.341(a)"; and was arbitrary and capricious under the APA. *Citibank*, 2025 WL 2502881, at *5, *7. A divided panel concluded that these claims were "essentially contractual" because "the grantees' [termination] claim turn[ed] on the government's rights under the agreements—a question of contract interpretation that the parties fiercely dispute[d]"; the notice claim "'could be phrased' as a claim that the government stopped performing on the contract without sufficient warning"; and the "APA's substantive bar on arbitrary and capricious action does not give the grantees an independent right to specific performance of their grant agreements." *Id.* at *5-7. Here, by contrast, Plaintiffs are challenging the lawfulness of imposing unlawful and ambiguous conditions on them, not grant terminations based on a purported breach of funding agreements.

More fundamentally, Defendants have no answer for the fact that unlike the plaintiffs in *California* and *NIH*—who only asserted arbitrary and capricious claims under the APA—Plaintiffs advance freestanding constitutional claims as well as claims that the agency violated the APA by acting contrary to the Constitution and in excess of statutory authority. *See* Dkt. 9-1 at 22 (citing cases); *see also Thakur v. Trump*, --- F. Supp. 3d ---, 2025 WL 2696424, at *10 (N.D. Cal. Sept. 22, 2025) (*NIH*

-2-

RENNE PUBLIC LAW GROUP
Attorneys at Law

"only involved an APA arbitrary and capricious claim, and thus does not bear on Plaintiffs' First Amendment claim or their claim that the agencies acted contrary to law"); *Citibank*, 2025 WL 2502881, at *10 ("the district court had jurisdiction over this claim" that the "EPA violated the 'Separation of Powers' by not enforcing the Inflation Reduction Act"); *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1212 (N.D. Cal. 2025) ("Plaintiffs' claims are all based on the Constitution—arising under the First and Fifth Amendments, the Spending Clause, and the Separation of Powers.").

**B.    Plaintiffs Are Likely to Prevail on the Merits of Their Claims**

**1.    Plaintiffs' Constitutional Claims Are Likely to Succeed**

**a.    The HUD Grant Conditions are unconstitutionally vague and ambiguous in violation of the Due Process and Spending Clauses.**

Defendants' opposition fails to refute that the challenged funding conditions are impermissibly vague and ambiguous in violation of the Due Process and Spending Clauses. *See* Dkt. 9-1 at 25–27. At the outset, courts have applied the Due Process Clause's vagueness doctrine to federal grant funding in several cases. *See, e.g.*, *City of Fresno v. Turner*, No. 25-cv-07070-RS, 2025 WL 2721390, at *12–18 (N.D. Cal. Sept. 23, 2025); *San Francisco Unified Sch. Dist. v. AmeriCorps* ("*SFUSD*"), 789 F. Supp. 3d 716, 745–50 & n.12 (N.D. Cal. 2025); *San Francisco A.I.D.S. Found.*, 786 F. Supp. 3d at 1224–26; *Gay Men's Health Crisis v. Sullivan*, 792 F. Supp. 278 at 292–304 (S.D.N.Y. 1992). The doctrine applies with special force here, where the challenged conditions are imposed on formula and non-competitive funding to which Plaintiffs are entitled pursuant to criteria and allocation formulae mandated by Congress. Compl. ¶¶ 1 n.1, 25–59.

Defendants argue that Plaintiffs cannot establish unconstitutional vagueness under the Due Process or Spending Clauses because the challenged conditions "simply require compliance with existing federal law." Dkt. 40 at 24–26 & n.6. Plaintiffs are in fact required to comply with "applicable existing and future Executive Orders" (including the EOs related to diversity, equity and inclusion (DEI), gender ideology, immigration, and elective abortion) by the HUD Policy Terms, "any applicable" EOs in the case of the MFSC grant, and "existing and future executive orders and other Presidential Actions" in the case of the FSSP grant. Dkt. 9-1 at 14, 16. But an "an executive order is not 'law,' within the meaning of the Constitution," *California v. EPA*, 72 F.4th 308, 318 (D.C. Cir. 2023), and none of President

RENNE PUBLIC LAW GROUP
Attorneys at Law

Trump's executive orders impose direct obligations on Plaintiffs as recipients of federal funds.  *City of Fresno*, 2025 WL 2469330, at *15–16 ("it is not clear what compliance with the EOs requires of *Plaintiffs*").  And simply placing a savings clause, such as "with applicable laws," at the end of a condition does not insulate it from judicial review.  *See City & Cnty. of San Francisco v. Trump* (*"San Francisco I"*), 897 F.3d 1225, 1239–1240 (9th Cir. 2018).

