CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
MICHELLE LO (NYRN 4325163)
Acting Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:  (415) 436-7224
    Facsimile:  (415) 436-6748
    jevechius.bernardoni@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HOUSING AUTHORITY OF THE COUNTY OF SAN DIEGO, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>SCOTT TURNER, *et al.*,<br><br>    Defendants. | Case No. 4:25-cv-8859-JST<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES** |

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO TRANSFER OR DISMISS ................................................. 1

RELIEF REQUESTED.................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.    Introduction ........................................................................................................................ 1

II.   Background ........................................................................................................................ 3

      A.    Procedural Background ........................................................................................ 3

      B.    First-Filed Challenge In *King County* Case In Western District Of Washington ................. 5

III.  Legal Standards.................................................................................................................. 7

      A.    Federal Rule Of Civil Procedure 12(b)(6).......................................................... 7

      B.    Federal Rule Of Civil Procedure 12(b)(3).......................................................... 8

      C.    Motions To Transfer Under The First-To-File Rule And 28 U.S.C. § 1404(a) ...................... 8

IV.   Argument ........................................................................................................................ 9

      A.    Dismissal Is Warranted Because Plaintiffs Impermissibly Seek To Split Their Grant
            Conditions Claims Against HUD Across Multiple Federal Court Lawsuits ...................... 9

      B.    Without SF Housing Authority, Venue Does Not Lie In This District, And The
            Case Should Therefore Be Dismissed................................................................ 12

      C.    If The Court Finds Venue Proper, The Lawsuit Nevertheless Should Be Transferred
            To The Western District Of Washington Under The First-To-File Rule.......................... 13

      D.    In The Alternative, Transfer To The District Court For The District Of Columbia Is
            Appropriate Pursuant To 28 U.S.C. § 1404(a)................................................. 15

V.    Conclusion ...................................................................................................................... 18

**TABLE OF AUTHORITIES**

**CASES**

*Adams v. California Department of Health Services*, 487 F.3d 684 (9th Cir. 2007) ............................... 10

*Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622 (9th Cir. 1991) ..................................... 8, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 7, 8

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ........................................... 7

*Baltimore S.S. Co. v. Philips*, 274 U.S. 316 (1927) ........................................................... 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 7, 8

*Benson v. JPMorgan Chase Bank, N.A.*,
      No. 09-cv-5272-EMC, 2010 WL 1445532 (N.D. Cal. Apr. 7, 2010) ........................................... 14

*Bodley v. Whirlpool Corp.*, No. 17-cv-05436-JST, 2018 WL 2357640 (N.D. Cal. May 24, 2018) ......... 14

*Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331 (D. Md. 2000) ............................................ 9

*Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321 (9th Cir. 1995) ................................. 10

*CRU Acquisition Grp., LLC v. Mykey Tech. Inc.*,
      No. 11-cv-05743, 2012 WL 441293 (W.D. Wash. Feb. 10, 2012) ........................................... 15

*Davis v. Sun Oil Co.*, 148 F.3d 606 (6th Cir. 1998) ......................................................... 9

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ............................. 17

*Enomoto v. Siemens Indus.*, No. 23-cv-03779-JSC, 2023 WL 6278876 (N.D. Cal. Sept. 25, 2023) ....... 17

*Gerin v. Aegon USA, Inc.*, No. 06-cv-5407-SBA, 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007) ............. 17

*Grossman v. Johnson & Johnson*,
      No. 14-cv-03557-VC, 2015 WL 1743116 (N.D. Cal. Apr. 13, 2015) ....................................... 17

*Hartsel Springs Ranch of Colorado v. Bluegreen Corp.*, 296 F.3d 982 (10th Cir. 2002) ........................ 9

*Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985) ................................................ 15

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ....................................................................... 15

*Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093 (N.D. Cal. 2006) ............................ 15

*Johns v. Panera Bread Co.*, No. 08-cv-1071-SC, 2008 WL 2811827 (N.D. Cal. July 21, 2008) ........... 18

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ............................................. 16

*Karlen v. Wells Fargo Bank, N.A.*,

No. 22-cv-02127-JSC, 2022 WL 2756671 (N.D. Cal. July 14, 2022)..........................................18

*Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237 (9th Cir. 2015)...................14

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) .........................................................................16

*May Chen v. Xiyan Zhang*,

No. 24-cv-03942-JST, 2024 WL 4894294 (N.D. Cal. Nov. 25, 2024)..............................8, 14, 15

*Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879 (9th Cir. 2022)................10, 11, 12

*Morris v. Safeco Ins. Co.*, No. 07-cv-2890-PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ...........16

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133 (9th Cir. 2004)..................................................8

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .........................................................................7

*Nelson-Devlin v. Eli Lilly & Co.*, No. 14-cv-02811, 2015 WL 5436700 (E.D. Cal. Sept. 15, 2015).......12

*Our Children's Earth Found. v. EPA*,

No. 08-cv-01461-SBA, 2008 WL 3181583 (N.D. Cal. Aug. 4, 2008) ...................................8, 17

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982)..........................................14

*Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491 (9th Cir. 1979)................................8, 13

*Reuben H. Donnelley Corp. v. Federal Trade Comm'n*, 580 F.2d 264 (7th Cir. 1978) .........................13

*Rugila v. Mayorkas*, No. 24-cv-01218-MMC, 2024 WL 1446457 (N.D. Cal. Apr. 2, 2024) ..................13

*Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017) .......................................................8

*Shaver v. F.W. Woolsworth Co.*, 840 F.2d 1361 (7th Cir. 1988)...................................................9

*Southard v. Kipper Tool Co.*,

No. 15-cv-03621-JSC, 2023 WL 6959145 (N.D. Cal. Oct. 19, 2023) ...............................9, 16, 17

*Stark v. Starr*, 94 U.S. 477 (1876) .........................................................................................9

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ...........................................................................8

*Taylor v. Sturgell*, 553 U.S. 880 (2008).................................................................................10

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .............................................................................9

*Van Mourik v. Big Heart Pet Brands, Inc.*,

No. 17-cv-03889-JD, 2018 WL 3549122 (N.D. Cal. July 24, 2018).........................................17

