UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HOUSING AUTHORITY OF THE COUNTY OF SAN DIEGO, *et al.*,<br><br>　　Plaintiffs,<br><br>　v.<br><br>SCOTT TURNER, *et al.*,<br><br>　　Defendants. | Case No. 4:25-cv-8859-JST<br><br>**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

This matter came on regularly for hearing. Plaintiffs Housing Authority of the County of San Diego ("SD Housing Authority"), Housing Authority of the City of Los Angeles ("LA Housing Authority"), Housing Authority of the City of Salem ("Salem Housing Authority"), Housing Authority of Baltimore City ("Baltimore Housing Authority"), Home Forward, Los Angeles County Development Authority ("LA County Development Authority"), and San Diego Housing Commission ("SD Housing Commission") (collectively, "Out-of-District Plaintiffs") were represented by James R. Ross, Ryan P. McGinley-Stemple, and Jake D. Freitas. Plaintiff Housing Authority of the City and County of San Francisco ("SF Housing Authority") was represented by Ronald H. Lee. Defendants Scott Turner, in his official capacity as Secretary of the U.S. Department of Housing and Urban Development ("Turner"), and U.S. Department of Housing and Urban Development ("HUD" and, together with Turner, "Defendants") were represented by Jevechius D. Bernardoni, Assistant United States Attorney.

Having considered the papers submitted and heard the arguments of the parties, and good cause appearing therefore, it is hereby ordered that Defendants' motion to dismiss is GRANTED.

## I.　Background

### A.　Procedural Background

Eight Plaintiffs initiated this lawsuit on October 15, 2025. ECF No. 1 ("Compl."). The Complaint alleges the following facts about each Plaintiff's legal creation and the HUD funding at issue in this

lawsuit.

- Home Forward was "created by resolution of the Council of the City of Portland," Oregon. *Id.* ¶ 4. Home Forward claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs: Operating Subsidy, Capital Fund, Family-Self Sufficiency, and Multifamily Housing Service Coordinators programs. *Id.* ¶ 5.

- SD Housing Authority was "created by resolution of the San Diego County Board of Supervisors." *Id.* ¶ 6. SD Housing Authority claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs: Operating Subsidy and Capital Fund programs. *Id.* ¶ 7.

- LA Housing Authority was "created by resolution of the Council of the City of Los Angeles." *Id.* ¶ 8. LA Housing Authority claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs: Operating Subsidy, Capital Fund, Family Self-Sufficiency, Multifamily Housing Service Coordinators programs. *Id.* ¶ 9.

- LA County Development Authority was "created by resolution of the Los Angeles County Board of Supervisors." *Id.* ¶ 12. LA County Development Authority claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs: Operating Subsidy, Capital Fund, Family Self-Sufficiency, Capital Fund Emergency Safety and Security Grant programs. *Id.* ¶ 13.

- SD Housing Commission was "created by resolution of the Council of the City of San Diego." *Id.* ¶ 14. SD Housing Commission claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs: Operating Subsidy, Capital Fund, and Family Self-Sufficiency programs. *Id.* ¶ 15.

- Baltimore Housing Authority was "created by resolution of the Council of the City of Baltimore." *Id.* ¶ 16. Baltimore Housing Authority claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs: Operating Subsidy, Capital Fund, and Family Self-Sufficiency programs. *Id.* ¶ 17.

- Salem Housing Authority was "created by resolution of the Council of the City of Salem."

         *Id.* ¶ 18. Salem Housing Authority claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs: Operating Subsidy, Capital Fund, Family Self-Sufficiency, and Multifamily Housing Service Coordinator programs. *Id.* ¶ 19.

- SF Housing Authority was "created by resolution of the San Francisco Board of Supervisors." *Id.* ¶ 10. SF Housing Authority claims that it currently participates in, or in the future expects to participate in, the following HUD grant programs: Operating Subsidy, Capital Fund, and Family Self-Sufficiency programs. *Id.* ¶ 11.

Of the eight Plaintiffs, only SF Housing Authority is located in the Northern District of California, and it is thereby the *sole* basis for venue in this district.

