1  JONATHAN V. HOLTZMAN (SBN 99795)
   jholtzman@publiclawgroup.com
2  JAMES R. ROSS (SBN 149199)
   jross@publiclawgroup.com
3  RYAN P. McGINLEY-STEMPEL (SBN 296182)
   rmcginleystempel@publiclawgroup.com
4  JAKE D. FREITAS (SBN 341837)
   jfreitas@publiclawgroup.com
5  MARIBEL LOPEZ (SBN 340907)
   mlopez@publiclawgroup.com
6  TAYLOR EVANS (SBN 355492)
   tevans@publiclawgroup.com
7  RENNE PUBLIC LAW GROUP
   350 Sansome Street, Suite 300
8  San Francisco, California 94104
   Telephone: (415) 848-7200
9  Facsimile: (415) 848-7230

10 *Attorneys for Plaintiffs*
   HOUSING AUTHORITY OF THE COUNTY OF
11 SAN DIEGO; HOME FORWARD; HOUSING
   AUTHORITY OF THE CITY OF LOS
12 ANGELES; LOS ANGELES COUNTY
   DEVELOPMENT AUTHORITY; HOUSING
13 AUTHORITY OF THE CITY OF SALEM;
   HOUSING AUTHORITY OF BALTIMORE
14 CITY; SAN DIEGO HOUSING COMMISSION

15 JUHI S. AGGARWAL (OSB No. 130764)*
   juhi.aggarwal@homeforward.org
16 HOME FORWARD
   135 SW Ash Street
17 Portland, OR 97204
   Telephone: 503-545-5090

18
   *Attorney for Plaintiff*
19 HOME FORWARD
   *Appearing pro hac vice*

20

21

22

23

24

25

26

27

28

   DAVID CHIU (SBN 189542)
   City Attorney
   YVONNE R. MERÉ (SBN 175394)
   Chief Deputy City Attorney
   MOLLIE M. LEE (SBN 251404)
   Chief of Strategic Advocacy
   SARA J. EISENBERG (SBN 269303)
   Chief of Complex and Affirmative Litigation
   RONALD H. LEE (SBN 238720)
   Deputy City Attorney
   Fox Plaza
   1390 Market Street, 7th Floor
   San Francisco, CA 94102-5402
   Telephone: (415) 554-3935
   Facsimile: (415) 437-4644
   ronald.lee@sfcityatty.org

   *Attorneys for Plaintiff*
   HOUSING AUTHORITY OF THE CITY AND
   COUNTY OF SAN FRANCISCO

   DANIEL B. ATCHISON (OSB No. 040424)*
   datchison@cityofsalem.net
   THOMAS V. CUPANI (OSB No. 924654)*
   tcupani@cityofsalem.net
   City of Salem, Legal Department
   PO Box 14300
   Salem, Oregon 97309-3986
   Telephone: (503) 588-6003
   Facsimile: (503) 361-2202

   *Attorneys for Plaintiff*
   HOUSING AUTHORITY OF THE CITY OF
   SALEM
   *Appearing pro hac vice*

   MICHAEL BUENNAGEL (SBN 259000)
   MBuennagel@counsel.lacounty.gov
   THOMAS FAUGHNAN (SBN 155238)
   tfaughnan@counsel.lacounty.gov
   Office of the County Counsel
   County of Los Angeles
   Kenneth Hahn Hall of Administration
   500 West Temple Street #648
   Los Angeles, CA 90012
   Telephone: (213) 974-1811

   *Attorneys for Plaintiff*
   LOS ANGELES COUNTY DEVELOPMENT
   AUTHORITY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HOUSING AUTHORITY OF THE COUNTY OF SAN DIEGO; HOME FORWARD; HOUSING AUTHORITY OF THE CITY OF LOS ANGELES; LOS ANGELES COUNTY DEVELOPMENT AUTHORITY; HOUSING AUTHORITY OF THE CITY OF SALEM; HOUSING AUTHORITY OF THE CITY AND COUNTY OF SAN FRANCISCO; HOUSING AUTHORITY OF BALTIMORE CITY; SAN DIEGO HOUSING COMMISSION,

     Plaintiffs,

v.

SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

     Defendants.

Case No. 4:25-cv-08859-JST

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER**

Hon. Jon S. Tigar

Hearing Date: April 2, 2026
Time:  2:00 p.m.
Location: Zoom Videoconference

Complaint Filed: October 15, 2025

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   BACKGROUND ..................................................................................................1

A.    *King County* Litigation against HUD .....................................................1

B.    The Instant Public Housing Agency Litigation Against HUD ...........................2

1.    Procedural Background.................................................................2

2.    Legal Background Governing the Public Housing Agency Plaintiffs ...................3

III.  LEGAL STANDARD............................................................................................6

A.    Federal Rule of Civil Procedure 12(b)(6) and Claim-Splitting ...........................6

B.    Federal Rule of Civil Procedure 12(b)(3) ................................................7

C.    The First-to-File Rule and Venue Transfer Under 28 U.S.C. § 1404(a) ...........................7

IV.   ARGUMENT .......................................................................................................8

A.    The Doctrine of Claim Splitting Provides No Basis for Dismissing Claims Asserted by Different Plaintiffs from the *King County* Litigation .....................9

B.    Venue Is Proper in the Northern District ...............................................13

C.    Defendants' Alternative Transfer Request Is Factually Unsupported, Legally Baseless, and Would Not Promote the Interests of Justice................................13

1.    The First-to-File Rule Is Not Applicable .............................................13

2.    Transfer Is Not Warranted Under 1404(a).............................................15

V.    CONCLUSION....................................................................................................19

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER  - Case No. 4:25-cv-08859-JST

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Community Housing Partnership*,
No. 23-cv-06073-WHO, 2024 WL 1643682 (N.D. Cal. Apr. 15, 2024) ...................................5

*Amini Innovation Corp. v. JS Imports, Inc.*,
497 F. Supp. 2d 1093 (C.D. Cal. 2007) .............................................................................16

*Anunciato v. Trump*,
No. 20-cv-07869-RS, 2020 WL 13547186 (N.D. Cal. Dec. 23, 2020) ............................1, 15

*ASARCO, LLC v. Union Pacific R. Co.*,
765 F.3d 999 (9th Cir. 2014) ..........................................................................................6, 7

*Behring Regional Ctr. LLC v. Wolf*,
No. 20-cv-09263-JSC, 2021 WL 1164839 (N.D. Cal. Mar. 26, 2021)..............................13

*Brenston v. Dedelow*,
No. 2:03-cv-156, 2005 WL 2204870 (N.D. Ind. Sept. 7, 2005)........................................10

*Brooks ex rel. Wright v. Housing Auth. of Baltimore City*,
984 A.2d 836 (Md. 2009) ..................................................................................................6

*Chamber of Com. of United States of Am.*,
105 F.4th 297 (5th Cir. 2024) ..................................................................................... 18-19

*Chen v. Zhang*,
No. 24-cv-03942-JST, 2024 WL 4894294 (N.D. Cal. Nov. 25, 2024)..............................14

*City & County of San Francisco v. Trump*,
No. 25-cv-01350-WHO, 2025 WL 2243619 (N.D. Cal. Aug. 5, 2025) ............................13

*City of Fresno v. Turner*,
No. 3:25-cv-07070-RS (N.D. Cal.) .....................................................................................14

*Clements v. Housing Auth. of the Borough of Princeton*,
532 F. Supp. 2d 700 (D.N.J. 2007) ...................................................................................10

