CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
MICHELLE LO (NYRN 4325163)
Acting Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7224
    Facsimile: (415) 436-6748
    jevechius.bernardoni@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HOUSING AUTHORITY OF THE COUNTY OF SAN DIEGO, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>SCOTT TURNER, *et al.*,<br><br>    Defendants. | Case No. 4:25-cv-8859-JST<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER** |

## I. Introduction

This case raises the question of how many overlapping federal court actions can various departments and sub-departments of the City and County of San Francisco—all of which are represented by the San Francisco City Attorney's Office—simultaneously pursue to challenge identical federal grant conditions imposed by the U.S. Department of Housing and Urban Development ("HUD"). Under the claim-splitting doctrine, the answer is one. The Court should not permit Plaintiffs to litigate their overlapping claims regarding HUD's grant conditions here and should dismiss this action or, in the alternative, transfer it.

Plaintiffs' opposition (ECF No. 45, "Opp.") opens with the observation that the instant motion does not challenge the merits of the underlying lawsuit. True, but Defendants intend to address the merits in due course, in the proper forum, and with responsible utilization of limited federal judicial resources.[1] Although Defendants do not challenge the merits at this juncture, the procedural concerns posed here are no less consequential than the merits of the underlying suit. Simply stated, "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously," and the claim-splitting doctrine thus strongly counsels against allowing Plaintiffs to pursue this lawsuit in the Northern District of California. *WMATA v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980). The Opposition fails to rebut Defendants' showing that the claim-splitting doctrine, the first-to-file rule, and Section 1404(a) transfer are proper here, and Defendants' motion should be granted.

## II. Plaintiffs Other Than Housing Authority Of The City Of Salem Must Pursue Their Claims Against HUD In The Western District Of Washington

Principally relying on the "simple fact that the public housing agency Plaintiffs are distinct legal entities," Plaintiffs argue that Defendants "fall woefully short" of the preclusion standard established in *Taylor v. Sturgell*, 553 U.S. 880 (2008). Opp. at 9-10. Plaintiffs' arguments misapply the governing law and ignore both the City and County of San Francisco's requests for relief and the court's resulting orders

---

[1] It bears repeating that Defendants tried to avoid burdening the Court with this motion to dismiss or transfer and repeatedly asked Plaintiffs if they would stipulate to stay this case pending the outcome of the appeal in *Martin Luther King, Jr. County v. Turner*, No. 25-cv-00814-BJR (W.D. Wash.). Plaintiffs refused to do so. And although this entire motion is grounded on Plaintiffs' inefficient and duplicative use of federal judicial resources, the Opposition does not even mention, much less explain, Plaintiffs' refusal to stay these proceedings in the interest of judicial efficiency.

in *Martin Luther King, Jr. County v. Turner*, No. 25-cv-00814-BJR (W.D. Wash.) ("*King County*").

As an initial matter, the Supreme Court's *Taylor* decision does not involve the claim-splitting doctrine; it instead establishes the federal *res judicata* standard under which non-parties can be prevented from bringing post-final-judgment repetitive lawsuits. *See Taylor*, 553 U.S. at 892-93. Here, however, there is no final-judgment bar, and Defendants do not seek to preclude SF Housing Authority from litigating its claims against HUD. Defendants instead assert that SF Housing Authority should be required to litigate its challenges to HUD's grant conditions in the Western District of Washington, where the City and County of San Francisco is simultaneously suing identical defendants over identical grant conditions. Granting this motion thus would not preclude SF Housing Authority from seeking relief, but rather would redirect that challenge to the Western District of Washington, consistent with the objectives of the claim-splitting rule, *i.e.*, "to protect the defendant from being harassed by repetitive actions based on the same claim" and promote judicial economy and convenience. *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 328 (9th Cir. 1995); Restatement (Second) of Judgments § 24; *see also Wyles v. Sussman*, 661 F. App'x 548, 550 (10th Cir. 2016) (claim-splitting rule "exists to allow district courts to manage their docket").

But even assuming *Taylor* controlled the claim-splitting analysis here, the Supreme Court's *res judicata* standard unambiguously teaches that SF Housing Authority is not allowed to pursue this overlapping lawsuit in the Northern District of California. Plaintiffs' arguments to the contrary misconstrue *Taylor* and ignore the relevant *King County* proceedings.

