

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CITY OF FRESNO, et al.,

Plaintiffs,

v.

SCOTT TURNER, et al.,

Defendants.

Case No.  25-cv-07070-RS

**ORDER DENYING MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER AND GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

This action challenges grant conditions imposed by federal agencies, reflecting executive orders by President Trump. The grant conditions require grantees to certify they do not promote diversity, equity, and inclusion, gender ideology, or elective abortion and will cooperate with federal immigration enforcement. Plaintiffs are local government entities that rely on Defendants' funding to provide critical services to their constituents. Defendants move to dismiss or in the alternative transfer the case while Plaintiffs move for an expanded preliminary injunction, which would extend the initial preliminary injunction issued by this Court in September 2025 to parties newly joined in the Second Amended Complaint ("SAC").

Having lost in attacking the merits of Plaintiffs' claims in their opposition to the initial motion for preliminary injunction, Defendants largely focus their arguments now on other issues: claim-splitting, venue, and justiciability. As set forth below, these attacks fail. Plaintiffs' arguments for extension of injunctive relief succeed, but their request for a stay of Defendant agency action is denied because it is not necessary to provide complete relief to Plaintiffs.

## II. BACKGROUND

The relevant background prior to the filing of the SAC was set out in this Court's prior orders and is only briefly repeated here. Between January and August 2025, President Trump issued a series of Executive Orders directing executive agencies to impose new conditions on federal grants (collectively, the "Grant Condition Executive Orders"). Taking heed, the Defendant agencies here, among other agencies, announced new grant conditions requiring grantees to certify they will prohibit the promotion of "diversity, equity, and inclusion," i.e., DEI, gender ideology, and elective abortion and will cooperate with federal immigration enforcement efforts.

In the First Amended Complaint ("FAC"), eleven cities, counties, and a county airport authority who receive millions of dollars in federal grant funding brought suit against the U.S. Department of Housing and Urban Development ("HUD") and the U.S. Department of Transportation ("DOT"), including the Federal Transit Administration ("FTA"), Federal Highway Administration ("FHWA"), Federal Aviation Administration ('FAA"), the U.S. Department of Health and Human Services ("HHS"), the U.S. Environmental Protection Agency ("EPA"), and their agency heads (collectively, "FAC Defendants"). The "FAC Plaintiffs" were the Cities of Alameda, Eureka, Fresno, Redwood City, South Lake Tahoe, and Saint Paul, Minnesota; the Counties of Sacramento, San Diego, Marin, and Monroe, New York; and the Monroe County Airport Authority. On September 23, 2025, a preliminary injunction was issued in favor of all eleven FAC Plaintiffs against all FAC Defendants except for EPA. This Court found, along with the other preliminary injunction factors, a likelihood of success on the merits of FAC Plaintiffs' claims that the grant conditions violated the Administrative Procedure Act ("APA") as arbitrary and capricious, in excess of statutory authority, and contrary to the Constitution.

On February 9, 2026, the Parties' joint stipulation regarding the filing of the SAC was granted. The SAC was filed that same day, adding new plaintiffs and defendants. "Additional Plaintiffs" are the Cities of Atlanta, Beaverton, Corvallis, Hillsboro, Mountain View, Salem, San Mateo, Santa Clara, Santa Cruz, Stockton, Sunnyvale, and Vacaville and the Counties of Los Angeles and Santa Barbara. "Additional Defendants" are the Federal Railway Administration

United States District Court
Northern District of California

("FRA"), the National Highway Traffic Safety Administration ("NHTSA"), and their agency heads named in their official capacities. Both FRA and NHTSA are operating administrations of DOT, which has been a defendant in this action since its original filing.

On March 5, 2026, Plaintiffs filed an expanded motion for preliminary injunction seeking to augment the initial preliminary injunction to add new parties and stay agency action pursuant to 5 U.S.C. § 705. On March 9, 2025, Defendants moved to dismiss or in the alternative transfer the matter.

### III. ANALYSIS

#### A.  Dismissal In Light of Claim-Splitting

The doctrine of claim-splitting bars a party from bringing claims arising from the same set of facts in successive actions, rather than bringing them all at once. *United States v. Haytian Republic*, 154 U.S. 118, 125 (1894) (A party is "not at liberty to split up his demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible."). *See also Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) ("Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.") (internal quotation marks and citation omitted*), overruled in part on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). If a court determines that a party has impermissibly split her claims, it may exercise its discretion to "dismiss [the] duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Adams*, 487 F.3d at 688.

