UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUSING AUTHORITY OF THE CITY AND COUNTY OF SAN FRANCISCO, et al.,<br>Plaintiffs,<br>v.<br>SCOTT TURNER, et al.,<br>Defendants. | Case No. 25-cv-08859-JST<br>**ORDER DENYING MOTION TO DISMISS OR TRANSFER**<br>Re: ECF No. 41 |

Before the Court is Defendants' motion to dismiss the action or, in the alternative, transfer to the United States District Court for the Western District of Washington or the United States District Court for the District of Columbia. ECF No. 41. The Court will deny the motion.

## I. BACKGROUND

### A. The *King County* Litigation

On May 2, 2025, a group of municipal governments sued the United States Housing and Urban Development Agency ("HUD"), among other federal agencies, in the Western District of Washington, seeking to enjoin them from imposing certain grant conditions. *See King County v. Turner ("King County")*, No. 2:25-cv-814-BJR (W.D. Wash.), ECF No. 1. Ultimately, that court issued preliminary injunction orders enjoining HUD from imposing the challenged grant conditions on the plaintiffs, who included the City and County of San Francisco, the City of Los Angeles, the Los Angeles Homeless Services Authority, City of San Diego, the City of Portland, and the Mayor and City Council of Baltimore. *See King County*, ECF No. 169 at 46–47 (Order Granting First and Second Motions for Preliminary Injunction); *King County*, ECF No. 338 at 36–38 (Order Granting Third Motion for Preliminary Injunction); *King County*, ECF No. 381 at 12–

United States District Court
Northern District of California

United States District Court
Northern District of California

13 (Order Granting Fourth Motion for Preliminary Injunction). The *King County* injunctions extended relief only to the plaintiffs named in that action. *Id.* Those plaintiffs receive or are eligible to receive HUD grants under the Continuum of Care, Community Development Block Grant, the Emergency Solutions Grant, Home Investment Partnerships, and Housing Opportunities for Persons with AIDS programs. *King County*, ECF No. 338 at 12.

**B. This Litigation**

Beginning in April 2025, HUD required public housing agencies to certify that they would comply with the same conditions to qualify for funding under the Operating Subsidy, Capital Fund, Family Self-Sufficiency, and Multifamily Housing Service Coordinator programs. ECF No. 1 ¶¶ 72–100, 160. The earliest certification deadline was set for October 21, 2025. *Id.* at 1; *id.* ¶ 77.

On October 15, 2025, Plaintiffs filed this action seeking to enjoin HUD from imposing the challenged grant conditions. *Id.* at 41. Three days later, this Court issued a temporary restraining order enjoining HUD from (1) "imposing or enforcing the HUD Grant Conditions . . . on Plaintiffs at any stage of the grant process"; (2) "requiring Plaintiffs to make any certification or other representation related to compliance with such terms or conditions in order to apply for or receive HUD funds"; or (3) "refusing to issue, process, or sign grant agreements based on Plaintiffs' participation in this lawsuit." ECF No. 19 at 3–4. On November 14, 2025, the Court issued a preliminary injunction extending the terms of the TRO. ECF No. 33. Plaintiffs in this litigation are Housing Authority of the City and County of San Francisco ("SF Housing Authority"), Housing Authority of the County of San Diego ("SD Housing Authority"), Housing Authority of the City of Los Angeles ("HACLA"), Housing Authority of the City of Salem, Housing Authority of Baltimore City, Home Forward, Los Angeles County Development Authority ("LACDA"), and San Diego Housing Commission. ECF No. 41 at 6 & n 1.

On January 12, 2026, Defendants filed the instant motion to dismiss or transfer. ECF No. 41. Plaintiffs opposed on February 17, 2026. ECF No. 45. Defendants replied on February 24, 2026. ECF No. 46.