The Discrimination Conditions[2] also do not merely target activities that "violate" the law.  The Administration's interpretation of federal antidiscrimination laws appears to be in tension with established case law.  *Cf. San Francisco A.I.D.S. Found.*, 786 F. Supp. 3d at 1228 ("the Court does not *now* find that the Certification Provision implicates DEI activities beyond those described in its express text" (emphasis added)).  After President Trump's first 100 days, Secretary Turner issued a press release explaining that HUD is "[a]lign[ing] all . . . grant agreements with the President's Executive Orders, removing diversity, equity, inclusion (DEI)."  Dkt. 9-11, Ex. B, at 21.  On May 19, 2025, Deputy Attorney General Blanche issued a memo regarding a Civil Rights Fraud Initiative against federal-funding recipients asserting that "diversity, equity, and inclusion (DEI) programs that assign benefits or burdens on race, ethnicity, or national origin" violate the civil rights laws because they are a form of "racist preferences, mandates, policies, programs, and activities."  Dkt. 9-11, Ex. J, at 137.

Most recently, on July 29, 2025, Attorney General Bondi released a memo titled *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination*.  *See* Dkt. 9-11, Ex. I.  The memo purports to "clarif[y] the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ('DEI') programs."  Dkt. 9-11, Ex. I at 127.  But far from clarifying anything, the memo instead creates confusion by seeming to characterize conduct courts have upheld as lawful as violations of federal antidiscrimination law.  For example, the memo declares that use of "[f]acially neutral criteria (e.g.,

---

[2] The Discrimination Conditions include the requirements for grantees to: comply with EO 14151 (Ending DEI Programs and Preferencing) and EO 14173 (Ending Illegal Discrimination and Restoring Merit-Based Opportunity) with respect to the MFSC and FSSP programs; "certif[y] that it does not operate any programs promoting Diversity, Equity, and Inclusion (DEI) that violate any applicable Federal anti-discrimination laws" with respect to the MFSC grant; and certify it "does not operate any programs that violate any applicable Federal antidiscrimination laws, including Title VI of the Civil Rights Act of 1964."  Though this last formulation does not specifically reference DEI, when viewed in context, it is evident that this condition is also intended to target Plaintiffs' DEI activities.

RENNE PUBLIC LAW GROUP
Attorneys at Law

'cultural competence,' 'lived experience,' geographic targeting) that function as proxies for protected characteristics violate federal law if designed or applied with the intention of advantaging or disadvantaging individuals based on protected characteristics." Dkt. 9-11, Ex. I at 128.  This "clarification," however, appears to be inconsistent with Supreme Court precedent that has "consistently declined to find constitutionally suspect" the adoption of race-neutral criteria—even where the decision-maker was "well aware" the race-neutral criteria "correlated with race." *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 885–86 (4th Cir. 2023) (cleaned up) (citing, inter alia, *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015)).

Similarly, the Bondi memo implies that employee affinity groups could be deemed prohibited "[i]mplicit [s]egregation" (Dkt. 9-11, Ex. I at 132), although case law suggests they are lawful.  *See, e.g.*, *Diemert v. City of Seattle*, 776 F. Supp. 3d 922, 949–51 (W.D. Wash. 2025).  And even discussing concepts of race and bias as part of DEI training programs could constitute a hostile work environment (Dkt. 9-11, Ex. I at 134), even though courts have broadly recognized such trainings play a vital role in preventing workplace discrimination.  *See, e.g.*, *Erickson v. Wisc. Dep't of Corrs.*, 469 F.3d 600, 605–06 (7th Cir. 2006) (noting that employers should prevent harassment with "proactive steps such as . . . training employees"); *Diemert*, 776 F. Supp. at 939–40.  It is striking that across all guidance on antidiscrimination law offered by the Administration, the only examples of *permissible* activities are "educational, cultural, or historical observances."  Dkt. 9-11, Ex. H at 124 n.1.  The Administration's view of what these laws prohibit is therefore creating confusion and uncertainty for Plaintiffs as to what activities are compliant with the law and the opportunity for "arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).[3]

Vagueness concerns also infect the Gender Ideology and Abortion Conditions for the Operating Subsidy, and the Immigration Enforcement Condition for the Capital Fund and MFSC grants.  *See* Dkt. 9-1 at 26–27; *City of Fresno*, 2025 WL 2721390, at *17–18 (finding the wording of similar gender

---

[3] The Discrimination Condition with respect to the MFSC specifically is additionally problematic, because it is unclear what would constitute "promoting" DEI.  As other courts have observed, "DEI as a concept is broad: one can imagine a wide range of viewpoints on what the values of diversity, equity, and inclusion mean when describing a program or practice[.]"  *Nat'l Educ. Ass'n v. United States Dep't of Educ.*, 779 F. Supp. 3d 149, 188 (D.N.H. 2025); *SFUSD*, 789 F. Supp. 3d at 746 ("DEI" and "equity" based restrictions "are rife with vagueness and ambiguity").