*Williams v. United States*, No. 01-cv-0024 EDL, 2001 WL 1352885 (N.D. Cal. Oct. 24, 2001) ...........13

*WMATA v. Ragonese*, 617 F.2d 828 (D.C. Cir. 1980) .........................................................9, 11

*Wyles v. Sussman*, 661 F. App'x 548 (10th Cir. 2016) ........................................................ 10, 11

*Zhang v. Chertoff*, No. 08-cv-02589, 2008 WL 5271995 (N.D. Cal. Dec. 15, 2008) .............................. 13

## <u>STATUTES</u>

28 U.S.C. § 1391(e) ........................................................................................................ 12, 13, 16

28 U.S.C. § 1404(a) ............................................................................................................ passim

42 U.S.C. § 1437 .......................................................................................................................... 11

## <u>OTHER AUTHORITIES</u>

Restatement (Second) of Judgments § 24 ................................................................................... 10

## <u>RULES</u>

Federal Rule of Civil Procedure 12(b)(3) ........................................................................... passim

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 1, 7

**NOTICE OF MOTION AND MOTION TO TRANSFER OR DISMISS**

PLEASE TAKE NOTICE that on April 2, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, by Zoom Teleconference, before the Honorable Jon S. Tigar, defendants Scott Turner, in his official capacity as Secretary of the U.S. Department of Housing and Urban Development ("Turner"), and U.S. Department of Housing and Urban Development ("HUD" and, together with Turner, "Defendants"), will and hereby do move to dismiss the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, transfer to the United States District Court for the Western District of Washington ("Western District of Washington") pursuant to the first-to-file rule or to the United States District Court for the District of Columbia ("District Court for the District of Columbia") under 28 U.S.C. § 1404(a).

This motion is based on this Notice; the Memorandum of Points and Authorities; the pleadings, records, and files in this case; other matters of which the Court may take judicial notice, such as the proceedings in *Martin Luther King, Jr. County, et al. v. Turner, et al.*, No. 25-cv-00814-BJR (W.D. Wash.); and such other written or oral argument as may be presented at or before the time the Court takes this motion under submission.

**RELIEF REQUESTED**

Defendants seek an order dismissing this case for failure to state a claim upon which relief can be granted and for improper venue or, in the alternative, transferring this case to the Western District of Washington or to the District Court for the District of Columbia.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Introduction**

Housing Authority of the City and County of San Francisco ("SF Housing Authority") and seven additional out-of-district plaintiffs—two from the Central District of California, two from the Southern District of California, one from the District of Maryland, and two from the District of Oregon[1]—initiated

---

[1] Housing Authority of the County of San Diego ("SD Housing Authority"), Housing Authority of the City of Los Angeles ("LA Housing Authority"), Housing Authority of the City of Salem ("Salem Housing Authority"), Housing Authority of Baltimore City ("Baltimore Housing Authority"), Home Forward, Los Angeles County Development Authority ("LA County Development Authority"), and San Diego Housing Commission ("SD Housing Commission") (collectively, "Out-of-District Plaintiffs").

this action seeking to dictate HUD's conditions for its federal grant funds.  There is no question that the seven Out-of-District Plaintiffs lack venue in this district had each filed a standalone complaint here.

But SF Housing Authority's claims, the *sole* basis for venue, are subject to dismissal under the claim-splitting doctrine because the City and County of San Francisco (the local government for SF Housing Authority) is, in essence, pursuing a duplicative federal court lawsuit in the Western District of Washington, *Martin Luther King, Jr. County, et al. v. Turner, et al.*, No. 25-cv-00814-BJR (W.D. Wash.) ("*King County*"), challenging *identical* HUD grant terms and funds, and it has already obtained an injunction there.[2]  Notably, SF Housing Authority is not the only plaintiff in this case that is impermissibly splitting claims—the parent local government of multiple other Out-of-District Plaintiffs are also plaintiffs in the *King County* lawsuit (*i.e.*, Portland, OR; City of San Diego, CA; City of Los Angeles, CA; and Baltimore, MD).

As the only plaintiff in this case whose parent local government is not actively participating in the *King County* litigation, Salem Housing Authority's claims are the only ones not subject to dismissal under the claim-splitting doctrine.  But Salem Housing Authority, like all Out-of-District Plaintiffs (*i.e.*, all but SF Housing Authority) does not, standing alone, have venue to litigate its claims here.  As such, once SF Housing Authority's claims are dismissed under the claim-splitting doctrine, venue is extinguished for

---

[2] In both this case and *King County*, the grant funds include both HUD formula and discretionary funding.  The pertinent injunction language in *King County* is as follows:

> HUD, all of the HUD program offices, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined HUD Parties"), are enjoined from (1) imposing or enforcing the Non-CoC HUD Grant Conditions, as defined in the Appendix II to this Order, or any materially similar terms or conditions at any stage of the grant-making process, including but not limited to in new grant applications, notices of funding availability or opportunity, certifications, grant agreements, or post-award submissions, with respect to any non-CoC HUD funds awarded to the Non-CoC HUD Plaintiffs, their consortia, or their subrecipients; (2) as to the Non-CoC HUD Plaintiffs, their consortia, or their subrecipients, rescinding, withholding, cancelling, or otherwise not processing any non-CoC HUD awards, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning non-CoC HUD funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objections to conditions enjoined by this preliminary injunction.

*King County*, ECF No. 338 (Third Preliminary Injunction Order) at 37-38.  The Fourth Preliminary Injunction Order (*King County*, ECF No. 381) merely extended the Third Preliminary Injunction indefinitely, and added new plaintiffs. In its Notice of Court Order for the Fourth Preliminary Injunction Order, HUD related that "any HUD funds" and "any grant agreements" were covered.  *King County*, ECF No. 383-2 at 3.

all Out-of-District Plaintiffs, and the Court should dismiss this entire case under Federal Rule of Civil Procedure 12(b)(3).