Although the Complaint alleges facts about the Operating Subsidy, Capital Fund, Family Self-Sufficiency, and Multifamily Housing Service Coordinator programs only (*id.* ¶¶ 25-59 & 77-100), Plaintiffs seek a permanent injunction preventing HUD from enforcing the challenged conditions with respect to "*any* application submitted by Plaintiffs, and *any* funds awarded or received by Plaintiffs, *directly or indirectly*." *Id.* at Prayer for Relief ¶ C (emphasis added).

On October 18, 2025, this Court issued a temporary restraining order, which enjoined HUD from "imposing or enforcing the HUD Grant Conditions," without limiting the scope of that order to the specific grant programs addressed in the Complaint. ECF No. 19. In response to the Court's Order to Show Cause, Plaintiffs continued to argue against narrowing the scope of injunctive relief to the specific grants at issue, stating "[a]ny effective relief must enjoin Defendants from imposing or enforcing the challenged grant conditions against Plaintiffs *in any circumstance*, whether the condition is present in a pending or future grant offer, existing programs utilizing grant funds, or in a future grant application." ECF No. 30 (emphasis added). The Court then entered a preliminary injunction "extending the terms of the temporary restraining order" and finding that "no further tailoring of the preliminary injunction is warranted." ECF No. 33 at 38.

**B.    First-Filed Challenge In *King County* Case In Western District Of Washington**

This lawsuit is not the first or only legal proceeding challenging the grant conditions by HUD. In fact, at least one other case filed by related plaintiffs challenges the identical HUD grant conditions and

seeks to enjoin their implementation and enforcement with respect to all HUD grant agreements and funding streams.[1]  *See Martin Luther King, Jr. County, et al. v. Turner, et al.*, No. 25-cv-00814-BJR (W.D. Wash.) (*King County*), ECF Nos. 338 & 381.

On May 2, 2025, a group of eight local governmental entities sued HUD (and several other federal agencies) regarding the identical HUD grant conditions at issue in the above-captioned case.  *See King County*, ECF No. 1.  HUD and Turner—the two defendants in this lawsuit—are also defendants in *King County*.  *See id.*

Across four successive complaints, *King County* ballooned into a 75-plaintiff lawsuit.  *Id.* at ECF No. 369 (Third Amended Complaint, "*King County* TAC").  In the operative *King County* TAC, privies of six of the eight plaintiffs in the instant case challenge the exact same HUD grant conditions that are at issue in the above-captioned case.  *See id.* ¶ 426 (defining "HUD Plaintiffs" to include (1) City and County of San Francisco, (2) City of Portland, (3) City of Baltimore, (4) City of Los Angeles, (5) City of San Diego, and (6) Los Angeles Homeless Services Authority).

The *King County* TAC alleges the following facts related to HUD grant funding at issue there:

- City and County of San Francisco purports to rely "on $240 million in active HUD entitlement and discretionary grant funds[.]" *King County* TAC ¶ 24.  City and County of San Francico does not allege from which programs it receives HUD funding, but it asserts a broad challenge "to the unlawful HUD Grant Conditions."  *Id.* ¶ 27.

- Portland claims that it "relies on . . . over $130 million in grants from HUD" and "over $14 million in annual distributions of HUD grants[.]" *Id.* ¶ 93.  Portland again does not allege from which HUD programs it receives funding, but it similarly asserts a broad challenge "to the unlawful HUD Grant Conditions." *Id.*

- Baltimore asserts that it has "open grants" with HUD in the amount of $514,491,841.  *Id.* ¶ 149.  Baltimore identifies two specific HUD grant programs (*id.* ¶ 150), but it also asserts a broad challenge "to the unlawful HUD Grant Conditions." *Id.* ¶ 153.

---

[1] In addition to *King County*, five of the parent municipalities are also plaintiffs in *City and County of San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.), which is yet another case challenging the same HUD immigration grant condition that is at issue both here and in *King County*.