*Commodity Futures Trading Commission v. Savage*,
611 F.2d 270 (9th Cir. 1979) ..............................................................................................8

*Consumer Financial Protection Bureau v. Nationwide Biweekly Administration, Inc.*,
No. 15-cv-02106-RS, 2015 WL 4463790 (N.D. Cal. July 21, 2015) ........................15, 17, 18

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ..............................................................................................8

RENNE PUBLIC LAW GROUP
Attorneys at Law

-ii-

*Doe v. Epic Games, Inc.*,
　435 F. Supp. 3d 1024 (N.D. Cal. 2020) ................................................................. 18

*Enomoto v. Siemens*,
　No. 23-cv-03779-JSC, 2023 WL 6278876 (N.D. Cal. Sept. 25, 2023) ................... 16

*Gen. Land Off. v. Biden*,
　71 F.4th 264 (5th Cir. 2023) ................................................................................. 12

*GP Vincent II v. Estate of Beard*,
　68 F.4th 508 (9th Cir. 2023) .................................................................................... 7

*Holliday v. Lifestyle Lift, Inc.*,
　No. C 09-4995 RS, 2010 WL 3910143 (N.D. Cal. 2010) ....................................... 18

*Housing Auth. of City of Los Angeles v. City of Los Angeles*,
　38 Cal.2d 853 (1952) .......................................................................................... 4, 6

*Jones v. GNC Franchising, Inc.*,
　211 F.3d 495 (9th Cir. 2000) ................................................................................... 8

*Karlen v. Wells Fargo Bank, N.A.*,
　No. 22-cv-02127-JSC, 2022 WL 2756671 (N.D. Cal. July 14, 2022) .................... 16

*King County v. Turner*,
　No. 2:25-cv-00814-BJR (W.D. Wash.) ........................................................ *passim*

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
　787 F.3d 1237 (9th Cir. 2015) ..................................................................... 7, 13, 14

*Lou v. Belzberg*,
　834 F.2d 730 (9th Cir. 1987) ................................................................................. 16

*Lynch v. San Francisco Housing Auth.*,
　55 Cal. App. 4th 527 (1997) ................................................................................ 3-4

*McLemore v. Marin Housing Authority*,
　No. 20-cv-05431-JD, 2021 WL 4124220 (N.D. Cal. Sept. 9, 2021) ...................... 10

*Mendoza v. Amalgamated Transit Union Int'l*,
　30 F.4th 879 (9th Cir. 2022) ........................................................................ *passim*

*Morris v. Safeco Ins. Co.*,
　No. C 07-2890 PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ....................... 16

*Murphy v. Schneider Nat'l, Inc.*,
　362 F.3d 1133 (9th Cir. 2004) .................................................................................. 7

*Our Children's Earth Foundation v. U.S. E.P.A.*,
　No. C 08-01461 ..................................................................................................... 16

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ............................................................. 7-8, 13

*Roe v. Housing Authority of City of Boulder*,
   909 F. Supp. 814 (D. Colo. 1995) ...........................................................10

*United States ex rel. Rosales v. San Francisco Housing Auth.*,
   173 F. Supp. 2d 987 (N.D. Cal. 2001) ....................................................10

*San Diegans for Open Government v. City of San Diego*,
   242 Cal. App. 4th 416 (2015) ...................................................................5

*Southard v. Kipper Tool Co.*,
   No. 3:15-cv-03621-JSC, 2023 WL 6959145 (N.D. Cal. Oct. 19, 2023) ................16

*Stoll v. Rimini Street, Inc.*,
   No. 21-cv-01930-JST, 2021 WL 6618642 (N.D. Cal. Sept. 14, 2021) ..................18

*Taylor v. Sturgell*,
   553 U.S. 880 (2008)..........................................................................7, 9

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025)....................................................................1, 2, 11

*Umrein v. Topaz*,
   658 P.2d 568 (Or. Ct. App. 1983) ............................................................10

*United States v. Wanland*,
   830 F.3d 947 (9th Cir. 2016) .................................................................12

*Waldman v. Village of Kiryas Joel*,
   39 F. Supp. 2d 370 (S.D.N.Y. 1999)........................................................10

*White v. City of Annapolis by and through City Council*,
   439 F. Supp. 3d 522 (D. Md. 2020).........................................................10

**Statutes**

28 U.S.C.
   § 1391..........................................................................................8
   § 1391(e)(1)(C) ...............................................................................13
   § 1404(a) ............................................................................... *passim*
   § 1406(a)......................................................................................7

42 U.S.C.
   § 1437(a)(1)(C) ................................................................................3

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER - Case No. 4:25-cv-08859-JST

Ann. Code Md., Housing & Community Development

§ 12-101 *et seq.* ......................................................................................................6

§ 12-308 ....................................................................................................................6

§ 12-501 ....................................................................................................................6

§ 12-502 ....................................................................................................................6

§ 12-701 ....................................................................................................................6

§ 12-702 ....................................................................................................................6

§ 15-102 ....................................................................................................................6

§ 15-103 ....................................................................................................................6

§ 15-104 ....................................................................................................................6

Cal. Gov't Code

§ 6500 ........................................................................................................................5

§ 6507 ........................................................................................................................5

§ 6508 ........................................................................................................................5

Cal. Health & Safety Code

§ 34100 *et seq.* ......................................................................................................4

§ 34112 ......................................................................................................................4

§ 34118(a) ..................................................................................................................4

§ 34141 ......................................................................................................................4

§ 34200 *et seq.* ..................................................................................................3, 4

§ 34240 ......................................................................................................................4

§ 34270 ......................................................................................................................4

§ 34271.5 ....................................................................................................................4

§ 34279 ..................................................................................................................4, 12

§ 34310 ......................................................................................................................3

§ 34311 ......................................................................................................................3

§ 34325 ......................................................................................................................3

§ 34350 ......................................................................................................................3

§ 34353 ......................................................................................................................3

L.A. County Code

§ 2.58.010 ..................................................................................................................4

§ 2.58.030 ..................................................................................................................4

Or. Rev. Stats.

§ 456.120 ....................................................................................................................5

§ 456.128 ....................................................................................................................6

§ 456.130 ....................................................................................................................6

§ 456.145 ....................................................................................................................6

§ 456.175 ....................................................................................................................5

§ 456.180 ....................................................................................................................5

§ 456.215 ....................................................................................................................5

**Other Authorities**

33 Or. Op. Atty. Gen. 12 (1966) ..............................................................................6

RENNE PUBLIC LAW GROUP
Attorneys at Law

64 Ops. Cal. Atty. Gen. 677 (1981) ................................................................................4

Federal Rule of Civil Procedure 12(b)(3) ......................................................................7

Federal Rule of Civil Procedure 12(b)(6) ..................................................................6, 7

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER  - Case No. 4:25-cv-08859-JST

## I.    INTRODUCTION

Defendants' motion to dismiss is perhaps most telling for what it omits:  any meaningful discussion of the merits.  Instead, Defendants seek dismissal or transfer on procedural grounds.  They first contend that certain plaintiffs have improperly split their claims between the *King County* case in the Western District of Washington and this case.  This rests on the faulty premise that the public housing agencies in this action—which are independent public entities from the local government plaintiffs in the *King County* litigation—are in privity with those plaintiffs.  But the law is clear that public housing agencies have different legal interests from the cities and counties that create them.  As such, the *King County* plaintiffs do not—and cannot—represent the public housing agency Plaintiffs' interests in that action.  And the *King County* district court—consistent with *Trump v. CASA, Inc.*, 606 U.S. 831 (2025)—did not craft its injunction in a manner that would extend beyond the parties to protect the public housing agency Plaintiffs from HUD's latest unlawful overreaches.  As a result, Defendants' improper venue argument under 28 U.S.C. § 1391 fails since it depends on the erroneous assertion that the San Francisco Housing Authority is in privity with the City and County of San Francisco.