The Opposition never squarely addresses the first prong of the *Taylor* test (*i.e.*, whether the "interests of the nonparty and her representative are aligned"). *Taylor*, 553 U.S. at 900. At most, the Opposition makes the conclusory assertion that "public housing agencies have different legal interests from the cities and counties that create them" (Opp. at 1); that may be true, but Plaintiffs fail to describe how *any* of those interests differ as applied to this case and *King County*. Plaintiffs similarly assert that they "do not share the same interests as the *King County* plaintiffs" (Opp. at 13), but once again Plaintiffs elucidate no grounds that would support a finding that there is a material difference between Plaintiffs' interests here and the City and County of San Francisco's interests in *King County*. In any event, *Taylor*'s first prong does not address whether the two parties may have, in a vacuum, "different legal interests" (as

Plaintiffs frame the issue) but rather whether the parties' interests in the respective lawsuits are "aligned." *Taylor*, 553 U.S. at 900.  Here, there is no doubt that the interests of SF Housing Authority and the City and County of San Francisco are "aligned" in their simultaneous lawsuits against HUD.  Those entities, in parallel, sue the exact same defendants (HUD and HUD Secretary Turner) in separate federal district court lawsuits to enjoin the exact same HUD grant conditions.  Moreover, the legal claims in the two lawsuits overlap entirely (and recycle language substantially verbatim), *compare*:

| Complaint | *King County* Third Amended Complaint ("TAC") |
|---|---|
| ¶¶ 128-39: "Count 1:  Separation of Powers" | ¶¶ 697-710: "Count 1:  Separation of Powers" |
| ¶¶ 140-45: "Count 2:  Spending Clause" | ¶¶ 711-19: "Count 2:  Spending Clause" |
| ¶¶ 146-55: "Count 3:  Fifth Amendment Due Process – Vagueness" | ¶¶ 726-37: "Count 4:  Fifth Amendment Due Process (Vagueness)" |
| ¶¶ 156-65: "Count 4:  Administrative Procedure Act, 5 U.S.C. § 706(2) – Arbitrary and Capricious" | ¶¶ 738-56: "Count 4:  Administrative Procedure Act, 5 U.S.C. § 706(2) Arbitrary and Capricious" |
| ¶¶ 166-69: "Count 5:  Administrative Procedure Act, 5 U.S.C. § 706(2) – Contrary to the Constitution" | ¶¶ 757-62: "Count 6:  Administrative Procedure Act, 5 U.S.C. § 706(2) Contrary to Constitution" |
| ¶¶ 170-76: "Count 6:  Administrative Procedure Act, 5 U.S.C. § 706(2) – In Excess of Statutory Authority" | ¶¶ 763-71: "Count 7:  Administrative Procedure Act, 5 U.S.C. § 706(2) In Excess of Statutory Authority" |
| ¶¶ 177-83: "Count 7:  Administrative Procedure Act, 5 U.S.C. § 706(2) – Agency Action Without Procedure Required By Law" | ¶¶ 780-92: "Count 9:  Administrative Procedure Act, 5 U.S.C. § 706(2) Agency Action Without Procedure Required By Law" |

Finally, the permanent injunctive relief requested by SF Housing Authority and the City and County of San Francisco in the two lawsuits is essentially identical.  *Compare* Compl. at Prayer for Relief *with King County* TAC at Prayer for Relief.  In short, the interests of the City and County of San Francisco and SF Housing Authority in these two lawsuits are indisputably "aligned" (if not the exactly same), and Defendants thus easily meet the first prong of the *Taylor* test.

Plaintiffs' arguments regarding *Taylor*'s second prong are similarly misguided.  Plaintiffs first contend that "[t]he *King County* plaintiffs *cannot* act[] in a representative capacity . . . because . . . a housing authority is a separate state agency[.]"  Opp. at 10 (emphasis in original, citations and quotation