When jurisdiction is based on a federal question, "the bar of claim-splitting is applicable if the second suit involves (1) the same causes of action as the first; *and* (2) the same parties or their privies." *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022) (emphasis added). "To ascertain whether successive causes of action are the same, [courts] use the transaction test, developed in the context of claim preclusion." *Adams*, 487 F.3d at 689. They

United States District Court
Northern District of California

examine four criteria: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Id.* (internal quotation marks and citation omitted). "The last of these criteria is the most important." *Id.* (internal quotation marks and citation omitted). *See also Mendoza v. Amalgamated Transit Union Intl.*, 30 F.4th 879, 887 (9th Cir. 2022).

As to the second, whether the parties are the same or in privity, the Supreme Court recognizes six exceptions to the rule that "a litigant is not bound by a judgment to which she was not a party": when (1) a person agrees to be bound; (2) there is a preexisting substantive legal relationship arising "from the needs of property law," such as "succeeding owners of property, bailee and bailor, and assignee and assignor[;]" (3) a nonparty "in certain limited circumstances" was adequately represented; (4) a nonparty assumed control over the prior litigation; (5) the second litigation is being relitigated through a proxy to the first; and (6) there are special statutory schemes. *Taylor*, 553 U.S. at 893–95, 898 (internal quotation marks and citations omitted). "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty[.]" *Id.* at 900 (internal citations omitted).

Defendants here insist Plaintiffs have improperly split claims in light of three other matters, *City & County of San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.), *Martin Luther King, Jr. County, et al. v. Turner, et al.*, No. 2:25-cv-00814-BJR (W.D. Wash.), and *Housing Authority of the County of San Diego, et al. v. Turner, et al.*, No. 4:25-cv-08859-JST (N.D. Cal.). To be sure, these cases engage with similar issues, but they rely on different evidence, arise out of separate facts, and/or name different parties which are not in privity. Thus, dismissal pursuant to the claim-splitting doctrine is not warranted.

**i.** *City & County of San Francisco, et al. v. Trump, et al.*

*City & County of San Francisco, et al. v. Trump, et al.* ("*CCSF*") preceded this case. No. 3:25-cv-01350-WHO (N.D. Cal.). In February 2025, a group of local governments, including Saint Paul, Santa Cruz, and Marin which are Plaintiffs here, brought an action in this district against government agencies and officials challenging the administration's effort to restrict federal funding for "sanctuary jurisdictions" under Executive Orders 14,159 and 14,218. None of those defendants are Defendants here. A preliminary injunction issued, the reach of which was clarified and extended in a series of successive orders. The injunction enjoined defendants and any other agency or individual acting in concert with or as an agent of the President from withholding or conditioning federal funds based on immigration conditions arising from the sanctuary city executive orders.

Defendants argue that, although no Defendants here are *CCSF* defendants, the challenges in this case by Saint Paul, Santa Cruz, and Marin improperly split claims with *CCSF* because they implicate some of the same grant funding. Yet, the *CCSF* injunction reached that funding through invalidation of the immigration executive orders, not analysis of agency action by HHS, HUD, DOT, FAA, FHWA, or FTA. *CCSF* did enjoin grant conditions based on DOJ's activity, but naming different agency defendants necessarily implicates different facts and evidence. As Defendants have made sure to argue in this matter and this Court explained in denying the first motion for leave to file a SAC, whether agency action imposing grant conditions is unlawful under the APA (or derivatively the Constitution) requires analysis particular to the agency; its characterization, announcement, and enforcement of the conditions; and its authorizing authority. Since no Defendant agency or agency-official here are defendants in *CCSF*, the matters arise out of and depend on evidence from distinct nuclei of facts specific to each agency defendant.

**ii.** *Martin Luther King, Jr. County, et al. v. Turner, et al.*

In May 2025, a group of local governmental entities filed suit in the Western District of Washington against HUD, DOT, and FTA and each agency head, challenging grant conditions related to the grant condition Executive orders. *Martin Luther King, Jr. County, et al. v. Turner, et*