The motion argues that several plaintiffs, including the SF Housing Authority, have

impermissibly split their claims between this district and the Western District of Washington. ECF No. 41 at 14–17. Without the SF Housing Authority, Defendants contend that the remaining Plaintiffs' claims must be dismissed for improper venue. *Id.* at 17–18. Alternatively, Defendants seek transfer of the entire action to the Western District of Washington under the first-to-file rule, *id.* at 18–20, or to the District of D.C. under 28 U.S.C. § 1404(a), *id.* at 20–23.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III. MOTION TO DISMISS

### A. Legal Standard

#### 1. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," meaning that it provides sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept well-pleaded factual allegations in the complaint as true and "construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

#### 2. Rule 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a case for improper venue. When a defendant challenges venue, the plaintiff has the burden to show that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1188 (N.D. Cal. 2017), *aff'd sub nom. Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Although the court need not accept as true all allegations in the complaint and may consider facts outside the pleadings, it is nonetheless obligated to "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d

1133, 1137–38 (9th Cir. 2004).

The relevant venue statute is 28 U.S.C. § 1391(e), which provides that:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

**B. Claim Splitting**

Defendants argue that Plaintiff SF Housing Authority's lawsuit in this district is duplicative and should be dismissed under the claim-splitting doctrine because SF Housing Authority is in privity with the City and County of San Francisco, which is a plaintiff in the *King County* litigation. ECF No. 41 at 7. SF Housing Authority's claims are the sole basis for venue. *Id*. Defendants therefore argue that the dismissal of the entire action under Federal Rule of Civil Procedure 12(b)(3) should follow dismissal of SF Housing Authority's claims. *Id*. at 7–8.

"Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time . . . and against the same defendant.'" *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *overruled in part on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). "To determine whether a suit is duplicative, [courts] borrow from the test for claim preclusion," examining "whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id*. at 688–89; *see also Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022).

The ultimate objectives of the rule are "to protect the defendant from being harassed by repetitive actions based on the same claim" and promote judicial economy. *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 328 (9th Cir. 1995); Restatement (Second) of Judgments § 24. "If a court determines that a party has impermissibly split her claims, it may exercise its discretion to 'dismiss [the] duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions.'" *City of Fresno v. Turner*, No. 25-CV-07070-RS, 2026 WL 1146290, at *2 (N.D. Cal.

United States District Court
Northern District of California

Apr. 28, 2026) (quoting *Adams*, 487 F.3d at 688); *see also Mendoza*, 30 F.4th at 886 (dismissing case for improper claim-splitting).

**1. Same Causes of Action and Relief Sought**

"To ascertain whether successive causes of action are the same, [courts] use the transaction test, developed in the context of claim preclusion." *Adams*, 487 F.3d at 689. They examine four criteria: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Id.* (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)). "The last of these criteria is the most important." *Id.* (quoting *Costantini*, 681 F.2d at 1202).

Defendants argue that claim-splitting applies because this lawsuit and *King County* challenge identical HUD grant conditions. ECF No. 41 at 15. The suits do not, however, challenge the same grants. The *King County* plaintiffs challenged the application of the challenged grant conditions to HUD's Continuum of Care, Community Development Block Grant, Emergency Solutions Grant, Home Investment Partnerships, and Housing Opportunities for Persons with AIDS programs. *King County*, ECF No. 338 at 12. The plaintiffs in this lawsuit, by contrast, challenge the application of the grant conditions to HUD's Operating Subsidy, Capital Fund, Family Self-Sufficiency, and the Multifamily Housing Service Coordinator programs. ECF No. 1 ¶¶ 77–100. The fact that the suits broadly enjoin HUD from enforcing the challenged conditions with respect to "any . . . HUD funds" awarded to the *King County* plaintiffs or their subrecipients, *King County*, ECF No. 338 at 36–37, and with respect to "any federal funds received by or awarded, directly or indirectly, to Plaintiffs" in this action, ECF No. 19 at 5, does not alter the analysis because the two sets of Plaintiffs have applied for and receive distinct sets of grants. And importantly, each injunction is constrained to the specific plaintiffs, as the law requires. ECF No. 19 at 5; *King County*, ECF No. 338 at 36–38; *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (holding that federal courts lack authority to issue injunctions broader than necessary to provide relief to the parties before the court). The *King County* injunction does not