RENNE PUBLIC LAW GROUP
Attorneys at Law

ideology, immigration enforcement, and elective abortion conditions unconstitutionally vague); *Illinois v. FEMA*, --- F. Supp. 3d ---, 2025 WL 2716277, at *14 (D.R.I. Sept. 24, 2025) (concluding that similar immigration-related funding conditions were "unlawfully ambiguous" and "hopelessly vague" under Spending Clause).  In addition to the vagueness of these conditions as written, the Gender Ideology Condition appears to be at odds with an OMB regulation requiring federal agencies to "ensure that the award is administered in a way that does not unlawfully discriminate based on sexual orientation or gender identity if the statute's prohibition on sex discrimination encompasses discrimination based on sexual orientation and gender identity consistent with the Supreme Court's reasoning in *Bostock*."  2 C.F.R. § 200.300(b).  Plaintiffs are therefore left to guess at how to reconcile these competing directives.

Defendants next argue that speculation about possible vagueness in hypothetical situations does not support Plaintiffs' facial vagueness challenge.  *See* Dkt. 40 at 23.  However, when "Plaintiffs' claims implicate First Amendment interests, the standard . . . is whether the conditions reach a substantial amount of constitutionally protected conduct."  *City of Fresno*, 2025 WL 2721390, at *14 (quotations omitted) ("Because vagueness here could chill Plaintiffs' expressive activity, lesser tolerance for vagueness is warranted even though the conditions attach to discretionary grant awards."); *see also* Dkt. 9-1 at 17 ("If this requirement to condition federal funding on the content of program materials were enforced, it would be a violation of the First Amendment" (citing *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 831 (1995)).  In any event, Plaintiffs bring as-applied challenges here. *See San Francisco A.I.D.S. Found.*, 786 F. Supp. 3d at 1224–1226.

The consequences of these vague and ambiguous conditions are real.  Unlike in *San Franscisco A.I.D.S. Found.*, Plaintiffs here have "provided sufficient evidence that the government has enforced or plans to enforce the Certification Provision in a way that implicates DEI programs beyond those that 'violate any applicable Federal anti-discrimination law.'"  786 F. Supp. 3d at 1221 (emphasis omitted). The Administration has clearly indicated its intention to investigate certifications by grantees pursuant to the False Claims Act ("FCA").  *See* Dkt. 9-11, Ex. J at 137–38.[4]  In the face of these vague and ambiguous conditions, Plaintiffs face the choice of risking arbitrary enforcement action by Defendants,

---

[4] The briefing on the motion for a preliminary injunction in *San Francisco A.I.D.S. Found.* closed on May 16, 2025, before the Blanche Memo was issued.  *See* Case No. 4:25-cv-01824; Dkt. 9-11, Ex. J.

Renne Public Law Group
Attorneys at Law

backed by the FCA's steep penalties, or foregoing funds to which they are entitled. In the case of the Operating Subsidy and the MFSC grants, Plaintiffs are in fact required to certify as to materiality under the FCA, which would permit the Administration to potentially achieve an end run around its "demanding" burden to prove that a representation is "material to the U.S. Government's payment decisions." *See* Dkt. 9-1 at 15.

Defendants therefore wrongly assert that Plaintiffs have failed "to establish a protectable property interest." Dkt. 40 at 24. Plaintiffs "have a legitimate property interest in federal funds that Congress has already appropriated and that [Plaintiffs] have accepted." *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 536 (N.D. Cal. 2017). And regardless, the grant conditions are unlawfully ambiguous under the Spending Clause, which is not concerned with a property or liberty interest. *See SFUSD*, 789 F. Supp. 3d at 744–51; *Illinois*, 2025 WL 2716277, at *14.

Finally, Defendants' reliance on *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), is misplaced. *Finley* involved a narrow challenge to the National Endowment for the Arts's ("NEA") discretionary decision-making process for awarding selective arts grants based on subjective criteria, including "artistic excellence" and "decency." *Finley*, 524 U.S. at 572–573. The Court emphasized that Congress had granted the NEA broad latitude to make individualized, competitive funding decisions in the context of a subjective selection process. *Id*. at 589–90. By contrast, Plaintiffs challenge not selection criteria for discretionary grants, but conditions on formula and non-competitive federal funding designed to support public housing for the most vulnerable populations nationwide—maintaining the physical infrastructure of housing buildings and units, operating buildings, and providing critical social services to residents—according to specific, detailed statutory and regulatory criteria. *See City of Fresno*, 2025 WL 2721390 at *14; *San Francisco A.I.D.S. Found.*, 786 F. Supp. 3d at 1224–26.