Finally, even if venue were proper, the lawsuit should be transferred out of this district because 87.5% of the Plaintiffs have no link to this district and this district has no local interest in resolving how the federal government disburses federal grant funds to local authorities/municipalities in Maryland, Oregon, and/or Southern California. Accordingly, the Court should either transfer the lawsuit to the Western District of Washington under the first-to-file rule or to the District Court for the District of Columbia under 28 U.S.C. § 1404(a).

## II.    Background

### A.    Procedural Background

Eight Plaintiffs initiated this lawsuit on October 15, 2025. ECF No. 1 ("Compl."). The Complaint alleges the following facts about each Plaintiff's legal creation and the HUD funding at issue in this lawsuit.

- Home Forward was "created by resolution of the Council of the City of Portland," Oregon. *Id.* ¶ 4. Home Forward claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs: Operating Subsidy, Capital Fund, Family-Self Sufficiency, and Multifamily Housing Service Coordinators programs. *Id.* ¶ 5.
- SD Housing Authority was "created by resolution of the San Diego County Board of Supervisors." *Id.* ¶ 6. SD Housing Authority claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs: Operating Subsidy and Capital Fund programs. *Id.* ¶ 7.
- LA Housing Authority was "created by resolution of the Council of the City of Los Angeles." *Id.* ¶ 8. LA Housing Authority claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs: Operating Subsidy, Capital Fund, Family Self-Sufficiency, Multifamily Housing Service Coordinators programs. *Id.* ¶ 9.
- LA County Development Authority was "created by resolution of the Los Angeles County Board of Supervisors." *Id.* ¶ 12. LA County Development Authority claims that it

currently participates in, or in the future expects to participate in, the following HUD grant programs:  Operating Subsidy, Capital Fund, Family Self-Sufficiency, Capital Fund Emergency Safety and Security Grant programs.  *Id.* ¶ 13.

- SD Housing Commission was "created by resolution of the Council of the City of San Diego."  *Id.* ¶ 14.  SD Housing Commission claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs:  Operating Subsidy, Capital Fund, and Family Self-Sufficiency programs.  *Id.* ¶ 15.

- Baltimore Housing Authority was "created by resolution of the Council of the City of Baltimore."  *Id.* ¶ 16.  Baltimore Housing Authority claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs:  Operating Subsidy, Capital Fund, and Family Self-Sufficiency programs.  *Id.* ¶ 17.

- Salem Housing Authority was "created by resolution of the Council of the City of Salem."  *Id.* ¶ 18.  Salem Housing Authority claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs:  Operating Subsidy, Capital Fund, Family Self-Sufficiency, and Multifamily Housing Service Coordinator programs.  *Id.* ¶ 19.

- SF Housing Authority was "created by resolution of the San Francisco Board of Supervisors."  *Id.* ¶ 10.  SF Housing Authority claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs:  Operating Subsidy, Capital Fund, and Family Self-Sufficiency programs.  *Id.* ¶ 11.

Of the eight Plaintiffs, only SF Housing Authority is located in the Northern District of California, and it is thereby the *sole* basis for venue in this district.

Although the Complaint alleges facts about the Operating Subsidy, Capital Fund, Family Self-Sufficiency, and Multifamily Housing Service Coordinator programs only (*id.* ¶¶ 25-59 & 77-100), Plaintiffs seek a permanent injunction preventing HUD from enforcing the challenged conditions with respect to "*any* application submitted by Plaintiffs, and *any* funds awarded or received by Plaintiffs, *directly or indirectly*."  *Id.* at Prayer for Relief ¶ C (emphasis added).

On October 18, 2025, this Court issued a temporary restraining order, which enjoined HUD from

"imposing or enforcing the HUD Grant Conditions," without limiting the scope of that order to the specific grant programs addressed in the Complaint.  ECF No. 19.  And in response to the Court's Order to Show Cause, Plaintiffs continued to argue against narrowing the scope of injunctive relief to the specific grants at issue, stating "[a]ny effective relief must enjoin Defendants from imposing or enforcing the challenged grant conditions against Plaintiffs *in any circumstance*, whether the condition is present in a pending or future grant offer, existing programs utilizing grant funds, or in a future grant application."  ECF No. 30 (emphasis added).  The Court then entered a preliminary injunction "extending the terms of the temporary restraining order" and finding that "no further tailoring of the preliminary injunction is warranted."  ECF No. 33 at 38.  HUD is thus currently subject to a preliminary injunction in this case that arguably covers *all* HUD grant programming (current and future) with respect to these Plaintiffs.

**B.    First-Filed Challenge In *King County* Case In Western District Of Washington**

This lawsuit is not the first or only legal proceeding challenging the grant conditions by HUD.  In fact, at least one other case filed by related plaintiffs challenges the identical HUD grant conditions and seeks to enjoin their implementation and enforcement with respect to all HUD grant agreements and funding streams.[3]  *See King County*, ECF Nos. 338 & 381.

On May 2, 2025, a group of eight local governmental entities sued HUD (and several other federal agencies) regarding the identical HUD grant conditions at issue in the above-captioned case.  *See King County*, ECF No. 1.  HUD and Turner—the two defendants in this lawsuit—are also defendants in *King County*.  *See id.*

Across four successive complaints, *King County* ballooned into a 75-plaintiff lawsuit.  *Id.* at ECF No. 369 (Third Amended Complaint, "*King County* TAC").  In the operative *King County* TAC, privies of six of the eight plaintiffs in the instant case challenge the exact same HUD grant conditions that are at issue in the above-captioned case.  *See id.* ¶ 426 (defining "HUD Plaintiffs" to include (1) City and County of San Francisco, (2) City of Portland, (3) City of Baltimore, (4) City of Los Angeles, (5) City of San Diego, and (6) Los Angeles Homeless Services Authority).

---

[3] In addition to *King County*, five of the parent municipalities are also plaintiffs in *City and County of San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.), which is yet another case challenging the same HUD immigration grant condition that is at issue both here and in *King County*.