- Los Angeles claims that it "is relying on nearly $100 million in HUD grants," and it identifies four HUD grant programs. *Id.* ¶ 187. However, Los Angeles seeks to challenge broader "unlawful HUD Grant Conditions." *Id.* ¶ 189.

- San Diego asserts that it is a recipient of "$225 million in active HUD grant funding" and it anticipates receiving "an additional $25 million in HUD funding." *Id.* ¶ 230. San Diego identifies three HUD grant programs, but also alleges that it "depends on other [unidentified] HUD grants[.]" *Id.* San Diego similarly challenges "the unlawful HUD Grant Conditions." *Id.* ¶ 232.

- Los Angeles Homeless Services Authority is "a joint powers authority of the City of Los Angeles and the County of Los Angeles" (*id.* ¶ 284) and it claims to be the "lead agency in the HUD-funded Los Angeles Continuum of Care" (*Id.* ¶ 285). It further claims to be "eligible to apply for more than $200 million in federal HUD" funding, and it "relies on nearly $89 million annually in HUD" funding. *Id.* ¶ 285. Like the other *King County* HUD Plaintiffs, Los Angeles Homeless Servies Authority challenges "the unlawful HUD Grant Conditions." *Id.* ¶ 286.

In addition to identified HUD grant programs, the *King County* TAC alleges facts about "other HUD grants" (*id.* ¶ 424-25), broadly challenges conditions on "HUD grants" (*id.* ¶ 693), and seeks a permanent injunction preventing HUD from "imposing or enforcing the HUD Grant Conditions or any materially similar terms or conditions to *any* HUD applications or action plans . . . submitted by, or HUD funds received by or awarded to, *directly or indirectly*, HUD Plaintiffs" (*id.* at Prayer for Relief ¶ B) (emphasis added).

The *King County* plaintiffs filed multiple preliminary injunction motions, and the currently operative preliminary injunction in that case (*King County* at ECF Nos. 338 & 381) broadly prevents HUD from imposing the challenged grant conditions not only to the named *King County* plaintiffs but also to their subrecipients. The *King County* first and second preliminary injunctions are currently on appeal at the Ninth Circuit, with oral argument scheduled for February 9, 2026. No. 25-6428 (9th Cir.) & No. 25-3664 (9th Cir.) at Dkt. No. 45.

## II. Legal Standards

### A. Federal Rule Of Civil Procedure 12(b)(6)

A Rule 12(b)(6) challenge disputes "the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), make clear that conclusory allegations are not sufficient to withstand a challenge under Rule 12(b)(6). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has "facial plausibility" only if the complaint pleads facts sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must treat all factual allegations as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

In light of *Twombly* and *Iqbal*, the Ninth Circuit has articulated a two-part test that the plaintiff must pass to survive a motion to dismiss.

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Federal Rule Of Civil Procedure 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a case for improper venue. After a defendant challenges venue, the plaintiff has the burden to show that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1188 (N.D. Cal. 2017), *aff'd sub nom. Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). When considering a Rule 12(b)(3) motion, the court need not accept as true all allegations in the complaint and may consider facts outside the pleadings. *See Murphy v. Schneider*

*Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). Still, the Court "is obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Id.* at 1138.

### III.  Discussion

#### A.  Dismissal Is Warranted Because Plaintiffs Impermissibly Seek To Split Their Grant Conditions Claims Against HUD Across Multiple Federal Court Lawsuits

The identical HUD grant conditions are simultaneously being challenged in *King County*, and SF Housing Authority, SD Housing Authority, LA Housing Authority, Baltimore Housing Authority, Home Forward, LA County Development Authority, and SD Housing Commission are not permitted to split their challenges to HUD's grant conditions between two federal district court actions.