That leaves Defendants' alternative request (without any evidentiary support) that if the court does not dismiss, the case should be transferred to the United States District Court for the Western District of Washington under the first-to-file rule or the District of Columbia under 28 U.S.C. § 1404(a).  But as one court recognized in an action challenging Presidential Proclamations under the APA, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Anunciato v. Trump*, No. 20-CV-07869-RS, 2020 WL 13547186, at *3 (N.D. Cal., Dec. 23, 2020) (quotation marks omitted).  Defendants fall woefully short of showing that the minimal inconvenience to them in this APA action warrants upsetting the plaintiffs' choice of forum—particularly in light of the very real harm that the unlawful funding conditions stand to inflict on the San Francisco Housing Authority and its residents in the Northern District.  Accordingly, Defendants' motion to dismiss or transfer should be denied.

## II.    BACKGROUND

### A.    *King County* Litigation against HUD

On May 2, 2025, a group of local government entities sued HUD, among other federal agencies,

RENNE PUBLIC LAW GROUP
Attorneys at Law

seeking to enjoin it from imposing unlawful grant conditions. *See King County v. Turner*, No. 2:25-cv-00814-BJR (W.D. Wash.), Dkt. 1. Subsequent complaints expanding the number of plaintiffs and defendants were filed in July 2025 and November 2025. *See King County*, Dkts. 184, 369. As relevant here, preliminary injunction orders in the *King County* litigation enjoin HUD from imposing unlawful grant conditions on the following plaintiff government entities: the City and County of San Francisco; the City of Los Angeles; the Los Angeles Homeless Services Authority; City of San Diego; the City of Portland; and the Mayor and City Council of Baltimore. *King County*, Dkts. 169 at 46–47 (Order Granting First and Second Motions for Preliminary Injunction), 338 at 36–37 (Order Granting Third Motion for Preliminary Injunction), 381 at 12–13 (Order Granting Fourth Motion for Preliminary Injunction). Consistent with the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025) restricting district courts' ability to issue universal injunctive relief extending to non-parties, the *King County* injunctions extended relief as to each challenged HUD grant program[1] only to the plaintiffs named in that action that challenged them.

### B.    The Instant Public Housing Agency Litigation Against HUD

#### 1.    Procedural Background

Months after the *King County* case was initiated, HUD required public housing agencies to certify that they will comply with similar unlawful conditions in order to qualify for funding under the Operating Subsidy, the Capital Fund, the Family Self-Sufficiency, and the Multifamily Housing Service Coordinator programs. Dkt. 1 at 19–24. The earliest certification deadline was set to occur on October 21, 2025. Dkt. 19 at 2. On October 15, 2025, Plaintiffs filed an action against HUD seeking to enjoin it from imposing the unlawful conditions on the public housing agency grants. Dkt. 1 at 41; Dkt. 19 at 2. Three days later, this Court issued a temporary restraining order enjoining HUD from (1) "imposing or enforcing the HUD Grant Conditions . . . on Plaintiffs at any stage of the grant process"; (2) "requiring Plaintiffs to make any certification or other representation related to compliance with such terms or conditions in order to apply for or receive HUD funds"; or (3) "refusing to issue, process, or sign grant

---

[1] *King County* plaintiffs specifically challenged conditions imposed on HUD's Continuum of Care program, the Community Development Block Grant, the Emergency Solutions Grant, the Home Investment Partnerships program, and the Housing Opportunities for Persons with AIDS program.

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

agreements based on Plaintiffs' participation in this lawsuit." Dkt. 19 at 3–4.

On November 14, 2025, this Court issued a preliminary injunction extending the terms of the temporary restraining order after concluding that "each of the challenged grant conditions is unlawful" since "HUD provided no rationale in support of any of the grant conditions, which are therefore arbitrary and capricious," and "all of the challenged grant conditions are unconstitutionally vague and in excess of the authority delegated to HUD, violating the separation of powers." Dkt. 33 at 37–38. On January 12, 2026, Defendants appealed from the preliminary injunction. Dkt. 39. On February 2, 2026, Defendants moved to dismiss, arguing that the public housing agency Plaintiffs have split their claims between this case and the *King County* litigation and improperly laid venue in the Northern District. *See* Dkt. 41. In the alternative, Defendants move to transfer venue to the Western District of Washington under the first-to-file rule or the District of Columbia under 28 U.S.C. § 1404(a).

### 2.    Legal Background Governing the Public Housing Agency Plaintiffs

Plaintiffs are a group of public housing agencies that were created pursuant to detailed statutory schemes under California, Oregon, and Maryland law in order to qualify for federal funding under the Housing Act of 1937, which announced the "policy of the United States . . . to vest in public housing agencies that perform well, the maximum amount of responsibility and flexibility in program administration, with appropriate accountability to public housing residents, localities, and the general public." 42 U.S.C. § 1437(a)(1)(C).

***California Plaintiffs.*** California's Housing Authorities Law establishes housing authorities as independent public entities that are entirely distinct from county or city government. *See* Cal. Health & Safety Code §§ 34200 et seq. Sections 34240 and 34310 of the California Health and Safety Code expressly state that a public housing authority is "a corporate and politic public body." *Id.* §§ 34240, 34310. Housing authorities have independent legal status with the power to sue and be sued (*id.* § 34311), enter contracts (*id.*), and seize property (*id.* § 34325). Public housing authorities may borrow money or accept grants or other financial assistance from the federal government (*id.* § 34327), may issue their own bonds (*id.* § 34350), and their debts and obligations are not those of any city or county (*id.* § 34353). The California "legislature enacted the laws under which housing authorities are created in order to access *federal* money available under the United States Housing Act of 1937." *Lynch v. San*

*Francisco Housing Auth.*, 55 Cal. App. 4th 527, 541 (1997) (citing *Housing Auth. of City of Los Angeles v. City of Los Angeles*, 38 Cal.2d 853, 860 (1952)) (original emphasis).

Four of the five California Plaintiffs—the San Francisco Housing Authority, the Housing Authority of the City of Los Angeles (HACLA), the San Diego County Housing Authority, and the San Diego Housing Commission—were created pursuant to the Housing Authorities Law set forth in California Health and Safety Code section 34200 et seq.  *See* Dkt. 1 ¶¶ 4–11, 14–17.  As a matter of California law, the only relevant role of the respective municipality in which the San Francisco Housing Authority, HACLA, the San Diego County Housing Authority, and the San Diego Housing Commission reside is to "declare[] that there is need for an authority," Cal. Health & Safety Code § 34240, and to establish the governing body (*id.* §§ 34270-34271.5).  California law further permits housing authorities to seek legal representation from "the chief law officer of the city or the county or . . . employ its own counsel and legal staff."  *Id.* § 34279.

The fifth California Plaintiff—the Los Angeles County Development Authority (LACDA)—was created as a community development commission under California Health and Safety Code section 34100 *et seq.*  Under California law, community development commissions like LACDA are "created and established in order that a community may have the option of operating and governing its redevelopment agency, or its redevelopment agency and its housing authority, under a single operating entity and board."  Cal. Health & Safety Code § 34112.