marks omitted). But that is not the standard set forth in second prong of the *Taylor* preclusion test. *See Taylor*, 553 U.S. at 900 (holding that preclusive effect applies where "the party understood herself to be acting in a representative capacity"). As such, rather than limiting the analysis to the statutes allowing for SF Housing Authority's creation as an independent entity—as Plaintiffs would have it—the Court must look to the plaintiffs' actual conduct in *King County* to determine whether the City and County of San Francisco "understood [itself] to be acting in a representative capacity" in that litigation. *Id.* Analyzed under the correct rubric, the City and County of San Francisco clearly understood itself to be acting in a representative capacity. For example, the City and County of San Francisco alleged that it "relies on approximately $240 million in active HUD entitlement and discretionary grant funds" but (unlike other *King County* plaintiffs) it failed to allege which HUD grant programs it was invoking to establish standing to sue HUD, thereby creating an open question as to whether it was seeking relief for itself or on behalf of other entities within its boundaries that receive HUD funding. *See King County* TAC ¶ 24. And the City and County of San Francisco unquestionably invoked alleged harms to third-party subrecipients of HUD funds—including arguably SF Housing Authority—to support its claims for relief, thereby acting in a representative capacity. *See id.* ¶ 693 ("Subrecipients of these [HUD] funds such as food banks, mental health providers, senior centers, and *affordable housing agencies* could face operational disruptions and be unable to meet the needs of low-income families"). And the City and County of San Francisco's proposed order submitted along with the third motion for preliminary injunction expressly sought relief on behalf of non-party "subrecipients." *King County*, ECF No. 186-1. The City and County of San Francisco understood itself to be acting in a representative capacity in *King County*, thereby meeting the second prong of the *Taylor* test.

Further, even if the Court accepts Plaintiffs' contention that the City and County of San Francisco did not understand itself to be acting in a representative capacity in *King County* (notwithstanding the contradictory allegations on the face of the *King County* TAC and in plaintiffs' proposed order), the *King County* court appears to have understood the City and County of San Francisco to be doing so, and it took care to protect the interests of subrecipients like SF Housing Authority. *See Taylor*, 553 U.S. at 900 (holding that the second prong of the preclusion test can also be met where "the original court took care to protect the interests of the nonparty"). Indeed, Plaintiffs' assertion that the "terms of the *King County*

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER
No. 4:25-cv-8859-JST                                4

injunction unequivocally apply only to 'HUD Plaintiffs'" (Opp. at 11 n.5) cannot be squared with the plain language of the *King County* preliminary injunctions, which prevent HUD from imposing the challenged grant conditions not only to the named *King County* plaintiffs but also to their subrecipients (like SF Housing Authority). *See King County*, ECF Nos. 338 & 381 (enjoining HUD from "imposing or enforcing the . . . HUD Grant Conditions . . . with respect to any . . . HUD funds awarded to the . . . HUD Plaintiffs, their consortia, or their *subrecipients*") (emphasis added)).

Invoking *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), Plaintiffs also argue that the relief sought in *King County* is limited to the named parties in that case (Opp. at 11), but that assertion does not withstand scrutiny. The City and County of San Francisco defined itself as one of the continuum of care plaintiffs in that lawsuit ("CoC Plaintiffs") (*King County* TAC ¶¶ 360-69) and then expressly sought relief on behalf of non-party "members of CoC Plaintiffs' Continuums[.]"[2] *Id.* at Prayer for Relief ¶ B. The *King County* court then accepted the City and County of San Francisco's attempt to act in a representative capacity and issued an injunction not just with respect to the CoC Plaintiffs, but also to non-party "members of their Continuums[.]" ECF No. 338 at 36. In short, contrary to Plaintiffs' arguments, the terms of the *King County* preliminary injunction are not limited to the named plaintiffs in that case. Accordingly, in full conformance with the *Taylor* standard, the City and County of San Francisco understood itself to be acting in a representative capacity in *King County* and the *King County* court took care to protect the interests of non-party subrecipients like SF Housing Authority.

Since the preclusion standard established in *Taylor* prevents SF Housing Authority from splitting its claims and litigating this overlapping grant conditions case in the Northern District of California, Defendants need not show anything else—SF Housing Authority's claims should be dismissed, and the remainder of the case should be dismissed for lack of venue. However, a couple of additional points are

---

[2] HUD defines a Continuum of Care as the group organized to carry out the responsibilities prescribed in the CoC Program Interim Rule for a defined geographic area, which is typically composed of representatives of organizations including: nonprofit homeless providers, victim service providers, faith-based organizations, governments, businesses, advocates, public housing agencies, school districts, social service providers, mental health agencies, hospitals, universities, affordable housing developers, law enforcement, organizations that serve homeless and formerly homeless veterans, and homeless and formerly homeless persons. *See* https://www.hudexchange.info/faqs/1545/what-is-a-continuum-of-care/#:~:text=A%20Continuum%20of%20Care%20(CoC,Tags:%20CoC%20Program%20Administration%20%2D%20General. Non-parties covered by the *King County* preliminary injunction were not limited to CoC members, but also included consortia and subrecipients. *King County*, ECF Nos. 338 & 381.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER
No. 4:25-cv-8859-JST                                           5

worth a brief discussion.