United States District Court
Northern District of California

*al.* ("*King County*"), No. 2:25-cv-00814-BJR (W.D. Wash.). While HUD, DOT, and FTA are each also Defendants here, and many of the challenges are the same, there is no overlap in plaintiffs. Nonetheless, Defendants argue there is claim-splitting because some Plaintiffs are in privity with the *King County* plaintiff the Los Angeles Homeless Service Authority ("LAHSA"), a joint powers authority of Plaintiff Los Angeles County. Los Angeles County did not agree to be bound by LAHSA, take control over the *King County* litigation, or relitigate here as a proxy for LAHSA. *See Taylor*, 553 U.S. 880 at 893–95. Regarding the remaining exceptions recognized in *Taylor*, California law makes clear that there is no preexisting legal relationship like those arising from property law, no special statutory scheme, and no adequate representation warranting nonparty preclusion. *See id.* LAHSA was created under the Joint Powers Act expressly as "a public entity *separate* from the parties" that created it, i.e., the County and City of Los Angeles, and it was created with "the power to sue and be sued in its own name." Cal. Gov't Code § 6507 (emphasis added); *id.* § 6508. *See also See San Diegans for Open Government v. City of San Diego*, 242 Cal. App. 4th 416, 436 (2015) ("Under the Joint Exercise of Powers Act, the Financing Authority has a genuine separate existence from the City." (citing Cal. Gov't Code §§ 6503.5, 6507, 6551)); *Gen. Land Off. v. Biden*, 71 F.4th 264, 270 (5th Cir. 2023) ("Where lawsuits involve different agencies of the same state, the 'crucial point is whether or not in the earlier litigation the representative of [the state] had authority to represent [the state's] interests in a final adjudication of the issue in controversy.'" (citing *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 403 (1940)).

Defendants counter that nonparty preclusion should apply because in *King County* LAHSA obtained preliminary relief on behalf of the Los Angeles Continuum of Care, which includes Los Angeles County. However, in *Taylor v. Sturgell* the Supreme Court expressly rejected an expansive version of nonparty preclusion wherein "[p]reclusion [would be] in order whenever the relationship between a party and a non-party [wa]s close enough to bring the second litigant within the judgment." 553 U.S. at 898 (internal quotation marks and citations omitted). Moreover, here Los Angeles County is not seeking relief in connection with Continuum of Care funding. In short, Defendants' arguments as to privity for purposes of nonparty preclusion between LAHSA and

Plaintiffs here fails.

### iii.   *Housing Authority of the County of San Diego, et al. v. Turner, et al.*

In October 2025, two months after the filing of this lawsuit, eight public housing agencies filed suit in this district against HUD, a Defendant here, seeking to enjoin HUD from imposing similar grant conditions.[1] *Housing Authority of the County of San Diego, et al. v. Turner, et al.* ("*San Diego Housing Authority*"), No. 4:25-cv-08859-JST (N.D. Cal.). None of the plaintiffs in *San Diego Housing Authority* is a party to this case. Yet, Defendants argue that the Counties of Los Angeles and San Diego are in privity with two *San Diego Housing Authority* plaintiffs, the San Diego County Housing Authority ("SDHA") and the Los Angeles County Development Authority ("LACDA").

The SDHA was established pursuant to a California statutory scheme "under which housing authorities are created in order to access *federal* money available under the United States Housing Act of 1937." *Lynch v. San Francisco Housing Auth.*, 55 Cal. App. 4th 527, 541 (1997) (citing *Housing Auth. of City of Los Angeles v. City of Los Angeles*, 38 Cal.2d 853, 860 (1952)) (original emphasis). California housing authorities are established as independent public corporations distinct from county or city government. Cal. Health & Safety Code §§ 34200 et seq. They have independent legal status with the power to sue and be sued, *id.* § 34311, enter contracts, *id.*, and seize property, *id.* § 34325. Public housing authorities may borrow money or accept grants or other financial assistance from the federal government, *id.* § 34327, may issue their own bonds, *id.* § 34350, and their debts and obligations are not those of any city or county, *id.* § 34353.

The LACDA is "vested with the powers, duties, and responsibilities of the commissioners of the housing authority." *Id.* § 34118(a). *See also id.* § 34141. The LACDA also may "operate and govern the [Los Angeles] housing authority" pursuant to an ordinance declaring "that the commission shall be vested with the rights, powers, duties, and responsibilities of the

---

[1] On a motion to determine whether *San Diego Housing* should be related to this matter, this Court found that the cases are not related.

commissioners of the housing authority." L.A. County Code §§ 2.58.010, 2.58.030 (declaring need for LACDA to "operate and govern the housing authority functions of the County of Los Angeles" and "the Los Angeles County Development Authority shall be vested with the rights, powers, duties, and responsibilities of the Commissioners of the Housing Authority of the County of Los Angeles").