protect the plaintiffs in this lawsuit, and this Court's injunction does not protect the *King County* plaintiffs. The Court does not recite these facts to suggest that overlapping relief would be sufficient to justify application of the claim-splitting doctrine; it would not. "[I]n *Taylor v. Sturgell* the Supreme Court expressly rejected an expansive version of nonparty preclusion wherein '[p]reclusion [would be] in order whenever the relationship between a party and a non-party [wa]s close enough to bring the second litigant within the judgment.'" *Fresno*, 2026 WL 1146290, at *4 (quoting *Taylor*, 553 U.S. at 898). But here, Defendants hang their hats on overlapping relief that is simply not present. ECF No. 41 at 15. Because the two suits concern distinct plaintiffs and grants, the rights and interests established by the two actions are distinct and the two suits do not arise out of the same transactional nucleus of fact. *See Adams*, 487 F.3d at 689. The "causes of action and relief sought" are not the same. *Id*. at 689.

**2. Same Parties or Privies**

The claim-splitting doctrine does not apply for the additional reason that the plaintiffs here are not the same parties or privies of the *King County* plaintiffs. Defendants base their argument on the fact that the "parent local government[s]" of SF Housing Authority, SD Housing Authority, HACLA, Baltimore Housing Authority, Home Forward, LA County Development Authority, and SD Housing Commission are "actively pursuing duplicative federal court litigation challenging identical HUD grant conditions in King County." ECF No. 41 at 15. These "parents" are the City and County of San Francisco, the City of Portland, the City of Baltimore, the City of Los Angeles, and the City of San Diego. *Id*. at 10. Defendants contend that the *King County* plaintiff parent governments "unquestionably act as the privies" of the plaintiff housing agencies by seeking to enjoin application of the challenged condition to any HUD funds received "directly or indirectly" by the *King County* plaintiffs or their subrecipients. ECF No. 41 at 15–17. Plaintiffs respond that "public housing agencies have distinct legal interests from the cities and counties that created them," so "the *King County* plaintiffs do not—and cannot—represent the public housing agency Plaintiffs' interests in that action." ECF No. 45 at 9.

The Court agrees that the plaintiff housing authorities are distinct entities from the municipal governments that created them. Funds received by the plaintiff housing authorities are

not "indirectly received" by their parent local governments, nor are plaintiff housing authorities "subrecipients" of their parent governments' grants. And the relationship between Plaintiffs and the *King County* parent municipalities does not satisfy *Taylor*'s test for adequate representation in a prior suit by a nonparty.[1] The claim-splitting doctrine does not apply.

Each plaintiff here is a distinct entity from its parent municipal government with distinct legal rights. Four of the five California Plaintiffs—the SF Housing Authority, HACLA, the San Diego County Housing Authority, and the San Diego Housing Commission—were created pursuant to California's Housing Authorities Law, which establishes housing authorities as independent public "corporate and politic public bod[ies]" that are entirely distinct from county or city government. ECF No. 1 ¶¶ 6, 8, 10, 14; *see* Cal. Health & Safety Code §§ 34240, 34310. Housing authorities have independent legal status with the power to sue and be sued, *id*. § 34311; enter contracts, *id*.; seize property, *id*. § 34325; borrow money or accept grants or other financial assistance from the federal government, *id*. § 34327; issue bonds, *id*. § 34350; and hold their own debts and obligations, *id*. § 34353. The municipality "declares that there is need for an authority," *id*. § 34240; establishes the governing body, *id*. § 34270; and may provide legal representation to the housing authorities, *id*. § 34279; but plays no further role.

The fifth California Plaintiff—LACDA—is a community development commission under California law, "created and established in order that a community may have the option of operating and governing its redevelopment agency, or its redevelopment agency and its housing authority, under a single operating entity and board." Cal. Health & Safety Code § 34112. Such commissions "operate and govern the housing authority" when—as here—"[t]he ordinance adopted by the legislative body declaring a need for the commission to function in the community declares . . . that the commission shall be vested with the rights, powers, duties, and