        **b.**    **The HUD Grant Conditions violate the Spending Clause's nexus requirement.**

As discussed above, Defendants provide few (if any) meaningful answers to Plaintiffs' argument that the ambiguity of the funding conditions renders them infirm under the Spending Clause. *See* Dkt. 9-1 at 25–28; Dkt. 40 at 26–28 n.6. Instead, Defendants argue that the conditions relate to the overarching federal interest in preventing the expenditure of federal funds on activities that violate the law. *See* Dkt.

RENNE PUBLIC LAW GROUP
Attorneys at Law

40 at 26–28.  But another court in this District has already found that "there is no nexus between [federal immigration enforcement] and most categories of federal funding, including without limitation funding related to Medicare, Medicaid, transportation, child welfare services, immunization and vaccination programs, and emergency preparedness." *Cnty. of Santa Clara*, 250 F. Supp. 3d at 532; *accord Illinois*, 2025 WL 2716277, at *14 (similar).  Similarly, prohibitions on DEI, elective abortion, and gender ideology have no nexus to the federal funding at issue here, which is primarily utilized for the maintenance and operation of public housing.  *See SFUSD*, 789 F. Supp. 3d at 750–51 (DEI).  Nothing in the authorizing statutes of these programs suggests a connection to Defendants' ideological restrictions.

### c.    The HUD Grant Conditions violate the Separation of Powers.

Defendants argue that Plaintiffs' Separation of Powers claim is impermissible under *Dalton v. Specter*, 511 U.S. 462 (1994), because it seeks "to constitutionalize their garden-variety statutory claim." Dkt. 40 at 26.  Not so.  "Contemporary Ninth Circuit jurisprudence weighs in favor of justiciability by taking an expansive view of the constitutional category of claims highlighted in *Dalton*."  *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1111 (2024).  The statute at issue in *Dalton* granted the President unreviewable discretion to approve or disapprove base closure packages, and thus, the Court in *Dalton* had no occasion to address constitutional claims challenging actions taken without statutory authority.  In contrast, no such discretionary delegation exists here.  *See Newsom v. Trump*, 141 F.4th 1032, 1046-47 (9th Cir. 2025) (distinguishing *Dalton* on the grounds that the statute at issue there "authorized unfettered discretion" by the President (cleaned up)); *Sierra Club v. Trump*, 929 F.3d 670, 696–97 (9th Cir. 2019) (*Dalton* did not foreclose claim that Executive lacks any constitutional authority to reappropriate funds).

What's more, Plaintiffs' claims are based on HUD's unauthorized use of grant funds, which directly impinges on Congress's exclusive Article I spending powers.  *See San Francisco I*, 897 F.3d at 1231; *City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019) (agency grant conditions imposed without statutory authority were "ultra vires").  The Executive cannot "repeal[ ] or amend[ ] parts of duly enacted statutes" after they become law.  *Clinton v. City of New York*, 524 U.S. 417, 439 (1998).  Here, the executive branch is attempting to essentially amend existing laws through executive order and changes to internal agency guidance and leveraging congressionally appropriated funds to pressure

RENNE PUBLIC LAW GROUP
Attorneys at Law

recipients (under penalty of FCA liability) into complying with the Administration's policy priorities.

For example, to the extent that the Administration believes that all DEI is illegal, save for "educational, cultural, or historical observances" (Dkt. 9-11, Ex. H at 124 n.1), that would be contrary to law, including statutory requirements to "affirmatively further fair housing" (42 U.S.C. § 1437c-1(d)(16)).  *See supra* at § II.B.1.a; Dkt. 9-1 at 23.  In addition, the Operating Subsidy and MFSC Immigration Status Conditions require Plaintiffs to enforce PRWORA, even though Congress has legislated a different immigration status verification regime through section 214 of the Housing and Community Development Act of 1980 (42 U.S.C. §1436a).  *See* Dkt. 9-1 at 16-28.  This verification requirement specifically provides public housing eligibility for mixed-status households.  42 U.S.C. § 1436a(b)(2).  Further, the Gender Ideology Condition attempts to bind recipients to the policy dictates of EO 14168, yet Congress has never authorized the Executive to use Title IX or Title VI as vehicles for prohibiting "gender ideology."  Courts have recognized that transgender individuals are a protected category under provisions of the Civil Rights Act.  Dkt. 9-1 at 24 (citing cases).  Similarly, the Elective Abortion Conditions purport to "enforce" the Hyde Amendment, but go far beyond what that statute requires, prohibiting grantees from using federal grants to "fund or promote elective abortions" in all contexts, extending the restriction beyond the prohibitions of the Hyde Amendment, which says nothing about the "promotion" of abortion and includes exceptions in cases of rape, incest, or where the life of the mother is at risk.  *See* 42 U.S.C. § 300a–6 (and related appropriations provisions); Dkt. 9-1 at 24.