The *King County* TAC alleges the following facts related to HUD grant funding at issue there:

- City and County of San Francisco purports to rely "on $240 million in active HUD entitlement and discretionary grant funds[.]" *King County* TAC ¶ 24. City and County of San Francico does not allege from which programs it receives HUD funding, but it asserts a broad challenge "to the unlawful HUD Grant Conditions." *Id.* ¶ 27.

- Portland claims that it "relies on . . . over $130 million in grants from HUD" and "over $14 million in annual distributions of HUD grants[.]" *Id.* ¶ 93. Portland again does not allege from which HUD programs it receives funding, but it similarly asserts a broad challenge "to the unlawful HUD Grant Conditions." *Id.*

- Baltimore asserts that it has "open grants" with HUD in the amount of $514,491,841. *Id.* ¶ 149. Baltimore identifies two specific HUD grant programs (*id.* ¶ 150), but it also asserts a broad challenge "to the unlawful HUD Grant Conditions." *Id.* ¶ 153.

- Los Angeles claims that it "is relying on nearly $100 million in HUD grants," and it identifies four HUD grant programs. *Id.* ¶ 187. However, Los Angeles seeks to challenge broader "unlawful HUD Grant Conditions." *Id.* ¶ 189.

- San Diego asserts that it is a recipient of "$225 million in active HUD grant funding" and it anticipates receiving "an additional $25 million in HUD funding." *Id.* ¶ 230. San Diego identifies three HUD grant programs, but also alleges that it "depends on other [unidentified] HUD grants[.]" *Id.* San Diego similarly challenges "the unlawful HUD Grant Conditions." *Id.* ¶ 232.

- Los Angeles Homeless Services Authority is "a joint powers authority of the City of Los Angeles and the County of Los Angeles" (*id.* ¶ 284) and it claims to be the "lead agency in the HUD-funded Los Angeles Continuum of Care" (*Id.* ¶ 285). It further claims to be "eligible to apply for more than $200 million in federal HUD" funding, and it "relies on nearly $89 million annually in HUD" funding. *Id.* ¶ 285. Like the other *King County* HUD Plaintiffs, Los Angeles Homeless Servies Authority challenges "the unlawful HUD Grant Conditions." *Id.* ¶ 286.

In addition to identified HUD grant programs, the *King County* TAC alleges facts about "other

HUD grants" (*id.* ¶ 424-25), broadly challenges conditions on "HUD grants" (*id.* ¶ 693), and seeks a permanent injunction preventing HUD from "imposing or enforcing the HUD Grant Conditions or any materially similar terms or conditions to *any* HUD applications or action plans . . . submitted by, or HUD funds received by or awarded to, *directly or indirectly*, HUD Plaintiffs" (*id.* at Prayer for Relief ¶ B) (emphasis added).

The *King County* plaintiffs filed multiple preliminary injunction motions, and the currently operative preliminary injunction in that case (*King County* at ECF Nos. 338 & 381) broadly prevents HUD from imposing the challenged grant conditions not only to the named *King County* plaintiffs but also to their subrecipients. The *King County* first and second preliminary injunctions are currently on appeal at the Ninth Circuit, with oral argument scheduled for February 9, 2026. No. 25-6428 (9th Cir.) & No. 25-3664 (9th Cir.) at Dkt. No. 45. In light of that impending Ninth Circuit oral argument, and to avoid burdening the federal courts with duplicative challenges to HUD grant conditions, Defendants repeatedly inquired whether Plaintiffs in the instant case would agree to stay these district court proceedings pending the outcome of the *King County* appeal. Plaintiffs' counsel declined to do so, thereby necessitating this dispositive motion by the agreed-upon February 2, 2026 response deadline. *See* ECF No. 36.

## III.    Legal Standards

### A.    Federal Rule Of Civil Procedure 12(b)(6)

A Rule 12(b)(6) challenge disputes "the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), make clear that conclusory allegations are not sufficient to withstand a challenge under Rule 12(b)(6). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has "facial plausibility" only if the complaint pleads facts sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must treat all factual allegations as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a

factual allegation." *Id.*

In light of *Twombly* and *Iqbal*, the Ninth Circuit has articulated a two-part test that the plaintiff must pass to survive a motion to dismiss.

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B.    Federal Rule Of Civil Procedure 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a case for improper venue. After a defendant challenges venue, the plaintiff has the burden to show that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1188 (N.D. Cal. 2017), *aff'd sub nom. Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). When considering a Rule 12(b)(3) motion, the court need not accept as true all allegations in the complaint and may consider facts outside the pleadings. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). Still, the Court "is obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Id.* at 1138.

### C.    Motions To Transfer Under The First-To-File Rule And 28 U.S.C. § 1404(a)

A district court may transfer, stay, or dismiss an action pursuant to the "first-to-file" rule when a similar complaint has been filed in another federal court. *May Chen v. Xiyan Zhang*, No. 24-cv-03942-JST, 2024 WL 4894294, at *3 (N.D. Cal. Nov. 25, 2024) (citing *Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622, 623 (9th Cir. 1991)). In the alternative to the first-to-file rule, for the convenience of parties and witnesses and in the interest of justice, a court may transfer a civil action to any other district where it might have been brought. 28 U.S.C. § 1404(a). "Section 1404(a) was designed to protect litigants, witnesses and the public against unnecessary inconvenience and expense[,] ensure systemic integrity and fairness in the judicial process, and the efficient administration of the court system." *Our Children's Earth Found. v. EPA*, No. 08-cv-01461-SBA, 2008 WL 3181583, at *4 (N.D. Cal. Aug. 4, 2008) (cleaned up);

1    *see also Southard v. Kipper Tool Co.*, No. 15-cv-03621-JSC, 2023 WL 6959145, at *3 (N.D. Cal. Oct. 19,

2    2023) ("Section 1404(a) exists to 'prevent the waste of time, energy, and money and to protect litigants,

3    witnesses and the public against unnecessary inconvenience and expense.'") (quoting *Van Dusen v.*

4    *Barrack*, 376 U.S. 612, 616 (1964)).