A party seeking to enforce a claim "is not at liberty to split up his demand and prosecute it by piecemeal." *Baltimore S.S. Co. v. Philips*, 274 U.S. 316, 320 (1927) (quoting *Stark v. Starr*, 94 U.S. 477, 485 (1876)); *see also Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331, 333 (D. Md. 2000) ("The cases are legion that a party may not institute new actions duplicating existing litigation.") (citing cases); *WMATA v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("Considerations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously"). The rule against claim splitting is a "facet of the res judicata doctrine." *Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir. 1998) (per curiam). Thus, "the appropriate inquiry in the claim-splitting context is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion." *Hartsel Springs Ranch of Colorado v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002); *see also Shaver v. F.W. Woolsworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988) ("This application of the doctrine of res judicata prevents the splitting of a single cause of action and the use of several theories of recovery as the basis for separate suits."). The difference is that the rule against claim splitting applies whether or not a final judgment has been entered in one of the actions. *See Hartsel Springs*, 296 F.3d at 987 ("It is clear that a motion to dismiss based on improper claim-splitting need not — indeed, often cannot — wait until the first suit reaches final judgment."). The ultimate objectives of the rule are "to protect the defendant from being harassed by repetitive actions based on the same claim" and promote judicial economy and convenience. *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 328 (9th

Cir. 1995); Restatement (Second) of Judgments § 24.  The rule also "exists to allow district courts to manage their docket." *Wyles v. Sussman*, 661 F. App'x 548, 550 (10th Cir. 2016).

In *Adams v. California Department of Health Services*, the Ninth Circuit held a repetitive action may be dismissed for improper claim splitting.  487 F.3d 684, 688 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008) ("Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.") (citations and internal quotations marks omitted); *see also Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879, 886 (9th Cir. 2022) (reaffirming the Ninth Circuit's rule against claim splitting and its test for determining when improper claim-splitting is present).  "Under the federal claim-preclusion principles that apply in these federal-question-based suits, the bar of claim-splitting is applicable if the second suit involves (1) the same causes of action as the first; and (2) the same parties or their privies."  *Mendoza*, 30 F.4th at 886; *Adams*, 487 F.3d at 689.

The claim-splitting doctrine requires dismissal of the claims asserted by SF Housing Authority, SD Housing Authority, LA Housing Authority, Baltimore Housing Authority, Home Forward, LA County Development Authority, and SD Housing Commission because the parent local government of each of those entities is actively pursuing duplicative federal court litigation challenging identical HUD grant conditions in *King County*.  In fact, the *King County* preliminary injunction enjoins HUD from enforcing the challenged conditions with respect to "any HUD funds" or "grant agreements" awarded to the *King County* plaintiffs or their subrecipients.  And to the extent there is any daylight between the specific HUD grant programs identified here and in *King County*, the plaintiffs in both cases seek to erase any such distinction by requesting permanent relief that encompasses *all* HUD grant funding that touches these plaintiffs "directly or indirectly."  *Compare* Compl. at Prayer for Relief ¶ C (seeking a permanent injunction enjoining HUD from enforcing the challenged conditions with respect to "*any* application submitted by Plaintiffs, and *any* funds awarded or received by Plaintiffs, *directly or indirectly*") (emphasis added) *with King County* TAC at Prayer for Relief ¶ B (seeking a permanent injunction to prevent HUD from "imposing or enforcing the HUD Grant Conditions or any materially similar terms or conditions to *any* HUD applications or action plans . . . submitted by, or HUD funds received by or awarded to, *directly*

*or indirectly*, HUD Plaintiffs") (emphasis added).² In fact, in response to this Court's Order to Show Cause, these Plaintiffs expressly argued that the Court should not limit injunctive relief to the grants at issue, and instead asserted that HUD "must" be enjoined "from imposing or enforcing the challenged grant conditions against Plaintiffs *in any circumstance*[.]" ECF No. 30 at 15 (emphasis added).

Additionally, application of the claim-splitting doctrine here would further the ultimate objectives of the rule, *i.e.*, "to protect the defendant from being harassed by repetitive actions based on the same claim" and promote judicial economy and convenience. *Clements*, 69 F.3d at 328. And enforcing the claim-splitting doctrine here would also allow this Court to "manage [its] docket" and further "[c]onsiderations of comity and orderly administration of justice." *Wyles*, 661 F. App'x at 550; *WMATA*, 617 F.2d at 830. As D.C. Circuit has observed, "two courts of equal authority should not hear the same case simultaneously," but that is the exact dynamic that would play out if the claim-splitting doctrine is not applied to this case. *WMATA*, 617 F.2d at 830.