Such commissions are "vested with the powers, duties, and responsibilities of the commissioners of the housing authority" and may "operate[] and govern[] the housing authority" when—as here—"[t]he ordinance adopted by the legislative body declaring a need for the commission to function in the community declares, or is subsequently amended to declare, that the commission shall be vested with the rights, powers, duties, and responsibilities of the commissioners of the housing authority."  Cal. Health & Safety Code § 34118(a); *see also id.* § 34141 ("The nature, power, authority, functions and jurisdiction of the commission include, but are not limited to, all of the nature, power, authority, functions, and jurisdiction of redevelopment agencies and housing authorities."); L.A. County Code §§ 2.58.010, 2.58.030 (declaring need for LACDA to "operate and govern the housing authority functions of the County of Los Angeles" and "the Los Angeles County Development Authority shall be vested with the

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

1  rights, powers, duties, and responsibilities of the Commissioners of the Housing Authority of the County

2  of Los Angeles").

3      State and federal courts have repeatedly recognized the independent status of public housing

4  agencies like the Plaintiffs from the municipalities in which they reside. *See Adams v. Community*

5  *Housing Partnership*, No. 23-cv-06073-WHO, 2024 WL 1643682, at *5 (N.D. Cal. Apr. 15, 2024)

6  ("SFHA is 'a separate state agency.'"  (quoting *McLemore*, 2021 WL 4124220, at *2)); *Lynch*, 55 Cal.

7  App. 4th at 541 ("The autonomy of housing authorities [like SFHA], even from local control, is also

8  apparent."); *San Diegans for Open Government v. City of San Diego*, 242 Cal. App. 4th 416, 435, 436

9  (2015) ("The Legislature, however, has specified that the Financing Authority, along with the Successor

10  Agency and the Housing Authority, are all public entities legally separate from the City."); *Housing*

11  *Auth. of City of Los Angeles v. City of Los Angeles*, 38 Cal. 2d 853, 861 (1952) (recognizing that HACLA

12  was "created as a state agency, 'a public body corporate and politic' and is not an agent of the city in

13  which it functions"); 64 Ops. Cal. Atty. Gen. 677 (1981) (explaining in reference to the Los Angeles

14  County Housing Authority that "a housing authority is not part of the city of [*sic*] county or city and

15  county in which it is established").[2]

16      ***Home Forward.***[3]  Similar to California law, Oregon's statutory scheme governing housing

17  authorities like Home Forward provides that "[a] housing authority shall constitute a public body

18  corporate and politic," with various powers, including to "sue and be sued" and make and execute

19  contracts (Or. Rev. Stats. § 456.120), to issue bonds which "shall not be a debt of the city, the county, the

20  state or any political subdivision thereof" (*id.* §§ 456.175, 456.180(2)), to "[b]orrow money or accept

21  grants or other financial assistance from the federal government" (*id.* § 456.215(1)(a)), to issue

22

23  ─────────────────
   [2] Defendants appear to assert that the Los Angeles Homelessness Services Authority (LAHSA) is a
24  "parent local government" of either HACLA or LACDA.  Dkt. 41 at 10, 15.  But LAHSA was created as
   a separate public entity under the California Joint Exercise of Powers Act (Gov't Code §§ 6500 et seq.)
25  by the County of Los Angeles and the City of Los Angeles and "is a public entity separate from the
   parties to the agreement."  Cal. Gov't Code § 6507; *id.* § 6508 (such "agency shall have the power to sue
26  and be sued in its own name"); *San Diegans for Open Government v. City of San Diego*, 242 Cal. App.
   4th 416, 438 (2015) ("Under the Joint Exercise of Powers Act, the Financing Authority has a genuine
   separate existence from the City."); *see also* https://www.lahsa.org/about.

27  [3] Defendants concede that the Salem Housing Authority's claims are "not subject to dismissal under the
   claim-splitting doctrine" since its "parent local government is not actively participating in the *King*
28  *County* litigation."  Dkt. 41 at 7.

─────────────────
-5-

1    subpoenas (*id.* § 456.130), to license its rights in intellectual property (*id.* § 456.128), and to seize

2    property (*id.* § 456.145).  "It is clear from the quoted statutes that the housing authority is created by law

3    and that the legislature intended it to be a separate governmental unit."  33 Or. Op. Atty. Gen. 12 (1966)

4    (concluding that Home Forward's predecessor, "the Portland Housing Authority[,] is a public body

5    corporate and politic, exercising public and essential governmental functions and is therefore an entity

6    separate and apart from other political subdivisions").

7        ***Housing Authority of Baltimore City.***  Maryland law also recognizes the independent status of

8    housing authorities.  *See* Ann. Code Md., Housing & Community Development, §§ 12-101 *et seq.*  The

9    Maryland "General Assembly enacted the law in anticipation of, and to take advantage of, the provisions

10   of the United States Housing Act of 1937."  *Brooks ex rel. Wright v. Housing Auth. of Baltimore City*,

11   984 A.2d 836, 844–45 (Md. 2009).  Just like housing authorities in California and Oregon, the Housing

12   Authority of Baltimore City is "a public body corporate and politic" exercising "public and essential

13   governmental functions" (Ann. Code Md., Housing & Community Development, §§ 12-501, 15-104),

14   with the power to "sue and be sued," (*id.* § 12-502(b)(1)); "make contracts and other instruments

15   necessary or convenient to the exercise of the authority's powers," (*id.* § 12-502(b)(4)); "borrow money

16   and accept grants and other financial assistance from the political subdivision, the State, and the federal

17   government," (*id.* § 12-502(j)(1)); and issue bonds (*id.* § 12-701) that are "not a debt of the State or a

18   political subdivision" (*id.* § 12-702(c)(1)).  *See also id.* § 15-102 ("Title 12 of this article applies to the

19   Baltimore Authority except where it is inconsistent with this title."); *id.* § 15-103 (findings leading to

20   creation of HABC); *Brooks ex rel. Wright*, 984 A.2d at 843–44 (quoting similar language from former

21   Article 44A, § 1-301).  Housing authorities like HABC "may use the chief law officer of the political

22   subdivision or may employ its own counsel and legal staff."  Ann. Code Md., Housing & Community

23   Development, § 12-308.

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6) and Claim-Splitting

26       "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the

27   defendant shows some obvious bar to securing relief on the face of the complaint."  *ASARCO, LLC v.*

28   *Union Pacific R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).  When a defendant raises the defense of claim-

RENNE PUBLIC LAW GROUP
Attorneys at Law

splitting "in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), [courts] may consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, as well as any writing referenced in the complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 884 (9th Cir. 2022) (quotation marks and alterations omitted). "If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." *ASARCO, LLC*, 765 F.3d at 1004; *see, e.g.*, *GP Vincent II v. Estate of Beard*, 68 F.4th 508, 518 (9th Cir. 2023) ("Although non-party preclusion may apply where the non-party is adequately represented by someone with the same interests who was a party to the prior litigation, *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), that is a fact-intensive inquiry in this case best determined outside the confines of a Rule 12(b)(6) motion.").