First, Plaintiffs argue that they "cannot rely on the pendency or outcome of the *King County* litigation to safeguard their own federally funded programs and liability interests." Opp. at 11. This is a red herring—Defendants do not suggest that SF Housing Authority should rely on the outcome of *King County* to protect their interests, and Defendants do not suggest that SF Housing Authority is precluded from litigating its grant conditions claims. In fact, Defendants agree that, notwithstanding the overlap in the two cases, there are HUD grant programs at issue in this case that are not at issue in *King County*. Defendants simply posit that SF Housing Authority cannot split its grant conditions challenges against HUD (the same grant conditions challenged in *King County*) across two federal court lawsuits. SF Housing Authority is thus free to litigate its claims against HUD, but it must do so in the Western District of Washington.

Second, Plaintiffs quote language from a footnote of Defendants' motion to suggest that the San Francisco City Attorney's Office's representation of SF Housing Authority here and of the City and County of San Francisco in *King County* does not undermine SF Housing Authority's independence. Opp. at 12. But Defendants do not contest that SF Housing Authority is an independent entity, and the language quoted by Plaintiffs is contained in a footnote acknowledging that legal background. *See* Mot. at 11 n.5. What the City Attorney's Office's dual representation does show, however, is that SF Housing Authority had "notice of the original suit" when it elected to file a separate lawsuit in a different federal district court challenging the exact same HUD grant conditions. *Taylor*, 553 U.S. at 900. As such, this is not a case of inadvertent duplicative and inefficient use of federal judicial resources—counsel, and the parties they represent, have been aware from the moment they filed this lawsuit (and before) that they seek multiple bites at the same apple.

For the sake of simplicity and because SF Housing Authority provides the *only* basis for venue in this District, the analysis here focuses on SF Housing Authority. But the same arguments apply to the six other Plaintiffs that are impermissibly splitting their claims (*i.e.*, SD Housing Authority, LA Housing Authority, Baltimore Housing Authority, Home Forward, LA County Development Authority, and SD Housing Commission). Those Plaintiffs also cannot pursue their claims against HUD in this lawsuit.

**III.    In The Alternative, The Case Should Be Transferred To The Western District Of Washington Under The First-To-File Rule**

Plaintiffs do not contest the first element (chronology) of the first-to-file rule and limit their discussion to the second (similarity of parties) and third (similarity of issues) elements. Opp. at 14-15. Both elements, however, also weigh in favor of transfer to the Western District of Washington.

With respect to the similarity of parties element, Plaintiffs reference their discussion of the claim-splitting doctrine and conclude that "none of the plaintiffs in this action (or their privies) is a plaintiff in the *King County* action." Opp. at 14. But the claim-splitting doctrine *does* apply under these facts, including under the Supreme Court's *Taylor* standard. *See supra* Part II. And Plaintiffs' assertion that courts do not transfer "a case under the first-to-file rule when there was no overlap in parties on one side of the 'v'" (Opp. at 14, quoting *Behring Regional Ctr. LLC v. Wolf*, No. 20-cv-09263-JSC, 2021 WL 1164839, at *2 (N.D. Cal. Mar. 26, 2021)), is belied by courts routinely applying the first-to-file rule, including to privies, even where the plaintiffs in the two lawsuits are different. *See, e.g.*, *Gonzalez v. Unitedhealth Grp., Inc.*, No. 19-cv-00700, 2020 WL 2992174, at *3 (W.D. Tex. June 3, 2020) (applying the first-to-file rule even where the two cases involved "unique plaintiffs"); *Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810, 815 (6th Cir. 1954) (invoking privity among the defendants as a factor to invoke the first-to-file rule); *SRH Holdings, LLC v. Gov't Emps. Ins. Co.*, No. 23-cv-10325, 2023 WL 4706176, at *3 (D. Mass. July 24, 2023) (applying first-to-file rule where the plaintiff was not a party to the first-filed lawsuit); *Tex. Ins. Co. v. Ares Ins. Managers LLC*, No. 23-cv-01473, 2023 WL 8237113, at *6-7 (W.D. Wash. Nov. 28, 2023); *Aero Advanced Paint Tech., Inc. v. Int'l Aero Prods., LLC*, 351 F. Supp. 3d 1067, 1071 (S.D. Ohio 2018); *Google Inc. v. Rockstar Consortium U.S. LP*, No. 13-cv-5933-CW, 2014 WL 1571807, at *9 (N.D. Cal. Apr. 17, 2014) (noting, in *dicta*, that parties in privity are subject to the first-to-file rule); *Hermanson v. Lenovo Grp. Ltd.*, No. 23-cv-05890-JSW, 2024 WL 819566, at *4 (N.D. Cal. Feb. 27, 2024) (under first-to-file rule, courts "examine[] whether the causes of action and relief sought, as well as the parties or privies to the action, are the same") (citation and quotation marks omitted). Accordingly, the similarity of parties element weighs in favor of transfer here.