As before, Defendants fail to show that SDHA or LACDA have authority to bind San Diego or Los Angeles Counties, respectively; a preexisting legal relationship exists akin to those arising out of property law; San Diego or Los Angeles Counties assumed control over *San Diego Housing Authority*; San Diego or Los Angeles Counties are proxies for SDHA or LACDA, respectively; or the statutory schemes provide for nonparty preclusion. *See Taylor*, 553 U.S. at 893–95. Defendants also fail to show adequate representation as they make no showing that the housing authorities' and counties' interests were aligned and the housing authorities understood themselves to be acting in a representative capacity or that the *San Diego Housing Authority* took care to protect the interests of the counties. *See id.* at 900. *See also McLemore v. Marin Housing Authority*, No. 20-cv-05431-JD, 2021 WL 4124220, at \*2 (N.D. Cal. Sept. 9, 2021) (A housing authority is a separate state agency and 'not an agent of the city in which it functions.'" (quoting *Hous. Auth. of City of Los Angeles v. City of Los Angeles*, 38 Cal. 2d 853, 861 (1952))).

Accordingly, the Plaintiffs have not split claims between this matter and *CCSF*, *King County*, or *San Diego Housing Authority*. Dismissal is not warranted.

**B. Transfer Pursuant to the First to File Rule and 28 U.S.C. (§) 1404(A)**

The first-to-file rule empowers district courts to transfer, stay, or dismiss a case when it concerns substantially similar parties and issues as does as an action previously filed in another district. *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). In determining whether to apply the rule, courts concentrate on three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues. *Id.* at 1240. "The most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).

A party seeking transfer must show that the suit could have been brought in the forum to which the moving party seeks to transfer the case. *See Hoffman v. Blaski*, 363 U.S. 335, 344, (1960). *See also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). If so, district courts, again, have discretion to consider motions to change venue based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, (1988) (quoting *Van Dusen*, 376 U.S. at 622, 84 S.Ct. 805).

A court should consider: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. 28 U.S.C. § 1404(a). Additional factors that a court may consider include: (1) where the relevant agreements were negotiated and executed, (2) which state is most familiar with governing law, (3) the plaintiff's choice of forum, (4) the parties' contacts with each forum, (5) the parties' contacts with each forum that are related to the cause of action, (6) the relative costs of litigating in each forum, (7) the availability of compulsory process in each forum, and (8) access to evidence in each forum. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013) (citations omitted). *See also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) (It "is not a rigid or inflexible rule to be mechanically applied.").

Defendants' first-to-file argument about the similarities between *King County* plaintiff LAHSA and the County of Los Angeles fail for the same reasons they failed in the claim-splitting context. To be sure, "the parties need[] to be only 'substantially similar' and not identical," but the Ninth Circuit has made this clarification "in the context of whether *every* party in each action had to be present in the other action." *Behring Regl. Ctr. LLC v. Wolf*, No. 20-CV-09263-JSC, 2021 WL 1164839, at *2 (N.D. Cal. Mar. 26, 2021) (citing *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015)) (emphasis added). As in another case in this district, "Defendants have not identified any case, and the Court is not aware of any, where a court transferred a case under the first-to-file rule when there was no overlap in parties on one side of the 'v'." *Id.* *2.

As for transfer under § 1404(a), the factors do not weigh in its favor.[2] Plaintiffs choice of forum is the Northern District of California. Much of the remaining relevant factors—convenience of parties and witnesses, where relevant agreements were negotiated, contacts with the current forum and other forums, and access to evidence in each forum— are impacted by the location of the agencies, their regional offices, and Plaintiffs. While the agency Defendants are headquartered in D.C., they each also have relevant regional footprints where their grant recipients are located. In other words, the enforcement and threat of enforcement of the grant conditions occurs locally, through regional offices, and causes harm felt in the Plaintiff cities and counties. This outweighs the relevant nexus to D.C. for purposes of the § 1404(a) factors. Discretionary transfer under § 1404(a) is not warranted.