[1] Defendants' suggestion that *Taylor* does not apply to claim-splitting is unsupported. ECF No. 46 at 3. As the Ninth Circuit held in *Mendoza*, "under the Supreme Court's decision in *Taylor*, a nonparty to a first action may nonetheless be subject to claim preclusion—and therefore also to the bar against claim-splitting—when, *inter alia*, that nonparty was 'adequately represented by someone with the same interests who was a party' to the first suit." 30 F.4th at 887 (quoting *Taylor*, 553 U.S. at 900).

responsibilities of the commissioners of the housing authority." *Id.* § 34118(a); *see also id.* § 34141 ("The nature, power, authority, functions and jurisdiction of the commission include, but are not limited to, all of the nature, power, authority, functions, and jurisdiction of redevelopment agencies and housing authorities."); L.A. County Code §§ 2.58.010, 2.58.030 (declaring need for a community development commission to "operate and govern the housing authority functions of the County of Los Angeles" and that it "shall be vested with the rights, powers, duties, and responsibilities of the Commissioners of the Housing Authority of the County of Los Angeles").

Oregon's statutory scheme governing housing authorities like Portland's Home Forward provides that "[a] housing authority shall constitute a public body corporate and politic," with various powers, including to "sue and be sued," to own or dispose of property, to borrow money, and to make and execute contracts, Or. Rev. Stats. § 456.120; to issue bonds which "shall not be a debt of the city, the county, the state or any political subdivision thereof," *id.* §§ 456.175, 456.180(2); to "[b]orrow money or accept grants or other financial assistance from the federal government," *id.* § 456.215(1)(a); to issue subpoenas, *id.* § 456.130; to license its rights in intellectual property, *id.* § 456.128; and to seize property, *id.* § 456.145.

Maryland law also recognizes the independent status of housing authorities. The Housing Authority of Baltimore City is "a public body corporate and politic" exercising "public and essential governmental functions," Ann. Code Md., Hous. & Cmty. Dev., §§ 12-501, 15-104; with the power to "sue and be sued," *id.* § 12-502(b)(1); "make contracts and other instruments necessary or convenient to the exercise of the authority's powers," *id.* § 12-502(b)(4); "borrow money and accept grants and other financial assistance from the political subdivision, the State, and the federal government," *id.* § 12-502(j)(1); and issue bonds, *id.* § 12-701; that are "not a debt of the State or a political subdivision," *id.* § 12-702(c)(1). *See also id.* § 15-103 (findings leading to creation of Housing Authority of Baltimore City). Such housing authorities "may use the chief law officer of the political subdivision or may employ [their] own counsel and legal staff." *Id.* § 12-308.

State and federal courts have repeatedly recognized the independent legal status of public housing agencies like the Plaintiffs from the municipalities that created them. *See, e.g.*, *Lynch v.*

*San Francisco Hous. Auth.*, 55 Cal. App. 4th 527, 541 (1997) ("The autonomy of housing authorities [like SF Housing Authority], even from local control, is also apparent."); *San Diegans for Open Government v. City of San Diego*, 242 Cal. App. 4th 416, 436 (2015) ("The Legislature, however, has specified that the . . . Housing Authority" is a "public entit[y] legally separate from the City."); *Housing Auth. of City of Los Angeles v. City of Los Angeles*, 38 Cal. 2d 853, 861 (1952) (recognizing that HACLA was "created as a state agency, 'a public body corporate and politic' and is not an agent of the city in which it functions"); *United States ex rel. Rosales v. San Francisco Housing Auth.*, 173 F. Supp. 2d 987, 1023–24 (N.D. Cal. 2001) (noting that if the United States recovered damages, "these funds will not come out of the city's coffers. The [SF Housing Authority] is an independent local public corporation holding its own assets and generating its own revenues.").

Nor are Plaintiffs in this litigation in privity with the *King County* plaintiffs for claim-splitting purposes. Although the Supreme Court has enumerated six grounds for nonparty preclusion, *see Taylor*, 553 U.S. at 893–95, only one arguably applies here: A nonparty may be subject to the bar against claim-splitting if it was "'adequately represented by someone with the same interests who was a party' to the first suit." *Mendoza*, 30 F.4th at 887 (quoting *Taylor*, 553 U.S. at 894). "[A] nonparty is adequately represented in a prior suit when, 'at a minimum: (1) [t]he interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty.'" *Id*. at 887–88 (quoting *Taylor*, 553 U.S. at 900). "In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented." *Id.* (quoting *Taylor*, 553 U.S. at 900).