### 2.    Plaintiffs' APA Claims Are Likely to Succeed

#### a.    The federal agency actions at issue are "final agency action" reviewable under the APA.

Defendants summarily assert that Plaintiffs fail to identify with sufficient particularity the relevant final agency action but ignore the agency actions identified in Plaintiffs' Complaint and memorandum of points and authorities.  *Compare* Dkt. 40 at 29, *with* Complaint ¶¶ 73–100; Dkt. 9-1 at 28–29.  These actions include amendments to published agency guidance and policy documents such as the HUD Policy Terms (Dkt. 9-11, Ex. A), the July 17, 2025, Notice PIH 2025-22 (*id*., Ex. C), FY 2025 Capital Fund Processing Guidance for PHAs (*id*., Ex. D), CY 2025 Annual Renewal Guidance (*id*., Ex. E), CY 2025 Terms and Conditions for Service Coordinators in Multifamily Housing Program grants

RENNE PUBLIC LAW GROUP
Attorneys at Law

(*id.*, Ex. F), and the September 26, 2025 Notice PIH 2025-24 (*id.*, Ex. G).  Each of these actions—particularly when viewed against the backdrop of the February and July 2025 Bondi Memos (Dkt. 9-11, Exs. H & I), the Blanche Memo (*id.*, Ex. J), and Secretary Turner's public pronouncements (*id.*, Ex. B)—satisfies the two criteria for final agency action: it "marks the consummation of the agency's decisionmaking process," and either is an action "by which rights or obligations have been determined, or from which legal consequences will flow."  *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (cleaned up).  As the *City of Fresno* court recently explained, "[t]he Grant Conditions here are reviewable final agency action because they take the definitive legal position that the Executive Orders and Grant Conditions are authorized and enforceable against Plaintiffs, which imposes an immediate and significant practical burden on Plaintiffs, rendering the disputed legal authority underlying the positions fully fit for judicial review."  2025 WL 2721390, at *7 (quotations and alterations omitted).[5]

**b.    Defendants' unlawful funding conditions are not committed to agency discretion by law.**

Defendants erroneously claim that an agency's determination of how to condition congressionally appropriated funds "is classic discretionary agency action."  Dkt. 40 at 31; *see Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *Jajati v. United States Customs & Border Prot.*, 102 F.4th 1011, 1014 (9th Cir. 2024) (holding that the "committed to agency discretion" exception only applies when "there is truly no law to apply").  Here, it is not a close question that the grant programs' authorizing statutes provide the standard against which to judge the agency's exercise of discretion, such as the programs' purpose, selection criteria, recipient requirements, and applicable grant conditions.  *See*, *e.g.*, Dkt. 9-1 at 30 (citing 42 U.S.C. § 1437u(c) (FSS); 42 U.S.C. § 8011(b) (MFSC)).

---

[5] Instead of meaningfully engaging with the agency actions that Plaintiffs have identified, Defendants summarily accuse Plaintiffs of making an impermissible "broad programmatic attack" against agency grant conditions writ large.  Dkt. 40 at 29–30 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).  In *Norton*, however, the plaintiff sought sweeping, programmatic relief compelling the BLM to manage vast expanses of federal land "so as to protect the areas' wilderness character," which effectively invited the judiciary to assume general supervisory authority over BLM's day-to-day land management decisions.  *Id.* at 66–67.  Here, by contrast, the requested preliminary injunction—preserving the status quo by prohibiting enforcement of the vague and unlawful challenged conditions until the Court has an opportunity to "hold unlawful and set aside" the unlawful agency action—is the traditional and appropriate form of equitable relief under the APA.  *See* 5 U.S.C. §§ 705, 706(2).