5    **IV.    Argument**

6         **A.    Dismissal Is Warranted Because Plaintiffs Impermissibly Seek To Split Their Grant
          Conditions Claims Against HUD Across Multiple Federal Court Lawsuits**

7

8         The identical HUD grant conditions are simultaneously being challenged in *King County*, and SF

9    Housing Authority, SD Housing Authority, LA Housing Authority, Baltimore Housing Authority, Home

10   Forward, LA County Development Authority, and SD Housing Commission should not be permitted to

11   split their challenges to HUD's grant conditions between two federal district court actions.

12        A party seeking to enforce a claim "is not at liberty to split up his demand and prosecute it by

13   piecemeal." *Baltimore S.S. Co. v. Philips*, 274 U.S. 316, 320 (1927) (quoting *Stark v. Starr*, 94 U.S. 477,

14   485 (1876)); *see also Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331, 333 (D. Md. 2000) ("The cases are

15   legion that a party may not institute new actions duplicating existing litigation.") (citing cases); *WMATA*

16   *v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("Considerations of comity and orderly administration

17   of justice dictate that two courts of equal authority should not hear the same case simultaneously").  The

18   rule against claim splitting is a "facet of the res judicata doctrine."  *Davis v. Sun Oil Co.*, 148 F.3d 606,

19   613 (6th Cir. 1998) (per curiam).  Thus, "the appropriate inquiry in the claim-splitting context is whether,

20   assuming that the first suit were already final, the second suit could be precluded pursuant to claim

21   preclusion."  *Hartsel Springs Ranch of Colorado v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir.

22   2002); *see also Shaver v. F.W. Woolsworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988) ("This application

23   of the doctrine of res judicata prevents the splitting of a single cause of action and the use of several

24   theories of recovery as the basis for separate suits.").  The difference is that the rule against claim splitting

25   applies whether or not a final judgment has been entered in one of the actions.  *See Hartsel Springs*, 296

26   F.3d at 987 ("It is clear that a motion to dismiss based on improper claim-splitting need not — indeed,

27   often cannot — wait until the first suit reaches final judgment.").  The ultimate objectives of the rule are

28   "to protect the defendant from being harassed by repetitive actions based on the same claim" and promote

1    judicial economy and convenience.  *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 328 (9th

2    Cir. 1995); Restatement (Second) of Judgments § 24.  The rule also "exists to allow district courts to

3    manage their docket." *Wyles v. Sussman*, 661 F. App'x 548, 550 (10th Cir. 2016).

4          In *Adams v. California Department of Health Services*, the Ninth Circuit held a repetitive action

5    may be dismissed for improper claim splitting.  487 F.3d 684, 688 (9th Cir. 2007), *overruled on other*

6    *grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008) ("Plaintiffs generally have no right to maintain

7    two separate actions involving the same subject matter at the same time in the same court and against the

8    same defendant.") (citations and internal quotations marks omitted); *see also Mendoza v. Amalgamated*

9    *Transit Union International*, 30 F.4th 879, 886 (9th Cir. 2022) (reaffirming the Ninth Circuit's rule against

10   claim splitting and its test for determining when improper claim-splitting is present).  "Under the federal

11   claim-preclusion principles that apply in these federal-question-based suits, the bar of claim-splitting is

12   applicable if the second suit involves (1) the same causes of action as the first; and (2) the same parties or

13   their privies." *Mendoza*, 30 F.4th at 886; *Adams*, 487 F.3d at 689.

14          The claim-splitting doctrine requires dismissal of the claims asserted by SF Housing Authority,

15   SD Housing Authority, LA Housing Authority, Baltimore Housing Authority, Home Forward, LA County

16   Development Authority, and SD Housing Commission because the parent local government of each of

17   those entities is actively pursuing duplicative federal court litigation challenging identical HUD grant

18   conditions in *King County*.  In fact, the *King County* preliminary injunction enjoins HUD from enforcing

19   the challenged conditions with respect to "any HUD funds" or "grant agreements" awarded to the *King*

20   *County* plaintiffs or their subrecipients.  And to the extent there is any daylight between the specific HUD

21   grant programs identified here and in *King County*, the plaintiffs in both cases seek to erase any such

22   distinction by requesting permanent relief that encompasses *all* HUD grant funding that touches these

23   plaintiffs "directly or indirectly."  *Compare* Compl. at Prayer for Relief ¶ C (seeking a permanent

24   injunction enjoining HUD from enforcing the challenged conditions with respect to "*any application*

25   submitted by Plaintiffs, and *any* funds awarded or received by Plaintiffs, *directly or indirectly*") (emphasis

26   added) *with King County* TAC at Prayer for Relief ¶ B (seeking a permanent injunction to prevent HUD

27   from "imposing or enforcing the HUD Grant Conditions or any materially similar terms or conditions to

28   *any* HUD applications or action plans . . . submitted by, or HUD funds received by or awarded to, *directly*

1    *or indirectly*, HUD Plaintiffs") (emphasis added).[4]  In fact, in response to this Court's Order to Show

2    Cause, these Plaintiffs expressly argued that the Court should not limit injunctive relief to the grants at

3    issue, and instead asserted that HUD "must" be enjoined "from imposing or enforcing the challenged grant

4    conditions against Plaintiffs *in any circumstance*[.]"  ECF No. 30 at 15 (emphasis added).

5        Additionally, application of the claim-splitting doctrine here would further the ultimate objectives

6    of the rule, *i.e.*, "to protect the defendant from being harassed by repetitive actions based on the same

7    claim" and promote judicial economy and convenience.  *Clements*, 69 F.3d at 328.  And because Plaintiffs

8    have refused the off-ramp of agreeing to a temporary stay pending the *King County* appeal, enforcing the

9    claim-splitting doctrine here would also allow this Court to "manage [its] docket" and further

10   "[c]onsiderations of comity and orderly administration of justice."  *Wyles*, 661 F. App'x at 550; *WMATA*,

11   617 F.2d at 830.  As D.C. Circuit has observed, "two courts of equal authority should not hear the same

12   case simultaneously," but that is the exact dynamic that would play out if the claim-splitting doctrine is

13   not applied to this case.  *WMATA*, 617 F.2d at 830.