### B. Without SF Housing Authority, Venue Does Not Lie In This District, And The Case Is Therefore Dismissed

Because the Court dismisses SF Housing Authority's claims for improper claim-splitting, the Court then must assess the remaining claims to ensure they are being heard in the appropriate United States District Court. *See Nelson-Devlin v. Eli Lilly & Co.*, No. 14-cv-02811, 2015 WL 5436700, at *1 (E.D. Cal. Sept. 15, 2015) (determining, after severing certain claims of "more than seventy plaintiffs from thirty-seven federal court districts in twenty-one states" as improperly joined, that venue was not proper for non-California plaintiffs). Here, the seven Out-of-District Plaintiffs do not independently have venue in the Northern District of California (only SF Housing Authority does), and their claims are thus subject to dismissal under Federal Rule of Civil Procedure 12(b)(3).

The venue provision applicable to Plaintiffs' claims is 28 U.S.C. § 1391(e), which provides that:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a

---

² When presented with similar claim-splitting arguments in another grant conditions lawsuit brought against HUD by the same lead counsel, Chief Judge Seeborg advised counsel to "be mindful of the claim-splitting doctrine" in any amended complaint. *See City of Fresno v. Turner*, No. 3:25-cv-07070-RS (N.D. Cal.), ECF No. 65 at 4 n3.

   substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e); *see also* Compl. ¶ 2 (invoking 28 U.S.C. § 1391(e) and SF Housing Authority's presence in this district as the sole basis for venue here).  Section 1391(e) does not permit the Out-of-District Plaintiffs to pursue their claims independently in the Northern District of California.

  Here, the Complaint does not rely on Section 1391(e)(1)(A) for venue, nor could it because for venue purposes the residence of a federal agency is its headquarters, which in this case is located in Washington D.C.  *Williams v. United States*, No. 01-cv-0024 EDL, 2001 WL 1352885, at *1 (N.D. Cal. Oct. 24, 2001) ("Venue does not lie in every judicial district where a federal agency has a regional office."); *see also id.* (citing *Reuben H. Donnelley Corp. v. Federal Trade Comm'n*, 580 F.2d 264, 267 (7th Cir. 1978) for the proposition that the federal government resides only in the District of Columbia); *Rugila v. Mayorkas*, No. 24-cv-01218-MMC, 2024 WL 1446457, at *1 (N.D. Cal. Apr. 2, 2024) ("Under established caselaw, where, as here, an action is brought against a federal officer in his or her official capacity, the officer's residency is the place in which the federal agency is located.") (collecting cases); *Zhang v. Chertoff*, No. 08-cv-02589, 2008 WL 5271995, at *3 (N.D. Cal. Dec. 15, 2008) (collecting cases).

  With respect to Section 1391(e)(1)(B), the Complaint includes the conclusory allegation that a "substantial part of the events or omissions giving rise to this action occurred" in the Northern District of California, but there are no facts to support that assertion.  *See* Compl. ¶ 2.  And to the extent any events or omissions occurred here, that conduct would be related to SF Housing Authority *only*; and since SF Housing Authority's claims are subject to dismissal under the claim-splitting doctrine, events related to SF Housing Authority cannot provide the predicate for venue under Section 1391(e)(1)(B).

  Finally, after SF Housing Authority's claims are dismissed, venue cannot lie in the Northern District of California under Section 1391(e)(1)(C) because none of the seven Out-of-District Plaintiffs resides here. 28 U.S.C. § 1391(e)(1)(C) (venue may lie in the district where "the plaintiff resides").

  Without SF Housing Authority, venue does not lie in the Northern District of California under Section 1391(e), and the remaining Out-of-District Plaintiffs thus cannot pursue their claims against HUD in this district.  Accordingly, the seven Out-of-District Plaintiffs' claims are dismissed under Federal Rule

of Civil Procedure 12(b)(3).

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

Dated: _____                    _____

                                                              THE HONORABLE JON S. TIGAR