### B.    Federal Rule of Civil Procedure 12(b)(3)

In the context of a motion to dismiss for improper venue under Rule 12(b)(3), the court need not accept as true all allegations in the complaint and may consider facts outside the pleadings. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (citations omitted). However, the court "is obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Id.* at 1138. Even if venue is improper, the court may, in the "interest of justice," transfer the case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

### C.    The First-to-File Rule and Venue Transfer Under 28 U.S.C. § 1404(a)

The first-to-file rule empowers district courts to transfer, stay, or dismiss a case when it concerns substantially similar parties and issues as does as an action previously filed in another district. *See Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). In determining whether to apply the rule, courts concentrate on three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues. *Id.* at 1240. The Ninth Circuit has afforded district courts "an ample degree of discretion" in determining whether application of the rule results in "conservation of judicial resources and comprehensive disposition of litigation." *Pacesetter Sys., Inc. v. Medtronic, Inc.*,

-7-

678 F.2d 93, 95 (9th Cir. 1982).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The burden of demonstrating that transfer is appropriate rests on the moving party, *see Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979), who "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), *superseded by statute on other grounds by* 28 U.S.C. § 1391. The district court has broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).

## IV.    ARGUMENT

Defendants argue that every plaintiff except for the Salem Housing Authority should be dismissed from this case under the doctrine of claim-splitting since their "parent local government[s]" are "actively pursuing duplicative federal court litigation challenging identical HUD grant conditions in *King County*." Dkt. 41 at 15. Not so. The claim splitting doctrine only applies "if the second suit involves (1) the same causes of action as the first; and (2) the same parties or their privies." *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022). At its core, Defendants' claim-splitting argument rests on a fundamental misunderstanding of the nature and structure of public housing agencies—which are distinct government entities from the municipalities in which they reside.

Once this misunderstanding is laid bare, Defendants' arguments regarding venue likewise fall away since they are all premised in some form or fashion on the erroneous assertion that the public housing agency Plaintiffs or their privies are plaintiffs in the *King County* action. Put simply, venue is proper in the Northern District of California where the San Francisco Housing Authority and its residents are harmed by HUD's unlawful conditions; the first-to-file rule does not apply since none of the public housing agency Plaintiffs is a party to the *King County* action; and Defendants cannot establish that the convenience of the parties and witnesses and the interests of justice warrant upsetting the Plaintiffs' choice of venue.

RENNE PUBLIC LAW GROUP
Attorneys at Law

**A.    The Doctrine of Claim Splitting Provides No Basis for Dismissing Claims Asserted by Different Plaintiffs from the *King County* Litigation**

It is not entirely clear whether Defendants contend that this action involves the "same parties" as *King County*.  At one point, Defendants assert that "Plaintiffs here cannot raise convincing concerns about multiplicity of lawsuits, given that *they* (or their privies) *are simultaneously litigating duplicative claims in multiple other federal court conditions cases*."  Dkt. 41 at 22 (emphasis added).  Yet they simultaneously concede that "plaintiff public housing authorities are separate and independently operated entities."  Dkt. 41 at 16 n.5.  Regardless, a quick review of the statutory schemes under which the public housing agency Plaintiffs were created reveals that in no world are the "same parties" involved in both this case and *King County*.  *See supra* at § II.B.2.  Indeed, the public housing agency Plaintiffs were created as separate entities specifically so that they could obtain their own funding from the federal government under the Housing Act of 1937.  *See Lynch*, 55 Cal. App. 4th at 541.

That leaves Defendants' unsupported argument that "the *King County* plaintiffs unquestionably act as the privies of the Plaintiffs."  Dkt. 41 at 16–17.  This misapprehends both the law of privity as well as the nature of the Plaintiff public housing agencies in this case.

For many years, courts applied privity using an expansive notion of "virtual representation" to bind nonparties.  *See, e.g.*, *Adams*, 487 F.3d at 691 ("[T]hese new defendants are in privity with CDHS, because CDHS can be said to have 'virtually represented' the new defendants in the first action.").  In 2008, however, the Supreme Court rejected an unduly broad view of privity premised on the concept of "virtual representation."  *Taylor v. Sturgell*, 553 U.S. 880 (2008).  In doing so, the Court re-emphasized "the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party."  *Id.* at 898.  Thus, "[a] party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned, [citation]; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty, [citation]."  *Id.* at 900; *see also Mendoza*, 30 F.4th at 886–88 & n.3 (explaining that "*Adams*'s expansive conception of the 'same party' requirement was rejected by the Supreme Court in *Taylor*").

Defendants fall woefully short of that standard here.  At the core of this inquiry is the simple fact

that the public housing agency Plaintiffs are distinct legal entities that are not represented by any *King County* plaintiff. The *King County* plaintiffs *cannot* "act[] in a representative capacity," *see Taylor*, 553 U.S. at 900, of the public housing agency Plaintiffs, because state and federal courts have repeatedly recognized that "a housing authority is a separate state agency and 'not an agent of the city in which it functions.'" *McLemore v. Marin Housing Authority*, No. 20-cv-05431-JD, 2021 WL 4124220, at *2 (N.D. Cal. Sept. 9, 2021) (quoting *Hous. Auth. of City of Los Angeles v. City of Los Angeles*, 38 Cal. 2d 853, 861 (1952)); *United States ex rel. Rosales v. San Francisco Housing Auth.*, 173 F. Supp. 2d 987, 1023–24 (N.D. Cal. 2001) ("[I]f the United States in the case at bar were to recover treble damages and penalties, these funds will not come out of the city's coffers. The SFHA is an independent local public corporation holding its own assets and generating its own revenues."); *see also* 64 Ops. Cal. Atty. Gen. 677 (1981) ("It is thus seen that the statutory scheme is to establish a housing authority as an independent governmental entity separate from the city or county in which it is established. This conclusion is also clearly affirmed in the case law."); *Umrein v. Topaz*, 658 P.2d 568, 603 (Or. Ct. App. 1983) ("municipal housing authorities and urban renewal agencies are separate entities from the cities and counties that authorize their establishment and in which they exercise their responsibilities"); *cf. White v. City of Annapolis by and through City Council*, 439 F. Supp. 3d 522, 541 n.21 (D. Md. 2020) ("Because the alleged conspiracies here involve two separate government entities, HACA and the City, the intracorporate conspiracy doctrine is not applicable.").[4]

Further, the *King County* court did not take "care to protect the interests" of the public housing agency Plaintiffs. *See Taylor*, 553 U.S. at 900. The *King County* court's injunction applies to the named plaintiffs and does not deal with any of the public housing grants or authorizing statutes at issue in this

---

[4] Courts in other jurisdictions have similarly rejected claims that housing authorities like the plaintiffs here are in privity with the municipality in which they reside. *See Waldman v. Village of Kiryas Joel*, 39 F. Supp. 2d 370, 381–82 (S.D.N.Y. 1999) (finding no privity between housing authority and village); *Brenston v. Dedelow*, No. 2:03-cv-156, 2005 WL 2204870, at *5 (N.D. Ind. Sept. 7, 2005) ("This (apparent) independent legal status suggests that the legal interests of [the Hammond Housing Authority], the City and Mayor Dedelow are *not* so intertwined as to be the 'same' for purposes of finding privity."); *Roe v. Housing Authority of City of Boulder*, 909 F. Supp. 814, 819 (D. Colo. 1995) ("BHA is an independent governmental entity over which the City exercised neither direct nor indirect control over the affairs of the BHA and its relationship with Roe."); *cf. Clements v. Housing Auth. of the Borough of Princeton*, 532 F. Supp. 2d 700, 710 (D.N.J. 2007) (rejecting argument that housing authority and city were single employer under the FMLA because "the HAP must also be considered a separate, independent entity from the Borough").