Plaintiffs appear to concede that the third element—similarity of issues—also weighs in favor of applying the first-to-file rule since they acknowledge that the issues in the two lawsuits are "related" but

"not identical." Opp. at 14. Standing alone, that admission is sufficient to apply the first-to-file rule since the issues need be only "substantially similar," not identical. *May Chen v. Xiyan Zhang*, No. 24-cv-03942-JST, 2024 WL 4894294, at *3 (N.D. Cal. Nov. 25, 2024). However, to the extent Plaintiffs contend that the issues are not "substantially similar" because this lawsuit "deals with different grants authorized by different statutory frameworks than the ones raised by the plaintiffs in *King County*" (Opp. at 14), that position is irreconcilable with the position previously taken—and still maintained—by this same lead counsel in *City of Fresno v. Turner*, No. 3:25-cv-07070-RS (N.D. Cal.). In that case, lead counsel joined HUD, the U.S. Department of Health and Human Services, the U.S. Environmental Protection Agency, the U.S. Department of Transportation, the Federal Transit Administration, the Federal Highway Administration, the Federal Aviation Administration, the Federal Railroad Administration, and the National Highway Traffic Safety Administration in one omnibus grant conditions lawsuit, on the purported grounds that the grant conditions imposed by these disparate agencies (each of which involved "grants authorized by different statutory frameworks") were "materially similar." *See City of Fresno*, ECF No. 63.[3] Counsel cannot defeat the first-to-file rule here by arguing that the same grant conditions imposed by *one* agency (HUD) fail to present "identical" legal issues while simultaneously joining *nine* federal agencies/components under Federal Rule of Civil Procedure 20(a)(2) in one sprawling grant conditions lawsuit with the fundamentally inconsistent logic that the distinct grant conditions imposed by those nine agencies/components are "materially similar."[4]

Finally, Plaintiffs argue that "judicial economy would not be served by transfer, given that this Court has already invested resources in this litigation by issuing a temporary restraining order and a preliminary injunction[.]" Opp. at 15. But that argument just perpetuates the judicial inefficiencies that

---

[3] Further undermining the "different statutory frameworks" argument advanced by Plaintiffs here, the *City of Fresno* plaintiffs' motion to file a second amended complaint also sought to add the U.S. Department of Homeland Security, the Federal Emergency Management Agency, the U.S. Department of the Interior, and the U.S. Department of Justice to challenge those distinct agencies' grant conditions. *See City of Fresno*, ECF No. 63. Judge Seeborg denied that aspect of their request. *City of Fresno*, ECF No. 65.

[4] The *City of Fresno* case demonstrates that the efficient use of federal judicial resources, claim-splitting, and venue concerns present in the case before this Court are not unique. Indeed, *City of Fresno* is yet another overlapping challenge to the identical HUD grant conditions filed by the same lead counsel in this case. And *City of Fresno* similarly has highly attenuated connections to this District; just like this case, when *City of Fresno* was first filed, only one of the plaintiffs (the City of Eureka) was located here.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER
No. 4:25-cv-8859-JST                                          8

Plaintiffs themselves created by filing overlapping lawsuits challenging the exact same HUD grant conditions before multiple Article III judges. Plaintiffs should not be permitted to compound their burdens on the judiciary simply because they already asked this Court (twice) to duplicate work already being done by other federal judges, both in this District and in the Western District of Washington.