### C. Dismissal of EPA Claims for Lack of Justiciability

Defendants argue certain Plaintiffs' claims against EPA are not justiciable. Under Federal Rule of Civil Procedure 12(b)(1), a party can challenge the court's subject-matter jurisdiction over the asserted claims. The plaintiff bears the burden of proving jurisdiction at the time the action is commenced. *See Tosco Corp. v. Cmtys. for Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*

When considering a facial challenge, the court is required to "accept as true the allegations of the complaint." *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001). In a factual attack, by contrast, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In

---

[2] Defendants also argue, in a footnote and cursorily in the conclusion of their motion, that the matter should be transferred under § 1404(a) or the claims against the EPA and HHS dismissed because the only in-District Plaintiff in the original complaint did not assert claims against EPA or HHS. *See* Dkt. 75 at 24 n.7; *id.* at 31. However, the authority they cite for the position that venue must be analyzed according the original complaint does not stand for that proposition. *See Flowers Industries, Inc. v. FTC*, 835 F.2d 775, 776 n.2 (11th Cir. 1987) (quoting 28 U.S.C. § 1391(e)).

resolving a factual attack on jurisdiction, the Court need not presume the truthfulness of the plaintiff's allegations, and it may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.* Once a factual challenge has been raised, the party opposing dismissal must present "affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

Defendants argue that the EPA claims by Redwood City, Santa Clara, and Sunnyvale are not ripe because these Plaintiffs do not have any active or pending grants with EPA. A declaration by an EPA officer in support of their motion to dismiss explains that EPA "searched its data systems for all active grants or pending awards" to Cities of Redwood City, Santa Clara, and Sunnyvale, and "identified no active or pending grants." Dkt. 75-1, Treml Decl., ¶¶ 11, 15, 17. These searches, however, do not refute the well-pled allegations that Santa Clara receives EPA funding through the San Francisco Bay Water Quality Improvement Fund, Dkt. 68 ¶ 78, which is supported by declaration, Dkt. 77-3, Mobeck Decl., ¶¶ 3–4; Sunnyvale relies on two revolving fund loans in its Cleanwater Program, Dkt. 68 ¶ 87, which is also supported Dkt. 77-2, Ng Decl., ¶¶ 3–7, and Redwood City relies on EPA funding, including one million appropriated by the EPA for Redwood City's Citywide Stormwater Infrastructure Improvement Project, for which Redwood City is preparing pre-award materials to secure, Dkt. 68 ¶ 40, and which Defendants concede, Dkt. 75-1, Treml Decl., ¶ 11.

Defendants also argue that there is no cognizable injury for five EPA Plaintiffs, the Cities of Alameda, Atlanta, Hillsboro, and Santa Cruz and County of Los Angeles, because their grant funding is not subject to the EPA grant conditions challenged here due to the timing of the grants. On April 3, 2025 the EPA announced DEI grant conditions, but on August 25, 2025, the EPA revised the relevant section of its General Terms and Conditions, removing reference to DEI and requiring certification instead of the grantee's compliance with applicable Federal antidiscrimination law. The revision included an instruction that the revised federal anti-discrimination clause applies to "all new awards and funding amendments (incremental and supplemental) made on or after April 3, 2025." With regard to those five Plaintiffs, however,

Defendants' own declaration shows they have outstanding EPA grant applications or grants subject to at least the antidiscrimination condition.[3]

Relatedly, Defendants argue that *all* the claims against the EPA are moot in light of the August 2025 change. Previously, Plaintiffs failed to show a likelihood of success on the merits of claims against the EPA at the time of the initial injunction. However, the standard for likelihood of success on the merits for a preliminary injunction is not the same as the standard for mootness due to voluntary cessation. When a defendant voluntarily stops challenged conduct, that cessation moots the action only if defendants satisfy the "formidable" and "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 189–90 (2000). Here, Defendants' statement that the conduct has ended and will not recur is insufficient. President Trump has not rescinded his executive orders, and the EPA has not acknowledged the unlawfulness of its actions and has made no assurances that it will refrain from imposing substantively similar conditions in the future. Accordingly, Defendants arguments regarding the justiciability of Plaintiffs' EPA claims fail.

### D. Preliminary Injunction

Plaintiffs seek three expansions of the previously granted injunctive relief: (1) to extend the initial preliminary injunction to enjoin the Additional Defendants, two operating administrations of DOT, from enforcing the unlawful grant conditions against Plaintiffs as ordered initially; (2) to extend the initial preliminary injunction to protect the Additional Plaintiffs recently added to this action; and (3) a stay of related agency action. As before, Plaintiffs challenge the grant conditions, which are identical or substantially similar, as violative of the Constitution, specifically separation of powers, the Fifth Amendment, the Spending Clause, and the Tenth

---

[3] Alameda has an outstanding application for funding through EPA's Environmental and Climate Justice Community Change grant program, Dkt. 75-1, Trembl Decl., ¶ 11; Atlanta has a Brownfields Assessment grant from September 2025, id. ¶ 12; Hillsboro has an EPA grant from May 2025, id. ¶ 14; Santa Cruz has an EPA CPF/CDSI grant from August 2025, id. ¶ 16; and Los Angeles has an EPA grant updated in August 2025, id. ¶ 17.