Defendants cannot show that the *King County* plaintiffs "understood [themselves] to be acting in a representative capacity" or that that court "took care to protect the interests of the [plaintiffs in this litigation]." *Mendoza*, 30 F.4th at 887 (quoting *Taylor*, 553 U.S. at 900). Defendants identify no evidence suggesting such a relationship. *Cf. id*. at 889 (holding that "in *Mendoza I*, Mendoza understood himself to be acting in a representative capacity on behalf of the other board members and that the other board members had notice that he was doing so"

because he sought the "core remedy" sought in *Mendoza II*, stated explicitly his belief that he acted on behalf of the *Mendoza II* plaintiffs, and because those plaintiffs submitted declarations in support of Mendoza's efforts). And as discussed above, the *King County* injunction applies to the *King County* plaintiffs, not to the public housing agencies or grants at issue in this litigation. While Defendants suggest—without explicitly arguing—that funds received by Plaintiffs are "indirectly received" by the *King County* plaintiffs, or that Plaintiff are subrecipients of *King County* grants, any such position is without support, especially in light of the ample evidence that plaintiff housing authorities are set up by statute to receive and manage funding independently. ECF No. 41 at 17.

Because Defendants' claim-splitting argument fails, so does their improper venue argument. *See* 28 U.S.C. § 1391(e)(1)(C); *City & County of San Francisco v. Trump*, No. 25-cv-01350-WHO, 2025 WL 2243619, at *6 (N.D. Cal. Aug. 5, 2025) ("The clear weight of federal authority holds that venue is proper in a multi-plaintiff case if any plaintiff resides in the District." (cleaned up)). The motion to dismiss is denied.

## IV. MOTION TO TRANSFER

Defendants argue that in the alternative, the lawsuit should be transferred out of this district because seven out of eight plaintiffs have no connection to it. ECF No. 41 at 8. "Accordingly, the Court should either transfer the lawsuit to the Western District of Washington under the first-to-file rule or to the District Court for the District of Columbia under 28 U.S.C. § 1404(a)." *Id.*

### A. First-to-File Rule

"The well-established 'first-to-file' rule allows a district court to transfer, stay, or dismiss an action when a similar complaint has been filed in another federal court." *Chen v. Zhang*, No. 24-CV-03942-JST, 2024 WL 4894294, at *3 (N.D. Cal. Nov. 25, 2024) (citing *Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622, 623 (9th Cir. 1991)). "The district court examines three threshold factors in deciding whether to apply the first-to-file rule: (1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues." *Id.* (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)); *Alltrade*, 946 F.2d at 625–26). The

Ninth Circuit has afforded district courts "an ample degree of discretion" in determining whether application of the rule results in "conservation of judicial resources and comprehensive disposition of litigation." *Pacesetter*, 678 F.2d at 95.

Defendants cannot show that either the second or third first-to-file rule factors justify transfer to the Western District of Washington. The "similarity of the parties" does not support transfer because none of the plaintiffs overlap in the two actions. *Pacesetter*, 678 F.2d at 95. *Behring Regional Center LLC v. Wolf* is instructive. No. 20-CV-09263-JSC, 2021 WL 1164839, at *2 (N.D. Cal. Mar. 26, 2021). In that case, the court declined to transfer because "[w]hile there is no dispute that the District of Columbia action was filed over a year before this action, the difference in the parties—namely the plaintiffs—satisfies the Court it should not order transfer." *Id*. at *2. As the court explained, the "Defendants have not identified any case, and the Court is not aware of any, where a court transferred a case under the first-to-file rule when there was no overlap in parties on one side of the 'v'." *Id.*; *see also Fresno*, 2026 WL 1146290, at *5 (applying *Behring* and rejecting application of the first-to-file rule where no plaintiffs were common to both suits, even though government entities from the same municipality were involved in both suits). Defendants rely on *Chen v. Zhang*, but in that case, "the same parties [were] involved in the two lawsuits," just in "slightly different combinations." 2024 WL 4894294, at *3.