RENNE PUBLIC LAW GROUP
Attorneys at Law

Defendants' citation to *Lincoln v. Vigil*, 508 U.S. 182 (1993) is unavailing. *Lincoln* held that the discretionary allocation of appropriated funds to meet "permissible statutory objectives" that required "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise" was committed to agency discretion by law. *Id.* at 193. But here, Plaintiffs challenge Defendants' unilateral imposition of the HUD Grant Conditions, "which are not germane to Defendants' expertise and were imposed not in the spirit of Defendants' statutory mandates but rather to vindicate the Executive's agenda." *City of Fresno*, 2025 WL 2721390, at *7 (citing HUD Press Release No. 25-059 announcing grant conditions as part of "HUD [ ] carrying out President Trumps's executive orders, mission, and agenda . . ."); *see also* Dkt. 9-11, Ex. B. "That the Grant Conditions are not imposed to further statutory aims is clear not only from Defendants' public statements but also because conditions prohibiting DEI, gender ideology, and elective abortion and requiring cooperation with immigration enforcement are not part of or in furtherance of Defendant[s'] . . . statutory mandates . . . ." *City of Fresno*, 2025 WL 2721390, at *7. And Defendants' own arguments confirm the imposition of the HUD Grant Conditions is to advance the President's priorities and not Congress' enactments. *See* Dkt. 40 at 37–38.

### c.  The HUD Grant Conditions are in excess of statutory jurisdiction.

Defendants assert that the challenged grant conditions are within their statutory authority under 5 U.S.C. § 706(2)(C) because "[t]he Executive has a constitutional duty to enforce Congressional mandates and does so through its officers and agents." Dkt. 40 at 32 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010)). However, *Free Enterprise Fund* was specifically addressing the executives' Article II authority. *See Free Enter. Fund*, 561 U.S. at 492 ("The landmark case of *Myers v. United States* reaffirmed the principle that Article II confers on the President 'the general administrative control of those executing the laws.'"). Absent an express delegation of congressional authority, the President's power to impose conditions on grants "is at its lowest ebb." *San Francisco I*, 897 F.3d at 1233 (cleaned up). Accordingly, Defendants' authority (if any) to impose terms on the grants they implement must originate from a statute enacted by Congress.

Yet Defendants fail to engage with the statutes at issue. *Compare* Compl. ¶¶ 25–61, 104–22, *and* Dkt. 9-1 at 31–32 (discussing statutes governing Operating Fund, Capital Fund, MFSC, and FSSP), *with* Dkt. 40 at 32–35. Defendants have not identified any statute authorizing them to condition funding

RENNE PUBLIC LAW GROUP
Attorneys at Law

1  intended to preserve public housing and increase the availability of affordable housing with unrelated and

2  contradictory conditions prohibiting all forms of DEI, facilitating enforcement of federal immigration

3  laws, verification of immigration status, or prohibiting the "promot[ion]" of "gender ideology" or

4  "elective abortion," let alone an explicit delegation of authority.  No reasonable reading of the

5  authorizing statutes relevant here suggest otherwise, since "Congress rarely accomplishes extraordinary

6  grants of regulatory authority through modest words, vague terms, or subtle devices" and the funding

7  conditions are "far afield from the agency expertise to which Congress originally deferred."  *City of*

8  *Fresno*, 2025 WL 2721390, at *10 (cleaned up).

9          Rather, Defendants contend "government-wide grant regulations issued by OMB require that

10  federal agencies incorporate 'statutory, executive order, other Presidential directive, or regulatory

11  requirements' into the terms and conditions of federal awards" and "'ensure that Federal funding is

12  expended . . . in full accordance with the U.S. Constitution, applicable Federal statutes and regulations

13  . . . and the requirements of this part.'"  Dkt. 40 at 32 (quoting 2 C.F.R. §§ 200.211(c)(1)(ii), 200.300(a)).

14  But "'an agency *regulation* cannot create *statutory* authority; only Congress can do that.'"  *City of*

15  *Fresno*, 2025 WL 2721390, at *10 (quoting *Martin Luther King, Jr. Cnty. v. Turner*, 785 F. Supp. 3d

16  863, 886 (W.D. Wash. 2025) ("*King Cnty.*")).  Finally, for the same reasons discussed above, "savings

17  clauses such as '...which violate [relevant federal] law' or 'to the maximum extent permitted by law' do

18  not magically ensure that the conditions incorporating that language only operate in so far as they are

19  within Congress's grant of authority."  *Id.*

20                  **d.    The HUD Grant Conditions are arbitrary and capricious.**

21          Without addressing the specific conditions or funding programs at issue, Defendants contend that

22  the conditions they have imposed are not subject to the arbitrary and capricious standard because grants

23  are excluded from APA rule-making requirements under 5 U.S.C. § 553(a)(2).  *See* Dkt. 40 at 35.  This

24  argument is entirely without merit.  For starters, although 5 U.S.C. § 553(a)(2) exempts APA rule-

25  making requirements as to certain matters, HUD has waived this exemption through its own regulations.

26  *See, e.g.*, 24 C.F.R. § 10.1 ("It is the policy of [HUD] to provide for public participation in rulemaking

27  with respect to all HUD programs and functions, including matters that relate to . . . grants . . . even

28  though such matters would not otherwise be subject to rulemaking by law or Executive policy.")