14       Finally, to the extent Plaintiffs contend that they may pursue this duplicative lawsuit because they

15   are separate legal entities with the power to sue and be sued in their own name,[5] they ignore that Ninth

16   Circuit precedent teaches that the claim-splitting doctrine applies to "the same parties *or their privies*."

17   *Mendoza*, 30 F.4th at 886 (emphasis added).  Here, the parent municipalities of almost all of the eight

18   Plaintiffs are suing HUD in *King County* to prevent HUD from applying the challenged grant conditions

19   in any "HUD funds received by or awarded to, *directly or indirectly*, HUD Plaintiffs," which includes

20

21       [4] When presented with similar claim-splitting arguments in another grant conditions lawsuit
     brought against HUD by the same lead counsel, Chief Judge Seeborg advised counsel to "be mindful of
22   the claim-splitting doctrine" in any amended complaint.  *See City of Fresno v. Turner*, No. 3:25-cv-07070-
     RS (N.D. Cal.), ECF No. 65 at 4 n3.
23
         [5] HUD recognizes that by 42 U.S.C. § 1437(a), HUD provides funding to assist States and political
24   subdivisions of States to remedy unsafe housing conditions and shortage of decent and safe dwellings for
     low-income families by vesting in public housing agencies the maximum amount of responsibility and
25   flexibility in program administration, with appropriate accountability to public housing residents,
     localities, and the general public.  Public housing agency means any State, county, municipality, or other
26   governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage
     in or assist in the development or operation of public housing, or a consortium of such entities or bodies
27   as approved by the Secretary.  42 U.S.C. § 1437a(A)(6).  Here, plaintiff public housing authorities are
     separate and independently operated entities.  Nevertheless, their legal representation/counsel may not be
28   independent—for example, SF Housing Authority and the City and County of San Francisco are both
     represented by attorneys at the San Francisco City Attorney's Office in these two litigations.

1    "any HUD funds" and "any grant agreement," thereby including HUD grant funds received by the *King*

2    *County* plaintiffs' sub-governmental organizations (like SF Housing Authority, SD Housing Authority,

3    LA Housing Authority, Baltimore Housing Authority, Home Forward, LA County Development

4    Authority, and SD Housing Commission). *King County* TAC at Prayer for Relief ¶ B (emphasis added).

5    As such, the *King County* plaintiffs unquestionably act as the privies of the Plaintiffs in the above-

6    captioned lawsuit, and these Plaintiffs' challenges of the same HUD grant conditions are thus barred by

7    the claim-splitting doctrine. *Mendoza*, 30 F.4th at 886.

8        **B.    Without SF Housing Authority, Venue Does Not Lie In This District, And The Case
             Should Therefore Be Dismissed**

9

10       If the Court dismisses SF Housing Authority's claims for improper claim-splitting, the Court then

11   must assess the remaining claims to ensure they are being heard in the appropriate United States District

12   Court. *See Nelson-Devlin v. Eli Lilly & Co.*, No. 14-cv-02811, 2015 WL 5436700, at *1 (E.D. Cal. Sept.

13   15, 2015) (determining, after severing certain claims of "more than seventy plaintiffs from thirty-seven

14   federal court districts in twenty-one states" as improperly joined, that venue was not proper for non-

15   California plaintiffs). But the seven Out-of-District Plaintiffs do not independently have venue in the

16   Northern District of California (only SF Housing Authority does), and their claims would thus be subject

17   to dismissal under Federal Rule of Civil Procedure 12(b)(3).

18       The venue provision applicable to Plaintiffs' claims is 28 U.S.C. § 1391(e), which provides that:

19       A civil action in which a defendant is an officer or employee of the United States or any
         agency thereof acting in his official capacity or under color of legal authority, or an agency
20       of the United States, or the United States, may, except as otherwise provided by law, be
         brought in any judicial district in which (A) a defendant in the action resides, (B) a
21       substantial part of the events or omissions giving rise to the claim occurred, or a substantial
         part of property that is the subject of the action is situated, or (C) the plaintiff resides if no
22       real property is involved in the action.

23   28 U.S.C. § 1391(e); *see also* Compl. ¶ 2 (invoking 28 U.S.C. § 1391(e) and SF Housing Authority's

24   presence in this district as the sole basis for venue here). Section 1391(e) does not permit the Out-of-

25   District Plaintiffs to pursue their claims independently in the Northern District of California.

26       Here, the Complaint does not rely on Section 1391(e)(1)(A) for venue, nor could it because for

27   venue purposes the residence of a federal agency is its headquarters, which in this case is located in

28   Washington D.C. *Williams v. United States*, No. 01-cv-0024 EDL, 2001 WL 1352885, at *1 (N.D. Cal.

Oct. 24, 2001) ("Venue does not lie in every judicial district where a federal agency has a regional office."); *see also id.* (citing *Reuben H. Donnelley Corp. v. Federal Trade Comm'n*, 580 F.2d 264, 267 (7th Cir. 1978) for the proposition that the federal government resides only in the District of Columbia); *Rugila v. Mayorkas*, No. 24-cv-01218-MMC, 2024 WL 1446457, at *1 (N.D. Cal. Apr. 2, 2024) ("Under established caselaw, where, as here, an action is brought against a federal officer in his or her official capacity, the officer's residency is the place in which the federal agency is located.") (collecting cases); *Zhang v. Chertoff*, No. 08-cv-02589, 2008 WL 5271995, at *3 (N.D. Cal. Dec. 15, 2008) (collecting cases).

With respect to Section 1391(e)(1)(B), the Complaint includes the conclusory allegation that a "substantial part of the events or omissions giving rise to this action occurred" in the Northern District of California, but there are no facts to support that assertion. *See* Compl. ¶ 2. And to the extent any events or omissions occurred here, that conduct would be related to SF Housing Authority *only*; and since SF Housing Authority's claims are subject to dismissal under the claim-splitting doctrine, events related to SF Housing Authority cannot provide the predicate for venue under Section 1391(e)(1)(B).[6]

Finally, after SF Housing Authority's claims are dismissed, venue cannot lie in the Northern District of California under Section 1391(e)(1)(C) because none of the seven Out-of-District Plaintiffs resides here. 28 U.S.C. § 1391(e)(1)(C) (venue may lie in the district where "the plaintiff resides").