RENNE PUBLIC LAW GROUP
Attorneys at Law

action.  Following the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025),

holding that federal courts lack statutory authority to issue universal injunctions that extend beyond the

parties before the court, individual jurisdictions must bring suit to obtain the protection provided by a

preliminary injunction (in the absence of vacatur under the APA).  Defendants' suggestions to the

contrary misapprehend the scope of the *King County* litigation.  Defendants point to the *King County*

plaintiffs' request to enjoin "HUD from applying the challenged grant conditions in any 'HUD funds

received by or awarded to, *directly or indirectly*, HUD Plaintiffs."  Dkt. 41 at 16–17.  But by its terms the

scope of this requested relief serves only to vindicate the interests of the plaintiffs in King County in

*their* capacity as subrecipients of the HUD funds at issue.  Defendants then cite to HUD's own post-

injunction compliance statement as evidence "that 'any HUD funds' and 'any grant agreements' [are]

covered."  Dkt. 41 at 7 n.2 (citing *King County*, No. 2:25-cv-00814-BJR, Dkt. 383-2).  But a close review

of that submission makes clear that HUD understood the *King County* injunction was—consistent with

*CASA*—limited to "the HUD Plaintiffs" and did not extend to non-parties to that action.[5]

Accordingly, the plaintiffs in this action cannot rely on the pendency or outcome of the *King County* litigation to safeguard their own federally funded programs and liability interests.  To obtain meaningful and enforceable protection against these risks, each affected jurisdiction must bring its own action and establish its entitlement to injunctive relief.  Because no injunction entered in the *King County* case would bind Defendants with respect to the public housing grants awarded to Plaintiffs here, this action is not duplicative, and Plaintiffs face an ongoing and concrete risk absent relief from this Court.

Rather than engage with *Taylor*'s restrictive privity standard, Defendants cite *Mendoza* in support of their privity argument.  *See* Dkt. 41 at 16–17.  But the "unique facts of [that] case" are not present here.  30 F.4th at 887.  In *Mendoza*, the Amalgamated Transit Union had imposed trusteeship over one of its local unions (Local 1637) based on apparent financial malfeasance by Local 1637's then-president, Jose Mendoza, thereby removing Mendoza and the other Local 1637 executive board members from office.  *Id.* at 883.  Mendoza filed a single-plaintiff action (*Mendoza I*) against ATU and several of its officers.  *Id.*  While that action was still pending, Mendoza filed a second, multi-plaintiff action

---

[5] The terms of the *King County* injunction unequivocally apply only to "HUD Plaintiffs," defined in the litigation to specific named plaintiffs.  *See King County*, No. 2:25-cv-00814-BJR, Dkt. 369 at 84.

RENNE PUBLIC LAW GROUP
Attorneys at Law

(*Mendoza II*) in which he and a majority of the other former executive board members of Local 1637 asserted related claims against ATU, the same ATU officers, and several other defendants. *Id.* The Ninth Circuit concluded that "under the unusual facts of this case, the district court correctly concluded that, with respect to the claims against ATU and its officers, the additional Plaintiffs in *Mendoza II* were adequately represented by Mendoza in *Mendoza I.*" *Id.* at 883–84.

Specifically, it was "clear that, in *Mendoza I*, Mendoza understood himself to be acting in a representative capacity on behalf of the other board members and that the other board members had notice that he was doing so." *Id.* at 889. Mendoza had clarified his own view of the relationship between *Mendoza I* and the claims of the Executive Board Plaintiffs in *Mendoza II* as follows: "'Plaintiff Mendoza brought this action individually, and *on behalf of* Local 1637, of which the *Mendoza 2* Plaintiffs are members. As such, *the Mendoza 2 Plaintiffs have an interest in this case as members of Local 1637.*'" *Id.* In addition, "all of the Executive Board Plaintiffs themselves submitted declarations in support of Mendoza's effort to get them restored to their positions." *Id.* Nothing close to these "unusual facts" are present here. The *King County* plaintiffs did not understand themselves to be representing the public housing agency Plaintiffs' interests and did not seek or obtain relief that extended to their grants. Nor could they have under *CASA*. And unlike the Executive Board Plaintiffs that submitted declarations in the first action in *Mendoza*, the public housing agency Plaintiffs did not participate at all in the *King County* litigation.

Finally, Defendants assert that the "SF Housing Authority and the City and County of San Francisco are both represented by attorneys at the San Francisco City Attorney's Office in these two litigations." Dkt. 41 at 16 n.5. But under California's Housing Authorities Law, a public housing agency's independence does not turn on whether it "call[s] upon the chief law officer of the city or county or [] employ[s] its own counsel and legal staff." Cal. Health & Safety Code § 34279; *see supra* at § II.B.2. What's more, "'[c]ourts have recognized in the preclusion context the folly of treating the government as a single entity in which representation by one government agent is necessarily representation for all segments of the government.'" *United States v. Wanland*, 830 F.3d 947, 956 (9th Cir. 2016) (quoting *United States v. Ledee*, 772 F.3d 21, 30 (1st Cir. 2014)); *see also Gen. Land Off. v. Biden*, 71 F.4th 264, 270 (5th Cir. 2023) (a finding of privity requires more than a showing of parallel

interests or, even, a use of the same attorney in both suits) (cleaned up).

***

California, Oregon, and Maryland law make clear that public housing agencies are distinct legal entities with the power to sue and be sued, enter contracts, issue bonds, borrow money from the federal government, and seize property. *See supra* at § II.B.2. The public housing agency Plaintiffs are not parties to the *King County* litigation; do not share the same interests as the *King County* plaintiffs; the *King County* plaintiffs did not understand themselves to be representing the interests of the public housing agency Plaintiffs; and the *King County* injunction does not protect the public housing agency Plaintiffs' interests in the grants at issue here. Accordingly, the public housing agency Plaintiffs are not in privity with the *King County* plaintiffs, and Defendants' claim-splitting arguments should be rejected.

### B.    Venue Is Proper in the Northern District

Defendants' improper venue argument hinges on the dismissal of Plaintiff San Francisco Housing Authority for improper claim splitting. *See* Dkt. 41 at 7–8. Because Defendants' arguments regarding claim splitting are without merit, venue is proper in the Northern District. *See* 28 U.S.C. § 1391(e)(1)(C); *City & County of San Francisco v. Trump*, No. 25-cv-01350-WHO, 2025 WL 2243619, at *6 (N.D. Cal. Aug. 5, 2025) ("The clear weight of federal authority holds that venue is proper in a multi-plaintiff case if any plaintiff resides in the District" (quotation marks omitted)).

### C.    Defendants' Alternative Transfer Request Is Factually Unsupported, Legally Baseless, and Would Not Promote the Interests of Justice

In the alternative, Defendants seek a transfer to the Western District of Washington under the first-to-file rule or to the District of Columbia under 28 U.S.C. § 1404(a). Neither is warranted here.

#### 1.    The First-to-File Rule Is Not Applicable

Under the first-to-file rule, "district courts have discretion to transfer, stay, or dismiss an action if the same parties and issues are already at issue in a proceeding before another district court." *Behring Regional Ctr. LLC v. Wolf*, No. 20-cv-09263-JSC, 2021 WL 1164839, at *1 (N.D. Cal. Mar. 26, 2021) (citing *Pacesetter Sys., Inc.*, 678 F.2d at 94–95). "In determining whether to apply the rule, courts must consider the 'chronology of the lawsuits, similarity of the parties, and similarity of the issues.'" *Id.* (quoting *Kohn Law Grp., Inc.*, 787 F.3d at 1240). Here, the second and third factors weigh heavily

RENNE PUBLIC LAW GROUP
Attorneys at Law

against a transfer under the first-to-file rule.