### IV. Even If Venue Were Proper Here, The Case Still Should Be Transferred To The District Court For The District Of Columbia Under 28 U.S.C. § 1404(a)

Plaintiffs also argue that transfer to the District Court for the District of Columbia under 28 U.S.C. § 1404(a) is not warranted. But Plaintiffs' arguments overstate the deference that should be applied to Plaintiffs' choice to litigate in this forum and improperly de-emphasize the remaining transfer factors.

First, Plaintiffs essentially argue that their choice to file in the Northern District of California (notwithstanding that almost 90% of these Plaintiffs have no relationship to this District) creates a next-to-irrebuttable presumption that the case should remain here. But, as Judge Seeborg has observed, deference to plaintiffs' choice of forum in APA cases of national import, where the impacts are felt equally across the country, and where the agency decisions did not occur in this District is "diminished." *Ecological Rights Found. v. United States EPA*, No. 19-cv-04242-RS, 2019 WL 5295124, at *3 (N.D. Cal. Oct. 19, 2019). Adding to that diminished deference is the fact that SF Housing Authority's choice to initiate suit in this District—notwithstanding its knowledge of and coverage by the City and County of San Francisco's overlapping lawsuit in the Western District of Washington—is questionable, at best. And the remaining seven Plaintiffs simply piggyback on SF Housing Authority's shaky venue decision; they would have no right to file a standalone complaint in this District. At base, then, the "chosen forum lacks a significant connection to the events that gave rise to the complaint," and Plaintiffs' forum selection should be given minimal deference under the attenuated facts of this case. *Morris v. Safeco Ins. Co.*, No. 07-cv-2890-PJH, 2008 WL 5273719, at *3 (N.D. Cal. Dec. 19, 2008).

Second, Plaintiffs attempt to refute the fact that HUD's nationwide grant conditions decisions were made at its headquarters in Washington, D.C. with the conclusory assertion "that many decisions are made at regional offices[.]" Opp. at 17. But Plaintiffs proffer no factual support for this assertion, nor do they connect the purported—but unidentified—decisions made at regional offices with the grant conditions challenges at issue in this lawsuit. In reality, "this is not a 'local' controversy" and "this district does not

have any special interest in the outcome of this litigation" because no party "has any contacts with this district *related* to the facts underlying this case." *Ecological Rights Found.*, 2019 WL 5295124, at *3 (emphasis in original). Instead, "citizens in every district are equally affected by" HUD's grant conditions, and in APA cases "courts generally focus on where the decisionmaking process occurred to determine where the claims arose." *Id.* (quoting *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 313 (D.D.C. 2015)).

Finally, Plaintiffs argue that they would be inconvenienced if the case were transferred away from the Northern District of California (Opp. at 18-19), but it is unclear how this could be so: more than 87% of the Plaintiffs are not located in this District, and this District is thus no more convenient for them than any other. And because this is an APA review case, the lawsuit will be resolved on cross-motions for summary judgment, rendering any appearance by employees of SF Housing Authority, the lone in-district plaintiff, unnecessary. Finally, to the extent Plaintiffs seek to rely on the convenience of their counsel (as opposed to Plaintiffs themselves), any such reliance is misplaced. *See Devaux-Spitzley v. Prudential Ins. Co. of Am.*, No. 18-cv-04436-JST, 2019 WL 935137, at *4 (N.D. Cal. Feb. 26, 2019) (the "convenience of counsel is not considered for purposes of deciding whether a venue is convenient for the purposes of § 1404(a)") (citation and quotation marks omitted). In contrast to Plaintiffs, however, litigating in the District Court for the District of Columbia would be significantly more convenient for Defendants because the administrative record is located in that district.

## V.   Conclusion

For the foregoing reasons, and as further established in Defendants' motion, the Court should dismiss the claims of SF Housing Authority, SD Housing Authority, LA Housing Authority, Baltimore Housing Authority, Home Forward, LA County Development Authority, and SD Housing Commission under the claim-splitting doctrine and dismiss the lawsuit in its entirety under Federal Rule of Civil Procedure 12(b)(3) for lack of venue. In the alternative, the Court should transfer the case to the Western District of Washington under the first-to-file rule or to the District Court for the District of Columbia under 28 U.S.C. § 1404(a).

//

//

| | |
|---|---|
| DATED: February 24, 2026 | Respectfully submitted, |
| | CRAIG H. MISSAKIAN<br>United States Attorney |
| | */s/ Jevechius D. Bernardoni*<br>JEVECHIUS D. BERNARDONI<br>Assistant United States Attorney |
| | Attorneys for Defendants |