Amendment, and violative of the APA for being arbitrary and capricious, in excess of statutory authority, and contrary to the Constitution. As set forth below, since the key Defendants and grant conditions have not changed materially and Additional Plaintiffs face the same constitutional harm and budgetary uncertainty, the requested extensions are warranted. However, the request for a stay is not necessary to provide complete relief to the parties and thus is denied.

As previously noted, to obtain preliminary injunctive relief, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). A court may "balance the elements" of this test, "so long as a certain threshold showing is made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). Thus, for example, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks omitted).

**A. Threshold Issues**

The threshold issues from Plaintiffs' prior motion for a preliminary injunction, namely, the applicability of 49 U.S.C. § 46110, the Tucker Act, and the claimed lack of reviewability under the APA, have already been considered and rejected. *See* Dkt. 45 at 8–14. Those same arguments against the issuance of injunctive relief on an expanded basis fail for the same reasons set forth in the prior order.

**B. Likelihood of Success on the Merits**

**i. Injury**

Plaintiffs seek to extend the initial preliminary injunction to protect Additional Plaintiffs and to enjoin Additional Defendants. Defendants argue that various Plaintiffs do not have Article III standing to seek any relief against certain Defendants because they are not participants in a

United States District Court
Northern District of California

grant program they administer. However, as in this Court's prior order, any preliminary injunction may only be invoked by Plaintiffs who receive or actively seek grant funding from each Defendant, including those who receive funds as subrecipients.

### ii. Voluntary Cessation of EPA Grant Conditions

As discussed, the EPA has replaced its grant conditions prohibiting the promotion of DEI with conditions requiring compliance with antidiscrimination law. Plaintiffs have not submitted evidence suggesting the EPA is enforcing its DEI conditions or interpreting compliance with antidiscrimination law in an impermissibly expansive manner. Accordingly, as before, Plaintiffs have not made a satisfactory showing of likelihood of success on the merits of their claims against the EPA in light of the EPA's changes to its conditions.

### iii. Voluntary Cessation of HHS Grant Conditions

Defendants similarly argue that the claims against HHS are moot. On July 24, 2025, HHS revised its Grants Policy Statement to remove reference to DEI. However, Plaintiffs' motion to supplement the record with new evidence not available before the close of briefing is granted, and it shows HHS efforts to terminate funding to Marin County for failure to comply with the DEI executive orders, Dkt. 8, Ex. 1 ¶ 5 . This evidence defeats Defendants' voluntary cessation argument and restores a likelihood of success on the merits. Moreover, even if the DEI conditions were no longer enforced, HHS's grant conditions incorporate gender ideology elective abortion grant conditions. In short, HHS's voluntary revisions fail to moot the claims against HHS.

### iv. Arbitrary and Capricious

Under the APA, agency action must be set aside and held unlawful if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if it is not " 'reasonable and reasonably explained.' " *Ohio v. Environmental Protection Agency*, 603 U.S. 279, 292 (2024) (citing *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). When changing its position, an agency must "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Dept. of Homeland Sec. v. Regents*

*of the U. of California*, 140 S. Ct. 1891, 1915 (2020). However, an agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one; it suffices that the new policy is permissible under the statute[.]" *F.C.C. v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009).

The inquiry as to whether the HUD, HHS, and DOT conditions—as enforced by its operating administrations—are arbitrary and capricious is based on each agency's specific version of the grant condition, announcement of the condition, and explanation or lack thereof. The inquiry would only change as applied to the Additional Plaintiffs if an agency changed the condition or its explanation when applying it to the new plaintiffs. Defendants make no such argument. Accordingly, there is a likelihood of success on the merits of the Additional Plaintiffs' arbitrary and capricious claims as to HUD, HHS, DOT, FHWA, FRA, FTA, and NHSTA.