The "similarity of the issues" also does not support transfer. *Pacesetter*, 678 F.2d at 95. Although Defendants argue that "the King County lawsuit challenges identical HUD grant terms and funding," ECF No. 41 at 19, that is not true. The two suits challenge identical grant conditions imposed on distinct grants received by distinct entities. Indeed, those conditions have been widely imposed on federal grants and have spurred innumerable lawsuits across the country.

Finally, transfer would be particularly inappropriate because no plaintiff is based in Washington. *See In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018) (holding that "the first-to-file rule" does not "negate[] § 1404(a)'s requirement that an action may be transferred only to a district where it 'might have been brought'").

**B. Section 1404**

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer a civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) exists to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Southard v. Kipper Tool Co.*, No. 15-cv-03621-JSC, 2023 WL 6959145, at *3 (N.D. Cal. Oct. 19, 2023)) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

On motion to transfer, and upon determination that the transferor venue is proper, courts must determine if the venue would remain proper in the proposed transferee district. *Jackson v. Tesla, Inc.*, 772 F. Supp. 3d 1111, 1118 (N.D. Cal. 2025). If so, the court weighs several private and public interest factors, which may include:

> (1) the plaintiff's choice of forum; (2) the parties' convenience; (3) the witnesses' convenience; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) the feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum.

*Our Children's Earth Found. v. EPA*, No. C 08-01461 SBA, 2008 WL 3181583, at *4 (N.D. Cal. Aug. 4, 2008) (citing *Jones v. GNC Franchising,* 211 F.3d 495, 498–99 (9th Cir. 2000)). Ordinarily, the party moving to transfer bears the burden of justifying it. *Jones*, 211 F.3d at 499. The district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Id.* at 498 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

One of the eight plaintiffs—SF Housing Authority—is located in this district. *See Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1110 (C.D. Cal. 2007) ("[T]he fact that a plaintiff has filed suit in the district where it resides is a sufficient connection to accord its choice of forum deference."). SF Housing Authority and its constituents experience the alleged harm in this district. The remainder of the plaintiffs "chose to participate in this action in this district." *Anunciato v. Trump*, No. 20-CV-07869-RS, 2020 WL 13547186, at *3 (N.D. Cal. Dec. 23, 2020); *see also id.* ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). The only inconvenience identified by Defendants is that

"all Defendants, and their entire administrative records, are located in the District of Columbia." ECF No. 41 at 22. And of course, Defendants have local offices in this district. *See Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15–CV–02106–RS, 2015 WL 4463790, at *5 (N.D. Cal. July 21, 2015) ("Though CFPB has its headquarters in Washington, D.C., the agency has an office in San Francisco, providing resources that make litigating in this District more convenient for CFPB than in the Southern District of Ohio"). Moreover, "[a]ny administrative record in this case would be produced electronically in any event." *Anunciato*, 2020 WL 13547186, at *3.

A peer court recently had occasion to decide this precise issue. In *Fresno*, a challenge to many of the same grant conditions brought by municipalities in this district as well as the Eastern and Central Districts of California, the Western District of New York, and Minnesota, Chief Judge Seeborg held:

> Plaintiffs' choice of forum is the Northern District of California. Much of the remaining relevant factors—convenience of parties and witnesses, where relevant agreements were negotiated, contacts with the current forum and other forums, and access to evidence in each forum—are impacted by the location of the agencies, their regional offices, and Plaintiffs. While the agency Defendants are headquartered in D.C., they each also have relevant regional footprints where their grant recipients are located. In other words, the enforcement and threat of enforcement of the grant conditions occurs locally, through regional offices, and causes harm felt in the Plaintiff cities and counties. This outweighs the relevant nexus to D.C. for purposes of the § 1404(a) factors.

*Fresno*, 2026 WL 1146290, at *6. "Discretionary transfer under § 1404(a) is not warranted." *Id*.

**CONCLUSION**

The motion to dismiss or transfer, ECF No. 41, is denied.

**IT IS SO ORDERED.**

Dated: September 14, 2026

JON S. TIGAR
United States District Judge