RENNE PUBLIC LAW GROUP
Attorneys at Law

What's more, whether an agency is required to follow certain rule-making requirements or not, it must meet the requirements of 5 U.S.C. § 706(2)(A). *See* Dkt. 9-1 at 32–34 (citing cases and discussing HUD's actions here). Defendants do not offer any explanation for the imposition of the new grant conditions beyond the "general grantmaking requirements that the recipients of such funds follow federal law." Dkt. 40 at 35. But this "does not transform them into pre-existing conditions to comply with federal law that were merely unspoken." *City of Fresno*, 2025 WL 2721390, at *8. Because the challenged conditions appear to exceed the prohibitions and requirements of existing law and recipients of grant funds already agreed to follow federal law before these new conditions were implemented, the "conditions' references to federal law act as announcements of policies rather than as limits to the scope of the new conditions." *Id.* "Accordingly, the Grant Conditions reflect changes in agency position which require not only an explanation of reasoning but also consideration of reliance interests among other important factors." *Id.* The record here provides no support for either. *See* Dkt. 9-1 at 32–34. Because Defendants have failed to provide such an explanation, their imposition of the challenged conditions is arbitrary and capricious. *See City of Fresno*, 2025 WL 2721390, at *9 (noting that HUD's announcements regarding new grant conditions do not "constitute reasoned decisionmaking as required by the APA" or demonstrate "that Defendants considered the significant reliance interests of Plaintiffs and grantees like them who apply for, spend, and/or seek reimbursement via millions of dollars of federal funding on an ongoing and additive, or even nearly automatic, basis" (quotation omitted)).

## C.    Injunctive Relief Is Necessary to Prevent Irreparable Harm to Plaintiffs

Defendants assert that Plaintiffs have failed to make a showing of irreparable harm because the harms they assert are economic. Dkt. 40 at 36. Again, Defendants misunderstand Plaintiffs' claims. Defendants have put Plaintiffs in the position of having to choose between accepting unconstitutional conditions or risking the loss of hundreds of millions of dollars in federal funding which is critical to housing the most vulnerable populations across the nation, including low-income families, individuals with disabilities, and elderly. "This choice causes irreparable harm because the Grant Conditions likely violate" various constitutional principles and "'deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *City of Fresno*, 2025 WL 2721390, at *19 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). In addition, most of the funding has already been budgeted

-13-

RENNE PUBLIC LAW GROUP
Attorneys at Law

and committed to spending.  Moreover, even if Plaintiffs accepted the vague and unlawful conditions, they would still be at risk of arbitrary enforcement and legal liability under the FCA.  The constitutional violations and looming uncertainty are the harms for which Plaintiffs seek preliminary relief.  Furthermore, without injunctive relief, thousands of residents in affordable housing provided by Plaintiffs will likely see a reduction in staff, maintenance, and services which preserve the quality of life in affordable housing.  *See* Dkt. 9-1 at 34–35; *see San Francisco A.I.D.S. Found.*, 786 F. Supp. 3d at 1233 ("Plaintiffs' patients and clients will suffer irreparable harm in being deprived vital healthcare services.").  A reduction in quality of available affordable housing could quickly snowball into a decrease in available affordable housing and an increase in homelessness.

### D.    The Equities Weigh in Plaintiffs' Favor

Defendants argue that the public interest will suffer "substantial harm" by an "injunction interfering with the President's priorities," and when the United States is forced to pay out funds, it may not be able to recover.  *See* Dkt. 40 at 37–38.  However, Defendants also insist that the challenged conditions only require compliance with existing federal law and that they do not intend to reject or terminate Plaintiffs' grant agreements.  *See* Dkt. 40 at 24–25.  There is no indication that Plaintiffs are violating existing federal law, and so, according to Defendants, there is little risk that they will be harmed by enjoining the threats and conduct Defendants suggest it does not intend to pursue.  Defendants' purported harm is purely speculative and, by their own account, unlikely.