In short, without SF Housing Authority, venue does not lie in the Northern District of California under Section 1391(e), and the remaining Out-of-District Plaintiffs thus cannot pursue their claims against HUD in this district. Accordingly, the seven Out-of-District Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(3).

### C.  If The Court Finds Venue Proper, The Lawsuit Nevertheless Should Be Transferred To The Western District Of Washington Under The First-To-File Rule

Courts examine three threshold factors in deciding whether to apply the first-to-file rule: "(1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues." *May*

---

[6] If Plaintiffs claim, in response to this motion, that any relevant events occurred in the Northern District of California that were *not* related to SF Housing Authority, they have not—and cannot—allege those facts in the Complaint. Yet it is Plaintiffs' burden to show that venue is proper here. *Piedmont Label Co.*, 598 F.2d at 496; *Saravia*, 280 F. Supp. 3d at 1188.

*Chen*, 2024 WL 4894294, at *3 (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) and *Alltrade*, 946 F.2d at 625-26).  As this Court has observed, "'[t]he principle underlying the federal comity doctrine is wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (quoting *Benson v. JPMorgan Chase Bank, N.A.*, No. 09-cv-5272-EMC, 2010 WL 1445532, at *2 (N.D. Cal. Apr. 7, 2010)).

There is no question that the first factor, chronology, weighs in favor of applying the first-to-file rule.  The *King County* lawsuit was initiated on May 2, 2025; Plaintiffs initiated the above-captioned lawsuit more than five months later, on October 15, 2025.  *See May Chen*, 2024 WL 4894294, at *3 (finding chronology factor weighed in favor of applying first-to-file rule); *Bodley v. Whirlpool Corp.*, No. 17-cv-05436-JST, 2018 WL 2357640, at *2 (N.D. Cal. May 24, 2018) (same).

The second factor, similarity of the parties, also weighs in favor of transfer; as discussed above, almost all the Plaintiffs in the above-captioned case have parent governmental entities who are plaintiffs in the *King County* lawsuit.  *Supra* Part IV. A.  Moreover, as this Court has noted, parties "need only be 'substantially similar,' not identical" for this prong of the first-to-file test to apply.  *May Chen*, 2024 WL 4894294, at *3 (quoting *Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015)).

The third factor, similarity of issues, also weighs in favor of application of the first-to-file rule because the issues in the two lawsuits need not be identical, but rather "only substantially similar."  *Id.* This lawsuit easily meets that standard because, as discussed above, the *King County* lawsuit challenges *identical* HUD grant terms and funding.  *Supra* Part IV.A.

Finally, none of the equitable exceptions to the first-to-file rule apply here.  There is no allegation or evidence that the federal government has engaged in bad faith, anticipatory filing, or forum shopping here.  *See May Chen*, 2024 WL 4894294, at *4; *Bodley*, 2018 WL 2357640, at *3.  Nor are there any additional expenses or inconvenience that Plaintiffs may suffer if they are forced to litigate their case in the Western District of Washington, especially where the Plaintiffs in this lawsuit already span the country from coast-to-coast (and only one of the Plaintiffs resides in this district in the first place).  *May Chen*, 2024 WL 4894294, at *4.  And to the extent there could be any "minor inconvenience" to Plaintiffs in litigating in the Western District of Washington, that inconvenience "is greatly outweighed by 'the

importance of conservation of judicial resources and the comprehensive disposition of litigation.'" *Id.*
(quoting *CRU Acquisition Grp., LLC v. Mykey Tech. Inc.*, No. 11-cv-05743, 2012 WL 441293, at *1
(W.D. Wash. Feb. 10, 2012)); *see also Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1102
(N.D. Cal. 2006) ("Additionally, to transfer the suit to New Jersey would further the first-to-file rule's
purpose of promoting efficiency and avoiding the duplication of litigation.").

### D. In The Alternative, Transfer To The District Court For The District Of Columbia Is Appropriate Pursuant To 28 U.S.C. § 1404(a)

In the alternative to transfer to the Western District of Washington under the first-to-file rule, the
Court should transfer this lawsuit in its entirety to the District Court for the District of Columbia under
28 U.S.C. § 1404(a) because 87.5% of the Plaintiffs are located outside of this district, there is no distinct
local interest in the lawsuit, and there is no compelling reason for this Court to determine how the federal
government may condition federal funding to local housing agencies in Baltimore, MD; Portland, OR;
Salem, OR; San Diego, CA; and Los Angeles, CA.  But there is a United States District Court that would
be a proper venue, where all Defendants reside, and where all grant conditions decisions at issue in this
lawsuit were made.  That district—the District Court for the District of Columbia—thus has a compelling
interest in how those federal funding decisions are made and applied on a nationwide basis.  Accordingly,
in the alternative to dismissal or transfer to the Western District of Washington under the first-to-file rule,
the entire lawsuit should be transferred to the District Court for the District of Columbia under 28 U.S.C.
§ 1404(a).[7]

In analyzing a transfer motion under Section 1404(a), a court must determine, as a threshold matter,
if the action subject to the motion to transfer "might have been brought" in the transferee district (*i.e.*, the
district to which the moving party seeks to transfer the action).  *Hoffman v. Blaski*, 363 U.S. 335, 343-44
(1960).  Next, a court must analyze whether the transfer would serve "the interest of justice" and "the
convenience of parties and witnesses."  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).
Courts decide motions for Section 1404(a) transfer "based on an individualized, case-by-case

---

[7] Judge Seeborg has described the Section 1404(a) transfer arguments advanced here as
"compelling" in a similar grant conditions case initiated by the same lead counsel against HUD.  *See City
of Fresno*, ECF No. 65 at 5 n3.

consideration of convenience and fairness."  *Southard*, 2023 WL 6959145, at *3.  In analyzing convenience, courts may consider:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum.