As to second factor, none of the plaintiffs in this action (or their privies) is a plaintiff in the *King County* action. *See supra* at § IV.A. In *Behring*, the court declined to transfer because "[w]hile there is no dispute that the District of Columbia action was filed over a year before this action, the difference in the parties—namely the plaintiffs—satisfies the Court it should not order transfer." 2021 WL 1164839, at *2. As the court explained, the "Defendants have not identified any case, and the Court is not aware of any, where a court transferred a case under the first-to-file rule when there was no overlap in parties on one side of the 'v'." *Id.* To be sure, the Ninth Circuit has "stated that the parties needed to be only 'substantially similar' and not identical," but "it so stated in the context of whether every party in each action had to be present in the other action." *Id.* at *2 (quoting *Kohn Law Group*, 787 F.3d at 1240). Notably, in *Kohn Law Group*, "Kohn Law Group was a party in the California action and a party in the Mississippi action." *Id.* at *2 (citing *Kohn Law Group*, 787 F.3d at 1239). Defendants rely heavily on this Court's decision in *Chen v. Zhang*, No. 24-cv-03942-JST, 2024 WL 4894294 (N.D. Cal. Nov. 25, 2024). But there, "the same parties [were] involved in the two lawsuits," just in "slightly different combinations." *Id.* at *3 ("The current case involves claims by Chen against Zhang, Eagle Trading, and Ameriway. The *Ameriway* lawsuit involves claims by Ameriway against Chen and Ability Customs, counterclaims by Chen and Ability Customs against Ameriway, and third-party claims by Chen and Ability Customs against Zhang, Eagle Trading, and Jia.").

As to the third factor, the issues, while related, are not identical, as this case specifically focuses on the impact of HUD's conditions on public housing agency programs and deals with different grants authorized by different statutory frameworks than the ones raised by the plaintiffs in *King County*. *Cf. Chen*, 2024 WL 4894294, at *3 ("In both the *Ameriway* lawsuit and the case here, the claims all stem from transactions between Ameriway and Chen between April 2017 and August 2019 wherein Chen provided customs clearing services through Ability Customs to Ameriway. . . . Both cases are clearly based on an identical core of factual allegations and seek comparable damages."); *City of Fresno v. Turner*, No. 3:25-cv-07070-RS (N.D. Cal.), Dkt. 65 at 4 & n.3 (cautioning that the claim-splitting doctrine may apply to claims "based on the same or substantially similar grant conditions applied to grant programs subject to the same authorizing statutes and agency rules, i.e. arising out of the same series of

-14-

transactions and occurrences").

More fundamentally, judicial economy would not be served by transfer, given that this Court has already invested resources in this litigation by issuing a temporary restraining order and a preliminary injunction, thereby demonstrating familiarity with the legal and factual issues. *See Anunciato v. Trump*, No. 20-cv-07869-RS, 2020 WL 13547186, at *3 (N.D. Cal. Dec. 23, 2020) ("This district is equipped to grapple with the questions presented and has already done so twice."); *Chen*, 2024 WL 4894294, at *3 (explaining that the "principle underlying the federal comity doctrine is wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" (quotation marks omitted)).

### 2. Transfer Is Not Warranted Under 1404(a)

For similar reasons, transfer to the District of Columbia is not warranted.[6]  Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "If venue is proper in either district, a district court evaluates several further (private and public) factors: (1) plaintiff's choice of forum; (2) convenience to the parties; (3) convenience to witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum."  *Consumer Financial Protection Bureau v. Nationwide Biweekly Administration, Inc.*, No. 15-cv-02106-RS, 2015 WL 4463790, at *2 (N.D. Cal. July 21, 2015).

*Plaintiffs' Choice of Forum.*  "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Anunciato*, 2020 WL 13547186, at *3 (quotation marks omitted); *see also Consumer Financial Protection Bureau*, 2015 WL 4463790, at *3 ("Ordinarily,

---

[6] Defendants contend that Chief "Judge Seeborg has described the Section 1404(a) transfer arguments advanced here as 'compelling' in a similar grant conditions case initiated by the same lead counsel against HUD."  Dkt. 41 at 20 n.7 (citing *City of Fresno*, No. 3:25-cv-07070-RS, Dkt. 65 at 5 n.3).  Defendants fail to note, however, that the arguments Judge Seeborg described as "compelling" were unrebutted since the they were raised in the Government's opposition to a motion for leave to amend and Judge Seeborg ruled on the motion before the *Fresno* plaintiffs' deadline to file a reply brief.  *See City of Fresno*, Dkts. 63, 64, 65.

RENNE PUBLIC LAW GROUP
Attorneys at Law

a court treats a plaintiff's choice of forum with significant deference."). "[T]he fact that a plaintiff has filed suit in the district where it resides is a sufficient connection to accord its choice of forum deference." *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1110 (C.D. Cal. 2007).

Defendants contend that Plaintiffs' choice of forum is accorded "minimal consideration" here since "the forum lacks a significant connection to the action." Dkt. 41 at 21 (bold removed). But this is premised erroneously on the assumption that the San Francisco Housing Authority is not a proper plaintiff in this action. Defendants' cited cases, in which the plaintiffs either did not reside in the district at the time of the harmful acts at issue, did not choose the transferor district court as their first choice, or brought a representative action, are irrelevant. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (shareholder derivative action filed in Los Angeles Superior Court and removed to federal court; "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight"); *Enomoto v. Siemens*, No. 23-cv-03779-JSC, 2023 WL 6278876, at *6 (N.D. Cal. Sept. 25, 2023) ("Plaintiffs' choice of forum usually weighs against transfer, but here it is entitled to no deference because this is a putative class action, Plaintiffs do not reside in this District, Plaintiffs have not alleged contacts with this District related to their case, and Plaintiffs have not suffered any alleged injuries in this District."); *Morris v. Safeco Ins. Co.*, No. C 07-2890 PJH, 2008 WL 5273719, at *4 (N.D. Cal. Dec. 19, 2008) (plaintiff resided in Northern District at time of lawsuit but sued Fresno Fire Department and others for harm associated with criminal charges for arson and insurance fraud based on a fire at his home in Fresno); *Southard v. Kipper Tool Co.*, No. 3:15-cv-03621-JSC, 2023 WL 6959145, at *3–4 (N.D. Cal. Oct. 19, 2023) (plaintiff was qui-tam relator that did not reside in or suffer harm in the chosen forum); *Karlen v. Wells Fargo Bank, N.A.*, No. 22-cv-02127-JSC, 2022 WL 2756671, at *2 (N.D. Cal. July 14, 2022) ("Plaintiffs' choice of forum is entitled to less weight here because they do not reside in California."); *see also Our Children's Earth Foundation v. U.S. E.P.A.*, No. C 08-01461 SBA, 2008 WL 3181583, at *5 (N.D. Cal. Aug. 4, 2008) ("Plaintiff did not oppose, and therefore conceded, Defendants' arguments that transfer to the District of Hawaii would serve the interest of justice, the convenience of parties and witnesses, and all other relevant factors.").