### v. In Excess of Statutory Authority

Under the APA, a court must set aside an agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). As before, the inquiry has not changed. Whether HUD, HHS, DOT, and its operating administrations, FHWA, FRA, FTA, and NHSTA, have statutory authority to enforce the grant conditions depends on the authorizing statutes for each defendant and grant program. Defendants do not suggest these authorizing statutes have changed. Although the SAC raises additional federal grant programs administered by FAC Defendants and Additional Defendants, there still is no statutory authorization for Defendants to impose conditions prohibiting the promotion of DEI, gender ideology, or abortion or requiring cooperation with federal immigration enforcement. *See e.g.,* 42 U.S.C. § 1437u (HUD's self-sufficiency program); 42 U.S.C. § 4852 (HUD's Lead Hazard Reduction Grant Program; 49 U.S.C. § 22909 (FRA grant programs); 23 U.S.C. §§ 402, 405 (NHTSA Grant Programs); 42 U.S.C. §§ 247b–13a (HHS's Maternal Mental Health and Substance Use Disorders Program); 42 U.S.C. § 254c-8 (HHS's Healthy Start Program); 42 U.S.C. § 247d–3b (HHS's Hospital Preparedness Program). Plaintiffs are likely to succeed on the merits of their excess of statutory authority APA claims as to HUD, HHS, DOT, FHWA, FRA,

United States District Court
Northern District of California

FTA, and NHSTA.

### vi.  Contrary to the Constitution

Under the APA, a court may set aside an agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Plaintiffs are likely to succeed on their claims that the grant conditions violate separation of powers as in excess of statutory authority as set forth above.

As before, the Fifth Amendment vagueness analysis has not changed. Whether a grant condition is impermissibly vague depends on the agency's version and explanation of the condition, not the recipient. Plaintiffs challenge the same or substantially similar grant conditions, promulgated by the same Defendants, HUD, HHS, and DOT, along with four of DOT's operating administrations which have adopted DOT's grant conditions. They have shown a likelihood of success on the merits.

### C.  Irreparable Harm

A plaintiff seeking a preliminary injunction must establish that it is likely to suffer irreparable harm in the absence of preliminary relief. *Winter*, 555 U.S. at 20. Such harm "is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc*., 944 F.2d 597, 603 (9th Cir. 1991)). As before, the loss or threat of lost funding based on grant conditions that likely violate separation of powers, the Fifth Amendment, and the APA " 'unquestionably constitutes irreparable injury.' " *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "The []uncertainty [also] interferes with [Plaintiffs'] ability to budget, plan for the future, and properly serve their residents" and requires "placing funds in reserve and making cuts to services" which constitutes irreparable harm. *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017). Money later cannot remedy this harm.

Nevertheless, Defendants argue, as they did before, that Plaintiffs have not adequately identified the grant funding, programs, and applications impacted for each Plaintiff. As before, this

is backwards. *See* Dkt. 45 at 36. Plaintiffs are injured by the uncertainty and broadness of the meaning and reach of Defendants' conditions and the requirement nonetheless to certify compliance. Plaintiffs have demonstrated they receive or actively seek at least some grant funding threatened by each Defendant's grant conditions against whom they seek relief. This is enough to establish irreparable harm.

Defendants also argue that similar injunctive relief in other cases extinguishes any irreparable harm here. Parallel injunctions, however, are common and do "not remove the risk that Plaintiffs will suffer irreparable injury absent action," *Nw. Immigrant Rts. Project v. United States Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 81 (D.D.C. 2020) (*NWIRP*), especially where the priors injunctions do not cover the entirety of the relief sought or do not provide permanent relief.[4] Here parallel injunctions cover many, but not all of the grant conditions challenged. Dkt. 76 at 5. *See e.g., California v. United States Department of Transportation*, 808 F. Supp. 3d 291 (D.R.I. 2025) (discussing the only permanent injunction cited by Defendants and which covers only DOT's immigration enforcement grant conditions). Further, the prior injunctions cited by Defendants that cover the same or similar conditions on behalf of *different* plaintiffs do not provide adequate coextensive relief. *See e.g., Rhode Island Coalition Against Domestic Violence v. Trump*, No. 25-cv-00342 (D.R.I.) (different plaintiffs); *King County*, No. 2:25-cv-00814-BJR (same). In short, Defendants arguments do not defeat the finding of irreparable harm.