In contrast, the harm to Plaintiffs is certain without an injunction.  The public interest is served by providing Plaintiffs with clarity about their budgets and programmatic capacities, which is essential to their ability to preserve and increase the availability of affordable housing to meet critical needs.  *See City of Fresno*, 2025 WL 2721390, at *19 ("the public interest is served by giving Plaintiffs the budgetary clarity needed to deliver key public services to their constituents").  Furthermore, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (cleaned up).  As the Ninth Circuit has recognized, "by establishing a likelihood that [the government's] policy violates the U.S. Constitution," Plaintiffs have also "established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

RENNE PUBLIC LAW GROUP
Attorneys at Law

-14-

RENNE PUBLIC LAW GROUP
Attorneys at Law

### E. Plaintiffs Seek an Appropriately Tailored Prohibitory Preliminary Injunction

Defendants argue that any injunctive relief should be narrowly tailored. Dkt. 40 at 38. The relief sought is tailored to the harm caused. Defendants have imposed vague and unlawful conditions without the authority to do so. Accordingly, Plaintiffs seek a prohibitory injunction to maintain "the legally relevant relationship between the parties *before* the controversy arose." *Ariz. Dream Act Coal.*, 757 F.3d at 1061 (cleaned up) (emphasis removed and added). Here, a preliminary injunction prohibiting Defendants from attaching or enforcing these conditions preserves the status quo. *See Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 684 (9th Cir. 2023) (district court erred in applying mandatory burden of proof to plaintiffs' motion for a preliminary injunction barring Arizona officials from implementing new policy preventing DACA recipients from obtaining driver's licenses). Any effective relief must enjoin Defendants from imposing or enforcing the challenged grant conditions against Plaintiffs in any circumstance, whether the condition is present in a pending or future grant offer, existing programs utilizing grant funds, or in a future grant application.

### F. A Preliminary Injunction Serves the Public Interest; a Bond or Stay Does Not

The public interest favors an order enjoining Defendants from imposing their new unlawful grant conditions without undermining the protections of such an order with a bond or stay. *See King Cnty.*, 785 F. Supp. 3d at 893 (denying enjoined federal defendants' request for bond and stay); *SFUSD*, 789 F. Supp. 3d at 754–55 (same); *California v. U.S. DOT*, 2025 WL 1711531, at *4 (same). Alternatively, if the Court decides a bond is needed, Plaintiffs request a nominal bond to reflect the resulting hardship of losing access to the very funds Plaintiffs seek to protect. *See City of Fresno*, 2025 WL 2721390, at *20 ($100 nominal bond; denying stay); *San Francisco A.I.D.S. Found.*, 786 F. Supp. 3d at 1234–35 ($1000 nominal bond; denying stay).

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction enjoining Defendants from imposing or enforcing the HUD Grant Conditions or any materially similar terms or conditions to any federal funds received by or awarded to Plaintiffs, directly or indirectly.

Dated:  October 29, 2025                          RENNE PUBLIC LAW GROUP


                                                  By: _____/s/ Jonathan V. Holtzman_____
                                                       JONATHAN V. HOLTZMAN

                                                  Attorneys for Plaintiffs
                                                  HOUSING AUTHORITY OF THE COUNTY
                                                  OF SAN DIEGO; HOME FORWARD;
                                                  HOUSING AUTHORITY OF THE CITY OF
                                                  LOS ANGELES; LOS ANGELES COUNTY
                                                  DEVELOPMENT AUTHORITY; HOUSING
                                                  AUTHORITY OF THE CITY OF SALEM;
                                                  HOUSING AUTHORITY OF BALTIMORE
                                                  CITY; SAN DIEGO HOUSING COMMISSION

Dated:  October 29, 2025                          SAN FRANCISCO CITY ATTORNEY'S
                                                  OFFICE


                                                  By: _____/s/ David Chiu_____
                                                       DAVID CHIU

                                                  Attorneys for Plaintiff
                                                  HOUSING AUTHORITY OF THE CITY AND
                                                  COUNTY OF SAN FRANCISCO

Dated:  October 29, 2025                          HOME FORWARD


                                                  By: _____/s/ Juhi S. Aggarwal_____
                                                       JUHI S. AGGARWAL
                                                  * Appearing pro hac vice

                                                  Attorney for Plaintiff
                                                  HOME FORWARD

Dated:  October 29, 2025                          CITY OF SALEM, LEGAL DEPARTMENT


                                                  By: _____/s/ Daniel B. Atchison_____
                                                       DANIEL B. ATCHISON*
                                                       THOMAS V. CUPANI*
                                                  * Appearing pro hac vice

                                                  Attorneys for Plaintiff
                                                  HOUSING AUTHORITY OF THE CITY OF
                                                  SALEM

**ECF ATTESTATION**

I, JONATHAN V. HOLTZMAN, am the ECF user whose identification and password are being used to file this PLAINTIFFS' REPLY IN RESPONSE TO OSC RE PRELIMINARY INJUNCTION. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.

Dated:  October 29, 2025                                RENNE PUBLIC LAW GROUP


By:       */s/ Jonathan V. Holtzman*
          JONATHAN V. HOLTZMAN

PLAINTIFFS' REPLY IN RESPONSE TO OSC RE PRELIMINARY INJUNCTION – CASE NO. 4:25-CV-08859-JST