*Id.* (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)).  Here, this lawsuit could have been filed in the District Court for the District of Columbia because that is where all Defendants reside (28 U.S.C. § 1391(e)(1)(A)) and where "a substantial part of the events or omissions giving rise to the claim[s] occurred" (28 U.S.C. § 1391(e)(1)(B)).

The individualized, case-by-case consideration of convenience and fairness factors at issue in this case all weigh heavily in favor of transfer to the District Court for the District of Columbia.

**The plaintiffs' choice of forum is accorded minimal consideration where, as here, the forum lacks a significant connection to the action**:  Although courts traditionally give deference to a plaintiff's choice of forum, that deference "is slight, if any, when . . . the plaintiff's chosen forum lacks a significant connection to the events that gave rise to the complaint."  *Morris v. Safeco Ins. Co.*, No. 07-cv-2890-PJH, 2008 WL 5273719, at *3 (N.D. Cal. Dec. 19, 2008); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (plaintiff's chosen venue is given substantially less deference if the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter of the litigation); *Southard*, 2023 WL 6959145, at *3 ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, the plaintiff's forum choice is entitled to only minimal consideration") (citation and quotation marks omitted).

Here, other than the fact that one Plaintiff (out of eight) is located in this district, there is no significant connection between this district and the operative facts of this lawsuit; indeed, none of the federal government's grant conditions decisions at issue here was made in this district.

**The District of Columbia has a local interest in any merits adjudication of this controversy**: HUD has its headquarters in the District of Columbia, and that is where all the federal grant condition decisions at issue in this lawsuit occurred.  As such, this case involves local interests in the District of Columbia.  *Cf. Van Mourik v. Big Heart Pet Brands, Inc.*, No. 17-cv-03889-JD, 2018 WL 3549122, at *1

1    (N.D. Cal. July 24, 2018) (finding a "local interest in having localized controversies decided at home.")

2    (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).  In contrast,

3    while the Northern District of California may have a local interest in adjudicating grant conditions disputes

4    for SF Housing Authority (only), it has no interest in adjudicating grant conditions lawsuits for the 87.5%

5    of the Plaintiffs located outside of this district.  *See Enomoto v. Siemens Indus.*, No. 23-cv-03779-JSC,

6    2023 WL 6278876, at *6 (N.D. Cal. Sept. 25, 2023) (transferring case under Section 1404(a) where the

7    transferee district's "interest in this controversy is much stronger, as the case involves individuals

8    presumably residing there and a corporation employing people there").  This factor weighs significantly

9    in favor of transfer to the District Court for the District of Columbia.

10            **The interest of justice and judicial economy strongly favor transfer to the District Court for**

11   **the District of Columbia**:  "The 'interests of justice' consideration is the most important factor a court

12   must consider, and may be decisive in a transfer motion even when all other factors point the other way."

13   *Enomoto*, 2023 WL 6278876, at *6 (quoting *Gerin v. Aegon USA, Inc.*, No. 06-cv-5407-SBA, 2007 WL

14   1033472, at *6 (N.D. Cal. Apr. 4, 2007)).  Transferring this case to the District Court for the District of

15   Columbia would allow any adjudication of this case to occur in the forum where all the federal grant

16   funding decisions were made, thereby "ensur[ing] systemic integrity and fairness in the judicial process,

17   and the efficient administration of the court system."  *Our Children's Earth Found.*, 2008 WL 3181583,

18   at *5-6 (cleaned up).  And Plaintiffs here cannot raise convincing concerns about multiplicity of lawsuits,

19   given that they (or their privies) are simultaneously litigating duplicative claims in multiple other federal

20   court grant conditions cases.  *See supra* Parts IV.A.

21            **The convenience of witnesses and access to proof weigh in favor of transfer**:  "'The

22   convenience of the witnesses . . . is often the most important factor' in ruling on a motion to transfer venue

23   under § 1404(a)."  *Southard*, 2023 WL 6959145, at *4 (quoting *Grossman v. Johnson & Johnson*, No. 14-

24   cv-03557-VC, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015)).  Here, given the disparate geographic

25   makeup of the Plaintiffs, they cannot demonstrate that the convenience of witnesses and access to proof

26   weigh in favor of keeping this lawsuit in the Northern District of California.  And, in contrast to the

27   nationwide scope of witnesses and evidentiary proof on the plaintiff side, all Defendants, and their entire

28   administrative records, are located in the District of Columbia.  As such, this case "finds its center of

1  gravity" in the District Court for the District of Columbia because the relevant grant condition decisions

2  indisputably all occurred in the District of Columbia and the administrative record is located there.  *Karlen*

3  *v. Wells Fargo Bank, N.A.*, No. 22-cv-02127-JSC, 2022 WL 2756671, at *3 (N.D. Cal. July 14, 2022)

4  (quoting *Johns v. Panera Bread Co.*, No. 08-cv-1071-SC, 2008 WL 2811827, at *5 (N.D. Cal. July 21,

5  2008)).

6          Accordingly, this Court should transfer the lawsuit, in its entirety, to the District Court for the

7  District of Columbia under Section 1404(a) in the interest of justice and for the convenience of the parties

8  and witnesses.

9  **V.    Conclusion**

10         For the foregoing reasons, the Court should dismiss the claims of SF Housing Authority, SD

11 Housing Authority, LA Housing Authority, Baltimore Housing Authority, Home Forward, LA County

12 Development Authority, and SD Housing Commission under the claim-splitting doctrine and dismiss the

13 lawsuit in its entirety under Federal Rule of Civil Procedure 12(b)(3) for lack of venue.  In the alternative,

14 the Court should transfer the case to the Western District of Washington under the first-to-file rule or to

15 the District Court for the District of Columbia under 28 U.S.C. § 1404(a).

16 DATED:  February 2, 2026                     Respectfully submitted,

17

18                                              CRAIG H. MISSAKIAN
                                                United States Attorney
19
                                                */s/ Jevechius D. Bernardoni*
20                                              JEVECHIUS D. BERNARDONI
                                                Assistant United States Attorney
21
                                                Attorneys for Defendants
22

23

24

25

26

27

28