The San Francisco Housing Authority indisputably resides in and stands to suffer significant cognizable injury in (along with its residents) the Northern District. As one court explained in rejecting a

RENNE PUBLIC LAW GROUP
Attorneys at Law

similar argument by federal government defendants seeking to transfer an action challenging Presidential

Proclamations to the District of Columbia:

> Defendants ask us to disturb Plaintiffs' choice of forum on the grounds that only
> four of the over two hundred Plaintiffs reside here and that none of the Defendants
> live or discharge their duties here.  They encourage "Plaintiffs' selection [of
> forum] in this case should be scrutinized," insinuating a sinister motive on the
> Plaintiffs' part to select a forum in which so few individual Plaintiffs reside.  *See*
> Motion at 13.  As Plaintiffs argue, this point should be given no weight.  These
> two-hundred odd Plaintiffs, spread out as they are around the country and the
> world, chose to participate in this action in this district.

*Anunciato*, 2020 WL 13547186, at *3 (footnote omitted); *cf. CCSF*, 2025 WL 2243619, at *6 (rejecting

argument that venue was improper in Northern District "when '[t]he majority' of plaintiffs reside outside

of the District" since "[r]equiring every plaintiff in an action against the federal government or an agent

thereof to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of

litigation" (quotation marks omitted)).[7]

    ***Other § 1404(a) Factors.***  Because Defendants "fail to make a sufficiently strong showing of

inconvenience to upset plaintiff[s]'[] choice of forum, and do not establish that the other § 1404(a)

factors significantly weigh in their favor," their request for a venue transfer should be denied.  *See*

*Consumer Financial Protection Bureau*, 2015 WL 4463790, at *2.

    First, Defendants argue that the District of Columbia has a local interest in this lawsuit since "all

the federal grant condition decisions at issue in this lawsuit occurred" there.  Dkt. 41 at 21.  But this

ignores that many decisions are made at regional offices and also fails to account for the harm these

conditions pose to the San Francisco Housing Authority in the Northern District and to the local

population it serves.  What's more, as one court has recognized in an APA challenge to Presidential

Proclamations, "Defendants' reliance on the proposition that Plaintiffs' choice should be given less

weight because the challenged decision making occurred in the District of Columbia is similarly

---

[7] It also bears mentioning that the diverse coalition of public housing agency Plaintiffs that Defendants oppose here is a natural result of the administration's victory in *CASA*.  *See CASA, Inc.*, 606 U.S. at 855 (abolishing universal injunctions despite argument that "forcing plaintiffs to proceed on an individual basis can result in confusion or piecemeal litigation that imposes unnecessary costs on courts and others").  Had the Supreme Court upheld the use of universal injunctions, then perhaps the individual plaintiffs in this case would not have had to seek relief on their own.  But they had to do so.  Given the importance of safeguarding the public fisc—particularly given the threatened loss of federal funding—it was perfectly reasonable of the plaintiffs to bring their claims together in one forum for the sake of convenience and efficiency.

RENNE PUBLIC LAW GROUP
Attorneys at Law

misplaced.  While it may be true that less deference is appropriate where the conduct out of which the case arises occurred in a different forum, for APA cases where the decision making process occurred, Defendants have not demonstrated what great inconvenience will follow adjudication of this matter in this district."  *Anunciato*, 2020 WL 13547186, at *3.

Next, Defendants contend that the "interest of justice and judicial economy" favor transfer.  Dkt. 41 at 22 (bold removed).  However, Defendants merely reiterate that transferring the case to the District of Columbia would allow it to be adjudicated in the forum where all federal grant funding decisions were made.  Defendants again ignore that many decisions are made at regional offices and make no showing of any inconvenience in this APA case.  *See supra.*

Finally, Defendants argue (and improperly seek to shift the burden to Plaintiffs) that the convenience of witnesses and access to proof weigh in favor of transfer to the District of Columbia because "the administrative record is located there."  Dkt. 41 at 22.  But the inconvenience to defendants is less pronounced given their regional presence in Northern California.  *See Consumer Financial Protection Bureau*, 2015 WL 4463790, at *5 ("Though CFPB has its headquarters in Washington, D.C., the agency has an office in San Francisco, providing resources that make litigating in this District more convenient for CFPB than in the Southern District of Ohio"); *Stoll v. Rimini Street, Inc.*, No. 21-cv-01930-JST, 2021 WL 6618642, at *4 (N.D. Cal. Sept. 14, 2021) ("And given RSI's presence in both districts, the Court finds that the convenience of the parties factor is neutral").  More fundamentally, "transfer should not be granted if the effect is simply to shift the inconvenience to the plaintiff."  *Doe v. Epic Games, Inc.,* 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (quotation marks omitted); *see Holliday v. Lifestyle Lift, Inc.*, No. C 09-4995 RS, 2010 WL 3910143, at *8 (N.D. Cal. 2010) ("While it is of course true that litigation and trial in California will burden the defendants, transfer would likely only displace this burden—or worse, impose a headier one—onto plaintiff.").  In addition, as courts have recognized, "discretion counsels against disturbing Plaintiffs' selection" since "[a]ny administrative record in this case would be produced electronically in any event and any witnesses, depositions, or other live discovery can take place telephonically or by videoconference…"  *Anunciato*, 2020 WL 13547186, at *3; *accord Behring Reg'l Ctr. LLC*, 2021 WL 1164839, at *3 ("By Defendants' reasoning nearly all APA action should be decided in the District of Columbia, but there is no such rule."); *In re Chamber of*

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Com. of United States of Am.*, 105 F.4th 297, 307 (5th Cir. 2024) ("If Congress wants to enshrine D.D.C. as a venue for APA challenges or cases where a federal agency or other D.C.-based government actor is the defendant, it can easily do so.  But it hasn't.").

**V.      CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss and/or transfer should be denied.


Dated:  February 17, 2026                           RENNE PUBLIC LAW GROUP


                                                    By:  _____*/s/ Ryan P. McGinley-Stempel*_____
                                                            RYAN P. MCGINLEY-STEMPEL

                                                    Attorney for Plaintiffs
                                                    HOUSING AUTHORITY OF THE COUNTY
                                                    OF SAN DIEGO; HOME FORWARD;
                                                    HOUSING AUTHORITY OF THE CITY OF
                                                    LOS ANGELES; LOS ANGELES COUNTY
                                                    DEVELOPMENT AUTHORITY; HOUSING
                                                    AUTHORITY OF THE CITY OF SALEM;
                                                    HOUSING AUTHORITY OF BALTIMORE
                                                    CITY; SAN DIEGO HOUSING COMMISSION

Dated:  February 17, 2026                           SAN FRANCISCO CITY ATTORNEY'S
                                                    OFFICE


                                                    By:  _____*/s/ Ronald H. Lee*_____
                                                            RONALD H. LEE

                                                    Attorney for Plaintiff
                                                    HOUSING AUTHORITY OF THE CITY AND
                                                    COUNTY OF SAN FRANCISCO

**ECF ATTESTATION**

I, RYAN P. MCGINLEY-STEMPEL, am the ECF user whose identification and password are being used to file PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.

Dated:  February 17, 2026                              RENNE PUBLIC LAW GROUP


By:  _____*/s/ Ryan P. McGinley-Stempel*_____
        RYAN P. MCGINLEY-STEMPEL

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER  - Case No. 4:25-cv-08859-JST

RENNE PUBLIC LAW GROUP
Attorneys at Law