---

[4] *See e.g., California v. Health & Hum. Servs.*, 390 F. Supp. 3d 1061 (N.D. Cal. 2019) (A nationwide injunction issued in parallel litigation did not make an extension of the preliminary injunction to an intervening party unnecessary); *id.* (discussing *State v. Trump*, 265 F. Supp. 3d 1140, 1146 (D. Haw. 2017)) (Hawaii district court issued a preliminary injunction that overlapped with one issued by a Maryland district court.). *Cf. Hawai'i v. Trump*, 233 F. Supp. 3d 850, 853 (D. Haw. 2017) (Court granted an emergency stay pending an appeal in a similar case in the same circuit, noting that a parallel "nationwide injunction already provides [Hawai'i] with the *comprehensive* relief it seeks in this lawsuit." (emphasis added)); *McKinleyville Union School District v. United States Department of Education*, No. 25-cv-09105-YGR, 2025 WL 4110868 (N.D. Cal. Dec. 29, 2025) (Preliminary injunction denied because all requested substantive relief had been granted already, and on a permanent basis, in another case via a prior preliminary injunction, emergency stay of which was denied, and grant of partial summary judgment.).

**D. Balance of Harms and Public Interest**

A party seeking a preliminary injunction must "establish ... that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. When the federal government is a party as here, these factors merge. *See Nken v. Holder*, 556 U.S. 418, 435. As before, the public interest is served by giving Plaintiffs budgetary clarity, and "it is always in the public interest to prevent the violation of a party's constitutional rights," *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (cleaned up).

## IV. SCOPE OF REMEDY

Preliminary relief "must be narrowly tailored to remedy the specific harm shown." *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) (quotation marks and citation omitted). Plaintiffs request to extend the original preliminary injunction to the Additional Plaintiffs and Additional Defendnats is narrowly tailored as required.[5]

Plaintiffs also seek a stay of unlawful agency action by Defendants under 5 U.S.C. § 705, which "is governed by the preliminary injunction factors" satisfied here. *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000, 1015 (9th Cir. 2025). As to scope, 5 U.S.C. § 705 provides that courts can "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The question " 'is whether an injunction" is required to "offer complete relief *to the plaintiffs before the court.*' " *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000, 1015 (9th Cir. 2025) (quoting *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995–996 (9th Cir. 2025) (quoting *Trump v. CASA*, Inc., 606 U.S. 831, 854 (2025))) (emphasis in original).

In *National TPS Alliance v. Noem*, the Ninth Circuit reviewed the district court's decision pursuant to 5 U.S.C. § 705 to postpone the Department of Homeland Security's vacatur of Temporary Protected Status ("TPS") for Venezuela and termination of TPS for one group of

---

[5] Plaintiffs posted a nominal bond pursuant to the initial preliminary injunction and are not required to post another.

Venezuelan TPS holders. *Id.* at 1008, 1027. The Ninth Circuit affirmed. "[L]imiting the relief to individual plaintiffs and [National TPS Alliance] members [wa]s not a workable solution" because the *National TPS Alliance* plaintiffs challenged "Secretary Noem's vacatur of the prior extension of Venezuelan TPS" not "the eligibility determination for any particular TPS holder," and, importantly, "the TPS statute contemplates only a single binary determination for each country's TPS designation." *Id.* at 1028. "Th[o]se statutory constraints," requiring a binary determination, "distinguish [*National TPS Alliance*] from… other contexts." *Id.* For example, the "Remain in Mexico" statute allows the Secretary of Homeland Security to "adopt[] a piecemeal approach" "returning some, but not all, noncitizens to Mexico," and asylum rules allow for the application of a rule to asylum applicants in some areas but not others because each person's asylum eligibility is an individual determination." *Id.* (discussing *Immigrant Defs. L. Ctr.*, 145 F.4th at 995–956 *and E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1028 (9th Cir. 2019)). In light of the statutory constraints requiring binary determination, the Ninth Circuit found that "the district court did not abuse its discretion in determining that a postponement of agency action under the APA, effective nationwide, was both permissible and necessary to provide complete relief to Plaintiffs." *Id.* at 1029.

Here, Plaintiffs do not argue statutory constraints prohibit Defendants from applying the grant conditions in a piecemeal fashion as to some recipients and not others. Nor do they argue budgetary clarity requires a stay of all Defendant action related to the unlawful conditions. Accordingly, the preliminary injunction—prohibiting the enforcement of Defendants' unlawful grant conditions against Plaintiffs who currently receive or actively seek grants from Defendants—provides complete relief to Plaintiffs without the need for a stay of all unlawful agency action.

### V. CONCLUSION

For the foregoing reasons, the motion to dismiss, or in the alternative transfer, is denied. The motion for preliminary injunction is granted in part and denied as to the claims against the EPA and the request for a stay pursuant to 5 U.S.C. § 705.

**IT IS SO ORDERED**.

Dated: April 28, 2026

_____
RICHARD SEEBORG
Chief United States District Judge